UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACTION TECHNOLOGY, INC., | Case No.: 21-CV-812 TWR (JLB) |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT** |
| v. | |
| APPLE INC., | |
| Defendant. | (ECF No. 231) |

Presently before the Court is Plaintiff Taction Technology, Inc. ("Taction")'s Motion for Leave to File an Amended Complaint ("Mot.," ECF No. 231), as well as Defendant Apple Inc. ("Apple")'s Response in Opposition to ("Opp'n," ECF No. 273 (public), 283 (sealed)), Taction's Reply in Support of ("Reply," ECF No. 284) the Motion. The Court held a hearing on May 18, 2023, (*see* ECF No. 296), following which the Parties filed Supplemental Briefs ("Def.'s Supp. Br.," ECF No. 304; "Pl.'s Supp Br.," ECF No. 305). For the reasons discussed below, the Court **DENIES** Taction's Motion.

BACKGROUND

## I.    The Asserted Patents

Taction is the owner and assignee of U.S. Patent No. 10,659,885 ("the '885 Patent") and U.S. Patent No. 10,820,117 ("the '117 Patent") (collectively, "the asserted patents"). (*See* ECF No. 1 ("Compl.") ¶¶ 68, 72); *see also* U.S. Patent No. 10,659,885, at [73] (issued

1

May 19, 2020); U.S. Patent No. 10,820,117, at [73] (issued Oct. 27, 2020). The '885 Patent is entitled "Systems and Methods for Generating Damped Electromagnetically Actuated Planar Motion for Audio-Frequency Vibrations" and was issued on May 19, 2020. '885 Patent at [45], [54]. The '117 Patent is entitled the same and was issued on October 27, 2020. '117 Patent at [45], [54]. The '885 Patent and the '117 Patent share a common specification, and both patents claim priority to Provisional Application No. 62/054,712 filed on September 24, 2014. '885 Patent at [60]; '117 Patent at [60].

The invention described in the '885 Patent and the '117 Patent "relates to tactile transducers that produce bass frequency vibrations for perception by touch." '885 Patent col. 1 ll. 20–21.[1] The specification of the asserted patents explains:

> Below about 200 Hz, the lower the frequency of sound, the more it is perceived not only by vibration of the ear drum but also by touch receptors in the skin. This sensation is familiar to anyone who has "felt the beat" of strong dance music in the chest, or through the seat of a chair, or has simply rested a hand on a piano. The natural stimulus is both auditory and tactile, and a true reproduction of it is possible only when mechanical vibration of the skin accompanies the acoustic waves transmitted through the air to the ear drum.

*Id.* at col. 1 ll. 25–33. The specification then details the problems with the prior art audio-frequency tactile transducers, which include "axial shakers," "un-damped eccentric rotating motors ('ERMs')," and "un-damped linear resonant actuators ('LRAs')." *See id.* at col. 1 l. 34–col. 2 l. 46. With respect to "axial shakers," the specification explains a "drawback" of using axial shakers "is the production of unwanted acoustic noise." *Id.* at col. 1 ll. 43-56. The specification further explains that this problem "is typically made worse by a lack of mechanical damping." *Id.* at col. 2 ll. 1–2.

With respect to ERMs and LRAs, the specification explains that they are also "problematic." *Id.* at col. 2 ll. 11-13. Specifically, the specification explains that undamped "ERMs are incompatible with high-fidelity audio." *Id.* at col. 2 ll. 14-16. The

---

[1] Because the '885 Patent and the '117 Patent share a common specification, the Court will cite to only the '885 Patent's specification for ease of reference.

2

specification states that the "main drawback of LRAs is the dependence on 'resonance.'" *Id.* at col. 2 ll. 25-26. The specification explains that LRAs are designed for tactile alerts, not fidelity, and they can have a "high Q-factor" that renders those devices "useless for high fidelity reproduction of low frequency tactile effects" in the relevant range. *See id.* at col. 2 ll. 25-34; *see also id.* at col. 2 ll. 63-67 (describing a "lack of critically damping" and "a claimed Q-factor of 1.5 to 3" as a "drawback").

The asserted patents aim to overcome the problems of the prior art by disclosing "a thin, flat vibration module with a movable member that is electromagnetically actuated to produce motion in-plane." *See id.* at col. 3 ll. 51–53; *see also id.* at col. 2 ll. 47–49. "[T]he module may consist of a mass and thin magnets, polarized through their thickness, where the mass and magnets are movably suspended inside a housing." *Id.* at col. 3 ll. 63–66. Further, the suspension may include flexures or a ferrofluid layer. *Id.* at col. 3 ll. 66–67. In addition, "the vibration of the moving portion may be damped" using the layer of ferrofluid. *Id.* at col. 4 ll. 6–8.

