UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACTION TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Case No.: 21-cv-00812-TWR-JLB <br><br> **PUBLIC VERSION** <br><br> **[REDACTED] ORDER GRANTING NON-PARTIES KENOSHA INVESTMENTS LP AND GRONOSTAJ INVESTMENTS LLC'S MOTION TO QUASH DEFENDANT'S SUBPOENAS** <br><br> **[ECF No. 149]** |

Before the Court is Kenosha Investments LP ("Kenosha") and Gronostaj Investments LLC's ("Gronostaj[1]") (collectively, "the Funders") Motion to Quash Defendant Apple Inc.'s ("Defendant") Subpoenas. (ECF No. 149.) For the reasons stated below, the Court **GRANTS** the Funders' Motion to Quash and **DENIES** their request for Defendant to pay their costs and fees.

---

[1] Gronostaj Investments LLC was formerly known as Roosevelt Investments Group, LLC. (ECF No. 149 at 4, n.1.) Accordingly, some prior filings and discovery refer to it as such.

## I. BACKGROUND

Plaintiff Taction Technology, Inc. ("Plaintiff") filed the underlying action against Defendant on April 26, 2021, claiming that it is the owner of two utility patents (collectively, the "Asserted Patents") issued by the U.S. Patent and Trademark Office upon which Defendant allegedly infringed with certain models of Defendant's iPhones and Apple Watches. (ECF No. 1.) On June 17, 2021, Defendant filed an answer denying Plaintiff's infringement allegations, along with various affirmative defenses and counterclaims. (ECF No. 17.) Plaintiff filed an answer to Defendant's counterclaims on July 8, 2021. (ECF No. 24.)

The contested deposition subpoenas were issued on September 7, 2022. (ECF No. 149 at 7. *See* ECF Nos. 149-2; 149-3.) The Funders and Defendant discussed over telephone and e-mail the former's objections to the subpoenas and their request for the subpoenas to be withdrawn.[2] (ECF Nos. 149 at 7; 156-5.) On November 21, 2022, the Funders served their Responses and Objections to Defendant's Subpoena. (ECF Nos. 156-3; 156-4.)

That same day, the Funders filed the instant Motion to Quash Defendant's Subpoena. (ECF Nos. 149 (public); 153 (sealed).) On November 22, 2022, Plaintiff filed a Notice of Joinder to the Funders' Motion. (ECF No. 150.) Defendant filed an Opposition (ECF Nos. 156 (public); 160 (sealed)), to which the Funders replied (ECF Nos. 163 (public); 166 (sealed)).

On January 13, 2023, the Court held a Status Conference, in which it ordered the Funders to produce a privilege log and requested the Funders lodge with the Court a sample of representative documents from the privilege log. (*See* ECF No. 170.) On February 8,

---

[2] As part of those discussions, Defendant consented to extend the deadline for compliance with the subpoenas to November 21, 2022, in exchange for Gronostaj accepting delayed service of the subpoena on or around October 29, 2022. (ECF No. 156-5 at 3.)

2023, Kenosha and Gronostaj provided Defendant with their privilege log. (ECF No. 199 at 2; *see* Exhibit A to this Order, ("Funders' Priv. Log").) On February 10, 2023, the Court held a further Status Conference, after which it issued a supplemental briefing schedule limited to arguments based on new information not previously received. (ECF No. 183.)

On February 17, 2023, Defendant filed its Supplemental Brief. (ECF Nos. 199 (public); 252 (sealed).) Both Plaintiff and the Funders filed Responses to Defendant's Supplemental Brief on February 24, 2023. (*See* ECF No. 260 and ECF Nos. 212 (public), 254 (sealed), respectively.)

On April 13, 2023, the Court ordered the Funders to file a supplement identifying their relationship to Burford Capital LLC (ECF No. 263), which the Funders filed on April 19, 2023 (ECF Nos. 268 (public); 280 (sealed)).

## II.   LEGAL STANDARD

Federal Rules of Civil Procedure 26 and 45 govern discovery from non-parties by subpoena. *See* Fed. R. Civ. P. 26(b) (scope and limits of discovery), 45(c)(1) (deposition testimony). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). However, a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden" must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).

