UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACTION TECHNOLOGY, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>   Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: 21-cv-00812-TWR-JLB<br><br>**PUBLIC**<br><br>**[REDACTED] ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL**<br><br>**[ECF No. 209]** |

Before the Court is a Motion to Compel filed by Defendant Apple, Inc. ("Defendant"), seeking to compel discovery from Plaintiff Taction Technology, Inc. ("Plaintiff"). (ECF No. 209.) Specifically, Defendant seeks ten documents Plaintiff clawed back, one document Plaintiff withheld, and deposition testimony, all of which relate to pre-suit analysis of Defendant's Taptic Engine conducted by Plaintiff's principals, Dr. Silmon James Biggs and Mr. John Steinberg. (*See* ECF Nos. 209; 253; 255.) Plaintiff filed an opposition (ECF No. 223), to which Defendant replied (ECF No. 227). For the reasons stated below, Defendant's Motion to Compel (ECF No. 209) is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

Plaintiff filed the underlying action against Defendant on April 26, 2021, claiming that it is the owner of two utility patents (collectively, the "Asserted Patents") issued by the U.S. Patent and Trademark Office upon which Defendant allegedly infringed with its "Taptic Engine" haptic actuator used in certain models of Defendant's iPhones and Apple Watches. (ECF No. 1.) On June 17, 2021, Defendant filed an answer denying Plaintiff's infringement allegations, along with various affirmative defenses and counterclaims. (ECF No. 17.) Plaintiff filed an answer to Defendant's counterclaims on July 8, 2021. (ECF No. 24.)

On January 4 and 31, 2023, Plaintiff clawed back nine of the documents at issue on the basis of attorney-client and work-product privileges. (ECF No. 223 at 2, 6–11.)

On February 9 and 10, 2023, Defendant deposed Dr. Biggs, the inventor of the Asserted Patents and Plaintiff's Chief Technology Officer. (*See* ECF Nos. 223 at 3; 227 at 2.) During the deposition, Dr. Biggs testified about "his initial analysis of [Defendant's] Taptic Engine" which occurred on July 1, 2019.[1] (ECF No. 223 at 3, 9. *See generally* ECF Nos. 227-2; 227-3; 250-4; 253-1.) Dr. Biggs testified that this initial analysis was not at the behest of or in consultation with an attorney. (ECF 227-2 at 7, 9.) Further, Dr. Biggs testified that this analysis triggered his belief that Defendant was infringing on one of Plaintiff's patents—a belief that Dr. Biggs did not have prior to commencing his analysis. (ECF No. 227-2 at 5–6, 8.) During the second day of the deposition, the parties raised a dispute with the Court regarding Dr. Biggs' assertions of privilege. (*See* ECF Nos. 178; 223 at 3.)

---

[1] In the February 9, 2023, deposition, Dr. Biggs initially testified that his analysis had occurred in November 2019; however, Dr. Biggs subsequently amended his testimony after consulting with the withheld document. (*See* ECF No. 227-2 at 7, 9.) Plaintiff's opposition states that "Dr. Biggs' initial analysis [was] performed on July 1, 2019" (ECF No. 223 at 9), which is in accord with the unredacted version of the deposition testimony (*see, e.g.*, ECF No. 253-1 at 18).

The Court held a Status Conference on February 10, 2023, to facilitate informal resolution of the dispute. (*See* ECF No. 178.) Later that day, Defendant filed an *Ex Parte* Motion Regarding Discovery Dispute of Plaintiff's Clawed-Back Documents (ECF Nos. 182 (public); 250 (sealed)), to which Plaintiff filed a response (ECF Nos. 187 (public); 251 (sealed)). The Court construed Defendant's *ex parte* motion as a request for a discovery conference and briefing schedule, which the Court granted. (ECF No. 196.) On February 14, 2023, the Court held a further Discovery Conference regarding the claw-back documents, the withheld document Dr. Biggs consulted in preparation for the resumption of his deposition, and Dr. Biggs' related deposition testimony. (ECF No. 190.) After the Discovery Conference, the Court issued a briefing schedule for the dispute. (ECF No. 192.)

