Sean Pak (SBN 219032)
seanpak@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6320
Facsimile: (415) 875-6700

Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff
Taction Technology, Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACTION TECHNOLOGY, INC.,<br><br>       Plaintiff,<br><br>  vs.<br><br>APPLE INC.,<br><br>       Defendant | Case No. 21-cv-00812-TWR-JLB<br>_____<br><br>**PLAINTIFF TACTION TECHNOLOGY, INC.'S MEMORANDUM OF SUPPLEMENTAL POINTS AND AUTHORITIES RE REMAINING SUMMARY JUDGMENT ISSUES**<br><br>Judge: Hon. Todd W. Robinson<br><br>Magistrate Judge: Hon Jill L. Burkhardt<br><br>Hearing Date and Time: TBD |

# **TABLE OF CONTENTS**

PROCEDURAL BACKGROUND ................................................................................. 1

I.    THE FEDERAL CIRCUIT'S DECISION FORECLOSES THE WRITTEN DESCRIPTION AND INDEFINITENESS ARGUMENTS ......... 3

II.   SUMMARY JUDGMENT OF NON-INFRINGEMENT FOR THE "PLURALITY OF MAGNETS" LIMITATION SHOULD BE DENIED ....................................................................................................... 5

III.  BEFORE RESOLVING THE REMAINING MARKING ISSUES THE COURT SHOULD RECONSIDER ITS PRIOR ORDER .............................. 9

IV.   SCOPE AND TIMING OF DISCOVERY ....................................................... 10

V.    COURT SHOULD DENY SUMMARY JUDGMENT ................................. 10

TACTION'S SUPPLEMENTAL MPA RE REMAINING SUMMARY JUDGMENT ISSUES

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aug. Tech. Corp. v. Camtek, Ltd.*,
  655 F.3d 1278 (Fed. Cir. 2011) ........................................................................... 7

*BJ Servs. Co. v. Halliburton Energy Servs., Inc.*,
  338 F.3d 1368 (Fed. Cir. 2003) ........................................................................... 5

*Bombardier Recreational Prods. Inc. v. Arctic*
  785 F. App'x 858, 867 (Fed. Cir. 2019) ............................................................... 5

*Cordis Corp. v. Medtronic AVE, Inc.*,
  511 F.3d 1157 (Fed. Cir. 2008) ........................................................................... 5

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012) ........................................................................... 8

*EIS, Inc. v. IntiHealth Ger GmbH*,
  No. CV 19-1227-GBW, 2023 WL 6799332 (D. Del. Aug. 23, 2023) ................. 9

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
  339 U.S. 605 (1950) ............................................................................................. 8

*Glob. Traffic Techs. LLC v. Morgan*,
  602 F. App'x 895 (Fed. Cir. 2015) ...................................................................... 9

*Playtex Prod., Inc. v. Procter & Gamble Co.*,
  400 F.3d 901 (Fed. Cir. 2005) ............................................................................. 5

*Taction Tech., Inc. v. Apple Inc.*,
  No. 2023-2349, 2025 WL 2336950 (Fed. Cir. Aug. 13, 2025) ................ 2, 5, 7, 9

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ............................................................................................... 8

## Rules/Statutes

35 U.S.C. § 112 ................................................................................................. 2, 4

35 U.S.C. § 287 .................................................................................................... 3

TACTION'S SUPPLEMENTAL MPA RE REMAINING SUMMARY JUDGMENT ISSUES

## MEMORANDUM OF POINTS AND AUTHORITIES

The only summary-judgment issues left for this Court to decide are Apple's requests for partial summary judgment on the "plurality of magnets" limitations and pre-suit damages. The Federal Circuit's decision resolved all issues relating to the "highly damped output" limitation.

## PROCEDURAL BACKGROUND

Taction filed this action in 2021, alleging that certain Apple iPhones and Watches infringed two patents relating to high-fidelity haptic actuators. *See* ECF 1. After a stay pending IPR institution decisions, ECF 98, the Court issued its Claim Construction Order. ECF 141. That order adopted the following constructions:

- The "wherein the ferrofluid reduces at least a mechanical resonance within the frequency range of 40-200 Hz" limitation has its plain and ordinary meaning subject to two disclaimers:"(1) that the claimed invention is directed to transducers with highly damped output; and (2) that the invention does not utilize or encompass un-damped linear resonant actuators." (ECF 141 at 10-18); and

- In the "plurality of magnets" limitation, "magnet" means "a body that produces a magnetic field based on the body's dipolar nature" and "plurality of magnets" means "at least two physically distinct magnets." (ECF 141, 28-29).

