UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TACTION TECHNOLOGY, INC.,
Plaintiff,

v.

APPLE INC.,
Defendant.

Case No.: 21-CV-812 TWR (JLB)

**ORDER (1) GRANTING DEFENDANT'S *EX PARTE* MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY, (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (3) OVERULLING DEFENDANT'S RENEWED RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE'S ORDERS**

(ECF Nos. 420, 423, 428, 429, 430, 436)

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Presently before the Court is Defendant Apple, Inc.'s ("Apple's") Renewed[1] Motion for Summary Judgment ("Mot.," ECF Nos. 299 (public), 313 (sealed)), Taction's Opposition to Apple's Motion ("Opp'n," ECF No. 323), and Apple's Reply to Taction's Opposition ("Reply," ECF No. 327.) Also before the Court are Apple's and Plaintiff Taction Technology, Inc.'s ("Taction's") Supplemental Briefs Regarding Remaining Summary Judgment Issues ("Apple Suppl.," ECF No. 423; "Taction Suppl.," ECF Nos. 420 (public), 422 (sealed)), and Apple's and Taction's Responses to each other's Supplemental Briefs ("Apple Suppl. Reply," ECF No. 430; "Taction Suppl. Reply," ECF Nos. 429 (public), 428 (sealed)). The Court heard oral arguments on Thursday, November 20, 2025. (ECF No. 434.) On December 4, 2025, Apple filed an *Ex Parte* Motion for Leave to File Notice of Supplemental Authority. (ECF No. 436.)

Having carefully reviewed the Parties' arguments, the record, and the law, the Court **GRANTS** Apple's *Ex Parte* Motion for Leave to File Notice of Supplemental Authority, **GRANTS IN PART** and **DENIES IN PART** Apple's Renewed Motion for Summary Judgment, **DENIES** the Parties' Additional Discovery and Briefing Requests, and **OVERRULES** Apple's Renewed Rule 72(a) Objections to Magistrate Judge Burkhardt's Orders.[2]

## BACKGROUND

Taction alleges Apple infringed U.S. Patent No. 10,659,885 ("the '885 Patent") and U.S. Patent No. 10,820,117 ("the '117 Patent") (collectively, the "Asserted Patents"). (*See generally* ECF No. 1 ("Compl.").) Specifically, Taction alleges Apple has directly

---

[1] The Court held an Appeal Mandate Hearing on October 9, 2025 (*see* ECF Nos. 414, 417), concerning the Court of Appeals for the Federal Circuit's reversal of this Court's grant of summary judgment of non-infringement for Apple. *See Taction Tech., Inc. v. Apple Inc.*, 686 F. Supp. 3d 995 (S.D. Cal. 2023), *vacated and remanded,* No. 2023-2349, 2025 WL 2336950 (Fed. Cir. Aug. 13, 2025).

[2] Apple's 72(a) Objections (*see* ECF Nos. 367, 371) were previously denied as moot. (MSJ Order at 43.) Apple specifically requests reconsideration of these Objections on remand. (*See* Apple Suppl. at 12.)

infringed and induced or contributed to the infringement of the Asserted Patents by making, using, selling, and offering for sale Apple products, including the iPhone and Apple Watch, that implement haptics technology. (*See id.* ¶¶ 77, 80.) Haptics refers to the science of enabling interaction with technology through the sense of touch, for example, through the use of vibrations. (*See* ECF No. 73 ("Taction Claim Const. Brief") at 1.) Presently, Taction asserts claims 1–20 of the '885 Patent and claims 1–17 of the '117 Patent against Apple. (ECF No. 313-4, Ex. 7 at 335.)

**I. Background of the Technology**

A linear actuator is like a motor that uses electrical signals to create electromagnetic forces to drive a moving mass back and forth along a line. (ECF No. 72 ("Apple Claim Const. Brief") at 1.) Driving the mass with an electrical signal applied to coils causes acceleration of the moving mass along the line and thereby a vibration force. (*See id.* at 1–2.) One common use of linear actuators is for providing haptics in mobile phones to produce vibration effects (for example when your phone rings or when you get a text message or a news alert). (*See id.* at 2.)

A typical linear actuator includes a housing, a coil that forms an electric field, and a vibration element that includes magnets and a moving mass. (*See id.*) The vibration element may be suspended by springs or flexures that enable vibration and guide that movement in a linear back-and-forth manner. (*See id.*) In operation, an alternating electrical current is applied to the coils, which causes the mass to oscillate back-and-forth along the line. (*See id.*)

Linear actuators may also include damping mechanisms such a ferrofluids. (*See id.* at 3.) Shock absorbers in cars are a common example of damping mechanisms. (*See id.*) Ferrofluids are fluids with magnetic properties, typically created through the addition of small iron shavings. (*See id.*) In linear actuators, damping via ferrofluids can increase the responsiveness of the actuator by allowing the vibrations to come to a stop more quickly. (*See id.*)

/ / /

## II. The Asserted Patents

Taction is the assignee and owner of the ’885 Patent and the ’117 Patent. (Compl. ¶¶ 68, 72.) *See* U.S. Patent No. 10,659,885, at [73] (issued May 19, 2020); U.S. Patent No. 10,820,117, at [73] (issued Oct. 27, 2020). The ’885 Patent is entitled “Systems and Methods for Generating Damped Electromagnetically Actuated Planar Motion for Audio-Frequency Vibrations” and was issued on May 19, 2020. ’885 Patent at [45], [54]. The ’117 Patent is entitled the same and was issued on October 27, 2020. ’117 Patent at [45], [54]. The ’885 Patent and the ’117 Patent share a common specification, and both patents claim priority to provisional application No. 62/054,712 filed on September 24, 2014. ’885 Patent at [60]; ’117 Patent at [60].

The invention described in the ’885 Patent and the ’117 Patent “relates to tactile transducers that produce bass frequency vibrations for perception by touch.” ’885 Patent col. 1 ll. 20–21. The specification explains:

> Below about 200 Hz, the lower the frequency of sound, the more it is perceived not only by vibration of the ear drum but also by touch receptors in the skin. This sensation is familiar to anyone who has “felt the beat” of strong dance music in the chest, or through the seat of a chair, or has simply rested a hand on a piano. The natural stimulus is both auditory and tactile, and a true reproduction of it is possible only when mechanical vibration of the skin accompanies the acoustic waves transmitted through the air to the ear drum.

*Id.* at col. 1 ll. 25–33.

The specification then details the problems with the prior art audio-frequency tactile transducers, which include “axial shakers,” “un-damped eccentric rotating motors (‘ERMs’),” and “un-damped linear resonant actuators (‘LRAs’).” *See id.* at col. 1 l. 34–col. 2 l. 46. With respect to “axial shakers,” the specification explains a “drawback” of using axial shakers “is the production of unwanted acoustic noise.” *Id.* at col. 1 ll. 43–56. The specification further explains that this problem “is typically made worse by a lack of mechanical damping.” *Id.* at col. 2 ll. 1–2.

With respect to ERMs and LRAs, the specification explains that they are also “problematic.” *Id.* at col. 2 ll. 11–13. Specifically, the specification explains that

undamped "ERMs are incompatible with high-fidelity audio." *Id.* at col. 2 ll. 14–16. The specification states that the "main drawback of LRAs is the dependence on 'resonance.'" *Id.* at col. 2 ll. 25–26. The specification explains that LRAs are designed for tactile alerts, not fidelity, and they can have a "high Q-factor" that renders those devices "useless for high fidelity reproduction of low frequency tactile effects" in the relevant range. *See id.* at col. 2 ll. 25–34; *see also id.* at col. 2 ll. 63–67 (describing a "lack of critically damping" and "a claimed Q-factor of 1.5 to 3" as a "drawback").

The Asserted Patents aim to overcome the problems of the prior art by disclosing "a thin, flat vibration module with a movable member that is electromagnetically actuated to produce motion in-plane." *See id.* at col. 3 ll. 51–53; *see also id.* at col. 2 ll. 47–49. "[T]he module may consist of a mass and thin magnets, polarized through their thickness, where the mass and magnets are movably suspended inside a housing." *Id.* at col. 3 ll. 63–66. Further, the suspension may include flexures or a ferrofluid layer. *Id.* at col. 3 ll. 66–67. In addition, "the vibration of the moving portion may be damped" using the layer of ferrofluid. *Id.* at col. 4 ll. 6–8. The specification states: "Motion of the movable member can be damped so that the steady-state sinusoidal voltages applied to the module at different frequencies produce an acceleration response of the movable member that is substantially uniform over the range of 40–200 Hz." *Id.* at col. 3 ll. 53–58; *see also id.* at [57] ("Motion of the movable member can be damped so that the steady-state sinusoidal voltages applied to the module at different frequencies produce an acceleration response of the movable member that is substantially uniform over the range of 40–200 Hz.").

