UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TACTION TECHNOLOGY, INC.,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No.: 21-CV-812 TWR (JLB)

**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S *EX PARTE* MOTION TO STRIKE; (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S *DAUBERT* MOTIONS AND MOTIONS *IN LIMINE*; (3) GRANTING IN PART AND DENYING IN PART DEFENDANT'S *DAUBERT* MOTIONS AND MOTIONS *IN LIMINE*; (4) GRANTING JOINT MOTION FOR ORDER ENTERING AGREED-UPON MOTIONS *IN LIMINE*; (5) DENYING DEFENDANT'S *EX PARTE* MOTION FOR ADDITIONAL DEPOSITION AND LEAVE TO FILE MOTION TO STRIKE; (6) GRANTING PLAINTIFF'S RENEWED MOTIONS TO SEAL; AND (7) DENYING DEFENDANT'S MOTION TO SEAL**

(ECF Nos. 488, 491, 494, 495, 527, 528, 530, 535)

Presently before the Court is Plaintiff Taction Technology, Inc.'s ("Taction's") *Ex Parte* Motion to Strike Defendant Apple Inc.'s ("Apple's") Untimely Non-Infringement Theories ("Taction *Ex Parte* Mot.," ECF No. 488) as well as Apple's Response in Opposition to ("Taction *Ex Parte* Opp'n", ECF No. 516) Taction's *Ex Parte* Motion.[1] Also before the Court are Taction's *Daubert* Motions and Motions *in Limine* ("MILs") ("Taction MILs," ECF No. 494 (public), 493 (sealed)) as well as Apple's Response in Opposition to ("Taction MILs Opp'n," ECF No. 510 (public), 509 (sealed)) Taction's *Daubert* Motions and MILs; Apple's *Daubert* Motions and MILs ("Apple MILs," ECF No. 491 (public), 490 (sealed)) as well as Taction's Opposition to ("Apple MILs Opp'n," ECF No. 513 (public), 512 (sealed)) Apple's *Daubert* Motions and MILs; and the Parties' Joint Motion for Order Entering Agreed Upon MILs (ECF No. 495). The Court held oral arguments regarding these motions on July 9, 2026. (ECF No. 531.)

Additionally, presently before the Court is Apple's *Ex Parte* Motion for an Additional Deposition of Dr. Allison Mariko Okamura and for Leave to File an Additional Motion to Strike ("Apple *Ex Parte* Mot.," ECF No. 530), as well as Taction's Response in Opposition to ("Apple *Ex Parte* Opp'n," ECF No. 538) Apple's *Ex Parte* Motion. The Court considers Apple's *Ex Parte* Motion without oral argument pursuant to Civil Local Rule 7.1(d)(1).

/ / /

---

[1] Taction waived its right to file an optional reply in support of its *Ex Parte* Motion to Strike. (*See* Taction MTS at 4 n.1.)

Lastly before the Court are Taction's Renewed Motion to File Under Seal certain exhibits filed in connection with its *Ex Parte* Motion to Strike Portions of Apple's Supplemental Expert Reports and Amend the Schedule, Motion to Strike Apple's Untimely Non-Infringement Theories, and *Daubert* Motions and MILs (ECF No. 527); Taction's Renewed Motion to File Under Seal specific entries within its Pretrial Exhibit List (ECF No. 535); and Apple's Motion to File Under Seal exhibits in connection with its *Ex Parte* Motion for an Additional Deposition and Leave to File Motion to Strike (ECF No. 528).

Having carefully reviewed the Parties' arguments and the relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** Taction's *Ex Parte* Motion, **GRANTS IN PART** and **DENIES IN PART** Taction's *Daubert* Motions and MILs, **GRANTS IN PART** and **DENIES IN PART** Apple's *Daubert* Motions and MILs, **GRANTS** the Parties' Joint Motion for Order Entering Agreed Upon MILs, **DENIES** Apple's *Ex Parte* Motion, **GRANTS** Taction's Renewed Motions to Seal, and **DENIES** Apple's Motion to Seal.

## RELEVANT BACKGROUND

Several of the motions before the Court involve the "highly damped output" limitation. *See generally infra.* Accordingly, the Court first addresses the case history as it relates to that limitation. In doing so, the Court finds it necessary to clarify—based on the record before it—Taction's theory of infringement regarding the "highly damped output" limitation as it existed pre-appeal. This is important considering Taction's promise not to amend its theory of infringement post-appeal in exchange for leave to conduct additional limited discovery prior to the September 2026 trial date. *See infra* Section VI.

### I. Initial Claim Construction

On October 28, 2022, the Court issued a Claim Construction Order which gave the claim terms "wherein the ferrofluid reduces at least a mechanical resonance within the frequency range of 40–200 Hz," "wherein the ferrofluid reduces the Q-Factor of the response of the apparatus over at least a portion of the frequency range of 40–200 Hz," "wherein the viscous ferrofluid reduces at least a resonance within a frequency range of

40–200Hz," and "wherein the ferrofluid damps at least a resonance" their plain and ordinary meaning. (ECF No. 141 at 16–17, 22.) The Court also held that these terms were subject to the following limitation: "that the claimed invention is directed to 'transducers with highly damped output.'" (*Id.* at 17.)

## II. Taction's Theory of Infringement as to the "Highly Damped Output" Limitation

### *A. Taction's Final Infringement Contentions and Expert Reports*

On October 31, 2022, Taction served Apple with its final infringement contentions, providing the following analysis regarding the "highly damped output" limitation:

> To the extent that the Court's statement concerning "transducers with highly damped output" is ultimately imposed as a requirement of any asserted claim, Taction contends that the Taptic Engines in the accused products are "transducers with highly damped output." Apple itself, for example, has stated that "[t]he frequency response of the module is controlled, including the frequency response at the resonant frequency, through the use of a closed loop software controller . . . ." Apple's First Supplemental Response to Taction's Interrogatory No. 9 at 20. So, too, the frequency response graphs included in Taction's infringement claim charts, show that the Taptic Engines are transducers that have a "highly damped output." Taction anticipates that fact and expert discovery will provide additional corroborating information. Additionally, Taction contends that, to the extent that the Court's statement concerning "transducers with highly damped output" is ultimately determined to be a requirement of any asserted claims, that the requirement for a "highly damped output" may be satisfied by any mechanism.

(ECF No. 313-4 at 344.)

On April 3, 2023, Taction served Apple with a corrected report by its expert, Dr. James H. Oliver, regarding infringement. (*See* ECF No. 299-5 ("2023 Oliver Rep.").) With respect to "highly damped output," Dr. Oliver opined:

> 605. The Taptic Engines in the Accused Products have a "highly damped output." I understand that the phrase "highly damped output" does not occur in the specification of the asserted patents, but instead devices primarily from a set of applicant remarks made during prosecution. I understand that the applicant stated that "Applicant's invention, in contrast, is directed to transducers with highly damped output." The applicant then cited to the

following material from the specification: "Motion of the movable member can be damped so that the steady-state sinusoidal voltage applied to the module at different frequencies produce an acceleration response of the movable member that is substantially uniform over the range of 40-200 Hz. This statement is in accord with statements elsewhere in the intrinsic record. In particular, the specification includes Figure 5C showing the frequency response of an exemplary embodiment:




FIG. 5C

606. Describing this figure, the specification states: "FIG. 5C shows that the measured acceleration of the exemplary headphones of FIG. 5A at various frequnecies is approximately uniform over the range 40-200 Hz, in accordance with various embodiments described herein . . . ." I further understand that Apple itself urged the Court during claim construction that the Taction's patents were directed to producing a substantially uniform frequency response.

607. It is therefore my opinion that the phrase "highly damped output" would have been understood by a person of ordinary skill in the art at the time of the invention, particularly in view of the relevant intrinsic evidence, as an output that is generally uniform or flat over the normal operating frequency range of the device in question, as for example shown in Figure 5C above. Some variation in flatness or uniformity is obviously allowed. Importantly, because the focus here in on the characteristics of the output and not a particular way of producing that output, the "highly damped output" may be produced by any mechanism. Additionally, I understand that Apple urged during claim construction that the "highly damped output" should be over the range of 40-200 Hz, but the Court did not agree with that interpretation. For that reason,

> as well as that other claim limitations in the asserted patents are directed to the 40-200 Hz range, it is my opinion that the "highly damped output" is required over the normal operating frequency range of the device in question rather than over the range of 40-200 Hz.

(*Id.* at 61–65 (citations omitted).)

