Roger A. Denning (SBN 228998)
denning@fr.com
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

*Additional Counsel listed on Signature Page*

Attorneys for Defendant Apple Inc.

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACTION TECHNOLOGY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:21-cv-00812-TWR-JLB<br><br>**DEFENDANT APPLE INC.'S TRIAL BRIEF**<br><br>District Judge: Hon. Todd W. Robinson<br>Magistrate Judge: Jill L. Burkhardt |

# TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. APPLE DOES NOT INFRINGE ANY ASSERTED CLAIM ....... 2

A. Taction Cannot Prove Direct Infringement ....... 2

1. No accused product includes a "transducer with highly damped output" (all asserted claims) ....... 2

2. Each accused product is an "undamped linear resonant actuator" (all asserted claims) ....... 2

3. No Air Coil or Sandwich product includes a plurality of flexures that guides the moving portion in a planar motion with respect to the housing and the conductive coil or coils (all asserted claims). ....... 2

4. No Sandwich product includes a housing comprising a plurality of magnetic flux guides, each comprising an upper and a lower magnetic flux guide ('885 patent, claim 8; '117 patent, claim 3). ....... 3

5. No accused product includes flexures that are "generally flat and generally rectangular" or that "comprise a plurality of protrusions that are within a same plane as adjacent portions of the plurality of flexures" ('117 patent, claim 16). ....... 3

6. No Zaftig product has a housing with a thickness less than one-third of the width ('117 patent, claim 16). ....... 3

B. Taction Cannot Prove Infringement Under the Doctrine-of-Equivalents Theory ....... 3

C. Taction Cannot Prove Indirect Infringement ....... 4

III. THE ASSERTED CLAIMS ARE INVALID ....... 4

A. The Asserted Claims Were Obvious (35 U.S.C. § 103) ....... 4

B. The Claim Scope Taction Asserts is Not Described in or Enabled by the Asserted Patents (35 U.S.C. § 112(a)) ....... 5

C. The Asserted Claims are Indefinite (35 U.S.C. § 112(b)) ....... 6

IV. TACTION IS ENTITLED TO NO REMEDY ........ 6
A. Damages Are Zero ........ 6
B. Taction May Recover No Pre-Suit Damages ........ 7
C. Taction Cannot Prove Willful Infringement ........ 8
D. Taction Is Not Entitled to Injunctive Relief ........ 8
E. This Is Not an Exceptional Case ........ 8
V. CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026) .......... 4

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
156 F.4th 1289 (Fed. Cir. 2025) .......... 6

**Statutes**

35 U.S.C. § 103 .......... 4

35 U.S.C. § 112(a) .......... 5

35 U.S.C. § 112(b) .......... 6

35 U.S.C. § 285 .......... 8, 9

35 U.S.C. § 287(a) .......... 7

# I. INTRODUCTION[1]

The accused products do not infringe any claim of the asserted patents. The claimed invention does not utilize or encompass un-damped linear resonant actuators that depend on resonance. Instead, it requires a "transducer with highly damped output" "wherein the output of the transducer is highly damped (*i.e.*, the output is substantially uniform or flat over the normal operating frequency range of the device)." The accused products do not meet this requirement. They depend on resonance and thus have an output that is under damped (*i.e.*, their output is peaked over the normal operating frequency range). Certain accused products also lack other requirements of the asserted claims (e.g., a plurality of magnets, planar motion, etc.).

The asserted claims are invalid because they cover the obvious combination of a conventional linear resonant actuator with ferrofluid to critically damp the resonance and thus generate a flat output—a technique that had been used for decades before the earliest claimed priority date of the asserted patents. Further, Taction attempts to broaden the asserted claims to cover features of the accused products that Taction did not invent. As a result, the asserted claims are also invalid because they recite the obvious combination of a linear resonant actuator with a controller to generate a flat output. Additionally, the alleged scope of the asserted claims is not enabled by or adequately described in the asserted patents, and the test methodology used by Taction's expert for this case renders every claim indefinite.

Finally, Taction is entitled to no damages. It has no admissible technical apportionment opinion. Dkt. 545 at 29. It has no admissible reasonable royalty opinion, *id.* at 30, and no admissible expert evidence regarding any other model of damages. And no evidence supports a finding of willfulness.

