Sean Pak (SBN 219032)
seanpak@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6320

Tigran Guledjian (SBN 207613)
tigranguledjian@quinnemanuel.com
Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000

*Attorneys for Plaintiff*
*Taction Technology, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TACTION TECHNOLOGY, INC.,<br>Plaintiff,<br>vs.<br>APPLE INC.,<br>Defendant. | Case No. 21-cv-00812-TWR-JLB<br>**TACTION'S TRIAL BRIEF**<br>Judge: Hon. Todd W. Robinson<br>Magistrate Judge: Hon. Jill L. Burkhardt |

# TABLE OF CONTENTS

**Page**

I. THEORY OF THE CASE .......... 1
A. Taction and Its Invention .......... 1
B. Apple's Taptic Engine .......... 2
C. Apple's Invalidity Case .......... 5
II. ISSUES REQUIRING THE COURT'S ATTENTION .......... 8
III. CONCLUSION .......... 10

In accordance with the Court's scheduling order, Plaintiff Taction Technology, Inc. ("Taction") respectfully submits this trial brief, which sets forth Taction's theories of the case and what it expects the evidence to show. Taction's contentions are set out at length in its Memorandum of Contentions of Fact and Law (Dkt. 502) and are not repeated here.

## I. THEORY OF THE CASE

### A. Taction and Its Invention

Taction is a small San Diego company. Dr. Silmon James Biggs, an engineer who spent his career in haptics research and design, founded Taction in 2014. Haptics is the science of enabling interaction with technology through the sense of touch. Dkt. 502 at 1. One can feel, rather than see or hear, a haptic response: the tap that signals a notification, the graded click of a rotating dial, the texture of a surface rendered under a fingertip, or a musical drumbeat. The Asserted Patents address particular advancements in that field, directed to "tactile transducers that produce bass frequency vibrations for perception by touch." U.S. Patent No. 10,659,885 ('885 patent) at 1:20-21. Haptics operates at the low end of human perception—on the order of tens to a few hundred hertz, a range in which a user can feel vibration predominantly through the skin. The asserted claims are directed to a specific combination of transducer components. Dr. Biggs solved a persistent industry problem: how to faithfully produce low-frequency signals (rather than ring at a single frequency) through the combination of electromagnetic transducer components.

Before 2014, low-frequency actuators vibrated at a single frequency or a narrow frequency range. Taction went the other way, building its invention that can reproduce a complex haptic signal, across a band of frequencies, rather than a ringing buzz. On September 24, 2014, Dr. Biggs filed U.S. Provisional Application No. 62/054,712, which describes a highly damped electromagnetic transducer in which a flexure suspension guides a moving portion, and viscous ferrofluid damps the resonance. The result was a transducer with substantially uniform output across the

normal operating frequency range of the device—rather than a sharp output at a single frequency. The asserted patents, U.S. Patent Nos. 10,659,885 and 10,820,117, claim specific combinations of those components—flexures, coil(s), magnets, and ferrofluid.

The invention worked, and the market recognized it. Taction built and commercialized its Transporter® and then sold its own Kannon™ headphones after a successful Kickstarter campaign. Following Kannon™'s success, Corsair entered into an arm's length license to the Asserted Patents and incorporated Transporter® into its HS60 Haptic headsets. Dkt. 502 at 24–25.

Apple practices Taction's asserted patents and benefits therefrom. Apple does not promote its Taptic Engine as an ordinary vibrating motor. For example, in its 2019 Core Haptics Developers Conference, Apple told the world that its new iPhones and Watches "have the Apple-designed Taptic Engine," not "any old commodity actuator." It lauded that its Taptic Engine provides a combination of power, wide expressive range, and unmatched precision. Taction expects the evidence to show that the Accused Products practice the asserted claims and that Apple has never compensated Taction for it.

**B. Apple's Taptic Engine**

Taction's evidence will show that the Accused Products practice the asserted claims. Three evidentiary sources tell the same story: (1) Dr. James Oliver's firsthand physical inspection and measurement of the modules themselves; (2) Apple's engineering, design, and manufacturing documents; and (3) testimony from Apple engineers who designed and built the Taptic Engine modules.

Dr. James Oliver, University Professor and Director of Innovation at Iowa State University, will present Taction's principal infringement evidence. Dr. Oliver is expected to provide the technical background and state of the art relevant to the asserted claims; the scope of those claims; the design, development, and operation of the Accused Products and Taction's practicing products (the Corsair and Kannon

headphones); Apple's infringement; and Apple's non-infringing alternatives. Dkt. 502 at 117–18.