Independent claim 1 of the '885 Patent recites:

1.      An apparatus for imparting motion to the skin of a user, the apparatus comprising:

a housing;

a plurality of coils capable of carrying electrical current;

a plurality of magnets arranged in operative proximity to the plurality of coils;

a moving portion comprising an inertial mass and the plurality of magnets;

a suspension comprising a plurality of flexures that guides the moving portion in a planar motion with respect to the housing and the plurality of conductive coils;

wherein movement of the moving portion is damped by a ferrofluid in physical contact with at least the moving portion; and

wherein the ferrofluid reduces at least a mechanical resonance within the frequency range of 40-200 Hz in response to electrical signals applied to the plurality of conductive coils.

3

'885 Patent col. 14 ll. 48–65.

Independent claim 1 of the '117 Patent recites:

1.    An apparatus comprising:

a housing;

a plurality of conductive coils capable of carrying electrical current;

a plurality of magnets arranged in operative proximity to the plurality of conductive coils;

a moving portion comprising an inertial mass and the plurality of magnets;

a suspension comprising a plurality of flexures that guides the moving portion in a planar motion with respect to the housing and the plurality of conductive coils;

wherein vibration of the apparatus imparts vibrations to a user's skin;

wherein vibration of the apparatus is damped by a viscous ferrofluid in physical contact with at least the moving portion;

wherein the viscous ferrofluid reduces at least a resonance within a frequency range of 40-200 Hz in response to signals applied to the plurality of conductive coils;

wherein said moving portion includes at least a pocket that provides space for at least a magnet;

wherein each of said plurality of flexures is more resistant to motion transverse to a plane of the moving portion than it is to linear motion in the plane of the moving portion; and

wherein said housing is generally cuboid in shape.

'117 Patent col. 14 l. 47–col. 15 l. 5.

## II.    Procedural History

On April 26, 2021, Taction filed a complaint against Apple, alleging infringement of the asserted patents.  (*See generally* Compl.)  Specifically, Taction alleges that Apple has directly infringed and induced or contributed to the infringement of the asserted patents by making, using, selling, and offering for sale Apple products, including the iPhone and

Apple Watch, that implement haptics technology, (*see id.* ¶¶ 77, 80), which refers to the science of enabling interaction with technology through the sense of touch, such as, for example, through the use of vibrations.  (*See* ECF No. 73 at 1.)  Apple answered the complaint and filed counterclaims against Taction on July 8, 2021.  (*See generally* ECF No. 17.)

On August 10, 2021, Magistrate Judge Jill L. Burkhardt issued a Scheduling Order, (*see* ECF No. 34), which omitted a deadline for the filing of motions to amend the pleadings as required under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 16(b)(3)(A) ("Required Contents.  The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.").

On October 21, 2022, after this action was transferred to the undersigned, (*see* ECF No. 48), Apple filed before the Patent Trial and Appeal Board ("PTAB") four petitions for *inter partes* review ("IPR"), challenging the validity of all of the asserted claims of the asserted patents.  (*See* ECF No. 53-1 ("Kete Decl.") Exs. 1–4.)  On January 26, 2022, the Court stayed the action, including further claim construction briefing, pending the PTAB's decision on whether to institute the IPRs.  (*See* ECF No. 76 at 6.)  The PTAB issued decisions denying institution of IPR for all four IPR proceedings related to the asserted patents on April 18, 2022.  (*See generally* ECF No. 97.)

On June 2, 2022, the Court lifted the stay and reset the Claim Construction and Tutorial Hearing for August 18, 2022, (*see generally* ECF No. 98), which the Court subsequently continued to September 15, 2022.  (*See* ECF No. 119.)  After issuing a tentative ruling, (*see* ECF No. 122), the Court held the *Markman* hearing on September 15, 2022.  (*See* ECF No. 126.)  The Court's Claim Construction Order followed on September 28, 2022.  (*See generally* ECF No. 141.)

Fact discovery closed on February 10, 2023.  (*See* ECF No. 174 at 1.)  Taction filed the instant Motion on March 16, 2023.  (*See generally* ECF No. 231.)  While the Motion was pending, expert discovery closed on April 21, 2023, (*see* ECF No. 174 at 2), and the Court set a trial date of October 16, 2023, along with attendant pretrial deadlines.  (*See*

*generally* ECF No. 281.)  The Parties also filed their dispositive motions on May 12, 2023.
(*See* ECF Nos. 289–24.)

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend their complaint
once as a matter of course within specified time limits.  Fed. R. Civ. P. 15(a)(1).  "In all
other cases, a party may amend its pleading only with the opposing party's written consent
or the court's leave.  The court should freely give leave when justice so requires."  Fed. R.
Civ. P. 15(a)(2).  "Although the rule should be interpreted with 'extreme liberality,' leave
to amend is not to be granted automatically."  *Jackson v. Bank of Haw.*, 902 F.2d 1385,
1387 (9th Cir. 1990) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981));
*see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058
(9th Cir. 2011) ("[L]iberality in granting leave to amend is subject to several limitations.").