"[A] deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule 26(c)." *HI.Q, Inc. v. ZeetoGroup, LLC*, No. 22-cv-1440-LL-MDD, 2022 WL 17345784, at *5 (S.D. Cal. Nov. 29, 2022); *see also BNSF Ry. Co. v. Alere, Inc.*, No. 18-cv-291-BEN-WVG, 2018 WL 2267144, at *7 (S.D. Cal. May 17, 2018) ("[T]he only relief available to a nonparty when served with a subpoena to testify at a deposition is to file a motion to quash or modify the subpoena[.]").

///

///

## III. DISCUSSION

The Funders seek to quash Defendant's subpoenas on two grounds: (1) all information Defendant seeks is non-discoverable work product for which Defendant cannot show the requisite substantial need and undue hardship to overcome,[3] and (2) any information not protected as work product is duplicative, cumulative, irrelevant, or unduly burdensome. (ECF No. 149 at 9–13.)

### A.  Applicability of Work Product Doctrine

#### *1.  Arguments*

The Funders make two work-product arguments in the instant Motion.  First, the Funders assert Defendant seeks Plaintiff's work product that the Court determined was non-discoverable in its order addressing Defendant's prior motion to compel.[4]  (ECF No.

---

[3]  Although Defendant dedicates almost its entire supplemental brief to arguing why attorney-client privilege does not apply or was waived, neither the Funders nor Plaintiff move to quash the subpoenas on the basis of attorney-client privilege. (*Compare* ECF Nos. 149, 156, 212, 260 *with* ECF Nos. 156, 199.)  Accordingly, the Court shall not address Defendant's arguments against the applicability of attorney-client privilege.

[4]  On September 27, 2021, Defendant filed a motion to compel Plaintiff to respond to specific Requests for Production ("RFPs") and Interrogatory No. 6 within its First Set of Discovery Requests (ECF No. 44), which Plaintiff opposed (ECF No. 52). On January 21, 2022, the Court ordered Plaintiff to produce a privilege log to Defendant for all responsive documents withheld on the basis of privilege and to submit "any litigation funding agreement(s) for this litigation and any documents responsive to [the RFPs at issue] that address or reflect the valuation of the Asserted Patents, as well as any privilege log provided to Defendant regarding the discovery at issue" for an *in camera* review. (ECF No. 70 at 2.)

After holding a motion hearing (ECF No. 84), the Court narrowed the scope of the contested RFPs and found them to be relevant as narrowed (ECF No. 96 at 8–9). However, the Court then determined the documents, which included "litigation funding agreements, related supplemental documents and correspondence, and various memoranda and spreadsheets regarding valuations of this case and the Asserted Patents," were indeed work product. (*Id.* at 12–13.)  The Court similarly narrowed Interrogatory No. 6. (*Id.* at 9–10.) However, the Court ruled that the *existence* of litigation funders, litigation agreements, and documents related to patent valuation was not protected information under the work-

149 at 9.) In its Opposition, Defendant concedes that, to the extent it seeks information already found by the Court to be Plaintiff's work-product, "the issue would be moot."[5] (ECF No. 156 at 2.)

Second, as to all the documents in its privilege log, the Funders assert that Defendant seeks "core opinion work product" the Funders created or exchanged with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in anticipation of the underlying litigation pursuant to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF Nos. 149 at 10–11; 153 at 10–11; 163 at 5–7; 166 at 5–7.) Initially, Defendant argued the Funders failed to meet their burden to prove the withheld documents constitute work product because the Funders did not produce a privilege log. (ECF No. 156 at 7–8.) Upon receiving the Funders' privilege log, Defendant failed to make any arguments regarding work-product privilege, instead solely arguing against the applicability of attorney-client privilege—an issue not relied upon by the Funders and therefore not before the Court. (ECF No. 199 at 3–6.) However, Defendant makes one general argument that certain

---

product doctrine. (*Id.* at 13.) Accordingly, the Court granted Defendant's Motion to Compel with regard to the modified Interrogatory. (*Id.*)

On June 16, 2022, Plaintiff supplemented its response to Interrogatory No. 6 in compliance with the Court's Order, which identified Kenosha and Gronostaj. (ECF No. 156 at 3–4.)