On February 21, 2023, Defendant filed the instant Motion to Compel Production and Provide Testimony ("Motion"), seeking production of nine documents Plaintiff clawed back and the one document Plaintiff withheld, all on the basis of attorney-client and work-product privileges. (ECF Nos. 209 (public); 253 (sealed).) On March 7, 2023, Plaintiff filed its opposition (ECF No. 223), and Defendant replied on March 14, 2023 (ECF No. 227). On April 10, 2023, the parties filed a Joint Motion to Amend Defendant's Motion to include an additional document that Plaintiff clawed back during the deposition of Mr. Steinberg (ECF No. 255), which the Court granted (ECF No. 264). On April 21, 2023, the Court held a Status Hearing on the record regarding Defendant's Motion. (ECF No. 274.) Having provided the parties with an opportunity to object at the hearing and with no objections made, the Court ordered Plaintiff to submit the documents at issue for *in camera* review. (ECF No. 276.) Plaintiff lodged ten of the eleven documents at issue with the Court on April 26, 2023.

On July 5, 2023, the Court held a Motion Hearing, addressing, *inter alia*, the date of Dr. Biggs' initial analysis and the withheld document that Plaintiff had previously failed to lodge with the Court. (ECF No. 336.) After the hearing, Plaintiff lodged the missing withheld document for *in camera* review.

## II. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 30, a party may depose any person, including a party or entity, by oral questions. Fed. R. Civ. P. 30(a)(1), (b)(6). "The notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition." Fed. R. Civ. P. 30(b)(2). The propounding party may move to compel a response if a party fails to produce documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021) (quoting *Bryant v. Ochoa*, No. 07-CV-00200-JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009)); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (noting those opposing discovery are "required to carry a heavy burden of showing why discovery [should be] denied").

## III. DISCUSSION

Generally, Defendant seeks to compel nine emails exchanged between Plaintiff's principals Dr. Biggs and Mr. Steinberg regarding their pre-suit analysis of Defendant's Taptic Engine, one set of draft slides Plaintiff presented in prospective client meetings with law firms, a withheld document Dr. Biggs consulted in preparation for the resumption of

his deposition, and related testimony from Dr. Biggs.  (ECF No. 209.  *See* ECF Nos. 223 at 11; 255 at 2.)  Plaintiff asserts Defendant's Motion should be denied because it is procedurally improper and seeks discovery protected both by attorney-client and work-product privileges.  (ECF No. 223.)  In reply, Defendant argues neither privilege applies or, alternatively, work-product privilege has been waived by Dr. Biggs' selective disclosures or overcome by Defendant's showing of substantial need and undue hardship. (ECF Nos. 209; 227.)

**A.    Defendant's Motion Is Procedurally Proper.**

As a threshold matter, Plaintiff challenges the propriety of Defendant's Motion on three grounds (*see* ECF No. 223 at 5–6), all of which Defendant opposes (ECF No. 227 at 6).

*1.    Defendant's Requested Relief*

First, Plaintiff argues Defendant "unilaterally replaced its request" for the withheld document with "a new, blanket request for another deposition of Dr. Biggs beyond the narrow scope" of the Court's briefing schedule.[2]  (ECF No. 223 at 5.)  In opposition, Defendant states that it made its intent to seek production of the withheld document and further related deposition testimony clear at Dr. Biggs' deposition and throughout the meet-and-confer process.  (ECF No. 227 at 6.)

The Court agrees with Defendant that the scope of this discovery dispute properly extends to the request for additional deposition testimony on questions that relate to the documents at issue that Dr. Biggs declined to answer based on privilege.  Further, Plaintiff was made aware of Defendant's intent to seek additional deposition testimony, both in the Discovery Conference on February 10, 2023, and during the parties' meet and confer on February 14, 2023 (ECF No. 223 at 3).

---

[2]    As addressed at the motion hearing, Plaintiff's representation that Defendant's request for additional deposition testimony was in place of—instead of in addition to—production of the withheld document, was based, at best, on a misunderstanding.

Accordingly, the Court finds Defendant has not improperly expanded the dispute to include further testimony from Dr. Biggs regarding any withheld or clawed-back documents the Court determines must be produced.

### 2. *Meet-and-Confer Requirements*

Second, Plaintiff asserts Defendant's Motion should be denied because during the parties' meet and confer regarding this discovery dispute, Defendant did not share all the arguments it ultimately raised in its Motion. (ECF No. 223 at 5.) In reply, Defendant represents that it met and conferred in good faith and nothing it could have said would have resolved the dispute at that stage; however, "[n]othing requires a party to identify all arguments" during a meet and confer. (ECF No. 227 at 6 n.1.)