After the parties conducted discovery and submitted infringement and invalidity contentions, including post-claim construction contentions and expert reports, Apple moved for summary judgment. ECF 298. Apple raised several arguments, some of which the Court adopted and others the Court declined to reach:

### 1. "Highly Damped Output"

***Expert Report.*** Apple argued that the Court should strike the portion of Dr. Oliver's report describing why the Accused Products practice the "highly damped output" limitation, because they were "new" and should have been disclosed in Taction's infringement contentions. ECF 298 at 6-10. The Court granted Apple summary judgment on that basis, ECF 378 at 10-24, but the Federal Circuit reversed

-1-

that holding, *Taction Tech., Inc. v. Apple Inc*., No. 2023-2349, 2025 WL 2336950, at *3 (Fed. Cir. Aug. 13, 2025).

*Mechanical Damping*.  Apple argued that the "highly damped output" had to be produced by mechanical damping rather than by non-mechanical damping like the closed-loop controller.  ECF 298 at 15-16.  It further argued that if the claims were read to cover the closed-loop controller, they would be invalid for lack of written description, 35 U.S.C. § 112.  *Id.* at 17-21.  This Court granted Apple summary judgment on the first argument, ECF 378 at 32-34, while declining to address the written-description argument, *id.* at 34 n.5.  The Federal Circuit reversed that ground for summary judgment as well.  2025 WL 2336950, at *5.

*Q-Factor*.  Apple argued that "highly damped output" equates to a Q-factor of less than 1.5, which the Accused Products do not have, ECF 298 at 21-23, and that Taction's definition of "highly damped output" as "generally uniform or flat" was indefinite, *id.* at 28-31.  This Court granted summary judgment on the first argument, but did not address indefiniteness, ECF 378 at 34-38; *id.* at 38 n.8.  The Federal Circuit again reversed.  2025 WL 2336950, at *5-6.

### 2. "Plurality of Magnets"

Apple argued for partial summary judgment because it asserted that certain Accused Products do not meet the "plurality of magnets" limitation.  ECF 298 at 31-33.  Apple also sought to strike Dr. Oliver's opinions on that limitation.  ECF 298 at 10-13.  The Court declined to reach those arguments in light of its other grounds for granting summary judgment.  ECF 378 at 42 n.10.

### 3. Pre-Suit Damages

Apple argued that it was entitled to partial summary judgment of no pre-suit damages under 35 U.S.C. § 287 because (a) Taction's markings were insufficient; (b) Taction had failed to prove consistent and continuous marking; and (c) Taction had not provided actual notice.  ECF 298 at 33-38.  The Court declined to reach that issue.  ECF 378 at 42 n.10.

-2-

## DISCUSSION

This Federal Circuit's decision disposed of Apple's arguments that the claims are subject to "mechanical damping" and "Q factor less than 1.5" disclaimers, as well as its arguments related to Dr. Oliver's opinions on "highly damped output." Although this Court denied as moot Apple's related arguments of lack of written description and indefiniteness, ECF 378 at 34 n.5, 38 n.8, the Federal Circuit's decision effectively foreclosed those grounds for summary judgment as well. Apple's arguments on the "plurality of magnets" limitation and pre-suit damages remain pending.

## I. THE FEDERAL CIRCUIT'S DECISION FORECLOSES THE WRITTEN DESCRIPTION AND INDEFINITENESS ARGUMENTS

Although this Court reserved judgment on Apple's written-description and indefiniteness arguments in its summary-judgment order, the Federal Circuit's opinion effectively resolved them against Apple. At a minimum, the Federal Circuit's opinion fatally undermines Apple's positions.

***Written Description***. Before the Federal Circuit, Apple's principal argument in favor of the "mechanical damping" limitation was that it was required by the written-description requirement of Section 112. Indeed, the heading of that section of its brief was: "The written description requires limiting 'highly damped output' to mechanical damping." Apple C.A. Br. 64. Apple invoked the rule that "[w]hen a written description would be insufficient to show that the inventor possessed the full scope of the claims as construed, the Court will instead adopt a construction that squares with the patent's disclosure and avoids invalidity under § 112." *Id.* at 65. And it claimed that the written-description requirement could not be met without a mechanical-damping limitation because "[a]t no point do the patents suggest that Taction invented apparatuses that achieve highly damped output using any form of non-mechanical damping." *Id.* at 66. That echoed Apple's summary-judgment argument here. *See* ECF 298 at 18-20.