Independent claim 1 of the '885 Patent recites:

> 1. An apparatus for imparting motion to the skin of a user, the apparatus comprising:
>
> a housing;
>
> a plurality of coils capable of carrying electrical current;
>
> a plurality of magnets arranged in operative proximity to the plurality of coils;
>
> a moving portion comprising an inertial mass and the plurality of magnets;

> a suspension comprising a plurality of flexures that guides the moving portion in a planar motion with respect to the housing and the plurality of conductive coils;
>
> wherein movement of the moving portion is damped by a ferrofluid in physical contact with at least the moving portion; and
>
> wherein the ferrofluid reduces at least a mechanical resonance within the frequency range of 40-200 Hz in response to electrical signals applied to the plurality of conductive coils.

’885 Patent col. 14 ll. 48–65.

Independent claim 1 of the ’117 Patent recites:

> 1. An apparatus comprising:
>
> a housing;
>
> a plurality of conductive coils capable of carrying electrical current;
>
> a plurality of magnets arranged in operative proximity to the plurality of conductive coils;
>
> a moving portion comprising an inertial mass and the plurality of magnets;
>
> a suspension comprising a plurality of flexures that guides the moving portion in a planar motion with respect to the housing and the plurality of conductive coils;
>
> wherein vibration of the apparatus imparts vibrations to a user’s skin;
>
> wherein vibration of the apparatus is damped by a viscous ferrofluid in physical contact with at least the moving portion;
>
> wherein the viscous ferrofluid reduces at least a resonance within a frequency range of 40-200 Hz in response to signals applied to the plurality of conductive coils;
>
> wherein said moving portion includes at least a pocket that provides space for at least a magnet;
>
> wherein each of said plurality of flexures is more resistant to motion transverse to a plane of the moving portion than it is to linear motion in the plane of the moving portion; and
>
> wherein said housing is generally cuboid in shape.

’117 Patent col. 14 l. 47–col. 15 l. 5.

/ / /

/ / /

## III. Procedural History

On August 11, 2023, the Court issued an Order (1) Granting Apple's Motion for Summary Judgment of Non-Infringement, (2) Vacating Remaining Pretrial and Trial Dates and Deadlines, and (3) Denying as Moot Remaining Motions Pending Before the undersigned. (*See generally* ECF No. 378 ("MSJ Order").) In granting Apple's Motion for Summary Judgment, the Court began by construing the asserted claims as a matter of law. (*See id.* at 8.) Each of the asserted claims in that action from the '885 Patent and the '117 Patent included one of the four following claim limitations:

1. "wherein the ferrofluid reduces at least a mechanical resonance within the frequency range of 40-200 Hz in response to electrical signals applied to the plurality of conductive coils," '885 Patent col. 14 ll. 62–65, col. 16 ll. 13–16;
2. "wherein the ferrofluid reduces the Q-Factor of the response of the apparatus over at least a portion of the frequency range of 40-200 Hz in response to signals applied to the coil," *id.* at col. 16 ll. 39–42;
3. "wherein the viscous ferrofluid reduces at least a resonance within a frequency range of 40-200 Hz in response to signals applied to the plurality of conductive coils," '117 Patent col. 14 ll. 63–65, col. 15 ll. 48–50; or
4. "wherein the ferrofluid damps at least a resonance in response to signals applied to the conductive coil." *Id.* at col. 16 ll. 55–56.

(*See id.*) Previously, in the Claim Construction Order, the Court gave each of the four claim terms "wherein the ferrofluid reduces at least a mechanical resonance within the frequency range of 40-200 Hz," "wherein the ferrofluid reduces the Q-Factor of the response of the apparatus over at least a portion of the frequency range of 40-200 Hz," "wherein the viscous ferrofluid reduces at least a resonance within a frequency range of 40-200 Hz," and "wherein the ferrofluid damps at least a resonance" their plain and ordinary meaning. (ECF No. 141 ("Claim Const. Order") at 16–17, 22.) In addition, the Court held that these constructions were entered with the following disclaimer of claim

scope: "that the claimed invention is directed to 'transducers with highly damped output.'" (*Id.* at 16–17, 22.)

The Court then considered Apple's argument that it was entitled to summary judgment of non-infringement because the accused products did not include a "transducer with highly damped output" as required by the Court's Claim Construction Order. (*See* MSJ Order at 10.) Apple asserted it was entitled to summary judgment on two grounds. (*See id.*) First, Apple argued the opinions of Taction's technical expert, Dr. Oliver, regarding the "highly damped output" limitations mut be stricken for containing new infringement theories in violation of this District's Patent Local Rules, without which Taction had no viable claim of infringement. (*See id.*) Second, Apple argued it was entitled to summary judgment of non-infringement because the accused products did not include a "transducer with highly damped output." (*See id.*)

The Court found for Apple in both respects. (*See generally id.*) Regarding Apple's first argument, the Court agreed that Dr. Oliver's expert report improperly contained a new theory of infringement that was materially different from what Taction had presented in its final infringement contentions and therefore struck those opinions. (*See id.* at 10–24.) Regarding Apple's second argument, the Court concluded that even if it declined to strike Dr. Oliver's opinions, Apple would still be entitled to summary judgment on noninfringement because, even when Dr. Oliver's opinions are considered, the accused products do not satisfy the "highly damped output" limitation. (*Id.* at 24–42.) In reaching these conclusions, the Court also revised its construction of "highly damped output" to mean "the transducer is highly damped (i.e., the output is substantially uniform or flat over the normal operating frequency of the device); "that the highly damped output be achieved by mechanical damping"; and "the transducer has a Q-factor of less than 1.5". (*See id.*)

Accordingly, the Court granted Apple's Motion for Summary Judgment. (*See id.* at 42–43.) In doing so, the Court also vacated as moot any remaining arguments raised in Apple's Motion: the Asserted Patents are invalid as indefinite (Mot. at 35–38); the Asserted Patents are invalid for lack of written description (*id.* at 24–34); the Monolithic Products

do not have "a plurality of magnets" and do not infringe literally or under the doctrine of equivalents (*id.* at 38–40); and Taction cannot obtain pre-suit damages (*id.* at 40–45).

On August 25, 2025, Taction filed a Notice of Appeal to the Federal Circuit regarding the Court's Claim Construction Order (*see* Claim Const. Order), the Order Denying Taction's Motion for Leave to Amend Complaint (*see* "Order Denying Leave to Amend Complaint," ECF No. 318), the Order Granting Apple's Motion for Summary Judgment (*see* MSJ Order), and the Clerk's Judgment (*see* ECF No. 379). (ECF No. 418.)

**IV. The Federal Circuit's Opinion on Appeal**

On August 13, 2025, the Court of Appeals for the Federal Circuit vacated and remanded this Court's grant of summary judgment of noninfringement for two reasons. *See generally Taction Tech., Inc. v. Apple Inc.*, No. 2023-2349, 2025 WL 2336950 (Fed. Cir. Aug. 13, 2025). First, the Federal Circuit found that the Court abused its discretion in striking Dr. Oliver's infringement contentions. *Id.* at *2–3. Second, it found the Court erred in construing the asserted claims. *Id.* at *3–6. Specifically, the Federal Circuit agreed with this Court that the asserted claims are limited to "transducers with highly damped output," but disagreed that "highly damped" is limited to mechanical damping or that it requires a Q-factor of less than 1.5. *Id.* at *3. As a result of the Federal Circuit's conclusion, the construction of "highly damped output" for purposes of the remaining summary judgment issues contains only the following limitation: "the transducer is highly damped (*i.e.*, the output is substantially uniform or flat over the normal operating frequency of the device.)."

**V. The Remaining Issues on Remand**

On remand, Apple seeks summary judgment on the three issues initially raised, but vacated as moot, in its Motion for Summary Judgment: (1) the Asserted Patents are invalid; (2) the monolithic products do not infringe; and (3) Taction cannot obtain pre-suit damages. (*See* Apple Suppl. at 3–12.) In response, Taction argues the Federal Circuit's decision "effectively foreclosed" Apple's grounds for summary judgment on grounds of invalidity. (*See* Taction Suppl. at 6–8.) Taction further argues summary judgment on non-

infringement for the "plurality of magnets" limitation should be denied because the record establishes a triable question as to whether a subset of the Accused Products infringes this limitation literally or under the doctrine of equivalents. (*See id.* at 8–11.) Taction also urges the Court to reconsider its prior Order Denying Taction's Motion for Leave to Amend Complaint "in light of additional, relevant caselaw and the unique posture of this case" with respect to the issue of entitlement to pre-suit damages. (*See* Taction Suppl. at 12–13.)