Dr. Oliver's expert report also detailed his testing of certain Accused Products, including an iPhone SE, iPhone 8, iPhone XS, iPhone 12 Pro, iPhone 13, and iPhone 14 Pro Max. (*See generally id.* at 15–45.) On each iPhone,[2] Dr. Oliver installed an application called HapticSweep which he explains "utilizes the Apple Core Haptics application programming interface." (*Id.* at 18.) Using HapticSweep, Dr. Oliver generated a sequence of uniform intensity inputs at increasing frequencies. (*Id.*) "These inputs to Apple Core Haptics elicited sinusoidal tones from the Taptic engine. The lowest frequency that could be elicited was 80 Hz . . . up to the highest that could be elicited, 230 Hz." (*Id.*) Performing this testing, Dr. Oliver found that each representative Accused Product exhibits a frequency response that is generally uniform or flat over the frequency range of 80–230 Hz. (*Id.* at 31–46.) Dr. Oliver also performed testing of the iPhone 6 and iPhone 6 Plus (*i.e.*, non-accused products.) (*Id.* at 46–58.) For both the iPhone 6 and iPhone 6 Plus, Dr. Oliver concluded that the response across the 80–230 Hz frequency range clearly does not exhibit a "highly damped output." (*See id.* at 56–58.)

***B. Apple's Rebuttal Expert Report***

On April 7, 2023, Apple served Taction with a rebuttal expert report by its expert, Dr. Michael Zinn, in which Dr. Zinn responded to Dr. Oliver's theory and opined that the Accused Products do not include a transducer with "highly damped output." (*See* ECF No.

---

[2] Dr. Oliver did not perform testing on Apple Watches, but opines that, "given technical commonalities between the Taptic Engines in the Apple Watch Accused Products, as well as the commonalities between the tested Taptic Engines and other Taptic Engines in the Accused Products, [he] believe [his] results are generally applicable to all Accused Products." (2023 Oliver Rep. at 18–19.) The Court discusses this opinion later with respect to Apple's *Daubert* motions. *See* "The Parties' *Daubert* Motions and Motions *in Limine*" *infra* Section III.A.1.b.

299-4 ("2023 Zinn Reb. Rep.") at 17.) In relevant part, Dr. Zinn explained that Dr. Oliver's testing method is incorrect because "the testing should be performed as shown in the Asserted Patent, where the transducer is driven with a sinusoidal voltage of constant magnitude, applied across the transducer's winding leads, over the frequency range of interest." (*See id.* at 20 (citing U.S. Patent No. 10,659,885 col. 9 ll. 13–53, Fig. 5C).) Dr. Zinn further opined that:

> [T]he resulting iPhone accelerations do not satisfy the only example identified by Dr. Oliver in the specification that embodies his proposed instruction for "a transducer with highly damped output", as shown is in Figure 5C of the '885 [P]atent, which shows "the measured acceleration of the exemplary headphones of Fig. 5A at various frequencies is approximately uniform over the range 40-200 Hz."

(*Id.* (citing U.S. Patent No. 10,659,885 col. 95 ll. 49–52).) Dr. Zinn explained that "Figure 5C shows that the acceleration response was within +/- 0.15 g pk-pk over the range of 40-200 Hz (the alleged normal operating frequencies)" and "the measured acceleration of the iPhone devices that are accused of infringement are not within the +/- 0.15 g pk-pk over the alleged normal operating frequencies." (*Id.* at 20–21.)

Dr. Zinn additionally opined that:

> Even if a person of skill in the art would have interpreted "highly damped output" based on the uniformity or flatness of a line on a graph . . . , that person would have understood that the output is generally uniform or flat over the normal operating frequency range of the device when the transducer is operated at a constant magnitude of voltage (*i.e.*, a sinusoidal volage input with constant magnitude).

(*Id.* at 27.) Dr. Zinn also explained that Dr. Oliver's assertion that "the current applied to the coil [in the Taptic Engine] is modified to take into the account the current position of the moving mass" shows "the alleged output is **<u>not</u>** generally uniform or flat over the normal operating frequency range of the device when the transducer is operated using a constant magnitude sinusoidal voltage input." (*Id.* at 29–31 (citations and internal quotations omitted) (emphasis and alteration in original).)

/ / /

## III. Apple's Motion for Summary Judgment of Non-Infringement

On May 20, 2023, Apple filed a Motion for Summary Judgment and *Daubert* Motion to Exclude the Opinions of Taction's Experts, including that of Dr. Oliver. (*See* ECF No. 299.) The Court granted Apple's Motion, striking Dr. Oliver's opinions regarding the "highly damped output" limitation for violating the Court's Patent Local Rules, or alternatively, for improperly arguing claim construction. (*See* ECF No. 378 at 10–24.) Accordingly, the Court granted summary judgment of non-infringement for Apple on grounds that, without Dr. Oliver's opinions regarding the "highly damped output" limitation, Taction's infringement theory failed. (*Id.* at 23–24.) The Court also modified the construction of the claim terms at issue, finding them subject to the following limitations: "the output of the transducer is highly damped (*i.e.*, the output is substantially uniform or flat over the normal operating frequency range of the device), that highly damped output is achieved by mechanical damping, and the transducer has a Q-factor of less than 1.5." (*See id.* at 24–39 (emphasis added).) Taction appealed the Court's grant of summary judgment for Apple to the Federal Circuit. (*See* ECF No. 385.)

## IV. Taction's Appeal

On appeal, the Federal Circuit vacated the Court's grant of summary judgment for Apple, finding that the Court abused its discretion when striking Dr. Oliver's infringement opinions. *Taction Tech., Inc. v. Apple Inc.,* No. 2023-2349, 2025 WL 2336950, at *2 (Fed. Cir. Aug. 13, 2025). The Federal Circuit explained that the Court not only misinterpreted its Patent Local Rules, but that given Dr. Oliver's opinion that a skilled artisan would have understood "highly damped output" to mean "an output that is generally uniform or flat" and the Court's modified construction, striking his opinions was unreasonable. *Id.* at *3. Additionally, the Federal Circuit removed the "mechanical damping" and "Q-factor of less than 1.5" limitations, but upheld the limitation that the output of the transducer be "highly damped (*i.e.*, the output is substantially uniform or flat over the normal operating frequency range of the device)." *Id.* at *3–6.

/ / /

## V. The Parties' Additional Discovery Requests Post-Appeal

The Court held an Appeal Mandate Hearing on October 9, 2025. (ECF No. 417.) At the hearing, Taction indicated it would request "some supplemental discovery on the accused Apple products that have been released since the case was last stayed." (ECF No. 419 ("Mandate Hr'g. Tr.") at 3:17–20.) Apple responded that "[w]hile [it] agree[s] that there may be additional discovery on subsequent Apple products, [it] would also like to have additional discovery related to invalidity in this case." (*Id.* at 11:21–24.) Apple explained this additional discovery would be related to the construction that now applies to the claim term at issue. (*See id.* at 11:25–12:4.) Specifically, Apple stated it "would like to be able to have some fact and expert discovery into prior art products as it relates to that claim construction." (*Id.* at 12:17–19.) The Court responded:

> Okay. At first blush, that would seem to be reasonable. However, I'm not going to rule and shoot from the hip on that particular discovery issue.
>
> So if there is something that needs to be resolved sooner rather than later, you can of course – I believe it's Judge Burkhardt who has this case for discovery purposes. If you believe it's appropriate for her to resolve the issue, feel free to bring it up with her. If you'd like me to resolve the issue, I'm happy to resolve it as well.

(*Id.* at 12:20–13:3.) The Parties acknowledged the Court's instruction, with Taction noting it "obviously disagree[d] with opening discovery for invalidity." (*See id.* at 13:4–9.) The Court then ordered the Parties to submit additional briefing on outstanding summary judgment motions (*i.e.*, motions denied as moot pre-appeal). (*Id.* at 13:10–20.)

In Taction's additional briefing, it indicated that "[b]oth parties agree that limited discovery is needed but disagree as to the scope of discovery, as Apple seeks discovery on prior art . . . that it should have investigated during fact discovery." (ECF No. 420 at 13.) In its additional briefing, Apple stated it did not oppose Taction's request for additional discovery, provided:

> Apple is allowed to serve updated invalidity contentions and expert reports to address Dr. Oliver's new infringement theory and the new claim construction. Specifically, Apple requests an opportunity to: (1) add new prior art (and take

corresponding third-party discovery); and (2) add the iPhone 6/6+ as anticipatory prior art, including testing them according to Dr. Oliver's new theory.