---

[1] Apple incorporates by reference into this summary of its trial theories Apple's Memorandum of Contentions of Fact and Law (Dkt. No. 499), which contains a more fulsome description of the case.

# II. APPLE DOES NOT INFRINGE ANY ASSERTED CLAIM

## A. Taction Cannot Prove Direct Infringement

### 1. No accused product includes a "transducer with highly damped output" (all asserted claims)

The Court's construction of every asserted claim recites: "wherein the output of the transducer is highly damped (i.e., the output is substantially uniform or flat over the normal operating frequency range of the device)." Dkt. No. 545 at 8. The accused products do not meet this requirement because the output of the transducer (Taptic Engine) in each accused product is under damped (i.e., the output is peaked over the normal operating frequency range).

### 2. Each accused product is an "undamped linear resonant actuator" (all asserted claims)

Taction's "claimed invention does not utilize or encompass un-damped linear resonant actuators." Dkt. No. 141 at 17. As explained in the asserted patents, undamped linear resonant actuators depend on resonance. '885 patent at 2:25-26. The Taptic Engines in the accused products depend on resonance at least for vibration strength and efficiency. Thus, they are examples of undamped linear resonant actuators excluded from the scope of the claimed inventions.

### 3. No Air Coil or Sandwich product includes a plurality of flexures that guides the moving portion in a planar motion with respect to the housing and the conductive coil or coils (all asserted claims).

The accused Air Coil and Sandwich products do not meet this requirement because the coil in each product is aligned in a plane orthogonal to the magnet(s) rather than parallel to them. Thus, the flexures guide the moving portion in an axial (not planar) motion with respect to the housing the conductive coil.

**4. No Sandwich product includes a housing comprising a plurality of magnetic flux guides, each comprising an upper and a lower magnetic flux guide ('885 patent, claim 8; '117 patent, claim 3).**

For the Sandwich products, Taction's expert, Dr. Oliver relies on portions of the Taptic Engine's stator core. However, the stator core is not part of the Taptic Engine's housing. Furthermore, it is a single physical structure that does not comprise upper and lower magnetic flux guides.

**5. No accused product includes flexures that are "generally flat and generally rectangular" or that "comprise a plurality of protrusions that are within a same plane as adjacent portions of the plurality of flexures" ('117 patent, claim 16).**

The flexures in the accused products are hairpin shaped with at least one significant bend, which makes the resulting shape three-dimensional rather than generally flat. The flexures also lack in-plane protrusions.

**6. No Zaftig product has a housing with a thickness less than one-third of the width ('117 patent, claim 16).**

The measurements by Taction's own expert, Dr. Oliver, demonstrate that this limitation is not met for several accused products. For example, Dr. Oliver asserts that the iPhone 15 Pro meets this limitation. However, he measured that Taptic Engine at 4.69 mm thick and 9.26 mm wide. One-third of 9.26 mm is approximately 3.09 mm, and 4.69 mm exceeds that.

**B. Taction Cannot Prove Infringement Under the Doctrine-of-Equivalents Theory**

Each asserted claim recites "a plurality of magnets." As the Court has already found, the Monolithic Magnet products do not literally include "a plurality of magnets." Dkt. No. 437. They also do not include "a plurality of magnets" under the doctrine of equivalents because a single magnet, which was disclosed, but not

claimed, is specifically excluded from the scope of the claims. Furthermore, the claim limitation at issue defines a relatively simple structural device. Thus, a patent drafter would foresee the limiting potential of the "a plurality of magnets" limitation. No subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of the "plurality of magnets" limitation at the time of its incorporation into the claim. Finally, "a plurality of magnets" and a monolithic magnet do not perform substantially the same function, in substantially the same way, to achieve substantially the same result and the differences between them are substantial. For example, compared to "a plurality of magnets," a monolithic magnet significantly improves a Taptic Engine's performance, reduces module volume, lowers cost, and improves manufacturing efficiency. Thus, a person of skill in the art could not simply substitute one for the other and would not view them as equivalent.

### C. Taction Cannot Prove Indirect Infringement

Taction's indirect infringement claims fail at the threshold, because there is no direct infringement. They fail independently because Taction has not proven the mental state inducement requires. Taction has identified no "purposeful, culpable expression and conduct"—no "affirmative, as opposed to passive, actions to bring about the desired result of patent infringement." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391 (2026). It has identified only "ordinary acts incident to product distribution," which do not suffice. *Id.* Dr. Oliver never opined that Apple contributes to infringement by any third party.