To show how Apple practices each claim limitation,[1] Dr. Oliver is expected to take the jury through each of the three evidentiary sources identified above: his tear down, testing, and inspection of accused modules; how Apple's engineering, manufacturing, and calibration documents informed and buttressed his firsthand laboratory work; and what Apple's own engineers said about design, performance, manufacturing, and sale. Those three evidentiary lines converge in Dr. Oliver's ultimate conclusion: Apple infringes every Asserted Claim of the '885 and '117 patents.

Dr. Oliver will go through the '885 Patent (Claim 17), showing that every Accused Product practices each claim limitation. Apple disputes only three limitations of Claim 17,[2] two of which are the prosecution history disclaimers Apple advocated during Claim Construction.[3] Those disputed limitations are: (1)

---

[1] Taction has narrowed its claims for trial to claims 8, 17, and 19 of the '885 patent and claims 3, 5, and 16 of the '117 patent. Claims 17 and 19 of the '885 patent are asserted against all of the Accused Products; the remaining asserted claims are directed to particular categories of accused module, and Taction asserts them against those products only. *See*, Dkt. 502 at 28-32 (identifying the specific products Taction accuses of infringement for each Asserted Claim).

[2] Apple offers other arguments but these arguments are specific to a small subset of Accused Products.

[3] Dkt. 72 (Apple's Opening Claim Construction Brief) at 10-11 (arguing for prosecution disavowal because "Taction distinguished the invention from the prior art linear actuators. Taction noted that the prior art linear actuators are 'highly resonant,' and argued 'in contrast' that (1) the claimed invention 'is directed to transducers with

"transducers with highly damped output;" (2) "***not*** un-damped linear resonant actuators;" and (3) "plurality of magnets." Dkt. 499 at 47-50, 53-54. Apple does not dispute any other Claim 17 limitation. The question of infringement therefore centers on those three limitations.

On "highly damped output," Dr. Oliver is expected to testify that the Taptic Engine in each Accused Product produces an output that is substantially uniform or flat over the normal operating frequency range of the device. Dkt. 502 at 34. Dr. Oliver will rely on his own measurements and inspections of the accused devices, on the deposition testimony of Apple engineers, including Alex Lee, Arman Hajati, Denis Chen, Jere Harrison, Lei Ma, and Dr. Shingo Yoneoka, and on Apple's own engineering documents. *Id.* at 35–36.

On un-damped linear resonant actuator, Dr. Oliver will testify that the Accused Products are ***not*** un-damped linear resonant actuators because they have a formal damping mechanism and produce a highly damped output. *Id*. at 36. Dr. Oliver will identify the damping mechanisms in each accused module and will explain how Apple's own documents describe them as damping mechanisms.

On plurality of magnets, the Court construed the term as "at least two physically distinct magnets," and construed "magnet" as "a body that produces a magnetic field based on the body's dipolar nature." Dkt. 502 at 46. Apple concedes that the Unipolar Magnet Accused Products satisfy the limitation. *Id*. at 46. The dispute is confined to the Monolithic Magnet Accused Products, and as to those the Court granted Apple summary judgment of no literal infringement while denying summary judgment under the doctrine of equivalents, crediting Dr. Oliver's function-way-result opinion. Dkt. 437 at 25-27. Dr. Oliver is expected to testify that the monolithic magnets perform the same function, producing magnetic fields proximate to one or more

---

highly damped output,; and (2) '[Taction's] invention specifically teaches [a]way from linear resonant actuators.'")

conductive coils; in the same way, by including a plurality of magnetically polarized areas in the moving mass; to achieve the same result, allowing the moving mass to be urged laterally when current is applied. Dkt. 502 at 46–47. Further, he will testify that any differences are insubstantial, as Apple's own testing found little or no difference between magnet configurations and Apple's documents draw an equivalence between monolithic magnets and multiple unipolar magnets. *Id*.

### C. Apple's Invalidity Case

By stipulation, Apple has narrowed its invalidity case to two § 103 combinations per claim: (Ground 1) iPhone 6 Plus and Raj and (Ground 2) Zarrabi, Yoshikane, and Shahoian, with Lee for certain asserted claims. Neither combination invalidates any asserted claim. Apple has suggested that the Asserted Patents largely claim what Apple had already built years earlier, and that Taction's claimed combination of components was obvious from what was known in 2014. On Ground 1, Taction expects Apple to rely on the iPhone 6 Plus, which does not meet every claim limitation, in combination with Raj, to argue that the Asserted Claims are obvious. Taction will respond, for example, that at the time of invention, a skilled artisan would not have been motivated to combine iPhone 6 Plus with Raj and that it would not have been obvious to modify iPhone 6 Plus with Raj. On Ground 2, Taction expects Apple to argue that the combination of Zarrabi, Yoshikane, and Shahoian, and for certain Asserted Claims, also Lee, render obvious the Asserted Claims. On this Ground, Taction will respond, for example, that at the time of invention, a skilled artisan would not have been motivated to combine these three or four references and that it was not obvious to modify Zarrabi, on which Dr. Biggs is a co-inventor, with two or three additional references, all without employing impermissible hindsight.