After a pretrial scheduling order establishing a timetable for amending the pleadings
has been filed, however, any request for leave to amend is first reviewed under Federal
Rule of Civil Procedure 16.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th
Cir. 2000).  "Where a party moves to amend the pleadings after a deadline set in the Rule
16 scheduling order, the Court should not modify the scheduling order 'except upon a
showing of good cause.'"  *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 430
F. Supp. 2d 1157, 1163 (D. Nev. 2006) (quoting Fed. R. Civ. P. 16(b)).  Only after a party
"satisf[ies] the 'good cause' requirement" will the court consider "whether an amended
pleading under Rule 15 is proper."  *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 335
(C.D. Cal. 2016).

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the
party seeking to interpose an amendment and the prejudice to the opposing party, Rule
16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the
amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.
1992).  "While a court may take into account any prejudice to the party opposing
modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the

6

moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.'" *In re W. States Wholesale Nat. Gas*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson*, 975 F.2d at 609).

If the party moving to amend was diligent, the court proceeds under Rule 15(a) to consider five factors, known as the *Foman* factors, as articulated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors include: (1) undue delay; (2) bad faith on the part of the party seeking leave to amend; (3) undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint. *Foman*, 371 U.S. at 182; *see Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052. The decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1331 (9th Cir. 1996).

## ANALYSIS

By the present motion, Taction moves pursuant to Federal Rule of Civil Procedure 15(a) for leave to file an amended complaint. (Mot. at 1, 5.) Specifically, Taction requests that it be permitted to amend its complaint to add additional details clarifying and supplementing it allegations in the original complaint regarding the marking of its products with its patent information. (*Id.*)

The Court concludes that there exist two independent bases to deny Taction's Motion. First, Taction's Motion is untimely and its proposed amendments would unduly prejudice Apple. Second, Taction's proposed amendments are futile.

## I.    Undue Delay and Prejudice

Taction filed its Motion on March 16, 2023, nearly two years after it filed its original Complaint on April 26, 2021. Nonetheless, Taction asserts that it "has not delayed in seeking [to] amend[]" because "no deadline to amend the complaint was set in the Case

Management Order." (*See* Mot. at 3 (citing ECF No. 34; Fed. R. Civ. P. 16(b)(3)(A)).) As indicated above, *see supra* at page 5, any omission of a deadline to amend the pleadings was erroneous and in contravention of Federal Rule of Civil Procedure 16(b)(3)(A). Indeed, the general practice in this District is to set a deadline to amend the pleadings thirty to sixty days from the docketing of the first scheduling order, in which case Taction would have been required to amend its complaint by mid-October 2021—approximately a year-and-a-half before Taction filed the instant Motion.

Under these circumstances and for the reasons discussed below, the Court would be well within its discretion to deny Taction's Motion based on Taction's lack of diligence under Rule 16(b)(4). Taction's Motion, however, does not succeed even under Rule 15(a)'s more liberal amendment standard. Indeed, in assessing the timeliness of a motion for leave to amend, a district court does "not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Rather, "in evaluating undue delay," a district court should also "inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'" *Id.* (quoting *Jackson*, 902 F.2d at 1388).

Although Taction does not state when it first became aware of the relevant facts that it is now relying on to support its new allegations, (*see generally* Mot. at 3; Reply at 8), Apple has presented the Court with evidence showing that Taction entered into licensing agreements with Corsair beginning in February 2019; the parties amended that agreement on August 14, 2020, to expressly cover, among other things, marking of the Corsair HS-60 packaging; and the Corsair HS60 headset was released on October 15, 2020. (*See* ECF No. 283-1 ("Ex. 2"); ECF No. 283-2 ("Ex. 3"); ECF No. 283-3 ("Ex. 4"); ECF No. 273-6 ("Ex. 5").) Taction therefore either knew of or should have known of the relevant facts to support its current proposed amendment at the time it filed its original complaint on April 26, 2021. *Cf. Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("*Arctic Cat I*") ("Whether a patentee's articles have been marked

'is a matter peculiarly within his own knowledge . . . .'" (quoting *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894))).  Nonetheless, Taction waited until almost *two years* after it filed its original Complaint—and until after the close of fact discovery in this case—to file this Motion to add those facts.  That delay is undue and unreasonable.  *See AmerisourceBergen*, 465 F.3d at 953 ("We have held that an eight[-]month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable." (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991)); *see, e.g.*, *Jackson*, 902 F.2d at 1388 (finding seven-month delay "inexplicable and unjustified").