[5] Despite this, in its Supplemental Brief, Defendant argues "[m]any of the privilege claims have . . . been waived because the documents were disclosed to [Plaintiff]," citing documents on the Funders' privilege log that were either a 97% match or an identical match to documents that appeared on Plaintiff's privilege logs. (ECF No. 199 at 3–4.) Not only did Defendant fail to raise such arguments in its Opposition, but it also expressly waived these arguments by conceding that the issue of whether Defendant could obtain documents previously deemed undiscoverable by the Court was "moot." (*See* ECF No. 156 at 2 ("To the extent the information is the same and thus covered by the Court's prior order, then the issue would be moot.") and at 8 ("To be clear, [Defendant] does not intend to move to compel the production of the litigation funding documents that [Plaintiff] has already submitted to the Court for *in-camera* review.").)

entries are not subject to any privilege because the entries lack an identified author or recipient. (*Id.* at 6.)

### 2. Legal Standard

"The work-product doctrine is a 'qualified' privilege that protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for [a] party or by or for that . . . party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotation marks and citation omitted); Fed. R. Civ. P. 26(b)(3)(A). "A party asserting the work product doctrine bears the burden of demonstrating that the protection applies." *Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1102 (N.D. Cal. 2016) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)); *see also* Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

First, "[w]hen a document was not prepared exclusively for litigation, it should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Am. C.L. Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 485 (9th Cir. 2018) (internal punctuation and citation omitted). "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the 'document was created because of anticipated litigation, and would not have been created in

6

21-cv-00812-TWR-JLB

substantially similar form but for the prospect of litigation.'" *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Env't Mgmt.* ("*Torf*"), 357 F.3d 900, 908 (9th Cir. 2004)); *see also Torf*, 357 F.3d at 910 (holding documents are entitled to work product protections where "their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole").

Second, "the rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989).

### 3. Documents Previously Addressed by the Court

As a threshold matter, the Funders' privilege log includes sixteen entries of documents that were on Plaintiff's privilege log previously submitted to the Court for review[6], twenty-four entries of documents that are an identical match to documents the Court determined were Plaintiff's protected work product after prior *in camera* review[7], and twenty-nine entries of documents that are a 97% match to documents the Court determined were Plaintiff's protected work product after *in camera* review[8]. (*See* ECF No. 260 at 4–5.) In resolving Defendant's prior motion to compel, the Court determined that these documents qualified as Plaintiff's work product. (*See* ECF No. 96 at 12–13.) Defendant never moved for reconsideration of the Court's prior ruling. In fact, in its Opposition to the instant Motion, Defendant expressly disclaimed any intent to seek such documents from the Funders. The Court finds no cause to reconsider its prior ruling.

### 4. All Other Documents

Although none of the documents listed on the privilege log were created by the Funders (*see* ECF No. 199 at 2; *see generally* Funders' Priv. Log), the Funders'

---

[6] *See* Funders' Priv. Log, at entry nos. 2–6, 44–46, 59–63, 93, 98–99.
[7] *See* Funders' Priv. Log, at entry nos. 116, 199–201, 239–41, 244, 359, 363–66, 510–16, 568, 570, 572, 587.
[8] *See* Funders' Priv. Log, at entry nos. 109, 124, 194–95, 198, 238, 376, 381, 384, 390, 393, 397, 402, 409, 414, 459–60, 500–01, 569, 571, 574, 577, 579, 581, 584–86.

supplemental brief disclosed its corporate structure and contractual relationships in sufficient detail to demonstrate that the Funders have a direct connection to the documents for which they and Plaintiff, by way of joinder, are claiming work product privilege. (*See* ECF Nos. 268; 280.)  Defendant argues that the "Funders have no privileged relationship with any of [the] entities" identified on the privilege log.  (ECF No. 199 at 2.)  However, Defendant's argument misses the mark, as it addresses attorney-client privilege, not work product protections.

Due to the nature of the Funders' relationship to this case, the dates of the entries, and the description associated with the entries, the Funders have met their burden of demonstrating that the documents were created by or for Plaintiff or by or for Plaintiff's representatives in anticipation of litigation.  Accordingly, the documents constitute work product.