"The Court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues." CivLR 12.6(a). "Counsel must thoroughly meet and confer in person or by telephone and shall make every effort in good faith to resolve all disputes without the Court's intervention." J. Burkhardt Civ. Chambers R. § V.A.

Although the Court finds Defendant's participation in the meet-and-confer process could have been more fulsome, the Court does not find that there was any violation of the Court's meet-and-confer requirement that would support barring Defendant from making the arguments made here.

### 3. *Reliance on Substance of Claw-Back Documents*

Third, Plaintiff argues Defendant retained and relied upon the contents of the claw-back documents to support its Motion. (ECF No. 223 at 5–6.) In fact, Plaintiff goes as far as to assert Defendant "***admits*** that it has retained the content of those claw[-]back documents." (*Id.* at 6 (emphasis in original).) Defendant counters that it complied with the Protective Order and has not retained the documents or their contents. (ECF No. 227 at 6.) However, Defendant states it has a general awareness of their substance because Defendant "had reviewed some of them in detail before the claw-back request," which was more than a year after production for some of the documents at issue. (*Id.*)

The Court accepts Defendant's explanation. Furthermore, Defendant's description of its conduct comports with the requirements of the Protective Order. (*See* ECF No. 37 ¶ 16(c) ("Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.").) Moreover, Defendant confirms that, upon receiving Plaintiff's claw-back requests, it "commenced deletion" of the documents and "no longer [had] access to them." (ECF Nos. 227 at 6; 227-5 at 3; 227-6 at 2.) Accordingly, the Court finds Defendant properly complied with the Protective Order in disposing of the claw-back documents and bringing the instant Motion.

Having found Defendant's Motion procedurally proper, the Court now turns to the Motion's substantive issues of attorney-client and work-product privileges.

**B.    Attorney-Client Privilege Applies to the Draft Presentation and the Withheld Document.**

*1.    Parties' Arguments*

Plaintiff asserts that attorney-client privilege applies because ten of the documents Defendant seeks are "internal Taction communications concerning how to present information about potential infringement to the lawyers they intended to interview and the [eleventh] document is the actual presentation they gave at the meetings with the lawyers." (ECF No. 223 at 11.) Defendant argues that attorney-client privilege does not apply because the documents and testimony it seeks relate to Dr. Biggs' and Mr. Steinberg's "independent analysis," which consists of "facts created by non-attorneys as a part of their business," not "communications that reflect *legal advice* . . . ." (ECF No. 209 at 7 (emphasis in original).)

*2.    Legal Standard*

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States*

*v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." *Id.* "Whether information is covered by the attorney-client privilege is determined by an eight-part test: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (quoting *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)). "Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

   3.   *Analysis*

At issue are nine emails exchanged between Plaintiff's principals Dr. Biggs and Mr. Steinberg regarding their pre-suit analysis of Defendant's Taptic Engine, one set of draft slides Plaintiff presented in prospective client meetings with law firms, and the withheld document Dr. Biggs consulted in preparation for the resumption of his deposition. (ECF Nos. 223 at 11; 255 at 2.)

Regarding the emails, Plaintiff relies on two cases for the proposition that "'internal communications that reflect matters about which the client intends to seek legal advice are protected,' even where they are comprised of '[m]aterials' [] transmitted between nonlawyers.'" (ECF No. 223 at 10–11 (quoting *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); then citing *Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104 (9th Cir. 2005)).) The Court finds the facts of *ChevronTexaco* and *Barton* distinguishable from the email communications between Dr. Biggs and Mr. Steinberg. First, in *Barton*, the plaintiffs, though unrepresented at the time, were communicating information directly to a law firm through a questionnaire. *Barton*, 410

F.3d at 1106–07. Here, Dr. Biggs and Mr. Steinberg were communicating information between themselves prior to contacting any attorneys. Additionally, the Ninth Circuit in *Barton* was applying California privilege law, not the federal common law, which applies to the instant case. *See Clarke*, 974 F.2d at 129 ("Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law.").

Furthermore, based on the Court's *in camera* review, though Dr. Biggs and Mr. Steinberg may have drafted the emails in anticipation of litigation, the documents do not appear comparable to "notes which could serve as an agenda or set of reminders about things to ask or tell counsel," as none make such references. *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077. Just because Dr. Biggs' analysis might have triggered Plaintiff to seek representation does not transmute the character of the emails into communications seeking legal advice from legal advisors. *See Larson v. Harrington*, 11 F. Supp. 2d 1198, 1203 (E.D. Cal. 1998) ("These notes are not within the attorney-client privilege because although they came into counsel's possession they were not made as communications from client to attorney.").