-3-

TACTION'S SUPPLEMENTAL MPA RE REMAINING SUMMARY JUDGMENT ISSUES

The Federal Circuit squarely rejected that argument: "The specification discloses types of mechanical damping but is broad enough to encompass non-mechanical damping" and "repeatedly refers to damping without indicating a specific type of damping." C.A. Op. 12.  That holding forecloses Apple's argument that the patents lack a written description because they fail to disclose the sort of non-mechanical damping performed by the Accused Products.  ECF 298 at 17.  Accordingly, summary judgment on that ground should be denied.

At any rate, Apple's written-description arguments lack merit for the reasons in Taction's summary-judgment brief.  ECF 322 at 24-27.

*Indefiniteness*.  The Federal Circuit's decision similarly forecloses Apple's indefiniteness argument.  In its opening appellate brief, Taction argued that the Federal Circuit should not find a "highly damped output" disclaimer in the prosecution history under precedent holding that language calling for a "'difficult factual determination'" ordinarily should not be read as a clear and unmistakable disclaimer of claim scope.  Taction Opening C.A. Br. 43 (quoting *Playtex Prod., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 908 (Fed. Cir. 2005)).  Apple's sole response was to argue that a "highly damped output" disclaimer would not present a difficult factual question because the specification indicated that the Q-factor must be less than 1.5, enabling a "skilled artisan" to practice the invention.  Apple C.A. Br. 60.  In its resolution of the appeal, the Federal Circuit necessarily concluded that a Q-factor limitation was *not* required to render the term "highly damped output" sufficiently clear and unmistakable for a disclaimer, since it adopted the "highly damped output" disclaimer but rejected the Q-factor disclaimer.

That effectively resolves the indefiniteness question.  Apple has yet to cite any decision in which a court found a clear and unmistakable prosecution-history disclaimer but then invoked that disclaimer to declare the patent invalid for indefiniteness.  Apple itself recognized that such an outcome was untenable.  In its summary-judgment reply brief, Apple stated that it "agrees" with Taction's argument

-4-

that "the Court's finding of disclaimer would be at odds with a finding that the scope is not reasonably certain" for indefiniteness purposes.  ECF 326 at 11.

In any event, Apple's indefiniteness arguments are meritless for the reasons stated in Taction's summary-judgment brief and due to the Court's construction in its summary-judgment order, including because they turn on factual questions such as whether a person of ordinary skill would not have difficulty identifying a method for determining whether the output was "substantially uniform or flat."  ECF 322 at 27-29; ECF 378 at 29-31; *see BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003) (holding that indefiniteness "is amenable to resolution by the jury where the issues are factual in nature"); *see also, e.g.*, *Bombardier Recreational Prods. Inc. v. Arctic Cat Inc.*, 785 F. App'x 858, 867 (Fed. Cir. 2019). Apple's argument turns entirely on the view that terms of degree, like "substantially uniform," are inherently indefinite, but that is wrong.  *See Cordis Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1168-69 (Fed. Cir. 2008) (finding that lower's court holding a "retrial on whether AVE's stents literally infringed the 'substantially uniform thickness' limitation" was a "treatment of the methodology issue as a question of fact [that] could not have prejudiced AVE, as it gave AVE an opportunity to present its theory to the jury….").

## II. SUMMARY JUDGMENT OF NON-INFRINGEMENT FOR THE "PLURALITY OF MAGNETS" LIMITATION SHOULD BE DENIED

In granting Apple summary judgment, this Court did not reach Apple's alternative request for partial summary judgment on the "plurality of magnets" limitation, ECF 298 at 31-33, and its related motion to strike portions of Dr. Oliver's report, ECF 298, at 10-13.  ECF 378 at 42 n.10.  That issue is therefore ripe for decision now.  But for the reasons that Taction has previously presented, Apple's arguments lack merit.  The record establishes a triable question as to whether the relevant subset of the Accused Products infringes the "plurality of magnets" limitation literally or under the doctrine of equivalents.