Additionally, Apple seeks this Court's permission to serve updated invalidity contentions and expert reports on Taction, in exchange for granting Taction's request for supplemental discovery on Apple products released since the case was stayed pending appeal (the "new products"). (*See* Apple Suppl. at 12.) Apple also requests a briefing schedule and an order resolving its Objections to Magistrate Judge Burkhardt's Orders granting non-parties motion to quash (ECF No. 367) and denying in part Apple's motion to compel (ECF No. 371). While Taction agrees that limited supplemental discovery is needed, it disagrees with Apple regarding the scope of that discovery. (*See* Taction Suppl. at 13.) Taction argues Apple's requests to conduct discovery on prior art, including its own products (*e.g.*, the iPhone 6 or the iPhone 6 plus), should be denied because Apple should have investigated this during fact discovery. (*See id.*; *see also* Taction Suppl. Reply at 9.) Further, Taction argues Apple's requests for briefing to resolve the Objections to Magistrate Judge Burkhardt's Orders is unnecessary because those issues are decided, and only Apple's objections remain to be ruled on. (*See* Taction Suppl. Reply at 9.) Thus, Taction contends no further briefing is necessary and argues Apple's Objections should be denied. (*See id.* at 9.)

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are facts that, under the governing substantive law, may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex*, 477 U.S. at 323. A moving party without the ultimate burden of proof at trial can satisfy its burden in two ways: (1) by presenting "evidence negating an essential element of the nonmoving party's claim or defense;" or (2) by demonstrating "that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party establishes the absence of a genuine dispute as to any material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); *accord Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." *Anderson*, 477 U.S. at 256; *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 256.

When ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed." *Id.* Further, the court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *see*

*also Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("[A] district court has no independent duty 'to scour the record in search of a genuine issue of triable fact.'").

## DISCUSSION

The Court begins with the Parties' arguments regarding the issues initially raised in Apple's Motion for Summary Judgment that were previously vacated as moot. The Court then addresses the Parties' arguments regarding additional discovery and briefing.

### I. Apple's Motion for Summary Judgment Regarding Invalidity[3]

Apple argues that without the two limitations removed by the Federal Circuit, Taction's asserted claims are invalid. (*See* Apple Suppl. at 3.) Taction argues the Federal Circuit's decision resolved all issues relating to the "highly damped output" limitation, and thus invalidity need not be addressed on summary judgment. (*See* Taction Suppl. at 4.)

#### *A. Legal Standards*

A patent is "presumed valid." 35 U.S.C. § 282. Thus, the burden of establishing the invalidity of a patent or any claim thereof is on the party challenging validity. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011). Further, the party challenging validity must prove invalidity by clear and convincing evidence. *See id.* Accordingly, "a

---

[3] Following the Federal Circuit's decision, the construction of the term "wherein the ferrofluid reduces at least a mechanical resonance" and its variants (*see* MSJ Order at 8-9, 38–39) is now "where in the ferrofluid reduces at least a mechanical resonance within the frequency range of 40–200 Hz, *and wherein the output of the transducer is highly damped (i.e., the output is substantially uniform or flat over the normal operating frequency range of the device)*." *See Taction Tech.*, 2025 WL 2336950 at *3–6 (emphasis added). The Court applies this limitation to the claim terms at issue with respect to Apple's remaining summary judgment arguments.

This Court previously found that Apple was entitled to summary judgment of noninfringement because no reasonable juror could conclude the Accused Products satisfied the now removed limitations. (*See* MSJ Order at 39–42.) Importantly, the Court did not render an opinion as to whether a reasonable juror could conclude the Accused Products satisfy the remaining limitation. (*See generally id.*) Thus, should this Court find the asserted claims valid, then it may properly conclude there exists a genuine issue of material fact as to infringement of the asserted claims as construed by the Federal Circuit. *See* Fed. R. Civ. P. 56(a); *cf. Eli Lilly & Co. v. Barr Lab'ys, Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001) (finding no genuine issue of material fact exists upon which a reasonable jury could find the asserted claims valid and thus affirming the district court's grant of summary judgment for the patentee).

moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Lab'ys, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). The Court follows usual summary judgment considerations in evaluating whether the nonmoving party has produced such evidence: "view[ing] the evidence in the light most favorable to the nonmoving party and resolv[ing] all doubts in [the nonmoving party's] favor." *Id.* (citing *Anderson*, 477 U.S. at 248–49).

*1. Definiteness, 25 U.S.C. § 112(b)*

"[A patent] specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 25 U.S.C. 112(b). "[A] patent's claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonably certainty." *Nautilius, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Id.* (citations omitted). "While indefiniteness is a question of law, it requires factual determinations as to what one skilled in the art would have understood at the time." *Viva Healthcare Packaging USA Inc. v. CTL Packaging USA Inc.*, 197 F. Supp. 3d 837, 858 (W.D.N.C. 2016) (collecting cases). Accordingly, summary judgment is inappropriate where "expert evidence addressing what one skilled in the art would have understood by looking at [the] patent is in conflict." *Id.* (collecting cases). The nonmoving party may oppose summary judgment based on expert testimony by pointing "to an evidentiary conflict created on the record at least by a counter statement of fact or facts set forth in detail in an affidavit by a knowledgeable affiant." *Id.* (citing *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984)).

/ / /

/ / /

*2. Written Description, 25 § U.S.C. 112*

"The [patent] specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . ." 35 U.S.C. 112(a); *see Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). "[T]he test for sufficiency of a patent's written description is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the [patent's] filing date." *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1365 (Fed. Cir. 2019) (quoting *Ariad Pharms.*, 598 F.3d at 1351) (internal quotation marks omitted). "[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the claimed inventor actually invented the invention claimed." *Ariad Pharms.*, 598 F.3d at 1351. "Compliance with the written description requirement is a question of fact, but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1340 (Fed. Cir. 2016) (quoting *PowerOasis, Inc. v. T–Mobile USA*, Inc., 522 F.3d 1299, 1307 (Fed. Cir. 2008)); *accord Ariad Pharms.*, 598 F.3d at 1351.

***B. Analysis***

*1. Indefiniteness Under Section 112(b)*

a. Whether the Federal Circuit Considered Indefiniteness

Apple argues, as a threshold matter, the Federal Circuit's opinion does not address indefiniteness, and thus the issue remains live on remand. (*See* Apple Suppl. at 4; *see* Apple Suppl. Reply at 2 (citing *Singleton v. Wulff*, 428 U.S. 106, 102 (1976).) Apple contends that "[t]he mere fact that the Federal Circuit reached a construction of the claim language—by modifying the construction this Court had adopted—does not make the construed term definite." (Apple Suppl. at 4 (citing *Halliburton Energy Servs., Inc. v. M-*

*I LLC*, 514 F.3d, 1244, 1251 (Fed. Cir. 2008).) In contrast, Taction argues the Federal Circuit's decision "forecloses" the indefiniteness argument with respect to summary judgment. (*See* Taction Suppl. at 6.) Specifically, Taction contends "the Federal Circuit necessarily concluded that a Q-factor limitation was not required to render the term 'highly damped output' sufficiently clear and unmistakable for a disclaimer." (*Id.* at 7.) In response, Apple argues Taction's assumption that a term resulting from a disclaimer cannot be indefinite is incorrect as a matter of law. (*See* Apple Suppl. Reply at 2.)

Apple correctly explains that "[i]n holding *the disclaimer* was sufficiently clear and unmistakable, the Federal Circuit did not address whether the resulting claim language meets the definiteness requirement." (Apple Suppl. Reply at 3 (emphasis in original).) Indeed, the Federal Circuit made no explicit mention of the issue of indefiniteness, considering it was not an issue decided by this Court (*see generally* MSJ Order) and thus was not raised by either of the Parties on appeal. *See generally Taction Tech.*, 2025 WL 2336950. In general, an appellate court will not consider an issue not passed upon below. *See Singleton*, 428 U.S. at 120. However, there are circumstances in which an appellate court is justified in resolving an issue not passed on below, including "where the proper resolution is beyond any doubt" or "where injustice might otherwise result." *Id.* (citations and internal quotations omitted). The relevant question is thus whether the Federal Circuit—in holding the disclaimer was sufficiently clear and indefinite—resolved the issue of indefiniteness "beyond any doubt." *Id.*

Taction argues that the standard for finding a prosecution history disclaimer is incompatible with that for finding indefiniteness. (*See* Taction Suppl. Reply at 6.) Taction explains:

> A disclaimer would be neither "clear" nor "unmistakable" if it was not "reasonably certain" what was disclaimed. *Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic*, LLC, 799 F. App'x 847, 853 (Fed. Cir. 2020) (reversing a finding of indefiniteness because the claim "provides a clear, reasonably certain boundary"). Indeed, the Federal Circuit has explained that a court cannot find a prosecution-history disclaimer when "the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable

> interpretations.'" *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016). It follows *a fortiori* that a prosecution-history disclaimer cannot be so uncertain as to render the patent claims indefinite.