(ECF No. 423 at 12.) The Court denied Apple's additional discovery requests, and Apple thereafter filed a Motion for Reconsideration. (*See* ECF No. 437 at 32; ECF No. 440.) Apple's Motion for Reconsideration requested the Court revisit its request to add new prior art and take corresponding third-party discovery,[3] arguing that the Court erred in failing to consider its argument that the operative construction is "new." (*See generally* ECF No. 440-1.) The Court denied Apple's Motion for Reconsideration as procedurally improper. (ECF No. 451 at 4 (stating "the Court cannot ***re***consider an argument it was never presented with") (citations omitted) (emphasis in original).)

On March 13, 2026, Taction filed a motion requesting leave to serve amened infringement contentions and reopen limited discovery on the "New Products."[4] (ECF No. 443-1 at 5.) Taction represented that, based on its preliminary investigation, it believed the New Products "function in at least a substantially similar manner as the current Accused Products" and that supplemental discovery would be just a matter of "having its experts confirm that and getting new financial numbers for those [N]ew [P]roducts." (ECF No. 443-1 (quoting ECF No. 419 at 3:21–25) (internal quotations omitted).) Then, on April 8, 2026, Apple filed a motion requesting leave to serve amended invalidity contentions "addressing the new claim construction, limited to three prior art references" and "additional expert discovery limited to these new prior art disclosures." (ECF No. 453-1

/ / /

[3] Apple did not request reconsideration as to the iPhone 6/6 Plus. (*See* ECF No. 440-1 at 13.)

[4] The "New Products" include: iPhone 15, iPhone 15 Plus, iPhone 15 Pro, iPhone 15 Pro Max, iPhone 16, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 16e, iPhone 17, iPhone Air, iPhone 17 Pro, iPhone 17 Pro Max, iPhone 17e, Apple Watch Series 9, Apple Watch Ultra 2, Apple Watch Series 10, Apple Watch Series 11, Apple Watch Ultra 3, and Apple Watch SE (3rd generation), plus the individual Taptic Engines in the Accused Products and New Products Apple now sells for self-repair. (*See* ECF No. 443-1 at 5.)

at 4.) Apple represented that granting this request would "put[] it on the same procedural footing as Taction." (*Id.*)

The Court held a hearing regarding both Parties' motions on April 30, 2026. (ECF No. 463.) At the hearing, the Court asked: "if I were to grant the parties' additional discovery and leave to amend contentions, can the parties do so without amending their theories of infringement or invalidity?" (ECF No. 464 at 3:6–9.) Both Parties answered in the affirmative. (*See id.* at 3:10–19.) Accordingly, the Court issued a written order granting the Parties' requests for leave to serve amended contentions and reopen discovery, with the requirement that "the Parties **shall not** amend their theories of infringement or invalidity." (ECF No. 465 at 5 (emphasis in original).) The Court also ordered the Parties to file a Joint Motion to Amend the Scheduling Order regarding the additional discovery (*see* ECF No. 466), which the Court later granted (ECF No. 467). The Amended Scheduling Order[5] is reproduced below:

| **Event** | **Deadline** |
|---|---|
| Deadline for:<br>1. Apple to produce technical and financial discovery into the New Products, and<br>2. Taction to provide infringement contentions for any of the New Products that it seeks to add. | **May 15, 2026** |
| Deadline for depositions of Apple fact witnesses. | **May 22, 2026** |
| Deadline for the Parties to serve supplemental opening expert reports. | **May 26, 2026** |

[5] The Parties' later filed a Joint Motion to Extend Taction's Supplemental Rebuttal Expert Report Deadline and Deadline for Apple to Take the Deposition of Taction's Supplemental Rebuttal Expert (*see* ECF No. 476), which the Court granted (ECF No. 477), but doing so did not change the substance of the initial Amended Scheduling Order.

| | |
|---|---|
| Deadline for the Parties to serve supplemental rebuttal expert reports. | **June 2, 2026** |
| Deadline for expert depositions on supplemental expert reports. | **June 9, 2026** |

(ECF No. 467 at 2.)

**TACTION'S *EX PARTE* MOTION TO STRIKE APPLE'S UNTIMELY NON-INFRINGEMENT THEORIES**

Taction contends that on May 21, 2026, Apple served a supplemental expert report by Dr. Zinn setting forth "a new non-infringement theory as to every Accused Product and the 'normal operating frequency' claim limitation." (Taction *Ex Parte* Mot. at 4 (citing ECF No. 488-5 ("2026 Zinn Sup. Reb. Rep.").) Taction also contends that Apple then served another supplemental expert report by another expert, Dr. Yon Visell, that contained "never-before-performed bench testing of the iPhone 12 Pro—an Original Accused Product." (*Id.* (citing ECF No. 488-5 ("2026 Visell Sup. Reb. Rep.").)

Taction argues, as a threshold matter, the Court should strike Apple's new non-infringement theory because it exceeds the Court's May 5, 2026, Order. (*Id.* at 7.) Alternatively, Taction argues that no good cause[6] exists for Apple to advance a new theory at this stage in the case. (*Id.* at 11.)

**I. Whether Apple's Non-Infringement Theories Exceed the Scope of the Court's May 5, 2026, Order**

Apple argues that the Court's May 5, 2026, Order limiting the Parties from advancing new theories of infringement and invalidity does not support Taction's *Ex Parte*

---

[6] The Parties contend that the Court should consider the Ninth Circuit's Rule 16(b) "good cause" factors in analyzing Apple's supplementation to its theories of non-infringement. (*See* MTS at 11–13; MTS Opp'n at 14–16) (both citing *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017)). But, as explained below, *see infra* Section II.A.2, the correct standard is whether the untimely disclosure was substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c)(1).

Motion because Apple's new theory is specific to non-infringement. (Taction *Ex Parte* Opp'n at 10–11.) Indeed, in its May 5, 2026, Order, the Court considered Apple's request to amend its invalidity contentions; the Court did not consider, nor did Apple advance, any requests relating to Apple's theory of non-infringement. (*See generally* ECF No. 465.) Thus, the Court agrees that its May 5, 2026, Order did not explicitly limit Apple's arguments with respect to non-infringement.

## II. Whether Apple Was Justified in Serving its Supplemental Non-Infringement Disclosures Regarding the "Normal Operating Frequency Range" Limitation

### *A. Legal Standards*

#### *1. What Circuit Law Applies*

Absent an applicable local rule,[7] "a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999)) (internal quotations omitted). However, in matters of procedure, the Federal Circuit "will apply the law of the regional circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law." *Id.* (quoting *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004)) (internal quotations omitted).

Taction's *Ex Parte* Motion concerns amendments to the Court's scheduling order and the disclosure of expert testimony, which are governed collectively by Federal Rules

---

[7] Patent Local Rule 3.6 provides the conditions a party must satisfy when seeking to amend its infringement or invalidity contentions. *See Echologics, LLC v. Orbis Intelligent Sys., Inc.*, No. 21-CV-01147-RBM-AHG, 2022 WL 17724142, at *7 (S.D. Cal. Dec. 15, 2022). Patent Local Rule 3.6 does not, however, address the requirements for a party to amend its non-infringement theory, nor does any other Patent Local Rule. (*See generally* S.D. Cal. Patent LRs.)

of Civil Procedure 16, 26, and 37. Considering Rules 16, 26, and 37 all concern procedure, and none pertain to patent law, the Court must apply Ninth Circuit law.

*2. Federal Rules of Civil Procedure 16, 26, and 37*

Under Federal Rule of Civil Procedure 16(b)(3)(B)(i), the Court's scheduling order may modify the timing of disclosures under Rules 26(a) and 26(e)(1). Under Rule 26(a), a party must disclose expert testimony at the times and sequence that the Court orders. Fed. R. Civ. P. 26(a)(2)(D). If the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), the disclosure must be made within 30 days after the other party's disclosure, absent a stipulation or Court order. Fed. R. Civ. P. 26(a)(2)(D)(ii). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P 37(c)(1).

***B. Analysis***

*1. The Timeliness of Apple's Disclosures*

Apple argues it complied with the Court's scheduling order because it "served its supplemental discovery response and expert reports . . . within the expedited schedule the Court set." (Taction *Ex Parte* Opp'n at 14.) Apple's contention is incorrect.

As part of its May 5, 2026, Order, the Court ordered the Parties to file a joint motion proposing a scheduling order regarding additional discovery. *See* "Relevant Background" *supra* Section V. Thereafter, the Parties jointly requested—and the Court granted—a deadline for "Apple to produce technical and financial discovery into the ***New*** Products" and for "Taction to provide infringement contentions for any of the ***New*** Products that it seeks to add" along with corresponding deadlines to conduct depositions of relevant witnesses and serve supplemental expert reports. *See supra id*. Thus, in granting the Parties' joint motion to amend the scheduling order, the Court did not give Apple permission to serve supplemental discovery responses and/or expert reports regarding non-infringement as to anything other than the New Accused Products.