## III. THE ASSERTED CLAIMS ARE INVALID

### A. The Asserted Claims Were Obvious (35 U.S.C. § 103)

Apple's prior art iPhone 6 Plus product renders the Taction patents invalid when combined with the prior art Raj paper. The vibration motor in the iPhone 6 Plus includes each limitation expressly recited in the asserted claims, including a generally cuboid-shaped housing, a plurality of coils that are elongated ovals with flat sides, a

plurality of magnets arranged in operative proximity to the plurality of coils, a moving portion (including an inertial mass, pockets, and the plurality of magnets), a suspension comprising a plurality of flexures that guides the moving portion in a planar motion with respect to the housing and the plurality of conductive coils, upper and lower flux guides, and ferrofluid. Although Apple is precluded from arguing that the iPhone 6 Plus meets the ferrofluid limitations of the asserted claims, it would have been obvious to use ferrofluid to damp the resonance of the iPhone 6 Plus vibration motor to highly damp the output. Raj discloses the conventional use of ferrofluid to critically damp a vibration motor and explains the benefits of doing so.

The prior art Zarrabi patent renders the asserted patents invalid when combined with the prior art Yoshikane patent, the prior art Shahoian patent, and the prior art Lee paper. Zarrabi discloses the use of a linear resonance actuator in headphones. The linear resonant actuator in Yoshikane, which includes each limitation recited in the broadest asserted claims, would have been an obvious choice. And it would have been obvious to use a controller to generate a flat output that allegedly meets the highly damped output limitation under Taction's theory of infringement. Shahoian discloses a controller for this purpose and explains the benefits of doing so. It also would have been obvious in view of Lee to include trivial features (e.g., flexures with protrusions) recited in other asserted claims.

Taction has failed to demonstrate any secondary considerations of non-obviousness, including unexpected results, industry praise, a long felt, but unresolved need, failure of others, skepticism, or copying. Taction has also failed to establish a nexus between any alleged secondary consideration and the claimed invention.

Thus, the asserted claims are invalid as obvious in view of the prior art.

### B. The Claim Scope Taction Asserts is Not Described in or Enabled by the Asserted Patents (35 U.S.C. § 112(a))

The features of the accused products alleged to infringe the asserted claims (e.g., Apple's Taptic Engines, Apple's closed-loop controller, and frequency ranges

other than 40-200 Hz) are not described in or enabled by the asserted patents. Dr. Biggs never possessed them. And a person of ordinary skill in September 2014 could not have made and used them without undue experimentation. Thus, if the accused products fall within the full scope of the asserted claims, those claims are invalid for lack of written description and enablement.

### C. The Asserted Claims are Indefinite (35 U.S.C. § 112(b))

As applied by Taction, there are multiple tests for determining whether a transducer has highly damped output. For example, Taction's infringement contentions used one test that does not show highly damped output. However, Taction's expert used a different test that he claims shows highly damped output. Under these circumstances, the asserted claims are invalid as indefinite because a skilled artisan could not determine the scope of the claims with reasonable certainty.

## IV. TACTION IS ENTITLED TO NO REMEDY

### A. Damages Are Zero

Damages are zero because Taction has not proven infringement of any valid claim. Even if the jury found liability, Taction's damages case would not support the award it seeks.

Taction has no admissible technical apportionment opinion and no admissible reasonable royalty opinion. The Court excluded Dr. Oliver's technical apportionment opinions and Dr. Kennedy's reasonable royalty opinions. Dkt. No. 545 at 28-30. Because Taction cannot "put forth other evidence from which a jury could reasonably determine damages for infringement," the Court should enter JMOL of no damages. *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1301 (Fed. Cir. 2025).

If Taction is permitted to present any damages evidence whatsoever, Apple may respond with expert testimony from Ms. Knox. Ms. Knox would explain that the Taction OEM License Agreement Dr. Kennedy relies on and its amendments are neither economically nor technologically comparable to a bare patent license to practice the Asserted Patents in the accused products. Those agreements conveyed far

more than patent rights, including non-patented technology, know-how, and engineering support, and as noted above, Taction cannot present the required apportionment evidence regarding those agreements. The agreements were also negotiated between parties in a commercial supply relationship, on products, in volumes, and under competitive conditions that bear no resemblance to the hypothetical negotiation at issue here.