Dr. Allison Okamura, Professor of Mechanical Engineering at Stanford University, will offer Taction's primary response to Apple's invalidity case in chief. Dr. Okamura will provide the technical background and state of the art at the time of invention; explain why the prior art references in Grounds 1 and 2 do not render

obvious the Asserted Claims; show why the secondary considerations support non-obviousness of the Asserted Patents, and explain why the asserted claims have written description support, are enabled, and are not indefinite. *See* Dkt. 502 at 118.

Apple has abandoned numerous defenses and contentions, including every noninfringement position focused on ferrofluid, its § 102 argument that either iPhone 6 or 6 Plus anticipate the Asserted Claims, best mode, laches, waiver, ensnarement, and the prosecution history estoppel contention it pleaded. Dkt. 502 at 113–14. What remains is even narrower than it may appear on first blush. Apple relies solely on multi-reference obviousness and the associated proof of motivation to combine such references.

Apple's Ground 1 fails on its merits, as iPhone 6 Plus was designed to vibrate at its resonant frequency, cannot meet the ferrofluid limitation, and does not meet the "un-damped linear resonant actuator" and "highly damped output" requirements. Raj discloses a dynamic loudspeaker to which ferrofluid may be applied, but also does not meet the "highly damped output" requirement. It is also undisputed that Apple's own testing refutes that the combined references practice the Asserted Claims. Dr. Visell extracted and tested iPhone 6 Plus vibration modules, as shipped with their actual controllers, and recorded their output, which had a sharp peak and a frequency response that was not substantially uniform. Apple thus relies on modifications Dr. Visell employed, which were never in products Apple shipped, and do not meet the claim limitations. Dkt. 502 at 13–14.

Apple's Ground 2 also fails on its merits, and Dr. Okamura will explain why a skilled artisan at the time of invention would not have (a) selected these particular references or (b) chosen to combine them in the particular way Apple has asserted. The primary reference, Zarrabi (on which Dr. Biggs is a co-inventor) depicts an actuator with no semblance of similarity with the actuators in the Asserted Claims. The reference derives from Dr. Biggs's time at Artificial Muscle, Inc. ("AMI"), a former Bayer subsidiary and later a Parker-Hannifin subsidiary. The reference

describes and claims an actuator that mimics human muscles (artificial muscle) using an electroactive polymer that expands and contracts under high voltage. There is no disclosure of ferrofluid, magnets, or coils, among other things.

Secondary considerations also support the conclusion that the Asserted Patents are not invalid for obviousness. Taction's Kannon headphones and Corsair's HS60 Haptic headphones practice the Asserted Patents and fulfill the relevant factors, including unexpected results; commercial success; industry praise; long-felt, unmet need; failure of others; and industry skepticism. Apple's own conduct is objective evidence of non-obviousness. As a premier haptics developer and promoter, Apple and its many haptics engineers had not, before the Asserted Patents' priority date, developed a vibration module that met or rendered obvious all limitations in the Asserted Claims.

Apple's remaining invalidity arguments are all based on § 112 and Dr. Zinn's 2023 report, which opines on four bases: (1) that, as Taction applies it, "transducer with highly damped output" lacks adequate written description; (2) is not enabled; (3) is indefinite; and (4) that "the plurality of conductive coils" limitation in claims 17 and 20 of the '885 patent is indefinite based on a lack of antecedent basis.[4] Zinn Opening Rpt. ¶¶ 305–25. The first three bases share a common source—that Taction's contention that "highly damped output … may be satisfied by ***any mechanism***" renders the claims invalid for purported deficiencies in written description,

---

[4] This argument has been resolved, by agreement, replacing "the plurality of coils" with "the conductive coil" in claim 17 of the '885 patent. Taction elected not to present claim 20 of the '885 patent in its narrowed subset of Asserted Claims, streamlining its trial presentation and obviating a dispute.

enablement, and definiteness. *Id.* ¶¶ 307, 314, 320 (emphasis added).[5] Those arguments fail on their merits.

The "transducer with highly damped output" phrase is well supported in the written descriptions of the Asserted Patents, which includes the specifications of the Asserted Patents and the provisional applications on which they rely, as of their effective filing dates. Those disclosures (Asserted Patents' specifications and provisional applications) also enabled a skilled artisan, as of the effective filing dates, to make a "transducer with highly damped output," to its full scope, without undue experimentation. The written descriptions inform a skilled artisan of the objective boundaries of "transducer with highly damped output" with reasonable certainty and testing protocols. Dkt. 502 at 25–27. There is no viable § 112 defense.