Taction asserts that delay alone cannot justify a denial of leave to amend.  (Mot. at 3.)  As discussed above, however, the Court would be well within its discretion to deny Taction's Motion under Rule 16(b)(4) for failure to act with the requisite diligence.  Nonetheless, even under Rule 15(a), the Ninth Circuit has found that undue delay coupled with prejudice to the nonmoving party is sufficient to deny leave to amend.  *See, e.g.*, *AmerisourceBergen*, 465 F.3d at 953; *Texaco*, 939 F.2d at 798; *Jackson*, 902 F.2d at 1388 & n.4.  Such is the case here, where Taction did not assert that it would specifically rely on the markings on the Taction Transporter inside the Corsair HS60 headset to support its assertion of compliance with § 287(a) until Taction served Apple with its Supplemental Response to Interrogatory No. 10 on February 10, 2023—the very last day of fact discovery in this case.  (*Compare* ECF No. 273-2 ("Ex. 1"), *with* ECF 273-11 ("Ex. 10").)  Because Taction served that interrogatory on the last day of fact discovery and then moved for leave to amend its complaint after fact discovery had closed, Apple was prevented from pursuing discovery in this case targeted at that specific asserted basis for compliance with § 287(a).  (*See* Opp'n at 17.)  For example, Apple was prevented from obtaining discovery into when that alleged form of marking by Corsair began and how many unmarked HS60 headsets were distributed and for what duration.[2]  (*See id.*)

---

[2] Taction asserts that because the interrogatory response at issue was filed on the last day of fact discovery, the response was timely.  (Reply at 9.)  But the issue here is not whether Taction's supplemental

The Court therefore **DENIES** Taction's Motion on the grounds of undue delay coupled with prejudice to Apple. *See Lochridge v. City of Tacoma*, 315 F.R.D. 596, 600 (W.D. Wash. 2014) ("Prejudice may effectively be established by demonstrating that a motion to amend was made after . . . discovery had closed or was about to close."); *see, e.g.*, *Texaco*, 939 F.2d at 799 (affirming district court's denial of leave to amend on the basis of undue delay where the motion for leave to amend was filed after the close of discovery and "just four and a half months before the trial date"); *Jackson*, 902 F.2d at 1388 (affirming denial of leave to amend where there was undue delay coupled with prejudice); *DNA Genotek Inc. v. Spectrum Solutions L.L.C.*, No. 321-CV-00516-RSH-DDL, 2023 WL 3442085, at *9 (S.D. Cal. May 12, 2023) (same).

## II.    Futility

Because the Court concludes that denial of Taction's Motion is warranted based on Taction's undue delay and prejudice to Apple, it need not reach whether Taction's proposed amendments would be futile. *See, e.g.*, *Jackson*, 902 F.2d at 1388. Nonetheless, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). The Court concludes that the futility of Taction's proposed amendments provides an independent basis to deny Taction's Motion.

As an initial matter, Apple asserts that Taction's proposed amendments would futile if they are vulnerable to a motion for summary judgment, (*see* Opp'n at 7), whereas Taction

---

interrogatory response was timely; rather, it is whether Taction's Motion is timely. For the reasons explained above, *see supra* at pages 8–9, it is not.

Taction also notes that Apple was permitted to depose Taction's CEO, John Steinberg, two days after the close of fact discovery in this case. (Reply at 10.) But Taction fails adequately to explain how this deposition by itself was sufficient to remedy any potential prejudice to Apple. The product at issue is a Corsair product, not a Taction product, so Taction's CEO was unable to speak to all of the issues related to that product. For example, Mr. Steinberg was not able to answer when Corsair began placing the marks at issue on the packaging for the HS60 headset. (*See* ECF No. 283-4 ("Ex. 7") at 534 ("Q. How long after the '885 patent issued did Corsair start placing this label on page 39 of Exhibit 2 on the HS60 Haptic packaging? A. I don't know.").)

10

21-CV-812 TWR (JLB)

argues that the appropriate standard is that applied in the motion-to-dismiss context. (Reply at 1–2.)  Although the Ninth Circuit generally assesses futility of amendment under the Rule 12(b)(6) motion to dismiss standard, *see, e.g.*, *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011), *on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012), the Ninth Circuit has held in several cases that a proposed amendment is futile if it would not survive a motion for summary judgment.  *See, e.g.*, *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) ("[F]utility includes the inevitability of a claim's defeat on summary judgment[.]" (quoting *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987)); *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) ("The district court's conclusion that adding a cause of action . . . would be futile was correct because any such cause of action could be disposed of by summary judgment."); *Hastings v. Ford Motor Co.*, No. 19-CV-02217-BAS-MDD, 2022 WL 848330, at *5 (S.D. Cal. Mar. 22, 2022) ("An amendment is futile if, as amended, the plaintiff's claims cannot survive summary judgment."); *DNA Genotek*, 2023 WL 3442085, at *7.  Further, application of the summary judgment standard to Taction's Motion is particularly appropriate here given that Taction filed its Motion over a month after the close of fact discovery in this case.  *See, e.g.*, *DNA Genotek*, 2023 WL 3442085, at *7 (applying summary judgment futility standard where the motion for leave to amend was filed after the close of fact discovery).