Further, Defendant's assertions that the Funders failed to meet their burden for entries lacking an author and recipient are unpersuasive because Defendant misstates the requirements for asserting privilege.  Under Rule 26(b)(5)(A), the party asserting the privilege must describe the nature of the document in such a way that the claim of privilege can be assessed. Fed. R. Civ. P. 26(b)(5)(A).  On the Funders' privilege log, there are sixty entries that lack an author and a recipient.[9]  However, all of them provide sufficient information from the date, subject, file name, and description to allow for an assessment of the claim of work-product privilege.  Additionally, twenty-seven of these entries were previously determined by the Court to be work product.[10]

///

///

---

[9]   *See* Funders' Priv. Log, at entry nos. 1, 26, 32, 33, 98, 99, 144, 146, 151–52, 163, 172, 182, 184, 186, 188, 190–91, 194–95, 198–201, 238, 244, 287, 291–92, 309, 324, 327, 329, 331, 343, 359, 363–66, 569–588.

[10]  *See* Funders' Priv. Log, at entry nos. 98–99, 194–95, 198–201, 238, 244, 359, 363–66, 569–572, 574, 577, 579, 581, 584–87.

6.   Conclusion

The Funders have met their preliminary burden to establish that all of the documents subject to Defendant's subpoenas constitute work product. The Court will proceed to address the issues of waiver and substantial need.

B.   **Waiver of Work Product Protections**

In the context of attorney-client privilege analysis, which is not applicable here, Defendant argues that the Funders waived any claims of privilege by disclosing documents to third-parties. (ECF No. 199 at 5–6.) Defendant conducts no such analysis in the context of work-product privilege. Had Defendant done so, it would have been unavailing.

"[D]isclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or has substantially increased the opportunities for potential adversaries to obtain the information." *Sanmina Corp.*, 968 F.3d at 1121 (internal quotation marks omitted); *see also Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, No. 15-cv-1735-H-RBB, 2016 WL 7665898, at *6 (S.D. Cal. Sept. 20, 2016) (holding disclosure of documents to third-party litigation funders does not waive work product protections) (collecting cases).

Here, work product documents were disclosed between the Funders and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Due to the contractual and corporate relationships between all of the entities and individuals on the Funders' log (*see* ECF No. 280 at 2), no disclosure was made to an adversary or otherwise substantially increased the risk for a potential adversary to access the information.

Accordingly, neither the Funders nor Plaintiff have waived work product protections over any documents appearing on the Funders' privilege log.

C.   **Substantial Need and Undue Hardship Exception**

1.   *Arguments*

Defendant argues that if the documents are considered work product, it has a substantial need for the documents that is sufficient to overcome the qualified privilege. (ECF No. 156 at 6–7.) Specifically, Defendant argues the "valuations of the asserted

patents by [the Funders]" among other analyses and decisions are "highly relevant to damages" and only available from the Funders. (*Id.*) The Funders assert that Defendant has failed to establish the "substantial need and undue hardship" required to overcome work-product protection because Defendant can seek and has sought discovery relevant to valuation from Plaintiff. (ECF Nos. 149 at 11–12; 163 at 5–8.)

### 2. *Legal Standard*

Despite the applicability of work-product privilege, documents may still be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[11] Fed. R. Civ. P. 26(b)(3)(A). "Substantial need for material otherwise protected by the work product doctrine is demonstrated by establishing that the facts contained in the requested documents are essential elements of the requesting party's prima facie case." *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1023 (D. Ariz. 2020) (quoting 6 Moore's Federal Practice - Civil § 26.70 (2019)); *see also* Fed. R. Civ. P. 26(b) advisory committee's note to 1970 amendment (explaining the "special showing" requirement to overcome work product protection).

///
///

---

[11] Rule 26(b)(3) distinguishes between ordinary work product and opinion work product. *Compare* Fed. R. Civ. P. 26(b)(3)(A) *with* Fed. R. Civ. P. 26(b)(3)(B). Ordinary work product is discoverable with a showing of substantial need and undue hardship. Fed. R. Civ. P. 26(b)(3)(A). However, "opinion work product is discoverable only 'when mental impressions are at issue in a case and the need for the material is compelling.'" *Sanmina Corp.*, 968 F.3d at 1125 (quoting *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)); *see also* Fed. R. Civ. P. 26(b)(3)(B). The Funders assert Defendant seeks opinion work product. (ECF No. 163 at 6.) Because, as is addressed below, Defendant fails to meet the lower standard for obtaining ordinary work product, the Court need not parse between ordinary and opinion work product.