However, the withheld document and the slides Plaintiff drafted and then presented at meetings with attorneys are protected by attorney-client privilege. Unlike the emails, the content of these documents constitute confidential communication between a prospective client—Plaintiff—and attorneys for the purpose of seeking legal representation and advice.

    *4.   Conclusion*

Accordingly, as to the presentation documents identified by Bates Nos. TACTION048718–048805 and the withheld document, Defendant's Motion is DENIED.

///
///
///
///

**C. Work-Product Privilege Applies to Documents Created on or After July 1, 2019.**

*1. Parties' Arguments*

Defendant argues that Dr. Biggs' analysis was too remote to qualify as being in anticipation of litigation because it was created three months before Plaintiff filed applications for the patents-in-suit, thirteen months before the patents-in-suit were issued, and eighteen months before Plaintiff actually filed suit. (ECF No. 209 at 7–8.) Further, Defendant argues that the fact that no attorney was involved in the creation of the documents at issue "weighs strongly against finding protectable work product." (*Id.* at 9.)

In opposition, Plaintiff counters that the documents at issue were created "in near proximity to the actual meetings [Plaintiff] had with prospective counsel for that express purpose," which occurred on July 18 and August 6, 2019. (ECF No. 223 at 4, 6–7.) Additionally, Plaintiff argues that it is irrelevant that Dr. Biggs' analysis related to an unasserted patent and further argues that the lack of attorney involvement is not dispositive. (*Id.* at 7–8.)

*2. Legal Standard*

"The work-product doctrine is a 'qualified' privilege that protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *Sanmina Corp.*, 968 F.3d at 1119 (quoting *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989)). "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for [a] party or by or for that [] party's representative." *Richey*, 632 F.3d at 567 (internal quotation marks and citation omitted); Fed. R. Civ. P. 26(b)(3)(A). "The party asserting work[-]product protection has the burden to demonstrate it applies to the information in question." *Greer v. Cnty. of San Diego*, --- F. Supp. 3d ----, No. 19-cv-378-JO-DEB, 2022 WL 6258319, at *4 (S.D. Cal. Oct. 7, 2022) (quoting *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 642 (D. Or. 2019)).

///

A document is prepared in anticipation of litigation where, based on the totality of the circumstances, the Court determines the document "was created because of anticipated litigation" and "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena*, *Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d 900, 907 (9th Cir. 2004)); *see also Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988) ("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative[;] however, there must be more than a remote possibility of litigation.").

### 3. Analysis

As it is undisputed that all documents at issue were prepared by Plaintiff's principals Dr. Biggs and Mr. Steinberg, the Court turns to whether the documents at issue were created "in anticipation of litigation."

As the party asserting privilege, Plaintiff bears the burden of identifying the moment that litigation was anticipated and work-product protections attached. Plaintiff takes the position that privilege attached at some unspecified time after Dr. Biggs conducted his analysis of Defendant's Taptic Engine. (ECF No. 223 at 2 ("Dr. Biggs' initial analysis of the Taptic Engine triggered the anticipation for litigation . . . .").) Through its briefing and its oral argument at the motion hearing, Plaintiff failed to provide the Court with sufficient evidence of the date on which Dr. Biggs conducted his initial analysis. Dr. Biggs' testimony on the issue was equivocal, but he ultimately settled on July 1, 2019. (*See, e.g.*, ECF Nos. 227-2 at 7, 9; 227-3 at 5; 250-4 at 13; 253-1 at 18.) Plaintiff took the unequivocal position in its briefing that the initial analysis was performed on July 1, 2019, and that that analysis is not protected by work-product privilege. (ECF No. 223 at 9.) Despite this, at the motion hearing (*see* ECF No. 336), Plaintiff asserted that the privilege attached at some unspecified date before July 1, 2019. None of this was sufficient to meet Plaintiff's burden.