-5-

*Literal Infringement.* There exists genuine issue of material fact as to whether a single substrate with multiple distinct magnetic regions can be considered a "plurality of magnets" under this Court's prior claim constructions. The Court has construed "magnet" as "a body that produces a magnetic field based on the body's dipolar nature" and has construed "plurality of magnets" as "at least two physically distinct magnets." ECF 141, 28-29. Taction's infringement contentions demonstrate that Accused Products with "monolithic" magnets have physically distinct, magnetic domains on a single substrate, as evidenced by ferrofluid that is most attracted to the boundary between separate but adjacent magnetic domains:



iPhone 11 Pro    iPhone 12 Pro Max

Exs. 1-2 (Infringement Contentions iPhone 11 Pro and iPhone 12 Pro Max, annotated). In his report, Dr. Oliver relies on this evidence and other Apple's admissions and documents depicting the Accused Products with multiple distinct magnetic bodies—each body having its own distinct north and south poles—to show that the Accused Products *literally infringe* the "plurality of magnets" limitation. ECF 298-2, Oliver Report ¶771. Although Apple's expert disagrees with Dr. Oliver, evaluating the experts' credibility is a quintessential function of the jury.

Apple nevertheless argues that its products cannot literally infringe because "the Court rejected Dr. Oliver's argument that the claimed 'magnets' can be

subsidiary pieces of material on a single body" during claim construction. ECF 299, 32 (*citing* ECF No. 141, 22-23). But to reach that conclusion, Apple narrowly construes statements by the Court that were not essential to its conclusion in a way that contradicts principles of claim construction established by Federal Circuit precedent, including its opinion in this very case. There is no requirement in the Court's constructions that two magnet bodies cannot reside on the same piece of material. (ECF 298, 31). The Court's construction requires only the magnets be ***physically distinct*** (*i.e.,* clearly physically distinguishable) bodies. The Court did not, as Apple suggests, adopt a construction that would require that the magnets be ***physically discrete*** (*i.e.,* physically separate).

That substantive distinction arises from core claim-construction principles. In fact, it appears in the very precedent that this Court invoked. ECF 141, 26 (*citing Aug. Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284-1286 (Fed. Cir. 2011)). In *August Technology*, the Federal Circuit construed "a plurality of wafers" to mean "***more than one physically distinct*** wafer" while construing wafer to mean "a thin, ***discrete*** slice of semiconductor material with circuitry thereon." *Id.* Had the Federal Circuit intended these terms to be synonymous, it would not have used both.

Here, this Court adopted only a "physically distinct" limitation; Apple's injection of a "discreteness" requirement lacks support in the patents. In *August Technology*, the Federal Circuit's adoption of such a requirement turned on claim language that required ***individually*** "inspecting multiple discrete wafers" and the fact that the specification "consistent[ly] treat[ed] wafers as discrete objects." *Id.* at 1284. Because the claim language required "provid[ing] a single object called a wafer to [a] test plate" and "visual inspection … require[d] more than one of these objects," the only logical reading of the claims was the wafers must be physically separate objects, *i.e.,* distinct. *Id.* at 1283-1284. Here, by contrast, Taction's claims do not suggest that the magnets are discrete, much less logically require that conclusion. Similarly,

TACTION'S SUPPLEMENTAL MPA RE REMAINING SUMMARY JUDGMENT ISSUES

the specification and prosecution history lack lexicography or disavowals limiting magnets to discrete bodies. *See Taction*, 2025 WL 2336950, at \*5.

***Doctrine of Equivalents***.  The doctrine of equivalents provides an independent basis for infringement, and genuine factual disputes preclude summary judgment. The doctrine is designed to protect against "[o]ne who seeks to pirate an invention, [who] may be expected to introduce minor variations to conceal and shelter the piracy." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950).

Apple contends that letting the jury hear the evidence for infringement of "plurality of magnets" under the doctrine of equivalents would "vitiate an express claim limitation." ECF 298 at 33.  That is wrong.  The Federal Circuit has repeatedly held "'[v]itiation' is not an exception to the doctrine of equivalents, but [] a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *See, e.g., Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012).  The proper inquiry is whether an equivalent represents an "insubstantial difference" from the claimed element or "whether the substitute element matches the function, way, and result of the claimed element." *Id.* at 1357. That is "an intensely factual inquiry." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36-37 (1997).