(*Id.*) Taction also argues "Apple has yet to cite any decision in which a court found a clear and unmistakable prosecution-history disclaimer but then invoked that disclaimer to declare the patent invalid for indefiniteness." (Taction Suppl. at 7.) But Taction also fails to cite any decision showing that a clear and unmistakable prosecution-history disclaimer automatically renders the claim definite. (*See generally id.*; Taction Suppl. Reply.) Consequently, this Court is unpersuaded that the Federal Circuit's opinion with respect to the claim limitations resolved the issue of indefiniteness "beyond any doubt."

In rendering this Court's construction of the claim term at issue regarding the limitation "Q-factor less than 1.5" erroneous because there was no clear and unmistakable disavowal of that limitation, the Federal Circuit did not also necessarily hold the entire claim definite as a result. "The test for definiteness under 35 U.S.C. § 112(b) is whether the *claim*, read in light of the specification and the prosecution history, would inform those skilled in the art about the scope of the invention with reasonable certainty." MPEP 2173.02. (emphasis added). Prosecution history disclaimer, however, is specific to claim scope—that is, it is used in determining the meanings of *terms* in the claims. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) (citations omitted). Accordingly, the Court **AGREES** with Apple that the prosecution history disclaimer test is separate from the test for indefiniteness.

Finding the issue of indefiniteness ripe for adjudication, the Court now turns to the Parties' substantive arguments regarding whether Apple is entitled to summary judgment of invalidity as to indefiniteness. Apple raises two main arguments regarding indefiniteness: (1) "highly damped" and "substantially uniform" are terms of degree with no objective boundary, and (2) damping can be measured in multiple ways, with different results, and one of skill in the art would not know which test to use. (Apple Suppl. at 6.) The Court addresses each in turn.

b. The Terms "Highly Damped" and "Substantially Uniform"

Apple argues it is entitled to summary judgment on the issue of indefiniteness because the terms "highly damped" and "substantially uniform" are terms of degree with no objective boundary. (Apple Suppl. at 5.) Apple contends these terms are indefinite because their scope cannot be determined with reasonable certainty (*i.e.*, the Asserted Patents do not provide those boundaries). (*See* Apple Suppl. Reply at 4.) To support this argument, Apple relies on the testimony of Taction's inventor, Dr. Biggs. (*See* Apple Suppl. at 5 (citing ECF No. 301-1 at 448).) In response, Taction contends Apple's argument fails for two reasons. (*See* Taction Suppl. Reply at 7.) First, Taction argues that relative terms, such as "substantially," do not automatically render a claim indefinite. (Taction Suppl. at 8; *see also* Taction Suppl. Reply at 7 (citing *Deer & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1359 (Fed. Cir. 2012).) Next, Taction argues Apple improperly relies on extrinsic evidence (*i.e.*, the expert testimony of Dr. Biggs) to understand the meaning of the claims. (*See* Taction Suppl. Reply at 7.)

To begin, Taction is correct that Apple improperly advocates for the application of extrinsic evidence in determining whether the claims at issue are definite. *See Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705–06 (Fed. Cir. 1998). Indeed, "[i]f the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence." *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1258, 1287 (Fed. Cir. 2021). However, "[w]here the intrinsic record is ambiguous, and when necessary[,]" district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting *Philips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). The Court thus **MAINTAINS** its prior disposition that modifying Taction's

/ / /

/ / /

/ / /

proposed construction[4] of the phrase "highly damped output" to mean "substantially uniform or flat" is well supported by the intrinsic record—that is, the specification and prosecution history. (*See generally* MSJ Order.) The Court also **FINDS** this construction is supported by Apple's previously proposed construction for the relevant claim terms. (*See id.* at 30–31.) Having concluded that the specification and prosecution history of the Asserted Patents are sufficient to inform one skilled in the art of the meaning of the claim language "highly damped output" and "substantially uniform," and considering this construction was not challenged or otherwise modified on appeal, the Court **DECLINES** to consider the expert testimony cited by Apple. *See Personalized Media Commc'ns, LLC*, 161 F.3d at 706 ("Extrinsic evidence may not be relied upon during claim construction when the intrinsic evidence unambiguously defines the disputed claim language.").

Apple presents no additional arguments—aside from Dr. Biggs' testimony—that the scope of the claim terms at issue are indefinite "because their scope cannot be determined with reasonable certainty." (*See* Apple Suppl. Reply at 4.) Moreover, any argument that relative terms such as "substantially" render patent claims "so unclear as to prevent a person of skill in the art from ascertaining the scope of a claim" as a matter of law fails to establish indefiniteness. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1359 (Fed. Cir. 2012) (citations omitted). Accordingly, the Court **REJECTS** Apple's argument.

c. Methods of Measuring Whether an Output is "Highly Damped"

Apple argues the claim term "highly damped" renders the claims indefinite because "it specifies a characteristic that can be measured using multiple methods; those methods produce materially different results; and it is unclear which method should be used."

---

[4] Taction's proposed construction of the phrase "highly damped output" was "output that is generally uniform of flat" over the normal operating frequency range of the device. (Opp'n at 20–24; *see also* Oliver Expert Report ¶ 607.) In order to resolve a dispute between Apple and Taction regarding this construction in the Summary Judgment Order (*see* MSJ Order at 30), the Court changed the phrase to "substantially uniform or flat" in order to better match the actual language in the specific and prosecution history. This construction was neither disputed nor reversed on appeal. *See generally Taction Tech.*, 2025 WL 2336950.

(Apple Suppl. at 10–11 (citing *Teva Pharms. USA Inc. v. Sandoz Inc.*, 789 F.3d 1335, 1338–44; *Dow Chem. Co. v. Nova Chem. Corp.*, 803 F.3d 620, 630–31 (Fed. Cir. 2015)); *see also* ECF No. 435 ("Suppl. MSJ Hearing") at 16:18–20.) In response, Taction argues Dr. Oliver uses only a single method that relies on "variable output" testing to determine the output, which can be expressed in various measurements (*e.g.*, acceleration, velocity, displacement, and power measurements). (Taction Suppl. Reply at 8.) To support its argument, Taction explains that the output measurements Dr. Oliver uses are mathematical functions of each other, such that one skilled in the art could easily convert between them. (*See id.*)

First, Apple points out that the Asserted Patents identify measuring acceleration by applying a constant input (*i.e.*, steady-state sinusoidal voltages) to produce a response that is "substantially uniform" in nature. (Apple Suppl. at 7–8 (citing '885 Patent at 2:1-10, 3:53-58, 5:49-52, 9:19-24).) Apple contends this is different from the input Dr. Oliver used for purposes of this case. (*See id.* at 8–11.) Apple argues that Dr. Oliver instead created a new method of testing frequency response output which involves applying a variable input to the vibration module and measuring mechanical power. (*See id.* at 8 (citing ECF No. 298-2 ("Oliver Expert Report") ¶¶ 573, 582, 609, 617).) In response, Taction argues the input used, whether variable or constant, is not relevant because the claims are "silent as to *how* damping is achieved." (Taction Suppl. Reply at 9 (citing *Taction Tech.*, 2025 WL 2336950, at *5) (emphasis in original); *see* Suppl. MSJ Hearing at 48:13–52:3.) Indeed, the Federal Circuit concluded that the specification "is broad enough to encompass non-mechanical damping." *Taction Tech.*, 2025 WL 2336950, at *4. Because input is not a limitation on the claims, *see id.*, the Court **AGREES** with Taction.[5]

---

[5] Apple presents two other indefiniteness arguments related to methods of measuring whether an output is "highly damped": the Asserted Patents lack guidance as to an acceptable Q-factor (*see* Apple Suppl. at 7) and "highly damped output" must be limited to an acceleration frequency response of "+/-0.15 g range" (*see id.* at 9–10). Because the Q-factor limitation was reversed on appeal (*see Taction Tech.*, 2025 WL 2336950, *5–6), and because there is no limitation regarding acceleration frequency response value (*see generally* Claim Const. Order; MSJ Order), the Court **REJECTS** both arguments.