Considering Taction's theory of infringement did not change as to the Original and the New Accused Products, (*see* Taction *Ex Parte* Mot. at 7), the deadline for completion of all disclosures and discovery related to non-infringement were the dates originally set pre-appeal by Magistrate Judge Jill L. Burkhardt. (*See* ECF Nos. 99, 116 and 140.) All of those dates have long since passed, and Apple's disclosures are therefore untimely.

*2. Whether Apple's Failure to Disclose Was Substantially Justified or Harmless*

The party facing potential exclusion under Rule 37(c)(1) bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)). "To determine whether the failure is substantially justified or harmless, courts consider: '(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence.'" *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146-L BLM, 2013 WL 1882260, at *9 (S.D. Cal. May 3, 2013) (quoting *Bookhammer v. Sunbeam Products, Inc.* 2012 WL 4513872, *2 (N.D. Cal. Oct. 1, 2012) (citing *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F.Supp.2d 719, 733 (N.D. Cal. May 23, 2011))).

a. Surprise to the Party Against Whom the Evidence Would Be Offered

The Court permitted Taction to supplement its infringement contentions and conduct additional discovery regarding the New Accused Products only. (*See generally* ECF No. 465.) Consequently, Taction requested that Apple supplement certain interrogatory responses to obtain internal technical information and documents, sales and revenue information, information on any relevant changes to the Taptic Engines, and design-around attempts by Apple specific to the New Accused Products. (*See* ECF No. 461 at 4.) Based

on this information, Taction concluded there are no differences between the Original and New Accused Products—in other words, its original theory of infringement consistently applies among all Accused Products. (*See* Taction *Ex Parte* Mot. at 7.)

Because there was no change in Taction's theory of infringement pre- and post-appeal, and considering Dr. Zinn previously responded to Dr. Oliver's opinion regarding "the normal operating frequency range" in his pre-appeal rebuttal report, *see* "Relevant Background" *supra* Section II.B, the Court **FINDS** Apple's previously undisclosed non-infringement theory as to the "normal operating frequency range" limitation came as a surprise to Taction. This weighs in favor of excluding Apple's supplemental disclosures.

b. The Ability of that Party to Cure the Surprise

As previously explained, *see supra* Section II.B.1, the deadline to complete all disclosures and discovery related to non-infringement has long since passed. Accordingly, the Court **FINDS** there is insufficient time to cure any possible surprise. This weighs in favor of excluding Apple's supplemental disclosures.

c. The Extent to Which Allowing the Evidence Would Disrupt the Trial

Considering the Court granted limited additional discovery post-appeal as to infringement by the New Accused Products only, and in light of the September 14, 2026, trial date, the Court **FINDS** allowing the evidence would disrupt the trial. This weighs in favor of excluding Apple's supplemental disclosures.

d. The Importance of the Evidence

Apple argues the "importance of 'the normal operating frequency range of the device' limitation increased dramatically when [the operative claim construction] resulted from the Federal Circuit's decision." (Taction *Ex Parte* Opp'n at 14.) Considering the Federal Circuit removed all limitations except for "the output of the transducer is highly damped (*i.e.*, the output is substantially uniform or flat over the normal operating frequency range of the device)," *see* "Relevant Background" *supra* Section IV, the Court **FINDS** the evidence important. This weighs against exclusion.

e. The Nondisclosing Party's Explanation for its Failure to Disclose the Evidence

Apple has been on notice of Dr. Oliver's opinion regarding the "normal operating frequency range" claim limitation since 2023. *See supra id.* Section II.A. Further, Dr. Zinn responded to this opinion in his pre-appeal rebuttal expert report, explaining, *inter alia*, that the "normal operating frequencies" are "40-200 Hz" and that the "measured acceleration of the iPhone devices that are accused of infringement are not [substantially uniform or flat] over the alleged normal operating frequencies" "when the transducer is operated using a constant magnitude sinusoidal voltage input." *See supra id.* Section II.B. The Court is therefore unconvinced that the Federal Circuit's broadening of the scope of the claim terms at issue excuses Apple's failure to disclose its additional theory of non-infringement until now. Because Apple responded to Taction's theory of infringement as to the "normal operating frequency range" limitation in 2023, the Court **FINDS** Apple's explanation for failing to disclose its remaining theory unavailing. This weighs in favor of excluding Apple's supplemental disclosures.

In sum, because four of the five relevant factors weigh in favor of exclusion, the Court **FINDS** Apple's failure to disclose its supplemental discovery responses and expert reports regarding non-infringement as to the Original Accused Products was not substantially justified or harmless. The Court thus **GRANTS** Taction's *Ex Parte* Motion and **EXCLUDES** the following pursuant to Rule 37(c)(1): pages 69–70 of Apple's Supplemental Response to Interrogatory No. 9; paragraphs 71, 72, 74–77, 86–94, 100, 106, 108, and 109 of Dr. Zinn's 2026 Supplemental Rebuttal Report; and paragraph 30 of Dr. Visell's 2026 Supplemental Rebuttal Report.

## III. Whether Dr. Visell's iPhone 12 Pro Testing is a Proper Rebuttal to Dr. Oliver's Testing

Taction argues that the Court should exclude Dr. Visell's iPhone 12 Pro testing as untimely because Dr. Oliver opined on and tested the iPhone 12 Pro in his 2023 report. (Taction *Ex Parte* Mot. at 10.) In response, Apple argues that Dr. Oliver opines that his

testing of the iPhone 12 Pro is representative of all Accused Products, and thus Dr. Oliver's supplemental expert report provides test results specific to the New Accused Products. (Taction *Ex Parte* Opp'n at 5.)

Because Taction's theory of infringement between the Original and New Accused Products has not changed, and considering Apple has not provided any explanation as to why Dr. Visell could not have performed this testing earlier, the Court **GRANTS** Taction's *Ex Parte* Motion as to Dr. Visell's iPhone 12 Pro testing for the same reasons as explained above with respect to Apple's supplemental non-infringement disclosures. *See generally supra* Section II. Accordingly, the Court **EXCLUDES** Dr. Visell's iPhone 12 Pro testing pursuant to Rule 37(c)(1).

## THE PARTIES' *DAUBERT* MOTIONS AND MOTIONS *IN LIMINE*

### I. Legal Standards

#### *A. Federal Rule of Evidence 702 and* **Daubert**

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702 "contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). "Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Additionally, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "the district court judge must ensure that all admitted expert testimony is both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017); *see also Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984–85 (9th Cir. 2020). "The focus of the district court's analysis 'must be solely on principles and methodology, not on the conclusions that they generate,'" and "the court's 'task . . . is to analyze not what the experts say, but what basis they have for saying it.'" *Wendell*, 858 F.3d at 1232 (alteration in original) (quoting *Daubert*, 509 U.S. at 595; *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*")). Courts also consider "whether experts are testifying 'about matters growing naturally' out of their own independent research, or if 'they have developed their opinions expressly for purposes of testifying.'" *Id.* (quoting *Daubert II*, 43 F.3d at 1316).

"These factors are illustrative, and they are not all applicable in each case." *Id.* "The inquiry is flexible, . . . and Rule 702 should be applied with a liberal thrust favoring admission." *Id.* (citation and quotation marks omitted). "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather the law grants a district court the same broad latitude when it decides how to determine reliability as [the court] enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *see also Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1021 (E.D. Cal. 2011) (citations omitted).

"[T]he proponent [of the proposed expert] has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note (2000). However, "proponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . . The evidentiary requirement of reliability is lower than the merits standard of correctness.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994)).

### *B. Federal Rule of Evidence 703*

Federal Rule of Evidence 703 provides that an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. There are three sources of facts or data upon which expert opinions may be based. *See* Fed. R. Evid. 703 advisory committee's note. "The first is the firsthand observation of the witness, with opinions based thereon . . . [t]he second source[] [is] presentation at trial . . . [and] [t]he third source . . . consists of presentation of data to the expert outside of court and other than by [the expert's] own perception." *Id.* Rule 703 further provides:

> If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

### *C. Federal Rule of Evidence 402*

Federal Rule of Evidence 402 provides that relevant evidence is generally admissible, unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Rule 402 further provides that irrelevant evidence is not admissible.