The benefits Taction claims are not attributable to the Asserted Patents. If Ms. Knox were called, she would address Dr. Kennedy's failure to account for the value of the non-patented technology in Taction's agreements, for Apple's own licensing history, and for non-infringing alternatives. She would also address how much the accused Taptic Engines are actually used: they vibrate for a small fraction of the time the Transporter modules were expected to vibrate in headphone products. She would address how the state of the art before the priority date bears directly on the value of any alleged advance. She would opine that Dr. Kennedy's lump sum royalty should be adjusted downward. She would also opine that a more comparable license is an agreement Apple produced and that this agreement, when adjusted to the facts of this case, supports a lump sum royalty of $2.6 million through the life of the asserted patents.

### B. Taction May Recover No Pre-Suit Damages

Taction did not plead compliance with 35 U.S.C. § 287(a) and therefore may not recover pre-suit damages. Denying Taction leave to amend its complaint to plead compliance, the Court held that the "proposed marking amendment would not survive a motion for summary judgment" and "is futile." Dkt. No. 318 at 20.

On January 30, 2026, the Court granted Apple summary judgment of no pre-suit damages. Dkt. No. 437. The damages period therefore begins on April 26, 2021, the date Taction filed its Complaint, and Taction may recover nothing before that date.

**C. Taction Cannot Prove Willful Infringement**

Taction cannot establish willful infringement. It gave Apple no notice of the Asserted Patents before filing the Complaint on April 26, 2021. The evidence Taction had offered to show pre-suit knowledge is now excluded as to willfulness by agreement of the parties: a pre-issuance review of its Kannon headphone, a post-suit review of Corsair's headphones, and patent listings on Taction's website. *See* Dkt. No. 545 at 31. Taction likewise has no evidence that Apple acted despite a risk of infringement that was known or so obvious it should have been known. Apple's haptic designs, including its use of ferrofluid in a vibration module, predate Taction's earliest priority date and preceded issuance of either Asserted Patent by roughly six years. Finally, Apple's decision to defend this case cannot supply what the evidence lacks. Apple was not required to remove the accused feature or take a license. It was entitled to litigate this case, in which it has raised substantial defenses on both non-infringement and invalidity.

**D. Taction Is Not Entitled to Injunctive Relief**

Taction is not entitled to injunctive relief. It cannot carry its burden under the *eBay* factors. Taction offers no products for sale, and its sole licensee to the Asserted Patents, Corsair, does not compete with Apple. Taction would therefore suffer no injury, let alone irreparable injury, from continued sales of the accused iPhones and Apple Watches, and monetary relief would fully compensate any injury it could show. The balance of hardships and the public interest both weigh heavily against enjoining these products.

**E. This Is Not an Exceptional Case**

Taction's case against Apple is not exceptional under 35 U.S.C. § 285. As examples, for all the reasons stated above regarding the merits of Apple's noninfringement, invalidity, and non-willfulness defenses, Taction cannot show this to be an exceptional case. To the contrary, Taction's requirement that Apple mount a

defense of this matter by filing and prosecuting the present lawsuit is exceptional under 35 U.S.C. § 285.

## V. CONCLUSION

Taction is entitled to no relief in this case. Every Asserted Claim requires a transducer with highly damped output. Apple's Taptic Engine does not have one—it is an undamped LRA, and what Taction measured is a phone responding to software commands, not the claimed transducer. Several of the Asserted Claims recite structures the accused products do not have at all. The Asserted Claims are also invalid: they are obvious, they neither describe nor enable the electronic control Taction now says they cover, and their scope cannot be determined with reasonable certainty. And Taction has no admissible opinion supporting the royalty it seeks. Apple expects the evidence at trial to establish that Taction is entitled to no relief.

Dated: August 20, 2026

FISH & RICHARDSON P.C.

By: /s/ Tyler R. Train

Roger A. Denning (SBN 228998)
denning@fr.com
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Qiuyi Wu (*pro hac vice)*
qwu@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (516) 542-5070 / Fax: (617) 542-8906

Jacqueline Tio (*pro hac vice)*
tio@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street N.E., 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 / Fax: (404) 892-5005

*Counsel for Defendant Apple Inc.*