## II. ISSUES REQUIRING THE COURT'S ATTENTION

Taction identifies the following foreseeable evidentiary and procedural issues for consideration before trial. Civil L.R. 16.1(f)(9)(a).

***Prior-art foundation lacking.*** The Court conditioned its denial of Taction's first *Daubert* motion (as to Dr. Zinn's and Dr. Visell's iPhone 6 opinions) on Apple laying proper prior-art foundation at trial. Dkt. 545 at 21–22. To avoid inserting error and confusion, Taction presumes the Court will require Apple to proffer such foundational evidence before such opinions are elicited and without the jury present. Taction asks the Court to employ that approach, nevertheless.

---

[5] The Court rejected Apple's summary judgment argument that the "highly damped output" limitation was indefinite or lacked written description. Dkt. 437 (Supplemental Summary Judgment Order) at 14-21 (finding "Apple failed to produce clear and convincing evidence upon which a reasonable jury could invalidate the patent for indefiniteness"); 21-22 ("Apple failed to produce clear and convincing evidence upon which a reasonable jury could invalidate the patent for lack of written description").

***Equitable issues.*** The equitable defenses Apple asserts are not jury questions and should be addressed in their absence. Dkt. 502 at 78–79, 81. Apple's unclean hands theory, which argues that Dr. Biggs owed the current inventions to AMI, is highly-sensitive and potentially prejudicial and should also be decided outside of the jury. Apple has not challenged inventorship, so that premise is irrelevant to unclean hands. Thus, Apple's only unclean hands basis is as to ownership. The objective evidence substantiates that Dr. Biggs was under no obligation to assign any invention to AMI, Bayer, or Parker Hannifin, so that accusation should also be decided outside of the jury. Any evidence Apple may elicit on ownership would still not bear on infringement, validity, or damages. Fed. R. Evid. 402, 403. In reserving ruling on Taction's Motion *in Limine* No. 2, the Court should decide this outside of the jury. Taction asks that the Court resolve this issue before Taction's opening statement.

***Claim construction.*** The operative construction requires that the transducer be highly damped, meaning that "the output is substantially uniform or flat over the normal operating frequency of the device." Dkt. 519 at 5. The Federal Circuit removed the mechanical-damping and Q-factor requirements. *Id.*; Dkt. at 9. Taction asks that neither party should be permitted to relitigate the construction or to reintroduce removed limitations; the parties' competing views on the "normal operating frequency range" of Accused Products remains a jury question, as this Court ruled. Dkt. 545 at 25.

***Scope of Apple's § 112 defenses.*** Taction asks that Apple be held to the § 112 positions disclosed in Dr. Zinn's March 10, 2023, opening report, and that Apple not be permitted to elicit § 112 opinions beyond them.

***Apple's AAC Witness, Charles Slutsky.*** In the parties' Proposed Pretrial Order, Apple designated Mr. Slutsky, a third-party witness from AAC, as a fact witness it expects to call to testify concerning "Apple prior art to the asserted patents (including AAC patents stemming from the work [AAC] did on the Apple prior art)." Proposed Pretrial Order § IV.C. Taction has objected. *Id.* § IV.H. Apple first identified

Mr. Slutsky in its initial disclosures 24 days before the close of fact discovery, and cabined his knowledge there to "Apple prior art," not identifying he had knowledge of AAC's patents or any work AAC did on Apple's products. Additionally, when asked to identify the individuals knowledgeable about its invalidity defenses, Apple answered without naming Mr. Slutsky; and when asked to identify those with knowledge of third-party manufacturing, Apple answered with Alex Lee alone. Taction asks that Mr. Slutsky not be permitted to testify. Should the Court be inclined to permit his testimony, Taction asks that Apple first be required to identify any testimony Mr. Slutsky is expected to offer concerning unelected prior art, including AAC's patents and any prior-art haptic actuators, ferrofluids, or other devices with which he may previously have worked, so that the Court may determine before trial whether that testimony is relevant or excludable under Rule 403. Dkt. 533 (July 9, 2026 Hr'g Tr.) at 75:14–25. Taction asks further that it be permitted to depose Mr. Slutsky on those subjects before he testifies.

## III. CONCLUSION

As discussed above, Taction expects the evidence to show that Apple infringes both Asserted Patents, that its infringement after the complaint has been willful, and that Apple cannot prove invalidity by clear and convincing evidence.

Dated: August 20, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Tigran Guledjian*

Sean Pak (SBN 219032)
seanpak@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6320

______________________________

Tigran Guledjian (SBN 207613)
tigranguledjian@quinnemanuel.com
Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000

Nagendra (Nick) Setty (*pro hac vice*)
nicksetty@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000

*Counsel for Plaintiff Taction Technology, Inc.*