Having concluded that Taction's proposed amendments should be assessed under the summary judgment standard, summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are facts that, under the governing substantive law, may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.*  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex*, 477 U.S. at 323. A moving party without the ultimate burden of proof at trial can satisfy its burden in two ways: (1) by presenting "evidence negating an essential element of the nonmoving party's claim or defense;" or (2) by demonstrating "that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party establishes the absence of a genuine dispute as to any material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); *accord Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." *Anderson*, 477 U.S. at 256; *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 256.

When ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed." *Id.*

Here, Taction seeks leave to amend its Complaint to add allegations regarding Taction's licensee Corsair Gaming, Inc.'s marking of its Corsair HS60 headset product. (*See* Reply at 2; *see also generally* ECF No. 231-2 (redline of proposed first amended complaint).) "Specifically, Taction seeks leave formally to allege that both the Taction Transporter haptic transducer within the headset as well as the packaging of the headset were marked in compliance with 35 U.S.C. § 287(a)." (Reply at 2.) Apple argues that the

evidence in the record demonstrates that these proposed marking allegations are inadequate as a matter of law to demonstrate compliance with the patent marking statute. (*See* Opp'n at 1.)

> The patent marking statute, 35 U.S.C. § 287, provides, in relevant part:
>
> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can[]not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). "The patent marking statute limits recoverable damages where a patentee fails to mark her patented products." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1378 (Fed. Cir. 2013). Specifically, if "a patentee makes or sells a patented article and fails to mark in accordance with § 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*"). The Federal Circuit has "explained that the marking statute serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Arctic Cat I*, 876 F.3d at 1366.

"Compliance with § 287 is a question of fact." *Id.* at 1366. "The patentee bears the burden of proving compliance by a preponderance of evidence." *Nike, Inc. v. Wal-Mart*

*Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998); *see also Arctic Cat I*, 876 F.3d at 1366 ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement.").

"A patentee's licensees must also comply with § 287, because the statute extends to 'persons making or selling any patented article for or under [the patentee].'" *Arctic Cat I*, 876 F.3d at 1366 (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996)). "Recognizing that it may be difficult for a patentee to ensure his licensees' compliance with the marking provisions," the Federal Circuit has "held that where third parties are involved, courts may consider 'whether the patentee made reasonable efforts to ensure compliance with the marking requirements.'" *Id.*; *see also Maxwell*, 86 F.3d at 1111 ("[A] 'rule of reason' approach is justified in . . . a case [involving third parties] and substantial compliance may be found to satisfy the statute.").

Taction asserts that it complied with the patent marking statute because it marked the Taction Transporter that is inside the Corsair HS60 headsets. (*See* Reply at 3–4.) Taction asserts that § 287(a) permits a patentee to mark the patented article and, here, the patented article is the Transporter, not the headset. (*See* Reply at 3–4.) The Court rejects Taction's argument that the only patented article here is the Taction Transporter itself and not also the entire Corsair HS60 headset. Dependent claim 21 of the '885 Patent and dependent claim 18 of the '117 Patent both expressly claim an "apparatus" that "comprises a headphone set." *See* '885 Patent col. 16 l. 44; '117 Patent col. 16 l. 62. As such, the entire Corsair HS60 headset and not just the Transporter is the patented article with respect to those two claims.

The Court acknowledges that dependent claim 21 of the '885 Patent and dependent claim 18 of the '117 Patent are not asserted by Taction in this action. (*See* ECF No. 234-9 ("Ex. I") at 481.) But that they are unasserted claims only matters if § 287(a) can be applied on a claim-by-claim basis as opposed to a patent-by-patent basis. As acknowledged by both Parties, the Federal Circuit has explained that whether § 287(a) can be applied on a claim-by-claim basis versus a patent-by-patent basis is "a novel legal issue not squarely

14

addressed by . . . past decisions,"[3] *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
853 F.3d 1370, 1384 (Fed. Cir. 2017), and the Federal Circuit declined to address that issue
in *Rembrandt*. *See id.* at 1384–85. The Court therefore allowed the Parties to file
supplemental briefing on the issue following oral argument. (*See* ECF No. 296.) In their
Supplemental Briefs, the Parties cite to competing district court decisions on the issue.
(*Compare* Pl.'s Supp. Br. at 1–2 (citing *ADC Telecomms., Inc. v. Siecor Corp.*, 954 F.
Supp. 820, 832 (D. Del. 1997); *Toro Co. v. McCulloch Corp.*, 898 F. Supp. 679, 684 (D.
Minn. 1995)), *with* Def.'s Supp. Br. at 1–2 (citing *Huawei Techs. Co. v. T-Mobile US, Inc.*,
No. 2:16-CV-00052-JRG-RSP, 2017 WL 4183103, at *2–3 (E.D. Tex. Sept. 4), *report &
recomm. adopted*, 2017 WL 4251365 (E.D. Tex. Sept. 20, 2017); *Mass. Inst. of Tech. v.
Abacus Software, Inc.*, No. 501CV344, 2004 WL 5268123, at *18 (E.D. Tex. Aug. 4),
*report & recomm. adopted in part*, 2004 WL 5268125 (E.D. Tex. Sept. 29, 2004)).)