### 3. Analysis

Defendant conflates its need for valuation evidence with its asserted need for evidence of valuation *from the Funders*. Although Defendant is entitled to valuation information, it is not entitled to such information specifically from the Funders. Further, Defendant makes no argument that it cannot obtain or has not already obtained the substantial equivalent by other means—such as obtaining valuation documentation from Plaintiff. Rather, Defendant only asserts that Plaintiff "has produced no documents in this case that reflect valuations of the asserted patents *by Kenosha or Gronostaj* . . . ." (ECF No. 156 at 6 (emphasis added).)

### 4. Conclusion

Thus, although valuation materials from the Funders may be relevant, Defendant has failed to set forth sufficient factual or legal analysis to meet the specific showing required to overcome the qualified work-product privilege attached to all documents on the Funders' privilege log.

### D. Cumulative, Duplicative and Unduly Burdensome Testimony

#### 1. Arguments

The Funders also seek to quash the subpoenas with respect to the obligation to produce witnesses for deposition. With respect to anticipated witnesses' testimony, the Funders argue that anything not protected by the work product doctrine would be cumulative, duplicative, and unduly burdensome. (ECF No. 149 at 12–13.) The Funders represent that all of the responsive materials are work product except for a handful of public patent filings. (ECF No. 212 at 2.) They argue, therefore, that due to the work-product protections and previous discovery provided by Plaintiff, depositions of the Funders "would yield little more" than what Defendant already has received from Plaintiff. (ECF No. 149 at 12.) In opposition, Defendant argues that the Funders possess "unique information" about the "valuations of the asserted patents by Kenosha or Gronostaj, their respective decisions to ███████████ their respective analyses of the

investment, their ██████████████████████████████████
██████████████████ (ECF Nos. 156 at 6, 9; 160 at 6, 9.)

### 2. Legal Standard

Under Rule 45, a subpoena that subjects a person to "undue burden" must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A). "In determining whether a subpoena poses an undue burden, courts 'weigh the burden to the subpoenaed party against the value of the information to the serving party[,]' . . . consider[ing] 'relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014) (internal citation omitted) (quoting *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).

### 3. Analysis

In the Court's analysis, the topics on which Defendant seeks to depose the Funders fall into three broad categories. First, Defendant seeks testimony from the Funders that it should and likely already has sought from Plaintiff. (*See, e.g.*, ECF Nos. 149-2 at 7; 149-3 at 7 ("3. The conception, proof of concept, design, development, functions, and operation of the Taction Products, including without limitation the involvement and contributions of Silmon James Biggs. 4. The conception, design, development, reduction to practice, or diligence in the reduction to practice of any alleged invention(s) set forth in the Taction Products, Patents-in-Suit or Related Patents.").) In fact, to the extent the Funders have any documents or knowledge on the topics, all such information would have come from ██████ As such, the testimony Defendant seeks from the non-party Funders is duplicative of that which is available from Plaintiff.

Second, although underlying facts are not protected by the work product doctrine, Defendant seeks testimony that would require divulging mental impressions or the strategy underlying work product, which itself would be privileged. (*See, e.g.*, ECF Nos. 149-2 at 7; 149-3 at 7 ("6. Financial analyses, projections, estimates or valuations of Taction, the

Taction Products, the Patents-in-Suit, any Related Patents, and/or any patent infringement lawsuit involving Apple, Inc. and/or the Lawsuit.").) Any testimony the Funders could provide as to the unprotected facts would hold limited value, as the Funders' only direct connection to the instant case is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and was in anticipation of litigation.

Third, Defendant seeks information regarding the Funders' relationship to this case, Plaintiff and its products, Plaintiff's counsel, and the Patents-in-Suit. However, the Court has already determined that Defendant is not entitled to documents relating to the relationship between Plaintiff and the Funders that do not also contain valuation evidence because such materials are irrelevant. (*See* ECF No. 96 at 8–9.) Despite its irrelevance, Defendant has already received some such information from the Funders through the instant Motion and the Funders' supplemental brief. (*Compare* ECF Nos. 149-2 at 6–8; 149-3 at 6–8, *with* ECF Nos. 153 at 4, 11; 166 at 2–7; 280 at 2.) Because Defendant already has or is not entitled to the information it seeks, its purported need for deposition testimony is greatly diminished.

        4.    Conclusion

Considering the limited value of the new information to which the Funders could testify and the burden compliance would impose upon the Funders as non-parties to the instant case, the Court finds Defendant's subpoenas unduly burdensome.