Nonetheless, the Court's review of the withheld document—coupled with Dr. Biggs' testimony and Plaintiff's opposition—persuasively demonstrates to the Court that Plaintiff formed the intent to pursue litigation and meet with counsel regarding the same starting no

later than July 1, 2019.  However, Plaintiff has failed to meet his burden to show that Dr. Biggs conducted his analysis or that privilege attached earlier than July 1, 2019.  Dr. Biggs testified that prior to his analysis, he had no thoughts or beliefs regarding the possibility of Defendant infringing on Plaintiff's patents.  (ECF No. 227-2 at 6, 8.)  It was not until his "holy cow" moment, that the idea entered his head.  (*Id.*)  In fact, Plaintiff expressly asserts in its opposition that "neither [Plaintiff] nor [Defendant] is claiming that Dr. Biggs' initial analysis performed on July 1, 2019[,] is protected by work product."  (ECF No. 223 at 9.)  Because Plaintiff has not established that Dr. Biggs' analysis occurred before July 1, 2019, (and in fact took the position in their opposition that it had not), the Court determines that the emails exchanged before July 1, 2019, were not "in anticipation of litigation."  Accordingly, the documents produced at Bates Nos. TACTION056754–056755 and TACTION056887 are not work product and must be produced.

However, the withheld document, the draft presentation slides, and the emails exchanged on or after July 1, 2019, do, based on Dr. Biggs' testimony and Plaintiff's representations, qualify as documents created in anticipation of litigation.  (*See, e.g.*, ECF No. 253-1 at 7, 9, 17.)  The lack of attorney involvement, though it may be a "strong signal that [the documents] were not created because of the prospect of litigation," is not dispositive, as the totality of the circumstances must be considered.  *Largan Precision Co. v. Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2015 WL 124557, at *6 (N.D. Cal. Jan. 8, 2015); *see also Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 700 (S.D. Ga. 2013) ("[A] plaintiff who creates work-product material before hiring an attorney is still permitted to take advantage of the work-product doctrine.").  In the instant case, Dr. Biggs testified repeatedly that his analysis triggered a belief that Defendant's product infringed and Plaintiff should file suit.  According to Plaintiff, this belief of infringement and litigious intent were the purpose underlying Dr. Biggs' and Mr. Steinberg's communications leading up to meetings with prospective counsel.  Furthermore, the time between the creation of these documents and the first meetings with potential counsel was only two to three weeks, which supports the determination of the documents being created in anticipation of

litigation. The Court rejects Defendant's argument that these documents cannot constitute work product because the initial analysis related to an unasserted patent. Plaintiff's subsequent strategic decision to pursue litigation of the Asserted Patents and not the unasserted patents does not undermine Dr. Biggs' and Mr. Steinberg's intent when creating the documents at issue.

### 4.  Conclusion

Accordingly, as to the pre-July 1, 2019, documents identified as Bates Nos. TACTION056754–056755 and TACTION056887, Defendant's Motion is GRANTED.

The remaining documents at issue qualify as work product and will be analyzed for waiver and substantial need.

**D.  Dr. Biggs' Deposition Testimony Selectively Waived Any Work-Product Protections as to the July 1, 2019, Analysis.**

### 1.  Parties' Arguments

Defendant argues that, even if work-product privilege otherwise applies, by only offering "self-serving testimony" regarding his analysis of Defendant's product, Dr. Biggs waived any work-product protection to the entire subject matter of his analysis under Federal Rule of Evidence 502. (ECF No. 209 at 10–11.) Specifically, Defendant argues Dr. Biggs cannot testify to analyzing Defendant's product and concluding it infringes on Plaintiff's patents, without being required out of fairness to testify to the actual analysis upon which his belief rests. (*Id.*)

Plaintiff argues "the mere presentation of Dr. Biggs for deposition does not waive work[-]product protection and it is not controversial that parts of his testimony may be protected by work product while others may not, depending on the questions posed." (ECF No. 223 at 9 n.8.) Additionally, Plaintiff contends that there are no fairness concerns at issue because Defendant can conduct its own analysis of its Taptic Engine. (*Id.* at 9–10.) Finally, Plaintiff argues that Dr. Biggs' testimony was not being used as a "sword" because it was Defendant who sought the testimony. (*Id.* at 10.)

///

### 2. Legal Standard

"The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975). "[A]n express waiver generally occurs by disclosure to an adversary, while an implied waiver occurs by disclosure or conduct that is inconsistent with the maintenance of secrecy against an adversary." *Sanmina Corp.*, 968 F.3d at 1123. "Thus, [the court] may find the work-product immunity waived where the disclosing party's conduct has reached a 'certain point of disclosure' towards his adversary such that 'fairness requires that his privilege shall cease, whether he intended that result or not.'" *Id.* (quoting *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)); *see also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (noting the "fairness principle . . . is often expressed in terms of preventing a party from using the privilege as both a shield and a sword"). However, the "court must be careful to 'impose a waiver no broader than needed to ensure the fairness of the proceedings before it.'" *Sanmina Corp.*, 968 F.3d at 1122 (quoting *Bittaker*, 331 F.3d at 720); *see also* Fed. R. Evid. 502(a) (setting the scope of subject matter waiver to "undisclosed communication or information" only where "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together").