Dr. Oliver provides thorough opinions demonstrating Taction's theory would meet either standard due to the "numerous parallels" between a plurality of unipolar magnets separated by a spacer and monolithic magnets on a common substrate. (*see* ECF 298-2, ¶¶764-91). His opinions rely on many deposition excerpts and Apple documents "which indicate[] the two are equivalents." *Id.*, ¶776; *see also id.,* ¶764, n.557.  That easily establishes a triable question of fact.[1]

---

[1]   Apple's summary judgment motion also asked the Court to strike Dr. Oliver's opinions on the "plurality of magnets" limitation because Taction's contentions did not provide a theory for ***how*** the Monolithic Products meet the plurality-of-magnets

## III.    BEFORE RESOLVING THE REMAINING MARKING ISSUES THE COURT SHOULD RECONSIDER ITS PRIOR ORDER

This Court did not resolve Apple's request for partial summary judgment on pre-suit damages, so that issue remains pending.  Although this Court addressed the marking analysis in its Order Denying Leave to Amend Complaint (ECF 318), Taction respectfully requests reconsideration of the reasoning and conclusion of that order in light of additional, relevant caselaw and the unique posture of this case.

About two months after the Court's Order Denying Leave to Amend Complaint (ECF 318), Judge Williams of the District of Delaware, a former patent-law practitioner, determined that material fact disputes precluded summary judgment based on a licensee's marking of the packaging. *EIS, Inc. v. IntiHealth Ger GmbH*, No. CV 19-1227-GBW, 2023 WL 6799332, at *4 (D. Del. Aug. 23, 2023).  In particular, Judge Williams observed that "one must consider the nature and characteristics of the product, how it is used, and the situation in which it is used when evaluating the sufficiency of marking a product." *Id.*  Upon finding that the patentee and the relevant industry marked its packages, rather than the products, he explained that he "cannot conclude, as a matter of law, that certain [licensee] products fail to comply with the requirements of the marking statute." *Id.* (citing *Glob. Traffic Techs. LLC v. Morgan*, 602 F. App'x 895, 907 (Fed. Cir. 2015) ("Where marking on the packaging served as the most effective notice to the public of this product, given its multiple and hidden components, is a fact issue for trial.").  Judge Williams's

---

limitation (ECF 298, 10-13).  That argument is foreclosed by the Federal Circuit's decision finding the local rules do not contain an express "how" requirement, Taction was not on notice and had no opportunity to comply. *See Taction Tech., Inc. v. Apple Inc.*, 2025 WL 2336950, at *3.  There is no dispute that Taction's infringement contentions identified "where" in the Accused Products this limitation is met.

TACTION'S SUPPLEMENTAL MPA RE REMAINING SUMMARY JUDGMENT ISSUES

reasoning is on point here and is consistent with Taction's arguments opposing summary judgment on a lack of pre-suit damages.  ECF 322, 30-37.

The unique posture of this case also provides sufficient time to mitigate any prejudice to Apple. Both parties have agreed to re-open limited discovery for new products; any prejudice to Apple based on the prior posture of the case will be ameliorated with reasonable, limited discovery into this issue as well.  ECF 272 at 16-17 (identifying limited third-party discovery).

## IV.    SCOPE AND TIMING OF DISCOVERY

As the Court expressly stated: "Taction deserves their day in court if this case is going to proceed to trial, and the tentative would be to set it much earlier for trial than the Fall of 2026."  Ex. 3 (Mandate Hr'g Tr.) at 9:3-8.  Both parties agree that limited discovery is needed but disagree as to the scope of discovery, as Apple seeks discovery on prior art, including its own products, that it should have investigated during fact discovery.

## V.    COURT SHOULD DENY SUMMARY JUDGMENT

Taction respectfully requests that the Court deny Apple's summary judgment requests related to infringement and invalidity in their entirety and consider pre-suit damages issue in light of new, relevant caselaw and the unique posture of this case

-10-

Dated:  October 30, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By: */s/ Lance Yang*
Sean Pak (SBN 219032)
seanpak@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6320
Facsimile: (415) 875-6700

Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff*
*Taction Technology, Inc.*

-11-

TACTION'S SUPPLEMENTAL MPA RE REMAINING SUMMARY JUDGMENT ISSUES