Next, Apple indicates that Dr. Oliver's test uses a different unit of measurement than what is embodied in the Asserted Patents: whereas Dr. Oliver's test produces results measured in terms of displacement, velocity, and mechanical power (*see* Oliver Expert Report ¶ 575), the Asserted Patents contain a figure which measures frequency response output in terms of acceleration (*see, e.g.*, '885 Patent, Fig. 5C). (Apple Suppl. at 7–9.) Apple argues these differences yield "materially different results," thus rendering the claims indefinite because a person of ordinary skill would not know which to apply. (Apple Suppl. at 11.) Taction disagrees, arguing the results do not materially differ because acceleration and power are related mathematical functions. (*See* Suppl. MSJ Hearing at 52:7–19.) The Court **AGREES** with Taction. As Taction's counsel explained at the hearing, with respect to measuring movement, *displacement* is the amount moved, *velocity* is the relative movement per second, *acceleration* is the change in velocity over time, and *power* is the amount of force—a function of mass and acceleration—required to cause a displacement over a specific amount of time. (*See* Suppl. MSJ Hearing at 52:10–19.) Moreover, Newton's Second Law of Motion provides that the acceleration of a mass is directly proportional to and in the same direction as the net external force acting on the mass. *See* NORMAN FEATHER, AN INTRODUCTION TO THE PHYSICS OF MASS, LENGTH, AND TIME 126–28 (University Press, 1959). Accordingly, the Court is not persuaded by Apple's argument that acceleration and mechanical power constitute "materially different results."

Viewing the evidence in the light most favorable to Taction and resolving all doubts in Taction's favor, the Court **FINDS** Apple failed to produce clear and convincing evidence upon which a reasonable jury could invalidate the patent for indefiniteness.[6] *See Eli Lilly*, 251 F.3d at 962. Accordingly, to the extent Apple seeks summary judgment regarding this

---

[6] Apple filed an *Ex Parte* Motion for Leave to File Notice of Supplemental Authority requesting the Court's consideration of *Akami Techs., Inc. v. MediaPointe, Inc.,* No. 2024-1571, Doc. 48 (Fed. Cir. Nov. 25, 2025), which post-dates the Parties' supplemental briefs. (*See generally* ECF No. 436.) The Court considered this opinion in reaching its decision but does not find reason to change its disposition.

issue, the Motion is **DENIED.** *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 876 F. Supp. 2d 857, 872 (S.D. Tex. 2012) (finding summary judgment inappropriate where expert evidence addressing what one skilled in the art would have understood by looking at the patent was in conflict); *see also N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993) ("[W]hile the parties in the midst of a dispute have disagreed concerning the meaning of the claims, the claims are not so lacking clarity as to be invalid under section 112.").

*2. Lack of Written Description Under Section 112(a)*

As a preliminary matter, Apple argues "the Federal Circuit simply did not address whether [the inventor] was in possession of transducers that are non-mechanically damped." (Apple Suppl. Reply at 5.) In response, Taction argues the Federal Circuit's holding forecloses Apple's argument that the patents lack a written description because they fail to disclose the sort of non-mechanical damping performed by the Accused Products. (*See* Taction Suppl. at 7.) Following the same reasoning applied to Taction's "foreclosure" argument with respect to indefiniteness (*see supra* Section I.B.1), the Court **CONCLUDES** that the issue of written description is now ripe for decision.

Moving beyond the threshold issue of ripeness, the Court considers Apple's argument that Taction has enlarged the scope of the claims beyond what is supported in the specification, and thus the claims must be invalid for lack of written description. (*See* ECF No. 299-1 at 24–28.) Apple contends "[t]he only embodiment and teaching in the specification of a transducer with highly damped output is damped by ferrofluid—a mechanical damper." (Mot. at 26.) Taction disagrees, citing expert testimony opining that a person of skill in the art would have understood, given the specification and claims of the Asserted Patents, that additional damping could be provided beyond purely mechanical means. (*See* Opp'n at 35.) The Court **AGREES** with Taction.

Viewing the evidence in the light most favorable to Taction and resolving all doubts in Taction's favor, the Court **FINDS** Apple failed to produce clear and convincing evidence upon which a reasonable jury could invalidate the patent for lack of written description.

*See Eli Lilly*, 251 F.3d at 962. Because there are genuine issues of material fact with respect to whether one skilled in the art would have understood the Asserted Patents to disclose the sort of non-mechanical damping performed by the Accused Products, to the extent Apple seeks summary judgment regarding this issue, the Motion is **DENIED.** *See, e.g.*, *Centrak, Inc. v. Sonitor Technologies, Inc.*, 915 F.3d 1360, 1367–68 (Fed. Cir. 2019); *Leveraged Innovations, LLC v. NASDAQ OMX Group, Inc.*, 2013 WL 441051, *1 & *5 (S.D. N.Y. 2013) (both standing for the proposition that when there is non-conclusory expert testimony relevant to the issues under consideration, summary judgment is generally improper).

## II. Apple's Motion for Summary Judgment of Non-Infringement

### *A. Legal Standard*

A patent infringement analysis proceeds in two steps. *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350 (Fed. Cir. 2022); *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1329 (Fed. Cir. 2005). In the first step, the court construes the asserted claims as a matter of law. *See Niazi*, 30 F.4th at 1351; *JVW*, 424 F.3d at 1329. In the second step, the factfinder compares the properly construed claims to the accused device. *See id.*

"'The patentee bears the burden of proving infringement by a preponderance of the evidence.'" *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1314 (Fed. Cir. 2011); *see Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 193 (2014) ("A patentee ordinarily bears the burden of proving infringement."). "To prove infringement, the plaintiff bears the burden of proof to show the presence of every element or its equivalent in the accused device." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011); *accord Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011). Under the doctrine of equivalents, "a product or process that does not literally infringe . . . the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton*

*Davis Chem. Co.*, 520 U.S. 17, 21 (1997); *accord Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020).

The Federal Circuit "applies two articulations of the test for equivalence." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (citing *Warner–Jenkinson*, 520 U.S. at 21); *see UCB, Inc. v. Watson Lab'ys Inc.*, 927 F.3d 1272, 1284 (Fed. Cir. 2019). Under the insubstantial differences test, "'[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.'" *UCB*, 927 F.3d at 1284 (quoting *Voda*, 536 F.3d at 1326). "Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" *Voda*, 536 F.3d at 1326 (quoting *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1209–10 (Fed. Cir. 2001)); *see Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1356 (Fed. Cir. 2019). "Regardless how the equivalence test is articulated, 'the doctrine of equivalents must be applied to individual limitations of the claim, not to the invention as a whole.'" *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1357 (Fed. Cir. 2012) (quoting *Warner–Jenkinson*, 520 U.S. at 29).

"'Infringement is a question of fact.'" *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1327 (Fed. Cir. 2021) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009)). "Summary judgment of noninfringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015); *see EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1201 (Fed. Cir. 2014).

/ / /

/ / /

/ / /

/ / /

### *B. Analysis*[7]

Apple argues the monolithic products do not infringe literally or under the doctrine of equivalents because, as explained by this Court, "Taction's contention that the claimed 'magnets' can be subsidiary pieces of material on a single body is not supported by the claim language." (Apple Suppl. at 12.) Specifically, Apple contends summary judgment of no literal infringement should be granted because the monolithic products do not include "a plurality of magnets." (Apple Suppl. Reply at 5–6.) Apple also contends summary judgment of no infringement under the doctrine of equivalents should be granted because Taction's theory—which reads the claim to cover a single magnet—vitiates the limitation requiring a plurality of magnets, and a vitiation is a "legal determination" not precluded by any alleged issue of fact. (*Id.* at 6.) Taction argues the record establishes a triable question as to whether the relevant subset of the Accused Products infringes the "plurality of magnets" limitation literally or under the doctrine of equivalents. (Taction Suppl. at 8.)

Every asserted claim includes the claim limitation of a "plurality of magnets." *See generally* '885 Patent; '117 Patent. In the Claim Construction Order, the Court construed the claim term "magnet" as "a body that produces a magnetic field based on the body's dipolar nature." (Claim Const. Order at 28.) In addition, the Court construed the term "plurality of magnets" as "as least two physically distinct magnets." (*Id.* at 29.)

#### *1. Literal Infringement*

Apple is correct in asserting it is entitled to summary judgment for non-infringement with respect to Taction's literal infringement allegations for the claimed "plurality of magnets" limitation for the Monolithic Products. Apple sufficiently demonstrates there is no genuine dispute as to any material fact by presenting evidence that negates Taction's argument that the Monolithic Products include at least two physically distinct magnets.

---

[7] Like its original Motion for Summary Judgment, Apple again argues the Court should strike Dr. Oliver's alleged "new infringement theories" regarding the monolithic products. (Apple Suppl. at 12.) But the reasoning behind Apple's argument is precisely what the Federal Circuit overturned on appeal. *See Taction Tech.*, 2025 WL 2336950, *2–3. Accordingly, the Court **REJECTS** this argument.