### *D. Federal Rule of Evidence 403*

Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II. Taction's Motions

### *A. Taction's* **Daubert** *Motions*

#### *1. Dr. Zinn and Dr. Visell's iPhone 6 and iPhone 6 Plus Opinions*

Taction argues Dr. Zinn's and Dr. Visell's opinions regarding the iPhone 6 and iPhone 6 Plus should be excluded under *Daubert* because Apple failed to first establish that

these devices are prior art. (Taction MILs at 8.) In support of its argument, Taction raises three points: (1) Apple never proved that the specific models its experts examined were prior art that predates the Asserted Patents; (2) the opinions rest on Apple's own confidential, non-public documents, which cannot establish prior art; and (3) Dr. Zinn and Dr. Visell treat several physically different models as a single reference, without the linkage the law requires. (*See id.* at 9.) In response, Apple argues that Taction confuses the role of expert testimony with the development of the factual record that establishes the products as prior art. (Taction MILs Opp'n at 7.)

Apple contends it will establish the prior art status of each product through documentary evidence and the testimony of Apple and third-party witnesses at trial. (*Id.*) Specifically, Apple explains it will present one or more fact witnesses to testify about the sale, design, and/or operation of the iPhone 6 and iPhone 6 Plus before the filing date of the Asserted Patents. (*Id.* at 10.) Apple also explains it will not rely on its confidential documents to establish the prior art date. (*See id.* at 11.) This defeats Taction's first two arguments.

Apple additionally contends the expert opinions of Dr. Zinn and Dr. Visell are reliable. (*Id.* at 12.) To begin, the purpose of Dr. Visell's testing was to show obviousness; not to establish that the specific model he tested is prior art. (*See id.*) Dr. Zinn incorporates Dr. Visell's testing as one piece of evidence to support his own obviousness analysis. (*See id.*) Moreover, Dr. Zinn expressly acknowledged that different vibration modules existed for the iPhone 6 and iPhone 6 Plus. (*See id.* at 13.) Dr. Zinn analyzed each module—including the one tested by Dr. Visell—and opined that each includes all the limitations recited in the Asserted Claims. (*See id.*) Dr. Zinn also opined that each module is representative of the other. (*See id*. at 14.)

Based on the record before it, the Court **FINDS** the testimony of Dr. Zinn and Dr. Visell and their opinions regarding the iPhone 6 and the iPhone 6 plus properly admissible under Federal Rule of Evidence 702. (*See* ECF No. 533 ("MILs Hr'g Tr.") at 42:1–5.)

/ / /

Accordingly, the Court **DENIES** the Taction's first *Daubert* Motion, provided Apple can lay the proper foundation that those devices are prior art. (*See id.* at 36:18–20, 42:5–7.)

*2. Ms. Knox's Taction Company Valuations Opinions*[8]

Taction argues the methodology of Apple's damages expert Ms. Julie Knox is unreliable because she relies on valuations of Taction as a company, as opposed to the valuations of the infringing features, in arguing the reasonable royalty rate provided by Taction's damages expert Dr. Patrick F. Kennedy is too high. (Taction MILs at 24–25.) In support of its argument, Taction cites several examples where courts have excluded testimony regarding a company's valuation in patent infringement suits as either irrelevant or substantially outweighed by the danger of unfair prejudice and misleading the jury. (*Id.* (citations omitted).) In response, Apple argues that Ms. Knox's opinions constitute permissible criticism of the opinions provided by Dr. Kennedy. (Taction MILs Opp'n at 23.) In support of its argument, Apple cites to Federal Circuit precedent which it argues "expressly recognized the validity of a critique like Ms. Knox's based on company value." (*See id.* (citing *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F3d 860, 871 (Fed. Cir. 2003), *vacated on other grounds* 545 U.S. 193 (2005)) (additional citation omitted).)

But Apple overstates the breadth of the Federal Circuit's *Integra* opinion, which involved the comparison of a reasonable royalty award to the actual purchase price of the patentee company—not the company's valuation. *See* 331 F.3d at 871; *see also Fresenius Medical Care Holding Inc. v. Baxter Intern., Inc.*, 224 F.R.D. 644, 653–54 (N.D. Cal. 2004) (applying *Integra* and holding "[t]he amount paid to acquire a company with desired patents, and the amount of the acquisition amount allotted to a particular patent, is relevant to the establishment of a reasonably royalty"). The Court agrees with Taction that Ms. Knox's expert valuation opinions, which are in no way tethered to the valuation of the patents-in-suit, are based on a methodology (*i.e.*, valuation of Taction as a company) which

---

[8] Taction's second *Daubert* Motion relates to its MIL 8. (MILs Hr'g Tr. at 42:24–25.) *See infra* Section II.B.8.

is irrelevant and unreliable with respect to a proper damages calculation. Her testimony is therefore properly excluded under Federal Rule of Evidence 702. The Court also finds that the probative value of her testimony—that Dr. Kennedy's analysis differs from hers and is therefore erroneous—is substantially outweighed by a danger of confusing the issues and misleading the jury as to the manner in which any damages should be properly calculated. *See* Fed. R. Evid. 403. Accordingly, the Court **GRANTS** Taction's second *Daubert* Motion.

### ***B. Taction's MILs***

#### *1. Taction's MIL 1: Either Party's or Witness's Other Litigations, Arbitrations, or Proceedings, Including Parallel Proceedings in Any Other Forum and ADR Proceedings*

Regarding evidence of *inter partes* review ("IPR") proceedings involving the Asserted Patents, the Court addresses Taction's arguments together with Apple's MIL 4. *See infra* Section III.B.4. Regarding evidence of either Party's or witness's other litigations, arbitration, or proceedings, the Court **DENIES AS MOOT** Taction's MIL 1. *See infra* Section IV (Joint MIL 2).

#### *2. Taction's MIL 2: Equitable Issues or Defenses*

The Court **RESERVES JUDGMENT** on Taction's MIL 2 unless and until it is raised at trial. (*See* MILs Hr'g Tr. at 63:7–64:6.)

#### *3. Taction's MIL 3: Suggesting it is Improper to File a Patent Application or to Draft or Amend Patent Claims to Cover an Adverse Party's Product*

Apple contends it will not argue that it is improper to draft patent claims to cover an adverse party's product. (Taction MILs Opp'n at 26; *see* MILs Hr'g Tr. at 65:10–11.) Accordingly, Taction's MIL 3 is **DENIED AS MOOT.**[9]

---

[9] This does not preclude Apple from eliciting testimony regarding pre-suit testing, provided such testimony otherwise complies with the Federal Rules of Evidence and the Court's orders. (*See* MILs Hr'g Tr. at 65:7–9.)

*4. Taction's MIL 4: Pretrial Proceedings, Including Discovery Disputes, Motion Practice, and Any Claims or Defenses that Have Been Dropped or Narrowed*

At the July 9, 2026, hearing, the Parties stipulated that the Apple Watch Series 3 does not infringe. (MILs Hr'g Tr. at 68:9–15.) Thus, to the extent Taction's MIL 4 seeks to exclude evidence related to the Apple Watch Series 3, it is **DENIED AS MOOT.** However, to the extent Taction's MIL 4 seeks to exclude evidence of damages, the Court **RESERVES JUDGMENT** unless and until it is raised at trial. (*See id.* at 68:23–25.)

*5. Taction's MIL 5: The Court's Claim Construction*

To the extent Taction's MIL 5 seeks to exclude evidence of any prior iterations of the Court's claim construction, the relative positions the Parties took, and what the Court either adopted or rejected, it is **GRANTED.**[10]

*6. Taction's MIL 6: Comparison of the Accused Products to the Patents' Preferred Embodiments, the Specification, or Any Non-Accused Product for Purposes of Infringement or Non-Infringement*

To the extent Taction's MIL 6 seeks to exclude evidence comparing the Accused Products to non-accused products for purposes of infringement or non-infringement, it is **GRANTED.** However, regarding evidence comparing the Accused Products to preferred embodiments in the patents or their specifications for purposes of infringement or non-infringement, the Court **RESERVES JUDGMENT** unless and until it is raised at trial.[11]

/ / /

/ / /

/ / /

/ / /

---

[10] This does not preclude Apple from eliciting testimony regarding an expert's prior report and/or prior deposition testimony, provided such testimony otherwise complies with the Federal Rules of Evidence and the Court's orders. (*See* MILs Hr'g. Tr. at 69:17–25, 70:10–71:5.)

[11] The Court may consider providing the jury with a limiting instruction.

*7. Taction's MIL 7: Prior Art that is Not Disclosed in a Specific Combination Set Forth in a Party's Expert Report or Invalidity Contentions*

The Court **RESERVES JUDGMENT** on Taction's MIL 7 unless and until the issue is raised at trial. (*See* MILs Hr'g Tr. at 75:20–76:2.)

*8. Taction's MIL 8: Taction's Valuations*

For the reasons explained above with respect to Taction's second *Daubert* Motion, *see supra* Section II.A.2, the Court **GRANTS** Taction's MIL 8.