The Court finds the decisions cited by Apple more persuasive, particularly the
district court decision in *Huawei*. In *Huawei*, the district court explained:

> A claim-by-claim "interpretation is at odds with § 287(a)'s text and
> purpose. Section 287 does not include the word "claim." Likewise, the phrase
> "patented article" does not necessarily imply an article covered by a particular
> claim. . . . Neither the term "patented" nor the term "article" [in § 287]
> necessarily implies that the marking statute is limited solely to the device or
> apparatus claim that the patentee is asserting in the "infringement action."
>
> The purpose of the marking requirement is to provide an incentive for
> patentees to inform a potential infringer that someone has a right to exclude
> him from making, using, offering to sell, or selling the article he may be
> contemplating—in other words, to preclude the patentee from taking
> advantage of the deception that may arise from unmarked articles. As a result,
> a logical interpretation of the statute is that a patentee must mark any product
> covered by any claim of the asserted *patent*.

---

[3] For this reason, the Court does not find persuasive Taction's attempt to rely on the Federal Circuit's
decision in *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1317 (Fed.
Cir. 2009). (*See* Pl.'s Supp. Br. at 3.) In its 2017 decision in *Rembrandt*, the Federal Circuit expressly
explained that this issue has not been "squarely addressed by . . . past decisions," *see* 853 F.3d at 1384,
which necessarily would include the 2009 decision in *Crown Packaging*.

*Huawei*, 2017 WL 4183103, at *2–3 (emphasis in original) (citation omitted).  The Court therefore rejects Taction's assertion that § 287(a) can be applied on a claim-by-claim basis.[4]  Accordingly, in light of dependent claim 21 of the '885 Patent and dependent claim 18 of the '117 Patent, the Corsair HS60 is a "patented article" under § 287(a) for the purposes of the '885 Patent and the '117 Patent, regardless of whether those specific claims are asserted in this action.

Further, even if the Court were to assume that only the Transporter is the patented article, Taction's marking of the Transporter itself is insufficient as a matter of law to comply with § 287(a).  Taction is correct that the plain language of § 287(a) permits a patentee to mark a "patented article" by "fixing" a specific mark "thereon."  35 U.S.C. § 287(a).  But what Taction fails to appreciate is that the plain language of § 287(a) also expressly requires that the mark "give notice to the public."  *Id.*  Apple has presented the Court with evidence, including testimony from Taction's own CEO, demonstrating that the Taction Transporter is an internal component inside the Corsair HS60 headset and the headset has to be destructively dissembled in order to view the relevant markings.  (*See* ECF No. 273-9 ("Ex. 8"); ECF No. 283-4 ("Ex. 7") at 537.)  Taction does not dispute this evidence.  (*See generally* Reply.)  Because the marking at issue is on an internal component of the relevant product that is not visible during the normal use of the product, the markings on the Taction Transporter do not "give notice to the public" as required by the plain language of § 287(a).  *See Zadro Prod., Inc. v. Feit Elec. Co.*, 514 F. Supp. 3d 1209, 1216 (C.D. Cal. 2021) ("[M]arks on products that are immediately installed such that people do not routinely physically interact with them are ineffectual because people will spend very

---

[4] Further, even if § 287(a) could be applied on a claim-by-claim basis in these circumstances, Taction has failed adequately to explain how the Taction Transporter by itself satisfies all the elements of the asserted claims in this action.  For example, independent claim 1 of the '885 Patent claims "[a]n apparatus for imparting motion to the skin of a user," '885 Patent col. 14 l. 48, and asserted independent claim 1 of the '117 Patent claims an apparatus "wherein vibration of the apparatus imparts vibrations to a user's skin."  '117 Patent col. 14 ll. 58–59.  Taction fails adequately to explain how the Transporter by itself is able to impart motion/vibration to the skin of a user.

little time looking at the product itself." (citing *Glob. Traffic Techs. LLC v. Morgan*, 620 F. App'x 895, 905 (Fed. Cir. 2015))); *see also Arctic Cat I*, 876 F.3d at 1366 (explaining that one of the purposes of the patent marking statute is "encouraging patentees to give public notice that the article is patented").[5]  As such, Taction's markings on the Transporter are insufficient as a matter of law to demonstrate compliance with § 287(a).