    **E.**    **The Funders' Request for Costs and Fees**

The Funders argue Defendant should be required to pay the costs and attorneys' fees the Funders incurred by defending against these "unnecessary" subpoenas.[12] (ECF Nos. 163 at 9 (citing *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 89 (N.D. Cal. 1995) ("*High Tech*"); 212 at 3.) However, the Funders do not identify

---

[12] The Funders also argue Defendant should be required to pay for the costs and attorneys' fees associated with production of any privilege log. (ECF No. 163 at 9.) The Court denied this request at the January 13, 2023, conference. (*See* ECF No. 170.)

under what authority they bring their request, do not provide any legal analysis, and do not substantiate their request with estimates or calculations for the Court to consider. (*See* ECF Nos. 163 at 9; 212 at 3.)

"Rule 45(d) provides two related avenues by which a person subject to a subpoena may be protected from the costs of compliance: sanctions under Rule 45(d)(1) and cost-shifting under Rule 45(d)(2)(B)(ii)." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). Under Rule 45(d)(1), "[a] court may . . . impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.* at 1185. In contrast, "Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Id.* at 1184.

### 1.   *Rule 45(d)(1) Sanctions*

Beyond conclusory statements that the subpoenas were "unnecessary," a "wild goose chase," and an "abuse of process," the Funders fail to demonstrate that Defendant acted in bad faith, for an improper purpose, or otherwise in a manner inconsistent with the law. (ECF Nos. 163 at 9; 212 at 3.) Further, the Court finds the Funders' citation to *High Tech* unpersuasive as the facts are readily distinguishable from the instant case. In *High Tech*, the court ordered sanctions because the defendant unreasonably refused a non-party's request to either narrow the scope of a subpoena duces tecum or to allow compliance with the subpoena by delivering all responsive documents to the plaintiff's litigation counsel for review and production. *High Tech*, 161 F.R.D. at 87–88. Here, the Funders do not allege they made any such requests to narrow the subpoenas or otherwise facilitate their compliance. Rather, prior to filing the instant Motion, the Funders simply refused production and requested the subpoenas be withdrawn. (ECF No. 153 at 7.) To the extent the Funders rely on *High Tech*'s characterization of the Rule 45(d)(1) sanctions analysis, the Funders' reliance is similarly unpersuasive, as *High Tech* is an unpublished district court case issued nearly two decades before the Ninth Circuit's analysis of Rule 45(d)(1) sanctions in *Legal Voice*.

### 2. *Rule 45(d)(2) Cost Shifting*

Although the Court is required to protect non-parties from significant costs incurred by compliance with a subpoena, cost-shifting is not applicable under the circumstances. First, because the Court is granting the instant Motion to Quash, the Funders are not compelled to comply with the subpoenas. *See Stormans Inc. v. Selecky*, No. C07-5374 RBL, 2015 WL 224914, at *5 (W.D. Wash. Jan. 15, 2015) ("It is a tenuous proposition, at best, that attorneys' fees incurred resisting a subpoena are expenses resulting from compliance."); *see also Amazing Ins., Inc. v. DiManno*, No. 219CV01349TLNCKD, 2020 WL 5440050, at *7 (E.D. Cal. Sept. 10, 2020) ("Because the court finds that the nonparties are not required to comply with [the document request], the court need not decide whether the cost of compliance should be shifted to defendants.").

Second, even if the Funders had a legitimate basis to request recovery of the costs of pursuing this Motion to Quash, the Funders have failed to make the requisite showing for cost-shifting. Despite multiple rounds of briefing, conferences, and a hearing, the Funders have made no factual showing in support of their request. *See Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281–82 (N.D. Cal. 2017) ("[T]he nonparty seeking cost shifting must demonstrate that its costs are reasonable and resulted from compliance with the subpoena."). As such, the Court has no way of knowing whether the costs incurred were reasonable and significant. *See Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 101 (D. Ariz. 2022) (denying a non-party's similarly cursory argument for cost-shifting due its failure to "itemize[] (or even mention[]) its expenses").

In conclusion, the Funders' request for Defendant to pay their costs and fees is **DENIED**.

///
///
///
///
///

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** the Funders' Motion to Quash and **DENIES** their request for Defendant to pay their costs and fees.

**IT IS SO ORDERED.**

Dated: July 17, 2023

Hon. Jill L. Burkhardt
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## CASE PARTICIPANTS ONLY