### 3. Analysis

First of all, as addressed above, Plaintiff has not even tried to articulate a specific time after Dr. Biggs undertook his analysis of the Taptic Engine when he formed the intent to pursue litigation, much less to demonstrate the same through declarations or other evidence. The Court has determined that work-product privilege attached no later than July 1, 2019, but Plaintiff seems to take the position both that the initial analysis is not protected by work product *and* that Dr. Biggs should nonetheless be shielded from having to testify to the details of that initial analysis and the conclusions he drew from it. (*Compare* ECF No. 223 at 9 ("[N]either [Plaintiff] nor [Defendant] is claiming that Dr.

1  Biggs' initial analysis performed on July 1, 2019 is protected by work product.") *with id.*
2  at 6–10 *generally*.) For the reasons stated above, Plaintiff has failed to meet its burden to
3  establish that testimony regarding the initial analysis is protected by work-product
4  privilege. But even if the initial analysis were work product, Defendant has established
5  that privilege has been waived.

6        Defendant argues that Dr. Biggs' selective use of privilege and disclosure should
7  constitute waiver under the fairness principle. Under such circumstances, it is the
8  affirmative act of selectively disclosing information to one's advantage while withholding
9  less beneficial testimony on the basis of privilege that uses privilege both as a "sword" and
10 "shield," regardless of whether the disclosure is sought in discovery or proffered on the
11 disclosing parties' own initiative.

12       Further, although some questions may elicit assertions of privilege while others do
13 not, answering specific questions up to a "certain point of disclosure" but then invoking
14 privilege does raise the issue of whether "fairness requires that his privilege [] cease." *See*
15 *Sanmina Corp.*, 968 F.3d at 1123. Here, Dr. Biggs testified to some facts, impressions,
16 and conclusions regarding the analysis he conducted on Defendant's component. (*See* ECF
17 Nos. 227-2 at 5–6 (describing his observations from the analysis and his related belief of
18 infringement), 7–8 (testifying to his belief of infringement); 227-3 at 5 (testifying to his
19 belief of infringement); 253-1 at 22 ███████████████████████████
20 ███████.) However, Dr. Biggs asserted work-product privilege when asked follow-up
21 questions about ██████████████████████████████████████
22 ████████████████████████████████████████████ (*See* ECF
23 No. 253-1 at 18–22.) The Court additionally notes, however, that some questions for which
24 Dr. Biggs initially asserted privilege, he answered at later questioning, █████████
25 ████████████████████ (*Compare* ECF No. 253-1 at 17 *with id.* at 18.)
26 ///
27 ///
28 ///

By selectively disclosing his belief regarding infringement and certain facts supporting that belief but refusing to respond to questions to which his answers may undermine Plaintiff's position, Dr. Biggs selectively waived work-product privilege to Plaintiff's benefit.

The scope of the waiver must be "limited to what is necessary to rectify any unfair advantage gained by [Plaintiff] from [Dr. Biggs'] conduct." *See Sanmina Corp.*, 968 F.3d at 1124; *Munguia-Brown v. Equity Residential*, 337 F.R.D. 509, 517 (N.D. Cal. 2021) (determining that, to "rectify any unfair advantage," waiver must "mirror[] in scope what the selective disclosures were"). Here, Dr. Biggs' selective disclosures give an incomplete and potentially one-sided view of his July 1, 2019, analysis. This gives Plaintiff an unfair advantage because, contrary to Plaintiff's assertions, Dr. Biggs' analysis is not something that Defendant can recreate itself through its own efforts. It is Dr. Biggs' own impressions and conclusions about Defendant's product from his analysis that would uniquely either lend support to or undermine Plaintiff's position. (*See* ECF Nos. 209 at 9–10; 227 at 4–5.) However, any unfair advantage Plaintiff gained from the selective disclosures pertain solely to the initial July 1, 2019, analysis, not any later conclusions, analysis, or actions, as Defendant broadly argues. Accordingly, Dr. Biggs' waiver of work-product privilege is limited to only those observations and conclusions contemporaneous with his July 1, 2019, analysis.