(*See* Mot. at 38–39.) *See Celotex Corp.* 477 U.S. at 322; *Nissan Fire & Marine Ins. Co.* 210 F.3d at 1102. In its Motion for Summary Judgment, Apple includes a photograph from Taction's claim charts showing there is only one physically distinct magnet in the Monolithic Products:




(*Id.* at 39.) Apple asserts that the photograph confirms there is only one "physically distinct body," which is consistent with the Court's construction of the term "magnet." (*Id.*; *see* Claim Const. Order at 28.)

In its Opposition to Apple's Motion for Summary Judgment, Taction fails to set forth specific facts showing there is a genuine dispute as to whether the Monolithic Products include more than one physically distinct magnet. (*See* Opp'n at 27–38.) *See T.W. Elec. Serv.*, 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)). Taction asserts that the Court has not yet decided the issue of whether the claimed "magnets" can be subsidiary pieces of material on a single body. (Opp'n at 38.) However, the Court expressly held in its Claim Construction Order that "Taction's contention that the claimed 'magnets' can be subsidiary pieces of material on a single body is not supported by the claim language." (*See* Claim Const. Order at 23–24.)

For these reasons, the Court **GRANTS** summary judgment of non-infringement for Apple with respect to Taction's literal infringement allegations for the claimed "plurality of magnets" limitation for the Monolithic Products.

2. *Infringement Under the Doctrine of Equivalents*

Regarding Taction's infringement claims under the doctrine of equivalents for the claimed "plurality of magnets" limitation for the Monolithic Products, Dr. Oliver's expert report is sufficient to create a genuine dispute of material fact. (*See* Oliver Expert Report

¶¶ 770, 774, 778, 787–90). The portions of Dr. Oliver's expert report contain opinions which apply and explain Taction's doctrine of equivalents theory under the function-way-result test, which Taction adequately disclosed in its infringement contentions. (*See* Opp'n at 3–6.) *See, e.g.*, *ViaSat, Inc. v. Space Sys./Loral, Inc.*, 2013 WL 2907735, at *2 (S.D. Cal. Dec. 6, 2013) (denying defendant's motion to strike portions of plaintiff's expert report because plaintiff's infringement contentions provided defendants with sufficient notice its claim of infringement under the doctrine of equivalents.) Thus, the Court **AGREES** with Taction that Apple is not entitled to summary judgment of non-infringement under the doctrine of equivalents.

Dr. Oliver's infringement report—consistent with Taction's infringement contention—asserts that the Monolithic Products satisfy the function-way-results test. (*See* Oliver Expert Report ¶ 774; *accord* ECF No. 313-4, Ex. 7 at 351.) Specifically, Dr. Oliver opines: "The Accused Products perform the same function (e.g., producing magnetic fields proximate to one or more conductive coils), in the same way (e.g., by including a plurality of magnetically polarized areas in the moving mass), to achieve the same result (e.g., allowing the moving mass to be urged laterally when electrical current is applied to one or more conductive coils) as the claimed "plurality of magnets." (Oliver Expert Report ¶ 774.)

In light of these opinions by Dr. Oliver, Apple has not shown there is no genuine dispute as to any material fact for purposes of Taction's infringement allegations under the doctrine of equivalents. Viewing the facts and drawing all reasonable inferences in the light most favorable to Taction, a reasonable jury could find that the Monolithic Products contain a "plurality of magnets" under the doctrine of equivalents. *See Scott* 550 U.S. at 378; *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case." (quoting *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996))).

Accordingly, the Court **DENIES** summary judgment of non-infringement for Apple with respect to Taction's infringement allegations under the doctrine of equivalents for the claimed "plurality of magnets" limitation for the Monolithic Products.

## III. Apple's Motion for Summary Judgment of No Pre-Suit Damages

### *A. Legal Standard*

The marking statute, 35 U.S.C. § 287, provides, in relevant part:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). "The patent marking statute limits recoverable damages where a patentee fails to mark her patented products." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1378 (Fed. Cir. 2013). Specifically, if "a patentee makes or sells a patented article and fails to mark in accordance with [Section] 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("Arctic Cat II"). The Federal Circuit has "explained that the marking statute serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("Arctic Cat II").

/ / /

"Compliance with [Section] 287 is a question of fact." *Id.* "The patentee bears the burden of proving compliance by a preponderance of evidence." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998); *see also Arctic Cat I*, 876 F.3d at 1366 ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."). Despite this, compliance with Section 287(a)—or lack thereof—can appropriately be resolved on summary judgment. *See Celotex*, 477 U.S. at 322; *see, e.g., Kadant Johnson, Inc. v. D'Amico*, No. CIV.A 10-2869, 2012 WL 38319, at *6 (E.D. La. Jan. 9, 2012) (finding it appropriate to resolve the issue of compliance with the marking statute at summary judgment despite the issue being a question of fact).

***B. Analysis***

Apple moves for summary judgment of no pre-suit damages on grounds of the Court's prior finding that Taction's proposed marking amendment would not survive a motion for summary judgment. (Mot. at 40–45; *see* Apple Suppl. at 12.) In response, Taction argues that Apple's Motion for Summary Judgment on this issue should be denied because a reasonable jury could find that Taction's combination of marking of the Taction Transporter and the packaging for the HS60 headset is sufficient to comply with the marking statute 35 U.S.C. § 287. (Opp'n at 38–45.)

On June 15, 2023, the Court denied Taction's Motion for Leave to Amend its Complaint to add allegations regarding the marking of its products. (*See* Order Denying Leave to Amend Complaint.) The Court held that because Taction's proposed marking amendment would not survive a motion for summary judgment, the proposed amendment would be futile. (*See id.* at 20–21.) Specifically, the Court held that Taction's markings on the Transporter were insufficient as a matter of law to demonstrate compliance with Section 287(a). (*See id.* at 17.) The Court further held the patent markings on the Corsair HS60 headset's packaging were insufficient as matter of law to comply with Section 287(a). (*See id.* at 18.) In addition, the Court rejected Taction's argument that two forms of marking that are each insufficient as a matter of law to comply with Section 287(a) can become sufficient by simply combining them. (*See id.* at 20.)

Taction acknowledges the Court's Order Denying Leave to Amend Complaint and that its holdings bear on the issues here. (*See* Opp'n at 31 n.15.) Taction clarifies that it only presents an argument on this issue "because the order did not grant summary judgment and because Taction respectfully disagrees with the conclusion, and wishes to preserve the issue for decision now and on appeal." (*Id.*) But Taction's Opposition mostly rehashes the same arguments it made in its briefing on its motion for leave to amend its complaint. (*See id.* 31–35.) To the extent Taction rehashes arguments, the Court is inclined to reject them for the same reasons it rejected them in the Order Denying Leave to Amend Complaint. (*See* Order Denying Leave to Amend Complaint at 17–20.) On remand, however, Taction requests reconsideration of the Court's prior reasoning and conclusion in light of additional caselaw and the present posture of this case. (*See* Taction Suppl. at 12.)

Taction contends that two months after the Court's Order Denying Leave to Amend Complaint, a court in the District of Delaware determined that material fact disputes precluded summary judgment based on a licensee's marking of the packing. (*Id.* (citing *EIS, Inc. v. IntiHealth Ger GmbH,* No. CV 19-1227-GBW, 2023 WL 6799332, at *4 (D. Del. Aug. 23, 2023).) That court explained, "one must consider the nature and characteristics of the product, how it is used, and the situation in which it is used when evaluating the sufficiency of marking a product." *EIS*, 2023 WK 6799332, at *4. In applying this test, the court found that the patentee and the relevant industry marked its packages rather than the products; therefore, the court held it could not conclude, as a matter of law, that the products failed to comply with the requirements of the marking statute. *See id.* (citing *Glob. Traffic Techs. LLC v. Morgan*, 602 F. App'x 895, 907 (Fed. Cir. 2015) ("Where marking on the packaging served as the most effective notice to the public of this product, given its multiple and hidden components, is a fact issue for trial."). Taction further contends the "unique posture" of this case provides sufficient time to mitigate any prejudice to Apple, as both parties have agreed to re-open limited discovery for new products. (*See* Taction Suppl. at 13.)

In response, Apple argues *EIS* did not change the law; rather, it applied *Global Traffic*, which this Court addressed in denying Taction's Motion for Leave to Amend its Complaint. (*See* Apple Suppl. Reply at 6; Order Denying Leave to Amend Complaint at 19.) Additionally, Apple argues the Parties' requests for additional discovery do not warrant reconsideration because this Court's finding of futility is both an independent reason for denying Taction's motion for leave to amend its complaint and unrelated to the procedural posture of this case. (*See id.*)

The court in *EIS*, like the Court here, (*see* Order Denying Leave to Amend Complaint at 19 (citing *Glob. Traffic. Techs.*, 620 F. App'x at 905)), considered the nature and characteristics of the product, how it is used, and the situation in which it is used to evaluate the sufficiency of marking a product in its Section 287(a) determination for summary judgment purposes. *See EIS*, 2023 WL 6799332, at *4 (citing *Glob. Traffic. Techs.*, 620 F. App'x at 905). However, the court in *EIS* found it could not conclude as a matter of law that certain products failed to comply with the marking statute under the circumstances of that case, including the undisputed fact that marking packaging is custom in that product's industry and the plaintiff's concession that it marks its packages rather than its products. *See id.* Such facts are not present here. Rather, this Court found—relying on the undisputed facts of this case—that Taction's failure to comply with Section 287(a) can appropriately be resolved on summary judgment. (*See* Order Denying Leave to Amend Complaint at 19–20.) Thus, just like the court in *EIS*, this Court applied the Federal Circuit's holding in *Global Traffic* to the circumstances before it. (*See id.* at 12–20.) Because the facts here are distinguishable from those in *EIS*, the Court reached a different result. (*See id.*) Thus, the Court **REJECTS** Taction's assertion that *EIS* changes the analysis of what is sufficient under Section 287 as a matter of law.

Finding Taction's arguments previously rejected in the Court's Order Denying Leave to Amend Complaint do not warrant reconsideration on remand, the Court now turns to Taction's remaining arguments regarding pre-suit damages. First, Taction continues to assert that the Taction Transporter itself is the patented article. (*See* Opp'n at 40 n.16.)

Independent claim 1 of the ’885 Patent claims “[a]n apparatus for imparting motion to the skin of a user,” ’885 Patent col. 14 l. 48, and independent claim 1 of the ’117 Patent claims an apparatus “wherein vibration of the apparatus imparts vibrations to a user’s skin.” ’117 Patent col. 14 ll. 58–59. Taction asserts that its expert “explains that applying voltage to the Transporter ‘drives a mass suspended inside it’ which creates a taction signal ‘to the skin of the wearer.’” (Opp’n at 40 n.16 (quoting Oliver Expert Report ¶ 1048).) But this still fails to adequately explain how the Transporter by itself can impart motion/vibration to the skin of a user. Accordingly, the Court is unpersuaded that the Transporter itself is the patented article at issue.[8]

Second, Taction argues that the character of the patented article makes marking the packaging preferable. (*See* Opp’n at 42–43.) In support of this argument, Taction cites to a declaration from Taction’s CEO John Steinberg. (*See id.*) This declaration is improper because it was not produced during the discovery phase of the case. Nevertheless, even if the Court were to consider the Steinberg declaration, it is insufficient to raise a genuine dispute of material fact on this issue. In his declaration, Steinberg states: “in my experience, it is very uncommon to mark the exterior of a headphone but the packaging is sometimes marked.” (ECF No. 323-13 (“Steinberg Decl.”) ¶ 9.) Steinberg’s experience regarding the headphone industry is of no consequence, as it is undisputed that the HS60 headset included other information printed or affixed to it, including Taction specific information that was required to be placed on it pursuant to the terms of the parties’ agreements. (*See* ECF No. 333, Ex. 3; ECF No. 273-9, Ex. 8.) In fact, Taction conceded at the initial summary judgment hearing that it is feasible to mark the headset. (*See* ECF No. 360.)

---

[8] Taction’s argument that the Transporter itself is the patented article is unpersuasive because it fails to address the following: by whom the Transporter, if by itself as opposed to being placed within a larger consumer device, is worn; how the Transporter is worn; and what sends power to the Transporter. Lacking answers to these questions, it is uncertain how the Transporter itself is the patented article.

In sum, Taction has failed as a matter of law to demonstrate that it properly marked its patented articles in accordance with Section 287; therefore, Apple is entitled to summary judgment of no pre-suit damages in this case. *See Arctic Cat II*, 950 F.3d at 864 ("If . . . a patentee makes or sells a patented article and fails to mark in accordance with [Section] 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1378 (Fed. Cir. 2013) ("Where a patentee does not appropriately mark her products, she may not recover damages for infringement occurring before notice to the infringer."). Accordingly, the Court **GRANTS** summary judgment for Apple as to no pre-suit damages.

## IV. Additional Discovery and Briefing Requests

Apple contends Taction has requested additional discovery on Apple products released since the case was stayed pending appeal. (*See* Apple Suppl. Reply at 12.) Apple states it does not oppose this request, if it is permitted to serve updated invalidity contentions and expert reports to address Dr. Oliver's new infringement theory and the new claim construction. (*Id.*) Specifically, Apple requests permission to add new prior art (and take corresponding third-party discovery) and to add the iPhone 6/6+ as anticipatory prior art, including testing them according to Dr. Oliver's alleged new theories. (*See id.*) Taction agrees that limited discovery is needed but disagrees with Apple as to the scope of said discovery. (*See* Taction Suppl. at 13.)

The Court **DENIES** Apple's request to add the iPhone 6/6+ as anticipatory prior art because the Court has already precluded Apple from asserting at trial that these particular devices satisfy the ferrofluid limitations and anticipate the asserted claims. (*See* ECF No. 265 at 18.) Additionally, the Court **DENIES** Apple's request on grounds that the Federal Circuit concluded Taction properly disclosed its infringement theories. *See Taction Tech.*, 2025 WL 2336950, at *2–3.

/ / /

## V. Apple's Renewed Rule 72(a) Objections

### *A. Legal Standard*

"A party may serve and file objections to [a magistrate judge's non-dispositive pretrial order] within 14 days after being served with a copy." *See* Fed. R. Civ. P. 72(a). "The magistrate judge's order will be upheld unless it is 'clearly erroneous or contrary to law.'" *Ctr. for Biological Diversity v. Fed. Highway Admin.*, 290 F. Supp. 2d 1175, 1199 (S.D. Cal. 2003) (quoting Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A)). "The 'clearly erroneous' standard applies to the magistrate judge's factual determination and discretionary orders and will be overturned 'only if the district court is left with the definite and firm conviction that a mistake has been made.'" *Id.* at 1199–1200 (quoting *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997)). "This standard of review reflects the broad discretion accorded to magistrate judges on pretrial matters." *Thunderbird Hotels, LLC v. City of Portland*, 670 F. Supp. 2d 1164, 1167 (D. Or. 2009) (citing *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002)), *aff'd*, 404 Fed. App'x 249 (9th Cir. 2010).

"The 'contrary to law' standard, however, permits independent review of purely legal determinations by the magistrate judge." *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000) (quoting *Computer Economics, Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999)) (citing *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)); *see also Computer Economics*, 50 F. Supp. 2d at 983 ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law." (quoting *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992))). "In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." 12 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 3069 (3d ed. Apr. 2021).

/ / /

/ / /

/ / /

/ / /

### ***B. Analysis***

#### *1. Magistrate Judge Burkhardt's Order Granting Non-Parties Kenosha Investments LP and Gronostaj Investments LLC's Motion to Quash Apple's Subpoenas*

On July 17, 2023, Magistrate Judge Burkhardt issued an Order Granting Non-Parties Kenosha Investments LP and Gronostaj Investments LLC's (collectively, "the Funders") Motion to Quash Apple's Subpoenas ("JLB Quash Order," ECF Nos. 343 (public), 344 (sealed).) On August 1, 2023, Apple filed an objection pursuant to Rule 72(a). (ECF No. 367.) Apple objects to Judge Burkhardt's ruling on grounds that the Funders failed to establish the withheld documents are subject to work product protection. (*See id.* at 4.) Apple further claims that, even if the withheld documents are subject to such protection, it should be entitled to discovery because it has a substantial need for this information. (*See id.*) For the reasons below, the Court **AGREES** with Magistrate Judge Burkhardt.

Apple argues the Funders are required—and failed—to establish the exact date they entered a community of interest with Taction to support their claim for work product protection and a lack of waiver. (*See id.* at 7.) Apple contends this date is essential because borrowers and lenders are adversarial before reaching an agreement, and adversarial communications whose primary purpose is to consummate a business deal do not constitute work product. (*See id.* at 7–9 (citing *Acceleration Bay LLC v. Activision Blizzard, Inc.*, Case No. 16-453-RGA, 2018 WL 793731, at *2 (D. Del. Feb. 9, 2018).) But Apple does not provide any authority supporting such a brightline rule. (*See generally id.*) Moreover, Magistrate Judge Burkhardt's Order found that all entries on the Funders' privilege log "provide[d] sufficient information from the date, subject, file name, and description to allow for an assessment of the claim of work-product privilege." (JLB WP Order at 8.) She also found the contractual and corporate relationships between the entities and individuals revealed in the Funders' log foreclosed the possibility of waiver. (*See id.* at 9.) Accordingly, the Court **FINDS** that Magistrate Judge Burkhardt did not commit an error of law in quashing Apple's subpoenas on grounds of work product without first

establishing the precise date the alleged community of interest arose. Rather, the Court **AGREES** with Magistrate Judge Burkhardt's reasoning that there was sufficient information regarding the Funders' relationship with Taction to determine which communications are subject to work product privilege and whether waiver occurred.

Apple also argues the Court should vacate Magistrate Judge Burkhardt's finding of work product "since it is unclear whose work product is claimed." (*See* ECF No. 367 at 9–10.) Apple contends that because the Funders are neither a party nor a party's representative, they cannot claim work product protection for themselves. (*Id.* at 10.) But Magistrate Judge Burkhardt found that the Funders "disclosed [their] corporate structure and contractual relationships in sufficient detail to demonstrate that [they] have a direct connection to the documents for which they and [Taction], by way of joinder, are claiming work product privilege." (JLB Quash Order at 8–9.) Magistrate Judge Burkhardt further found that "[d]ue to the nature of the Funders' relationship to this case, the dates of entries, and the description associated with the entries, the Funders have met their burden of demonstrating that the documents were created by or for Plaintiff or by or for Plaintiff's representatives in anticipation of ligation." (*Id.* at 8.) Thus, the Court **FINDS** Apple's argument regarding whose work product is claimed is without merit.

Lastly, Apple argues that, even if the Funders properly claimed work product, Apple is nonetheless entitled to discovery because of substantial need and undue hardship. (*See* ECF No. 367 at 12.) In her Order, Magistrate Judge Burkhardt explained that Apple "conflates its need for valuation evidence with its asserted need for evidence of valuation *from the Funders*." (JLB Quash Order at 11 (emphasis in original).) Problematically, Apple's Objection still fails to explain *why* the Funders are "the only avenues" for Apple to obtain the information it seeks. (ECF No. 367 at 13.) Thus, the Court **FINDS** that Apple has not established substantial need nor undue hardship. Apple further argues the "Funders failed to respond to Apple's argument that their agreements with Taction are necessary to evaluate the constitutional issue of standing." (*Id.* at 14.) But again, Apple fails to explain *why* the Funders are the only source of such information. Accordingly, the Court

**AGREES** with Judge Burkhardt that Apple has "failed to set forth sufficient factual or legal analysis to meet the specific showing required to overcome the qualified work-product privilege attached to all documents on the Founders' privilege log." (JLB Quash Order at 11.)

Finding Magistrate Judge Burkhardt's Order Granting Non-Parties Kenosha Investments LP and Gronostaj Investments LLC's Motion to Quash Apple's Subpoenas is not clearly erroneous or contrary to law, *see Ctr. for Biological Diversity*, 290 F. Supp. 2d at 1199, the Court **OVERRULES** Apple's Objection.

*2. Magistrate Judge Burkhardt's Order Granting in Part and Denying in Part Apple's Motion to Compel Discovery from Taction*

On July 20, 2023, Magistrate Judge Burkhardt issued an Order Granting in Part and Denying in Part Apple's Motion to Compel Discovery from Taction, finding that work product protection and attorney-client privilege applied to nine out of the eleven documents requested by Apple. ("JLB Compel Order," ECF Nos. 348 (public), 349 (sealed).) On August 3, 2023, Apple filed an objection pursuant to Rule 72(a). (ECF No. 371.) Apple objects to Magistrate Judge Burkhardt's ruling on grounds that "Taction cannot establish that either the attorney-client privilege or the work product privilege protections this information from production." (*Id.* at 5.) For the reasons below, the Court **AGREES** with Magistrate Judge Burkhardt.

Apple begins by arguing attorney-client privilege does not apply to either Taction's draft presentation or the withheld document consulted by Dr. Biggs during his deposition. (*See* ECF No. 371 at 12.) Regarding the presentation, Apple contends that because Taction did not allege the presentation contains any communications between attorney and client, or that the presentation was created by or at the request of an attorney, attorney-client privilege should not apply. (*See id.* at 15.) Regarding the withheld document, Apple similarly contends that because "Taction did not even argue that this withheld document was presented to lawyers," Magistrate Judge Burkhardt's finding that this document was protected by attorney-client privilege "is thus clearly erroneous." (*Id.* at 15.) In her Order,

Magistrate Judge Burkhardt specifically explained that "the content of these documents constitute confidential communication between a prospective client—Plaintiff [Taction]—and attorneys for the purpose of seeking legal representation and advice." (JLB Compel Order at 9.) This falls squarely within the definition of attorney-client privilege, *see United States v. Richey,* 632 F. 3d 559, 566 (9th Cir. 2011), and is contrary to Apple's assertions otherwise. Accordingly, the Court **FINDS** that these documents are subject to attorney-client privilege.

Next, Apple argues Magistrate Judge Burkhardt's Order incorrectly found that work product privilege attached on July 1, 2019, and incorrectly held that the work product doctrine applies to documents created on or after July 1, 2019. (*See* ECF No. 371 at 15.) Apple raises three points in support of this argument: (1) Taction failed to meet its burden of identifying the moment that the litigation was anticipated and work product protections attached; (2) Dr. Biggs' analysis was too remote from the litigation to qualify for protection; and (3) Apple should otherwise be entitled to discover this information because of substantial need and undue hardship. (*Id.* at 15–21.) Apple additionally argues Magistrate Judge Burkhardt's finding that waiver applies only to Dr. Biggs' July 1, 2019, analysis is contrary to law. (*Id.* at 21.) The Court **REJECTS** Apple's arguments for the reasons explained below.

To begin, that Taction failed to meet its burden of identifying the moment that work product protections attached is without consequence because "the Court's review of the withheld document—coupled with Dr. Biggs' testimony and Plaintiff's opposition—persuasively demonstrates to the Court that Plaintiff formed the intent to pursue litigation . . . starting no later than July 1, 2019." (JLB Compel Order at 11.) Moreover, Apple's argument that Dr. Biggs' analysis was "too remote" from the litigation to qualify for protection is unpersuasive because the totality of the circumstances supports Magistrate Judge Burkhardt's determination that the documents were created in anticipation of litigation. (*See id.* at 12–13.) Thus, the Court **AGREES** with Magistrate Judge

Burkhardt's finding that the work product doctrine applies to documents created on or after July 1, 2019.

The Court also **AGREES** with Magistrate Judge Burkhardt's finding that Apple has failed to demonstrate substantial need sufficient to overcome work product privilege. Apple contends there is a substantial need for it to obtain the withheld documents because no substantial equivalent exists. (*See* ECF 371 at 21.) As explained by Magistrate Judge Burkhardt, however, Apple's assertion that the information contained within these documents is unique does not show that it is essential. (JLB Compel Order at 18.) Considering Apple still has not demonstrated how this information is essential, the Court **FINDS** Magistrate Judge Burkhardt's finding was without clear error.

Finally, Apple argues Magistrate Judge Burkhardt's finding that waiver applies only to Dr. Biggs' July 1, 2019, analysis is contrary to law. (*See* ECF No. 371 at 21.) Apple contends "without the documents that reflect Dr. Biggs' analysis and related communications, Taction can continue using privilege as a sword and shield to its benefit and will den Apple any meaningful chance at rebuttal." (*Id.* at 22.) Indeed, the scope of waiver is to be limited to what is necessary to rectify any unfair advantage. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1124 (9th Cir. 2020). Accordingly, Magistrate Judge Burkhardt limited Dr. Biggs' waiver to observations and conclusions contemporaneous with his July 1, 2019, analysis. (JLB Compel Order at 16.) The Court **FINDS** this conclusion to be without error.

Finding Judge Burkhardt's Order Granting in Part and Denying in Part Apple's Motion to Compel Discovery from Taction is not clearly erroneous or contrary to law, *see Ctr. for Biological Diversity*, 290 F. Supp. 2d at 1199, the Court **OVERRULES** Apple's Objection.

**CONCLUSION**

In light of the foregoing, the Court **GRANTS** Apple's *Ex Parte* Motion for Leave to File Notice of Supplemental Authority, **GRANTS IN PART** and **DENIES IN PART** Apple's Motion for Summary Judgment, **DENIES** the Parties' Additional Discovery and

Briefing Requests, and **OVERRULES** Apple's Renewed Rule 72(a) Objections to Magistrate Judge Burkhardt's Orders.

**IT IS SO ORDERED.**

Dated: January 30, 2026

Honorable Todd W. Robinson
United States District Judge