## III. Apple's Motions

### *A. Apple's* Daubert *Motions*

*1. Dr. Oliver's Testing Opinions*

a. Construction of "the normal operating frequency range" Limitation

Apple argues that because Dr. Oliver fails to identify "the normal operating frequency range" for each Accused Product his opinion is unreliable. (Apple MILs at 9.) But Dr. Oliver does identify his opinion as to "the normal operating frequency range" of the Accused Products. As previously explained, *see* "Relevant History" *supra* Section II.A, Dr. Oliver opined in his 2023 expert report that each representative Accused Product exhibits a response that is generally uniform or flat over the frequency range of 80–230 Hz. (*See also* Apple MILs Opp'n at 6–7.) Dr. Oliver further opined that for non-accused products (*i.e.*, the iPhone 6 and iPhone 6 Plus), the response across the 80–230 Hz frequency range clearly does not exhibit a "highly damped output." *See* "Relevant History" *supra* Section II.A. It logically follows that Dr. Oliver's opinion is that "the normal operating frequency range" for the Accused Products is 80–230 Hz. (*See* Apple MILs at 8.) Accordingly, "[t]he jury can now apply the construction[] and determine whether the operating range is 80-230 Hz or 40-200 Hz." (*Id.* (citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012)).

/ / /

b. Representativeness of the Accused Products

Apple also argues that Dr. Oliver's failure to test every Accused Product renders his opinions unreliable and unhelpful. (*See* Apple MILs at 12.) In support of its argument, Apple primarily relies on *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-CV-05928-YGR, 2022 WL 2784467 (N.D. Cal. June 15, 2022), *aff'd sub nom. Cellspin Soft, Inc. v. LLC*, No. 2022-2025, 2024 WL 4648069 (Fed. Cir. Nov. 1, 2024), which explains that "[w]here a patent holder accuses multiple models of a defendant's accused product of infringing on the patented product, the patent holder must prove that each and every accused model contains every limitation." *Id.* at *15 (quoting *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 3:18-CV-00373-BEN-MSB, 2021 WL 981123, at *19 (S.D. Cal. Mar. 16, 2021)) (internal quotations and additional citations omitted). Apple thus argues that because Dr. Oliver tested only eight out of the over 50 Accused Products (all of which are iPhones), and failed to test any Apple Watch products, Dr. Oliver's testing methodology is not "based on sufficient facts or data." (Apple MILs at 13 (citing Fed. R. Evid. 702).)

In response, Taction argues that representative product testing is a recognized method and *Cellspin* is inapposite to this case. (Apple MILs Opp'n at 9.) Indeed, *Cellspin* further provides that "a patent holder may carry its burden of proof [as to infringement] by showing that (1) a representative example infringes and (2) every accused model conforms to that representative example." *Cellspin*, 2022 WL 2784467, at *15. (quoting *Pulse Elecs., Inc.*, 2021 WL 981123, at *19) (internal quotations and additional citations omitted). Additionally, Taction points out that "Apple has never proven that any of the differences between the tested and untested Accused Products that would make a material impact on infringement [as to the 'highly damped output' limitation]" and thus Dr. Oliver's representativeness opinion is reliable. (Apple MILs Opp'n at 10.)

In *Cellspin*, an expert obtained and tested an Apple Watch (*i.e.*, an accused product), which he concluded infringed the asserted patents. *See Cellspin*, 2022 WL 2784467, at *15. The expert then opined that certain FuelBand products—which he never tested or even obtained—infringed in the same way as the analyzed Apple Watch based on his

review of user manuals, technical documents, and the patentee's source code. *See id.* at *16. The *Cellspin* court rejected the expert's testimony about the FuelBand products as unreliable because "there [was] no detailed analysis or explanation from which a reasonable jury could determine that the FuelBand products function like the Apple Watch purposes of infringement." *Id.* at *16 (citations omitted).

Unlike the expert in *Cellspin*, Dr. Oliver performed a teardown of every Accused Product (*i.e.*, both iPhones and Apple Watches); he also reviewed Apple's engineering record for such products and their vibration module and control systems. (*See* Apple MILs Opp'n at 9 (citations omitted).) Dr. Oliver then opined that every Accused Product produces a "highly damped output" via the same operative components. (*See id.*) Because Dr. Oliver's infringement opinion is more than just a "conclusory comparison," *see Cellspin*, 2022 WL 2784467, at *16, the Court rejects Apple's argument as to representativeness. (*See* MILs Hr'g Tr. at 80:17–25.) *See also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) ("To the extent [an expert's] credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility.").

c. Dr. Oliver's Test

Next, Apple argues Dr. Oliver's opinion is unreliable because he "failed to perform any scientifically accepted measurement to determine the claimed 'output' or an actual Q-factor." (Apple MILs at 15.) While Apple correctly identifies peer review and publication as relevant considerations for the Court in exercising its gate keeping function under Rule 702, the lack of peer review and/or publication is not dispositive as to the reliability of a particular test or methodology. *See Daubert*, 509 U.S. at 594 ("Publication (which is but one element of peer review) is not a *sine qua non* of admissibility); it does not necessarily correlate with reliability, and in some instances well-grounded but innovative theories will not have been published.") (internal citations omitted). Rather, the Court must determine whether the proponent of the expert testimony has put forth sufficient evidence to establish by a preponderance of the evidence that the methodology utilized is sound and the results

reliable. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy . . . may go to the testimony's weight, but not its admissibility"). Here, when Dr. Visell performed Dr. Oliver's test, Dr. Visell "verified that, when the intensity was held constant at each tone sharpness value, Dr. Oliver's HapticSweep program and the Hapticlabs software produced the same result after analysis." (Apple MILs Opp'n at 12 (quoting ECF No. 513-5 ("Vissel Expert Reb. Rep.").) This is sufficient under Rule 702 to establish reliability. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014) ("[T]he primary requirement is that '[s]omeone else using the same data and methods . . . be able to replicate the result[s].'").

For the reasons above, the Court **DENIES** Apple's first *Daubert* Motion to the extent it seeks to exclude Dr. Oliver's testing opinions, including the iPhone 17 Pro (*i.e.*, a New Accused Product) but not the iPhone 17.[12]

*2. Dr. Oliver's Technical Apportionment Opinions*

a. Apple Accused Products

Apple argues Dr. Oliver's attempt to isolate the contribution of the Asserted Patents to the Accused Products—which forms part of the basis of his "technical apportionment" opinion, upon which Dr. Kennedy relies—is unreliable because Dr. Oliver relies upon testimony from an Apple witness, Jere Harrison, which refers only to the iPhone 7 (*i.e.*, a non-accused and untested product). (Apple MILs at 21.) In response, Taction argues there is no evidence that Mr. Harrison limited his testimony to the iPhone 7. (Apple MILs Opp'n

---

[12] At the July 9, 2026, hearing, Taction acknowledged that the axis of the actuator in the iPhone 17 is different than in the other 49 Accused Product, and thus it could not be reliably tested in the same way as the other Accused Products. (*See* MILs Hr'g Tr. at 87:5–9, 93:9–20.) Taction suggested that "[it could] do some additional testing in the correct axis . . . but [the Court] can still extrapolate based on the identity of the taptic engine, to go from 8 to 49, and then leave open the question of whether the iPhone 17 . . . should be retested." (*Id.* at 93:16–22.) Taction did not subsequently request leave to conduct this additional testing (*see* Docket), and the deadline for additional discovery for the New Products is otherwise closed. *See* "Relevant History" *supra* Section V. Accordingly, the Court **FINDS** Dr. Oliver's opinion as to the iPhone 17 is unreliable and therefore inadmissible under Rule 702.

at 16.) At the July 9, 2026, hearing, the Parties seemingly disagreed as to the scope of Mr. Harrison's testimony. (*See* MILs Hr'g Tr. at 97:10–13, 97:22–98:2, 98:7–12.) Attempting to rectify this discrepancy, Apple directed the Court to Docket No. 298-3, a seven-page excerpt of Dr. Harrison's 2023 deposition testimony which it alleges Dr. Oliver relies upon. (*Id.* at 98:8–9 (citing ECF No. 298-3).) Without additional context surrounding Dr. Harrison's testimony, based on the record before it, the Court is unable to determine whether Mr. Harrison exclusively discusses the iPhone 7. (*See id.* at 98:24–99:4.)

b. Licensed Corsair Product

Apple additionally argues Dr. Oliver's attempt to isolate the contribution of the Asserted Patents to the Licensed Corsair Product—which forms part of the basis of his "technical apportionment" opinion, upon which Dr. Kennedy relies—is unreliable because Dr. Oliver relies upon the non-disclosed testing and unrecorded conversations with Dr. Biggs. (Apple MILs at 21.) While acknowledging Taction's argument that it is not inherently improper for Dr. Kennedy to rely upon the expertise of another in forming his opinion, (*see* MILs Hr'g Tr. at 100:3–9), based on the record before it, the Court is unable to determine whether Dr. Biggs' tests themselves were reliable (*see id.* at 101:7–9).

As noted above, the proponent of expert testimony under Rule 702 must put forth sufficient evidence to establish by a preponderance of the evidence that proposed expert testimony is based upon sufficient facts or data and that the testimony is the product of reliable principles and methods. The record before the Court fails to establish the reliability of Mr. Harrison's and Dr. Biggs' testing and their resulting conclusions. Because Dr. Oliver relies on those conclusions in forming his expert technical apportionment opinions, Taction has failed to meet its burden of demonstrating the admissibility of Dr. Oliver's testimony in that regard. Apple's *Daubert* motion regarding Dr. Oliver's technical apportionment opinions is therefore **GRANTED**.

*3. Dr. Kennedy's Reasonable Royalty Opinions*

Dr. Kennedy relies on Dr. Oliver's technical apportionment opinions in reaching his reasonable royalty opinions. (*See* Apple MILs at 22-24.) Because Dr. Kennedy cannot

reasonably rely upon opinions which, in turn, have not been established as reliable, *see supra* Section III.A.2, the Court **GRANTS** Apple's *Daubert* motion regarding Dr. Kennedy's reasonable royalty opinions.

### *B. Apple's MILs*

#### *1. Apple's MIL 1: Dr. Oliver's New/Undisclosed Infringement Theories*

To the extent Apple's MIL 1 seeks to exclude any opinions by Dr. Oliver other than the range disclosed in his 2023 Opening Report regarding the normal operating frequency range of the device (*i.e.*, 80–230 Hz), the Court **GRANTS** Apple's MIL 1. *See supra* Section III.A.1.a. To the extent Apple's MIL 1 seeks to exclude Dr. Oliver's infringement opinions regarding Claims 2–16 of the '885 Patent and Claims 2–4 and 6–17 of the '117 Patent, the Court **DENIES** Apple's MIL 1 because Dr. Oliver previously opined in his 2023 report that these claims are infringed by the Original Accused Products, and Taction's theory of infringement is unchanged with respect to the New Accused Products. (*See* Apple MILs Opp'n at 23 (citations omitted).) Lastly, to the extent Apple's MIL 1 seeks to exclude Dr. Oliver's opinion that the Apple Monolithic Magnet Accused Products literally infringe the "plurality of magnets" limitation, the Court **DENIES AS MOOT** Apple's MIL 1. (*See* MILs Hr'g Tr. at 109:25–110:7, 110: 13–21; *see also* ECF No. 437 at 25 (granting summary judgment of non-infringement for Apple with respect to Taction's literal infringement allegations for the claimed "plurality of magnets" limitation for the Monolithic Products).)

#### *2. Apple's MIL 2: Taction's Willfulness Allegations*

Apple argues the Court should exclude certain evidence as irrelevant to Taction's willfulness allegations, including evidence relating to a pre-issuance review of Taction's Kannon headphones, evidence of a post-suit review of Corsair's headphones, and evidence of patent listings on Taction's website. (Apple MILs at 27.) In response, Taction contends it will not present such evidence for purposes of willful infringement or copying, but that because Apple does not dispute that the Kannon headphones and Corsair HS60 Haptic

/ / /

headsets use the patented technology, they are relevant to other issues (*i.e.*, secondary considerations of non-obviousness and induced infringement). (Apple MILs Opp'n at 24.)

In light of the Parties' agreement to exclude this evidence as it pertains to Taction's willfulness allegations (*see* Apple MILs at 27; Apple MILs Opp'n at 24), the Court **GRANTS** Apple's MIL 2 as to evidence that relates to a pre-issuance review of Taction' Kannon headphone, evidence of post-suit review of Corsair's headphones, and evidence of patents which are listed on Taction's website. (*See* MILs Hr'g Tr. at 109:6–13.) However, the Court **RESERVES** judgment as to whether such evidence should be excluded with respect to other issues. (*See id.* at 109:14–18.)

*3. Apple's MIL 3: Apple's Overall Financial Size, Total Revenue, and Profits for the Accused Products*

Apple argues the Court should exclude evidence regarding Apple's overall financial size, total revenue, and profits for the Accused Products. (Apple MILs at 32.) In response, Taction explains that—although the Parties previously agreed to Apple's MIL 3 and Taction's MIL 8—Apple withdrew its agreement, but Taction remains amenable to the original agreement. (Apple MILs Opp'n at 27.) Considering the Court grants Taction's MIL 8, *see supra* Section II.B.8, the Court also **GRANTS** Apple's MIL 3.

*4. Apple's MIL 4: IPR of the Asserted Patents*

Apple argues the Court should exclude evidence, arguments, or questions about IPR proceedings involving the Asserted Patents because such evidence "is likely only to confuse, rather than assist, the jury." (Apple MILs at 34.) The Court agrees with Apple and thus **GRANTS** Apple's MIL 4. (MILs Hr'g Tr. at 123:14–22.)

*5. Apple's MIL 5: The Absence of Apple's Former and Current Employees or Officers Who Do Not Appear at Trial*

The Court **RESERVES JUDGMENT** on Apple's MIL 5 unless and until it is raised at trial. (*See* MILs Hr'g Tr. at 126:1–12.)

/ / /

/ / /

*6. Apple's MIL 6: Unrelated Litigations and Investigations*

Considering the agreement reached by the Parties during the July 9, 2026, hearing, (*see id.* at 122:11–123:13), Apple's MIL 6 is **DENIED AS MOOT.**

**IV. The Parties' Joint Agreed Upon MILs**

On June 12, 2026, the Parties filed a Joint Motion Seeking Order Entering Agreed-Upon MILs (ECF No. 495). As stipulated by the Parties, the Court **GRANTS** the following agreed-upon MILs:

1. The Parties agree not to present any evidence, testimony, or argument regarding the funding or funders of this litigation.

2. The Parties agree not to present any evidence, testimony, or argument regarding either party's or any witness's other litigations, arbitrations, or proceedings, including parallel proceedings in any other forum and ADR proceedings. The parties further agree that references to statements made during the IPR proceedings involving the Asserted Patents are permissible as prosecution history and are not covered by this motion *in limine*.

3. The Parties agree not to present any evidence, testimony, or argument characterizing any party, witness, or entity in pejorative terms, including as a "patent troll," "patent assertion entity," or "shell company," or as greedy, corrupt, or dishonest, or characterizing any party's conduct as stealing, copying, or misappropriating.

4. The Parties agree not to present any expert testimony or opinion that is not included in the expert's served report and that the admissibility of any opinions in an expert report are subject to any Court rulings, including motions *in limine* and *Daubert* motions.

5. The Parties agree not to present any evidence, testimony, or argument on Dr. Biggs' interactions with Sanjay Gadkhari and Denise Kuerstein (Kerstein).

6. The Parties agree not to present any evidence, testimony, or argument on any irrelevant agreements, including the AST, Sovereign Peak, Stanton, SAS, Toshiyasu Abe, Global Haptics, Seeno, Star, Immersion, Ironworks, and F Origin agreements.

7. The Parties agree not to present any evidence, testimony, or argument from Dr. Okamura that Apple is withholding documents and that Apple witnesses' testimony is unreliable.

8. The Parties agree not to present any evidence, testimony, or argument relating to the compensation of either party's employees.

## APPLE'S *EX PARTE* MOTION FOR ADDITIONAL DEPOSITION AND LEAVE TO FILE MOTION TO STRIKE

### I. Legal Standards

#### *A. Disclosure of Expert Testimony and Changes Thereto*

Disclosure of certain expert testimony "must be accompanied by a written report—prepared and signed by the [expert] witness[.]" Fed. R. Civ. P. 26(a)(2)(B). Parties also have a duty to supplement the disclosure of expert testimony when required under Federal Rule of Civil Procedure 26(e). *See* Fed. R. Civ. P. 26(a)(2)(E). Rule 26(e) provides that a party must supplement or correct a disclosure "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 26(e) further provides that an expert whose report must be disclosed under Rule 26(a)(2)(B) has a duty to supplement the disclosure with additions or changes to the information therein by the due date of the party's pretrial disclosures under Rule 26(a)(3) (*i.e.*, at least 30 days before trial, unless the Court orders otherwise). *See* Fed. R. Civ. P. 26(a)(3)(B).

#### *B. Collaboration and the Protection of Communications Between Counsel and an Expert Witness*

While Federal Rule of Civil Procedure 26 "contemplates some attorney involvement in the preparation of any expert report," it also requires that the expert must "substantially participate" in the report's preparation. *Accentra Inc. v. Staples, Inc.*, No. CV 07-5862 ABC (RZX), 2010 WL 11459205, at *4 (C.D. Cal. Oct. 7, 2010) (citing Fed. R. Civ. P. 26 advisory committee's note (1993)). "Substantial participation" can include counsel's

paraphrasing of the expert's qualifications; counsel's providing teamwork, collaboration, or editorial assistance on the report; counsel's composing of initial drafts of reports based upon communications with the expert and allowing the expert to substantively revise the report to reflect the expert's opinions; or counsel's drafting of the report with the expert's substantive assistance. *Id.* (collecting cases). Additionally, Rule 26(b)(4)(C) provides:

> Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

## II. Discussion

Taction's expert, Dr. Allison Mariko Okamura, provided her supplemental expert rebuttal report to Apple on June 5, 2026. (Apple *Ex Parte* Mot. at 4.) Apple contends that, prior to her deposition, Dr. Okamura served two corrected versions of her supplemental report "making hundreds of changes in all, dozens of them substantive." (*Id.*) Apple further contends that, at her deposition, Dr. Okamura evaded questions regarding how her reports were created, "including by hiding behind unsupported privilege objections." (*Id.*) Apple also contends that Dr. Okamura's corrected reports "bear strong signs of AI generation" and "at a minimum she seems not to have reviewed them carefully before service." (*Id.*) Accordingly, Apple seeks an additional three hours of deposition time with Dr. Okamura as well as leave to file a motion to strike her corrected reports after that deposition. (*Id.*)

In response, Taction contends that Dr. Okamura substantially participated in the preparation of her expert reports. (*See* Apple *Ex Parte* Opp'n at 9.) Specifically, Taction

contends that, after receiving Apple's experts' supplemental invalidity reports, "Dr. Okamura engaged in substantive discussions with Taction's counsel on the issues those reports raised" and, in collaboration with counsel, drafted the corrected report. (*Id.*) Taction further contends that Rule 26 "obligates timely correction" and thus Dr. Okamura's corrected reports merely comply with this obligation. (*See id.* at 11.) Taction also contends that the substance of the communications between Dr. Okamura and counsel are protected under Rule 26. (*Id.* at 17.)

To begin, the extent of Dr. Okamura's collaboration with counsel for Taction in the preparation of her expert reports is sufficient to meet the "substantial participation" requirement. *See Accentra Inc.*, 2010 WL 11459205, at *4. Moreover, such communications fall within the umbrella of the protection provided by Federal Rule of Civil Procedure 26(b)(4)(C). *See supra* Section I.B.

Additionally, Dr. Okamura testified that, while preparing with counsel for her deposition, she identified some unintentional errors, (*see* Apple *Ex Parte* Opp'n at 10 (citing ECF No. 529-4 ("Okamura Depo.") at 257:10–12, 231:22 232:10, 259:7–16, 242:4–7, 278:17–280:8), and thus pursuant to Rule 26, she acted to correct those errors and timely served her corrected reports upon Apple (*see id.* at 12 (citing Okamura Depo at 247:19–248:15, 262:2–10.)). Apple also does not dispute that it received both corrected reports prior to Dr. Okamura's final deposition. (*See* Apple *Ex Parte* Mot. at 5.) Accordingly, it is clear that Apple had a full and fair opportunity to ask Dr. Okamura about her opinions. (*See id.* at 14–15 (citations omitted).)

Finally, regarding Apple's use of AI argument, the Court is unimpressed. Apple's evidence—such as Dr. Okamura's increased use of the em dash in her corrected report (*see* Apple *Ex Parte* Mot. at 8)—is unpersuasive. Dr. Okamura testified that she did not use AI in drafting her reports (*see* Okamura Depo. at 273:6–9), and Apple has not pointed to any additional evidence indicating otherwise. *See, e.g.*, *Kohls v. Ellison*, No. 24-CV-3754 (LMP/DLM), 2025 WL 66514, at *3–5 (D. Minn. Jan. 10, 2025) (striking expert report as AI generated because it contained hallucinated citations).

For the reasons above, the Court **DENIES** Apple's *Ex Parte* Motion.

## THE PARTIES' MOTIONS TO SEAL

### I. Taction's Renewed Motions to Seal

#### *A. ECF No. 527*

Presently before the Court is Taction's Renewed Motion to File Documents Under Seal certain exhibits in connection with Taction's *Ex Parte* Application to Strike Portions of Apple's Supplemental Expert Reports and Amend the Schedule (ECF No. 470), Taction's Motion to Strike Apple's Untimely Non-Infringement Theories (ECF No. 488), and Taction's *Daubert* Motions and Motions *in Limine* (ECF No. 494). (*See* ECF No. 527.) On June 22, 2026, the Court denied without prejudice Taction's original Motions to Seal (ECF Nos. 468, 486, and 492) for failing to set forth good cause and for failing to meet and confer with Apple prior to filing its motion. (*See generally* ECF No. 505.)

Finding Taction's Renewed Motion (ECF No. 527) cures these errors, the Motion is **GRANTED**. Accordingly, the Court:

1. Maintains under seal ECF Nos. 493 and 493-1 as previously lodged;

2. **GRANTS** Taction leave to file public redacted versions of the following: ECF Nos. 470-2, 488-4, 488-5, 488-6, 488-7, 494-3, and 494-6; and

3. **GRANTS** Taction leave to file publicly in their entirety the following: ECF Nos. 470-3 and 488-1.

Taction **SHALL FILE** the public redacted versions of ECF Nos. 470-2, 488-4, 488-5, 488-6, 488-7, 494-3, and 494-6 as well as the public unredacted versions of ECF Nos. 470-3 and 488-1 <u>within fourteen (14) days</u> of the electronic docketing of this Order. Additionally, the Clerk of Court **SHALL FILE UNDER SEAL** the documents previously lodged under seal at ECF Nos. 493 and 493-1.

#### *B. ECF No. 535*

Also before the Court is Plaintiff's Renewed Motion to File Under Seal specific entries within Taction's Pretrial Exhibit List (ECF No. 502-1). (*See* ECF No. 535.) On

July 6, 2026, the Court denied without prejudice Taction's original Motion to Seal for failing to set forth good cause and for failing to meet and confer with Apple prior to filing its motion. (ECF No. 520 at 3.)

Finding Taction's Renewed Motion (ECF No. 535) cures these errors, the Motion is **GRANTED**. Accordingly, the Court **GRANTS** Taction leave to file a public redacted version of the Exhibit List (ECF No. 520-1) with the unredacted version to remain lodged under seal within fourteen (14) days of the electronic docketing of this Order. Additionally, the Clerk of Court **SHALL FILE UNDER SEAL** the documents previously lodged under seal at ECF No. 520-1.

## II. Apple's Motion to Seal

Presently before the Court is Apple's Motion to File Under Seal Exhibits 1–7 which are attached to its *Ex Parte* Motion for Additional Deposition and for Leave to File a Motion to Strike. (*See* ECF No. 528.) Apple did not meet and confer with Taction prior to filing its motion, as required under Section III.C.4 of the undersigned's Standing Order for Civil Cases. (*Id.* at 3.)

Accordingly, the Court **DENIES** Apple's Motion to Seal (ECF No. 528). Either Party **MAY FILE** a renewed motion to file under seal Exhibits 1–7 for which "good cause" exists within fourteen (14) days of the electronic docketing of this Order. Should neither Party elect to file a renewed motion, Apple **SHALL FILE PUBLICLY** ECF No. 502-1 in its entirety within twenty-one (21) days of the electronic docketing of this Order.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Taction's *Ex Parte* Motion (ECF No. 488), **GRANTS IN PART** and **DENIES IN PART** Taction's *Daubert* Motions and MILs (ECF No, 494), **GRANTS IN PART** and **DENIES IN PART** Apple's *Daubert* Motions and MILs (ECF No. 491), **GRANTS** the Parties' Joint Motion Entering Agreed-Upon MILs (ECF No. 495), **DENIES** Apple's *Ex Parte* Motion (ECF No. 530), **GRANTS** Taction's Renewed Motions to Seal (ECF Nos. 527, 535), and **DENIES** Apple's Motion to Seal (ECF No. 528.)

**IT IS SO ORDERED.**

Dated: August 11, 2026

Honorable Todd W. Robinson
United States District Judge