Taction also asserts that it complied with the patent marking statute because it marked the packaging for the Corsair HS60 headsets.  (*See* Reply at 3.)  The issue with this contention is that "§ 287(a) requires that a product itself be marked unless 'from the character of the article, this can[]not be done.'"  *Zadro*, 514 F. Supp. 3d at 1214 (quoting 35 U.S.C. § 287(a)); *see Glob. Traffic*, 620 F. App'x at 905.  Apple has provided the Court with evidence showing the physical characteristics (size, shape, and design) of the Corsair HS60 headset, (*see* Opp'n at 8–9; Ex. 8), and the Court was able to examine the product itself at the hearing.  This evidence shows that the Corsair HS60 headset has certain information printed on and affixed to it, including a Taction sticker.  (*See id.*)  Indeed, the placement of the Taction sticker on the Corsair HS60 headset was required under the express terms of the licensing agreements between Taction and Corsair, (*see* Ex. 3 at 33 ("Corsair will place a removable sticker on each HS-60 Haptic headset")), and Taction and Corsair expressly agreed to mark the packaging of the Corsair HS60 as opposed to the headset itself.[6]  (*Id.* ("Corsair will include on each HS-60 Package a notice that the HS-60 Haptic is protected by Taction patents"); *see also id.* at 34 (displaying image of "HS-60 Package").)  Apple also notes that the headset is a consumer electronic device that can be

---

[5] Indeed, Taction does not cite to a single case holding that marking an internal component of a product that is not visible in the normal use of the product can constitute compliance with § 287(a).

[6] Although Taction asserted at oral argument that the contractual provision requiring that the packaging be marked as opposed to the headset was due to negotiations between Taction and Corsair on that issue, Taction conceded that there is no actual evidence in the record to support that assertion.  *See Anderson*, 477 U.S. at 257 (explaining that a "plaintiff must present affirmative evidence" at the summary judgment stage).

used by a consumer long after the packaging has been discarded.  (*See* Opp'n at 8 (citing *Zadro*, 514 F. Supp. 3d at 1216).)  Taction does not dispute any of these facts.  (*See generally* Reply.)  In fact, Taction conceded at oral argument that it is feasible to mark the headset.

Several courts have held that if the relevant product contains other non-patent markings or printing on it, patent markings on the product's packaging are "insufficient under § 287 as a matter of law."  *See Black & Decker Corp. v. Positec USA Inc.*, No. 11-CV-5426, 2015 WL 1543262, at *24 (N.D. Ill. Mar. 31, 2015) ("[T]he undisputed presence of non-patent markings on the LE750 renders the patent-marking on the packaging insufficient under § 287 as a matter of law."); *Belden Techs. Inc. v. Super. Essex Commc'ns LP*, 733 F. Supp. 2d 517, 534 (D. Del. 2010) ("If . . . 'the patented article has markings or printing on it, other than the appropriate patent marking, then the alternate form of patent marking on the package is not sufficient compliance with the [marking] statute.'" (quoting *Rutherford v. Trim-Tex, Inc.*, 803 F. Supp. 158, 163 (N.D. Ill. 1992)); *see also, e.g.*, *Kadant Johnson, Inc. v. D'Amico*, No. CIV.A. 10-2869, 2012 WL 38319, at *5–6 (E.D. La. Jan. 9, 2012); *Creative Pioneer Prod. Corp. v. K Mart Corp.*, No. CIV. A. H-83-4137, 1987 WL 54482, at *6 (S.D. Tex. July 10, 1987).[7]  In light of this case law and the undisputed facts in the record regarding the "character" of the HS60 headset, the patent markings on the headset's packaging are insufficient as matter of law to comply with § 287(a).  *See id.*

/ / /

---

[7] One of these district courts explained the rationale behind these holdings as follows:

> The rationale behind stricter conformity to the marking provisions of § 287 when the article contains other markings is bound-up with the purpose of the statute to give notice to the public.  Where the public finds markings or writings upon the article itself, the public should be able to rely upon the fact that a patent, if it exists, should also be noted with that writing.  The notice required by the statute is most effective when it can be easily seen by the users of the article.

*Rutherford*, 803 F. Supp. at 163–64.

Taction argues that marking the Corsair headset itself "could mislead the public into thinking each claim covered the entire headset." (Reply at 3 (citing *Glob. Traffic*, 620 F. App'x at 905).) The Court rejects this argument. Again, the Taction Transporter by itself is not the only patented article here because the Corsair HS60 headset is also a patented article under at least dependent claim 21 of the '885 Patent and dependent claim 18 of the '117 Patent. Further, § 287(a) does not require the marking of specific claims, so there would be nothing misleading about marking the HS60 headset as being a patented article covered by the '885 and '117 Patents.

Taction also asserts that the Federal Circuit has declined to adopt bright line rules regarding whether marking packaging amounts to substantial compliance with § 287(a). (*See* Reply at 3 (citing *Glob. Traffic*, 620 F. App'x at 905).) Taction's reliance on the Federal Circuit's decision in *Global Traffic*, however, is misplaced. In *Global Traffic*, the appellant argued that the Federal Circuit should "hold as a matter of law that, if there is physical space on any component of a patented system, the patentee must mark that component to comply with the marking statute." *See* 620 F. App'x at 905. The Federal Circuit declined to adopt that bright line rule, explaining that "the marking statute requires an analysis of the 'character of the article,'" and although the physical size of an article is one factor in assessing the character of the article, it "is not the only thing that defines the 'character of the article.'" *See id.* (quoting 35 U.S.C. § 287(a)). The Court's analysis above does not attempt to apply a bright line rule based on a single characteristic of the product at issue. Rather, it is based on the size, shape, and design of the product; the fact that it is a consumer electronic device and the packaging may be discarded; the fact that the headset has other information printed on or affixed to it, including Taction-specific information that was required to be placed on it pursuant to the terms of the parties' agreements; the fact that the parties expressly agreed to mark the packaging as opposed to the product itself; and Taction's concession that it is feasible to mark the headset. And those are all undisputed facts. As such, the Federal Circuit's decision in *Global Traffic* is easily distinguishable.

Taction contends that the combination of the multiple forms of marking at issue here demonstrates that it fully complied with § 287(a). (*See* Reply at 4.) Because Taction does not cite to any authority holding that two forms of marking that are each insufficient as a matter of law to comply with § 287(a) can somehow become sufficient by simply combining them, the Court rejects this argument.

Finally, Taction asserts that whether its markings complied with § 287(a) is a question of fact appropriate for submission to the jury. (*See* Reply at 6 (citing *Glob. Traffic*, 620 F. App'x at 906).) Although it is true that "[c]ompliance with § 287 is a question of fact," *see Arctic Cat I*, 876 F.3d at 1366, the Court's analysis does not rely on any disputed material facts that need to be resolved by a jury. It is undisputed that Corsair did not externally mark the HS60 headset even though it is feasible to do so as demonstrated by the other Taction-related markings on it that were placed there pursuant to the terms of the parties' agreements. It is also undisputed that although the Transporter inside the Corsair HS60 headset has markings, the Transporter itself is an internal component of the headset that is not visible during the normal use of the headset. And it is undisputed that Taction and Corsair agreed to mark the packaging of the HS60 as opposed to the headset itself. As such, Taction's compliance with § 287(a)—or lack thereof—can appropriately be resolved on summary judgment.[8] *See Celotex*, 477 U.S. at 322; *see, e.g.*, *Kadant Johnson*, 2012 WL 38319, at *6 (finding it appropriate to resolve the issue of compliance with the marking statute at summary judgment despite the issue being a question of fact). In sum, Taction's proposed marking amendment would not survive a motion for summary judgment.

Because the proposed marking amendment would not survive a motion for summary judgment,[9] the proposed amendment is futile. *See Roth*, 942 F.2d at 629; *Gabrielson*, 785

---

[8] Indeed, in the case cited by Taction, the Federal Circuit merely held that the "factual inquiry regarding the character of the patented article . . . may be submitted to a jury;" not that it always must be resolved by a jury. *Global Traffic*, 620 F. App'x at 906.

[9] In its Opposition, Apple also argues that Taction's proposed amendment would not survive summary judgment because Taction has failed to show that the alleged markings were done in a "consistent and

F.2d at 766. Accordingly, the Court also **DENIES** Taction's Motion on the second and independent basis of futility. *See Kroessler*, 977 F.3d at 815 ("'Futility of amendment can, by itself, justify the denial of a motion for leave to amend.'").

**CONCLUSION**

For the reasons above, the Court **DENIES** Taction's Motion for Leave to File Amended Complaint (ECF No. 231).

**IT IS SO ORDERED.**

Dated: June 15, 2023

_____
Honorable Todd W. Robinson
United States District Judge

---

continuous" manner. (*See* Opp'n at 13.) Because the Court concludes that Taction's proposed amendment would not survive summary judgment for the reasons stated above, the Court declines to address this additional alternative argument by Apple.

Further, at the hearing, Taction contended that if the Court deferred consideration of the issues raised in Apple's Opposition until the hearing on Apple's pending Motion for Summary Judgment, (*see* ECF No. 299), Taction would then be able to present the Court with additional evidence related to its "consistent and continuous" marking of the products at issue. Because the Court's futility analysis above does not rely on whether the products were marked in a "consistent and continuous" manner, Taction's proposed additional evidence would have no effect on the Court's futility analysis.