### 4. Conclusion

As none of the documents at issue were contemporaneous with Dr. Biggs' analysis, his waiver does not compel their production. However, Defendant will be allowed to depose Dr. Biggs regarding and exclusively limited to his observations and conclusions contemporaneous with his July 1, 2019, analysis.

///
///
///
///

### E. Defendant Has Failed to Demonstrate Substantial Need Sufficient to Overcome the Qualified Work-Product Privilege.

In addition to waiver, Defendant argues it has substantial need sufficient to overcome the protection afforded work-product material. To overcome ordinary work-product privilege, Defendant must show that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). The Advisory Committee Note to Rule 26(b)(3) makes clear that a "special showing," that is more than merely relevance, must be made to overcome work-product protection. Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment; *see also Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1023 (D. Ariz. 2020) (defining the showing for substantial need as "establishing that the facts contained in the requested documents are essential elements of the requesting party's prima facie case").

Defendant argues the documents at issue and Dr. Biggs' related testimony will "contradict[] [Plaintiff's] infringement theory" which Defendant expects to be that Defendant "purchased [Plaintiff's] product in 2018 and copied it." (ECF No. 209 at 9.) In addition to being relevant to Defendant's non-infringement defense, Defendant argues the statements are also relevant to Dr. Biggs' credibility. (ECF No. 227 at 4.) Finally, Defendant argues there is no alternative to obtaining the contested information from Plaintiff because having the results of Defendant's own testing is "not the same as Dr. Biggs' own disagreement with a position [Plaintiff] will take at trial . . . ." (*Id.*) Plaintiff argues that impeachment on an unasserted patent is too "vaguely defined, highly abstract, and unsubstantiated" to qualify as substantial need. (ECF No. 223 at 8–9.) Further, Plaintiff argues Defendant can get the same information from other means by testing its device itself without "riding on Plaintiff[']s coattails." (*Id.* at 8–9 n.7 (quoting *Dennis v. Good Deal Charlie, Inc.*, No. 21-CV-01760-BEN-JLB, 2022 WL 62919, at *5 (S.D. Cal. Jan. 6, 2022)).)

///

Contrary to Plaintiff's assertion, Defendant is not seeking the documents at issue and related testimony to reduce its investigative costs by exploiting Plaintiff's efforts. *Cf. Admiral Ins. Co.*, 881 F.2d at 1494. In fact, Defendant has already conducted its own analysis of its product. (ECF No. 227 at 4.) Rather, Defendant seeks the documents and testimony related to Dr. Biggs' analysis because no substantial equivalent exists. It is the source of the analysis that makes the contested discovery distinct and, thus, supports Defendant's substantial need argument. *See Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 671 (S.D. Cal. 2000) ("The extent to which a party needs information contained in an opponent's work product depends, in large part, on whether the work product is unique.").

However, the Court finds Defendant has failed to meet its burden to demonstrate substantial need. Although Defendant argues the information is unique, Defendant fails to provide how the information it seeks is essential. Rather, Defendant argues its substantial need is based on its prediction of a legal theory for which it cited no basis in Plaintiff's filings. Speculation with no support is insufficient to demonstrate substantial need.

To the extent Defendant articulates a need based on its assertion that "the clawed-back documents will show that Dr. Biggs' initial impressions of the Taptic Engine contradict Taction's infringement theory" (ECF No. 227 at 4), that need is substantially met through the documents that the Court has determined do not constitute work product and the additional deposition testimony the Court has granted Defendant regarding Dr. Biggs' early impressions.

    *4. Conclusion*

Defendant fails to meet its burden to demonstrate substantial need for any documents or related testimony regarding information after Dr. Biggs' analysis.

**IV. CONCLUSION**

For the reasons stated above, Defendant's Motion is **GRANTED in part and DENIED in part**.

1. Plaintiff shall produce to Defendant the documents at the following Bates Nos.: TACTION056754–056755 and TACTION056887.

2. Plaintiff shall produce Dr. Biggs for a one (1) hour follow-up Rule 30(b)(6) deposition. The scope of the additional deposition shall be limited to questions regarding Dr. Biggs' observations and conclusions contemporaneous with his July 1, 2019, analysis.

**IT IS SO ORDERED.**

Dated: July 20, 2023

*/s/ Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge