UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

TACTION TECHNOLOGY, INC.,
Plaintiff,
v.
APPLE INC.,
Defendant.

Case No.: 21-CV-812 TWR (JLB)

**PRETRIAL ORDER**

On July 30, 2026, Plaintiff Taction Technology, Inc. and Defendant Apple Inc. jointly lodged a Proposed Pretrial Order. Thereafter, the Parties filed various other pretrial documents. (*See generally* Docket.) On August 27, 2026, the Court held a Final Pretrial Conference. (*See* ECF No. 593.) Having reviewed the Parties' submissions and the arguments raised at the Final Pretrial Conference, the Court **ENTERS** the following Pretrial Order:

**NATURE AND SCHEDULING OF THE TRIAL**

This case will be tried by jury. The time for trial will be eight trial days, beginning at 9:00 a.m. on September 14, 2026. On the first day of trial, the Court will show the Federal Judicial Center Patent Video and give the jury panel an overview of the case. Then, the Court and the Parties will conduct *voir dire*. The jury will be comprised of eight jurors. At the end of trial, all remaining jurors will participate in deliberations.

After a jury is selected, the Court will give preliminary jury instructions.[1] The Parties will then give opening statements. Presentation of evidence will begin on the second day of trial, with a daily trial schedule as follows: 8:45 a.m. to 10:45 a.m., a 20-minute break, 11:05 a.m. to 1:00 p.m., a 20-minute break, and 1:20 p.m. to 3:15 p.m. As mentioned at the Final Pretrial Conference, Court will end early on three dates. On September 15 and 17, Court will end at 3:00 p.m.; on September 23, Court will end at 2:00 p.m. The Court reserves the right to modify this schedule throughout trial, as necessary. In the event that any issues arise that must be addressed outside the presence of the jury, the Parties shall contact the Courtroom Deputy to arrange a time to do so.

Each side will have one hour to give opening statements, as well as one hour to give closing arguments. Each side will have a total of 15 hours for trial presentation, which includes conducting any type of witness examination.

## STATEMENT OF THE CASE[2]

The Parties have agreed on the following statement of the case to be read to the jury:

This case involves a patent dispute between Taction and Apple.

The Parties have different views of what the evidence will show, which you will hear directly from them. Taction has obtained two patents, U.S. Patent No. 10,659,885, which can be referred to as the ’885 Patent; and U.S. Patent No. 10,820,117, which can be referred to as the ’117 Patent. The ’885 and ’117 Patents collectively can be referred to as the Asserted Patents or the patents-in-suit. Taction contends that Apple infringes the Asserted Patents by selling certain Apple iPhones and Apple Watches. The products can be referred to as the Accused Products. In general, the Accused Products are certain Apple

---

[1] Considering the relative complexity of this case, the Court will utilize a PowerPoint presentation when instructing the jurors. The Court will show text of each instruction to the jurors as the instruction is read aloud.

[2] The Parties included a proposed joint statement of the case in their Proposed Pretrial Order. Thereafter, the Parties filed separate Joint Statement of the Case. (*See* ECF No. 562.) The Court uses their more recent statement. (*See id.*)

iPhones and Apple Watches released from 2017 to 2026 in the United States. Apple denies Taction's contentions. Apple contends that it does not infringe the Asserted Patents and that the Asserted Patents are invalid. Taction denies Apple's contentions as to non-infringement and invalidity.

## CAUSES OF ACTION[3]

### I. Taction's Causes of Action

Taction intends to pursue the following claims:

1. Apple has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, Claims 8, 17, and 19 of the '885 Patent.
2. Apple has induced infringement, and continues to induce infringement, of Claims 8, 17, and 19 of the '885 Patent.
3. Apple has contributorily infringed, and continues to contributorily infringe, Claims 8, 17, and 19 of the '885 Patent.
4. Apple has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, Claims 3, 5, and 16 of the '117 Patent.
5. Apple has induced infringement, and continues to induce infringement, of Claims 3, 5, and 16 of the '117 Patent.
6. Apple has contributorily infringed, and continues to contributorily infringe, Claims 3, 5, and 16 of the '117 Patent

/ / /

---

[3] The Parties included their positions on their causes of action and defenses in their Proposed Pretrial Order. Taction indicated it "intends to reduce the number of asserted claims and is currently evaluating which claims it will present at trial." On August 10, 2026, the Parties filed a Joint Motion (which the Court granted) stating that Taction would narrow its case to six asserted claims and Apple would narrow its case to no more than two obviousness combinations per asserted claim. (*See* ECF Nos. 541, 543.)

The Parties disclose their narrowed positions in their Pretrial Briefs. (*See* ECF Nos. 564, 569.) Specifically, "Taction has narrowed its claims for trial to claims 8, 17, and 19 of the '885 patent and claims 3, 5, and 16 of the '117 patent. Claims 17 and 19 of the '885 patent are asserted against all of the Accused Products; the remaining asserted claims are directed to particular categories of accused module, and Taction asserts them against those products only." (ECF No. 569 at 5 n.1 (citing ECF No. 502 at 28–32).)

7. As a result of Apple's infringement, Taction is entitled to damages in the form of a reasonable royalty.

8. Each of Apple's counts of infringement of the asserted claims has been willful, entitling Taction to enhanced damages.

The elements required to establish Plaintiff's claims are:

To prove direct infringement, Taction must prove by a preponderance of the evidence that Apple made, used, sold, offered for sale in the United States, or imported into the United States, a product meeting all the requirements of a claim of Taction's Asserted Patents. Direct infringement may be shown either by literal infringement or infringement under the doctrine of equivalents. To prove infringement under the doctrine of equivalents, Taction must prove that there are insubstantial differences between any element not met literally and the accused product, which is sometimes framed as an accused product that does not literally infringe a claim element, but performs substantially the same function, in substantially the same way, to achieve substantially the same result.

To prove inducement of infringement, Taction must prove by a preponderance of the evidence that Apple induced another to directly infringe a claim of Taction's Asserted Patents. Apple is liable for active inducement of a claim only if Taction proves by a preponderance of the evidence:

(1) that acts carried out by an end user directly infringe that claim;

(2) that Apple took action during the time the Taction patents were in force that was intended to cause and led to the infringing acts by end users; and

(3) that Apple was aware of the Taction patents and knew that the acts, if taken, would constitute infringement of either patent; or that Apple believed there was a high probability that the acts by end users would infringe a Taction patent and Apple took deliberate steps to avoid learning of that infringement.

To prove contributory infringement, Taction must prove by a preponderance of the evidence that Apple contributed to the infringement of a claim of Taction's Asserted

/ / /

Patents by another. Apple is liable for contributory infringement of a claim only if Taction proves by a preponderance of the evidence:

(1) that acts carried out by an end user directly infringe that claim;

(2) that Apple supplied an important component of the infringing part of the product, and that the component is not a common component suitable for non-infringing use; and

(3) that Apple supplied the component with knowledge of the Asserted Patents and knowledge that the component was especially made or adapted for use in an infringing manner.

If the jury finds that Apple has infringed one of the asserted claims, Taction is entitled to at least a reasonable royalty to compensate it for that infringement.

To prove willful infringement of a claim, Taction must prove by a preponderance of the evidence that Apple intentionally ignored or recklessly disregarded that claim. In evaluating willfulness, the factfinder may consider all of the facts surrounding the infringement, including whether Apple knew, or should have known, that its conduct involved an unreasonable risk of infringement, and whether Apple had a reasonable belief that its products did not infringe the Asserted Patents.

## II. Apple's Causes of Action

Apple intends to pursue the following claims and affirmative defenses at trial:

### *A. Affirmative Defense and Declaration of Non-Infringement of the '885 and '117 Patents (First Affirmative Defense; Apple's Counterclaims Counts I and III)*

Taction bears the burden of proving infringement. Apple does not now infringe and has never infringed any asserted claim of the '885 and '117 Patents. Apple does not now and has never induced or contributed to infringement of any asserted claim of the '885 and '117 Patents.

/ / /

/ / /

/ / /

### *B. Affirmative Defense and Declaration of Invalidity of the ’885 and ’117 Patents (Second Affirmative Defense; Apple’s Counterclaims Counts II and IV)*

The Asserted Claims of the ’885 and ’117 Patents are invalid under at least 35 U.S.C. §§ 101, 102, 103, and 112. Apple must prove invalidity by clear and convincing evidence.

#### *1. 35 U.S.C. § 101 – Subject Matter Eligibility*

Invalidity under 35 U.S.C. §§ 101 requires clear and convincing evidence that the claimed invention is directed to a patent-ineligible concept and that the claims do not provide an inventive concept.

*See Alice Corp. Pty. v. CLS Bank International*, 573 U.S. 208 (2014).

#### *2. 35 U.S.C. § 103 – Obviousness*

Invalidity under 35 U.S.C. § 103 requires proof of the following:

(1) By clear and convincing evidence, the subject matter of one or more of the asserted claims would have been obvious to a person having ordinary skill in the art at the time of the invention; or

(2) A person having ordinary skill in the art would have been motivated to combine the teachings of prior art references to achieve the subject matter of one or more of the asserted claims, and would have had a reasonable expectation of success in doing so.

(3) Consideration of objective indicia of non-obviousness relating to the claimed subject matter, including of the commercial success of the Taction product, long felt and unresolved need, failure of others, skepticism by experts, praise for Taction’s invention, teaching away, and copying, do not support or suggest the non-obviousness of the asserted claims.

*See, e.g.*, 35 U.S.C. § 103; Federal Circuit Bar Association Model Jury Instructions, B.4.3c; *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1129 (Fed. Cir. 2000).

/ / /

*3. 35 U.S.C. § 112(a) – Written Description & Enablement*

Invalidity under 35 U.S.C. § 112 requires proof of the following:

(1) By clear and convincing evidence, a person having ordinary skill in the art reading the original patent applications would have recognized that it does not describe the full scope of the asserted claims of the asserted patents and thus that the named inventor(s) did not actually possess the full scope of the asserted claims at the time of the filing of these applications; or

(2) By clear and convincing evidence, a person having ordinary skill in the art reading Taction patents in suit would have recognized that they do not describe the full scope of the asserted claims of the asserted patents and that the named inventor(s) did not actually possess the full scope of the claimed inventions; or

(3) By clear and convincing evidence, a person having ordinary skill in the art reading the original patent application would not have been enabled at the time to make and use the full scope of the invention.

*See, e.g.*, 35 U.S.C. § 112(a); Federal Circuit Bar Association Model Jury Instructions, B.4.2a; *Ariad Pharms. Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344–46 (Fed. Cir. 2010); *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1369 (Fed. Cir. 2014); *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1337 (Fed. Cir. 2005).

*4. 35 U.S.C. § 112(b) – Indefiniteness*

Invalidity under 35 U.S.C. § 112(b) requires proof that a patent's claims read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898–99 (2014).

/ / /

/ / /

/ / /

***C. Affirmative Defense of Prosecution History Estoppel (Third Affirmative Defense)***

Taction is estopped or otherwise barred as a matter of specific exclusion or disclosure dedication from construing any valid claim of the Asserted Patents to be infringed or to have been infringed by application of the doctrine of equivalents, by any product made, used, imported, sold, or offered for sale by Apple in view of prior art and/or because of admissions, representations, and/or statements made to the Patent Office during prosecution of any application leading to the issuance of the Asserted Patents or any related patent, because of disclosures or language in the specifications of the Asserted Patents, and/or because of limitations in the claims of the Asserted Patents (and is similarly barred as to literal infringement as a matter of prosecution history disclaimer).

*See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 734 (U.S., 2002); *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013) (estoppel); *Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1211 (Fed. Cir. 2007) (quoting *Athletic Alternatives, Inc. v. Prince Mfg. Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996)) (specific exclusion); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc) (disclosure dedication).

***D. Affirmative Defense of Failure to Mark, No Pre-suit Damages, No Damages (Fourth Affirmative Defense)***

*1. No Damages*

Taction bears the burden of proving it is entitled to damages and the amount of damages. Taction has failed to satisfy its burden of proving the amount of damages.

*2. No Pre-suit Damages*

Taction bears the burden of proving that it is entitled to pre-suit damages because it complied with the marking statute. Taction and Corsair, the sole licensee to the Asserted Patents, failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise failed to give proper notice that Apple's actions allegedly infringe the Asserted Patents. Apple is not liable to Taction for the acts alleged to have

/ / /

been performed before Apple received actual notice that the accused devices were allegedly infringing the Asserted Patents.

Taction's alleged marking is legally insufficient. (*See* ECF No. 437 at 32 (granting Apple's motion for summary judgment of no pre-suit damages).)

### *E. Affirmative Defenses of Equitable Estoppel and Unclean Hands (Fifth Affirmative Defense)*[4]

Taction's attempted enforcement of the Asserted Patents against Apple is barred by the equitable doctrines of estoppel, unclean hands, patent misuse, and/or waiver. Dr. Biggs appears to have engaged in business misconduct (e.g. misappropriating confidential information belonging to his former employers, failing to assign the purported invention to his employer per the terms of his employment contract, unfairly competing with his employer). Dr. Biggs also failed to disclose the best mode of practicing his alleged invention in the patent application.

#### *1. Equitable Estoppel*

Apple must show by a preponderance of the evidence that:

(1) the patent owner, through misleading conduct, led the alleged infringer to reasonably infer that the patent owner did not intend to enforce its patent against the alleged infringer;

(2) the alleged infringer relied on this conduct; and

(3) due to the reliance, the alleged infringer will be materially prejudiced if the patent owner is allowed to proceed on its claim.

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995).

/ / /

/ / /

---

[4] Taction requests that the Court resolve this issue before Taction's opening statement. (*See* ECF No. 569 at 11.) The Court **DENIES** Taction's request and defers ruling on this issue unless and until it is appropriate to do so (*i.e.*, if the Asserted Patents are found valid and infringed). Resolution of this issue would be done outside of the presence of the jury.

*2. Unclean Hands*

Apple must show by a preponderance of the evidence, any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct.

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814–815 (1945). *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1293 (Fed. Cir. 2011) (*en banc*); *Kelley Blue Book v. Car–Smarts, Inc.*, 802 F. Supp. 278, 292 (C.D. Cal. 1992) (applying a preponderance of the evidence standard to unclean hands).

***F. Affirmative Defense of No Injunctive Relief (Sixth Affirmative Defense)***

Taction bears the burden of proving entitlement to injunctive relief. Taction's claim for injunctive relief is barred because, at a minimum, it has no irreparable injury, there exists an adequate remedy at law, the balance of hardships do not tip in its favor, the public interest would be disserved by an injunction, and Taction's claims otherwise fail to meet the requirements for such relief.

To obtain an injunction, Taction must prove the following:

(1) it has suffered an irreparable injury;

(2) that remedies at law, such as monetary damages, are inadequate to compensate for its injury;

(3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

***G. Affirmative Defense of Failure to State a Claim (Seventh Affirmative Defense)***

Taction's Complaint fails to state a claim upon which relief may be granted, this includes Taction's failure to plead compliance under 35 U.S.C. § 287(a) for purposes of its request for pre-suit damages. (*See* ECF No. 437.)

/ / /

/ / /

### *H. Affirmative Defense of No Willfulness (Ninth Affirmative Defense)*

Taction bears the burden of proving Apple willfully infringed. Taction will be unable to establish willful infringement. Taction has not offered evidence that Apple committed deliberate or intentional infringement. Taction also did not provide Apple with notice of the Asserted Patents before filing the Complaint.

To determine whether Apple acted willfully, Taction must prove that it is more likely than not that Apple knew of the asserted patents and that the infringement by Apple was intentional. The jury must consider all facts and assess Apple's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

(1) Whether or not Apple acted consistently with the standards of behavior for its industry;

(2) Whether or not Apple intentionally copied a product of Taction that is covered by its patents;

(3) Whether or not Apple reasonably believed it did not infringe or that the asserted patents were invalid;

(4) Whether or not Apple made a good-faith effort to avoid infringing the patents, for example, whether Apple attempted to design around the patents; and

(5) Whether or not Apple tried to cover up its infringement.

Enhanced damages are not to be awarded in a typical infringement case, but are instead designed as a punitive sanction for egregious infringement behavior, and there is no requirement that enhanced damages must follow a finding of egregious misconduct. Courts typically consider the following factors:

(1) whether the infringer deliberately copied the ideas or design of another;

(2) whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or not infringed;

(3) the infringer's behavior as a party to the litigation;

(4) the infringer's size and financial condition;

(5) the closeness of the case;

(6) the duration of the infringer's misconduct;

(7) remedial action by the infringer;

(8) the infringer's motivation for harm; and

(9) whether the infringer attempted to conceal its misconduct.

*Halo Elecs.*, 136 S. Ct. 1923 (2016); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959 (Fed. Cir. 2018).

***I. Affirmative Defense of No Exceptional Case (Tenth Affirmative Defense)***

Taction will be unable to establish that Taction's case against Apple is exceptional under 35 U.S.C. § 285 even if Taction prevails on the merits.

Attorneys' fees require proof of an exceptional case, meaning the case "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated."

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also* 35 U.S.C. § 285.

**WITNESSES**

Each Party reserves its rights under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the rules of this Court, including specifically, but not limited to: (1) to call any witness identified on another Party's witness list; and (2) to call additional witnesses for the purposes of rebuttal or impeachment, either in person or by deposition designation. No Party waives objection to testimony by deposition. No Party's witness list is a representation that any witness listed is available or willing to appear at trial. Should any witness listed not be available and willing to appear at trial, the Parties reserve their rights to call that witness by designation of their deposition testimony.

Each Party reserves its right to object to any fact or expert witness providing testimony, either live or by deposition, that is subject in whole or in part to a ruling by the Court on a motion for summary judgment, motion to strike, motion *in limine, Daubert* motion, evidentiary objection, or other motion.

Apple will seek to invoke Federal Rule of Evidence 615.

## I. Fact Witnesses Taction Expects to Call at Trial

| Witness | Substance of Testimony |
|---|---|
| John Steinberg | Mr. Steinberg may testify concerning the history of Taction; Taction's business; and the development, marketing, and licensing of Taction's technology. |
| Dr. James Biggs | Dr. Biggs may testify concerning the history of Taction; the development and/or nature of the inventions claimed in the asserted patents; the state of the art at the time of the inventions; the operation or structure of the Taction Transporter, Taction Kannon, and/or Corsair HS60 Haptic; and the development of Taction's technology. |

## II. Expert Witnesses Taction Expects to Call at Trial

| Witness | Substance of Testimony |
|---|---|
| Dr. James Oliver | Dr. Oliver may testify concerning the technical background and state of the art relevant to the asserted claims of the asserted patents; the interpretation and scope of the asserted claims of the asserted patents; the design, development, and operation of Apple's accused products and Taction's practicing products; infringement of the asserted claims by Apple and practice by Taction; Taction's innovations and related patent rights, including the significance, performance and/or technical benefits, and scope of those innovations and rights as well as their adoption and use; the availability of alternative technology and/or sources to Taction's inventions and practicing products; and technical issues underlying the damages for infringement of the asserted patents. Dr. Oliver may further testify in rebuttal to |

| Witness | Substance of Testimony |
|---|---|
| | Apple's expert testimony and/or other issues asserted by Apple. |
| Dr. Allison Okamura | Dr. Okamura may testify concerning the technical background and state of the art relevant to the asserted claims of the asserted patents; the interpretation and scope of the asserted claims of the asserted patents; the interpretation and scope of the prior art; the state of the art at the time of the invention of Taction's patents; the validity and enforceability of the asserted claims of the asserted patents; the design, development, and operation of Apple's prior art products; Taction's innovations and related patent rights, including the significance, performance and/or technical benefits, and scope of those innovations and rights as well as their adoption and use. Dr. Okamura may further testify in rebuttal to Apple's expert testimony and/or other issues asserted by Apple. |
| Dr. Patrick Kennedy | Dr. Kennedy may testify concerning issues related to the value of the Taction patents in suit; the value created or enabled by Taction's intellectual property; the damages that Taction has suffered due to Apple's violation of Taction's intellectual property; and the amount of damages and/or reasonable royalties Apple owes Taction for Taction's patent infringement claims. Dr. Kennedy may also respond to economic and/or damages-related opinions offered by Apple's experts. |

/ / /

/ / /

/ / /

## III. Additional Witnesses Taction Does Not Expect to Call at Trial, but Reserves the Right to Call[5]

| Witness | Substance of Testimony |
| --- | --- |
| Alex Lee | Mr. Lee may testify concerning the design and functionality of the accused products; making, using, offering to sell, or selling the accused products; knowledge of the asserted patents; customer use of the accused products; encouragement of use of the accused products; and communications with suppliers relating to the accused products. |
| Jere Harrison | Mr. Harrison may testify concerning the design and functionality of the accused products; technical apportionment between damping mechanisms in the accused products; the design and functionality of the iPhone 6 or iPhone 6 Plus prior art; making, using, offering to sell, or selling the accused products; knowledge of the asserted patents; customer use of the accused products; encouragement of use of the accused products; and communications with suppliers relating to the accused products. |
| Hanze Tu | Mr. Tu may testify regarding the design and functionality of the accused products and their haptic software; making, using, offering to sell, or selling the accused products and their haptic software; knowledge of the asserted patents; customer use of the accused products; encouragement of use of accused products; communications with suppliers and/or developers relating to the accused products or their haptic software; marketing and advertising of the accused products or their |

[5] Taction reserves the right to call any of the witnesses identified herein, and any other witnesses Apple identifies as actual or potential witnesses (or who Apple otherwise brings to trial), in Taction's case-in-chief or in rebuttal.

| Witness | Substance of Testimony |
| --- | --- |
| | haptic software; and market research and consumer demand for the accused products or their haptic software. |
| John Morrell | Mr. Morrell may testify concerning the design and functionality of the accused products; the design and functionality of the iPhone 6 or iPhone 6 Plus prior art; making, using, offering to sell, or selling the accused products; knowledge of the asserted patents; customer use of the accused products; encouragement of use of the accused products; and communications with suppliers relating to the accused products. |
| Francesca Sweet | Ms. Sweet may testify concerning Apple's marketing of the accused products. |
| Jacob Anderson | Mr. Anderson may testify concerning Apple's licensing practices and Apple's pre-suit communications related to Taction. |
| Mark Rollins | Mr. Rollins may testify concerning financial and sales data related to the accused products. |
| Anna Mirabella | Ms. Mirabella may testify concerning Apple's knowledge of the asserted patents, including Apple's purchase of the Kannon headphones. |
| Arman Hajati | Mr. Hajati may testify concerning the design and functionality of the accused products; the design and functionality of the iPhone 6 or iPhone 6 Plus prior art; making, using, offering to sell, or selling the accused products; knowledge of the asserted patents; customer use of the accused products; encouragement of use of the accused products; and communications with suppliers relating to the accused products. |
| Dennis Chen | Mr. Chen may testify concerning the design and functionality of the accused products; making, using, offering to sell, or selling the accused products; knowledge of the asserted |

| Witness | Substance of Testimony |
|---|---|
| | patents; customer use of the accused products; encouragement of use of the accused products; and communications with suppliers relating to the accused products. |
| Lei Ma | Mr. Ma may testify concerning the design and functionality of the accused products; making, using, offering to sell, or selling the accused products; knowledge of the asserted patents; customer use of the accused products; encouragement of use of the accused products; and communications with suppliers relating to the accused products. |
| Storrs Hoen | Mr. Hoen may testify concerning the design and functionality of the accused products; the design and functionality of the iPhone 6 or iPhone 6 Plus prior art; making, using, offering to sell, or selling the accused products; knowledge of the asserted patents; customer use of the accused products; encouragement of use of the accused products; and communications with suppliers relating to the accused products. |
| Shingo Yoneoka | Mr. Yoneoka may testify concerning the design and functionality of the accused products; the design and functionality of the iPhone 6 or iPhone 6 Plus prior art; making, using, offering to sell, or selling the accused products; knowledge of the asserted patents; customer use of the accused products; encouragement of use of the accused products; and communications with suppliers relating to the accused products. |
| Taniyyus Syed | Mr. Syed may testify concerning agreements between Taction and Corsair, and the operation or structure of the Corsair HS60 Haptic. |
| Art Muir | Mr. Muir may testify concerning the business operations of Artificial Muscle, Parker |

| Witness | Substance of Testimony |
|---|---|
| | Hannifin, and/or Bayer; and Dr. Biggs' relationship with those entities. |
| Roger Hitchcock | Mr. Hitchcock may testify concerning the business operations of Artificial Muscle, Parker Hannifin, and/or Bayer; and Dr. Biggs' relationship with those entities. |
| Eric Bates | Mr. Bates may testify concerning Apple's cited prior art. |
| Eric Saltzman | Mr. Saltzman may testify concerning Taction's business and documents produced by him. |
| John King | Mr. King may testify concerning prosecution of the asserted patents. |
| John Tishok | Mr. Tishok may testify concerning Taction's business. |
| Michael Fierro | Mr. Fierro may testify concerning Taction's business. |

## IV. Fact Witnesses Apple Expects to Call at Trial

| Witness | Substance of Testimony |
|---|---|
| Alex Lee | Mr. Lee may testify concerning the structure, function, and operation of the Taptic Engine in the accused products. Mr. Lee may also testify concerning the background, history, and product development of the Taptic Engine in the accused products as well as Apple's patents and prior art. |
| Dr. John Morrell | Mr. Morrell may testify concerning the prior art to the asserted patents. Mr. Morrell may also testify concerning the background, history, and product development of the Taptic Engine in the accused products as well as Apple's patents and prior art. |

| Witness | Substance of Testimony |
|---|---|
| Dr. Denis Chen | Mr. Chen may testify concerning the structure, function, and operation of the Taptic Engines in the accused products. |
| Anna Mirabella | Ms. Mirabella may testify concerning Apple's purchase and use of the Kannon headphones. |
| Dr. Jere Harrison | Dr. Harrison may testify concerning the structure, function, and operation of the Taptic Engine in the accused products. Dr. Harrison may also testify concerning Apple's patents and prior art. |
| Dr. Shingo Yoneoka | Mr. Yoneoka may testify concerning the structure, function, and operation of the Taptic Engines in the accused products; Dr. Yoneoka may also testify concerning the background, history, and product development of the Taptic Engine in the accused products as well as Apple's patents and prior art. |
| Charles Slutsky[6] | Mr. Slutsky may testify concerning Apple prior art to the asserted patents (including AAC patents stemming from the work ACC did on the Apple prior art). |
| Dr. James Biggs | Dr. Biggs may testify concerning matters related to the asserted patents, including without limitation inventorship, compliance with 35 U.S.C. §§ 101–103 and 112, claim construction, conception, diligence, reduction to practice, prior art, prosecution of the asserted patents, the state of the art, and related |

[6] Taction objects to Apple's designation of Charles Slutsky as a witness Apple expects to call at trial to testify concerning "Apple prior art to the asserted patents (including AAC patents stemming from the work ACC did on the Apple prior art)." While the Court **DENIES** Taction's request to prohibit Mr. Slutsky from testifying, the Court **GRANTS** Taction's request that Apple first be required to identify any testimony Mr. Slutsky is expected to offer concerning unelected prior art, including AAC's patents and any prior art haptic actuators, ferrofluids, or other devices with which he may have previously worked, so that the Court may determine prior to his testimony whether his proposed testimony is relevant or otherwise excludable under Federal Rule of Evidence 403. Apple **SHALL SUBMIT** to Taction identification of any prior art before trial begins and with enough time for Taction to respond.

| Witness | Substance of Testimony |
|---|---|
| | issues. Dr. Biggs may also testify concerning matters related to Taction, its background, patents, products, sales, funding, investments, licensing, and testing of Apple's products. |
| John Steinberg | Mr. Steinberg may testify concerning matters related to Taction, its background, business, marketing, patents, products, sales, funding, investments, licensing of Taction's products and technology, and testing of Apple's products. |

## V. Expert Witnesses Apple Expects to Call at Trial

| Witness | Substance of Testimony |
|---|---|
| Dr. Yon Visell | Dr. Visell may testify concerning the technical background and state of the art relevant to the asserted claims of the asserted patents; the interpretation and scope of the asserted claims of the asserted patents; the design and functionality of Apple's prior art; Dr. Visell may further testify in rebuttal to Taction's expert testimony and/or other issues asserted by Taction. |
| Dr. Mike Zinn | Dr. Zinn may testify concerning the technical background and state of the art relevant to the asserted claims of the asserted patents; the interpretation and scope of the asserted claims of the asserted patents; the interpretation and scope of the prior art; the validity and enforceability of the asserted claims of the asserted patents; the design, development, and operation of Apple's prior art products; non-infringement of the asserted claims by Apple's accused products; Taction's failure to practice the asserted claims; the availability of alternative technologies; and technical issues underlying the alleged damages for infringement of the asserted patents. Dr. Zinn |

| Witness | Substance of Testimony |
|---|---|
| | may further testify in rebuttal to Taction's expert testimony and/or other issues asserted by Taction. |
| Julie Knox | Ms. Knox may testify concerning issues related to the value of the Taction patents in suit; the value created or enabled by Taction's intellectual property; any damages that Taction has suffered due to Apple's alleged violation of Taction's intellectual property; and the amount of damages and/or reasonable royalties Apple would owe Taction for Taction's patent infringement claims. Ms. Knox may also respond to economic and/or damages-related opinions offered by Taction's experts. |

## VI. Additional Witnesses Apple Does Not Expect to Call at Trial, but Reserves the Right to Call[7]

| Witness | Substance of Testimony |
|---|---|
| Arman Hajati | Mr. Hajati may testify concerning the structure, function, and operation of the Taptic Engine in the accused products; Mr. Hajati may also testify concerning Apple's prior art. |
| Storrs Hoen | Mr. Hoen may testify concerning the development of the Taptic Engine in the accused products. Mr. Hoen may also testify concerning Apple's prior art. |
| Jacob Anderson | Mr. Anderson may testify concerning Apple's licensing practices; Apple's pre-suit communications related to Taction. |
| Hanze Tu | Mr. Tu may testify concerning the structure, function, and operation of software in the accused products. |

[7] Apple reserves the right to call any of the witnesses identified herein, and any other witnesses Taction identifies as actual or potential witnesses (or who Taction otherwise brings to trial), in Apple's case-in-chief or in rebuttal.

| Witness | Substance of Testimony |
|---|---|
| Eric Bates | Mr. Bates may testify concerning Apple's prior art. |
| Lei Ma | Mr. Ma may testify concerning the structure, function, and operation of the Taptic Engine in the accused products. |
| John King | Mr. King may testify concerning the prosecution of the asserted patents, prior art, assignment of the asserted patents, and/or the applications from which they issued. |
| Mark Rollins | Mr. Rollins may testify concerning financial and sales data related to the accused products and Apple's prior art. |
| Jacqueline Biggs | Ms. Biggs may testify concerning Taction's business. |
| Eric Saltzman | Mr. Saltzman may testify concerning Taction's business, Taction's interactions with investors, and documents produced by him. |
| Taniyyus Syed | Mr. Syed may testify concerning agreements between Taction and Corsair, and the operation or structure of the Corsair HS60 Haptic. |
| John Tishok | Mr. Tishok may testify concerning Taction's business. |
| Kannan Dorairaj | Mr. Dorairaj may testify concerning Taction's business and Taction's interactions with investors. |
| Michael Fierro | Mr. Fierro may testify concerning Taction's business. |
| Roger Hitchcock | Mr. Hitchcock may testify concerning the business operations of Artificial Muscle, Parker Hannifin, and/or Bayer; and Dr. Biggs' relationship with those entities. |

/ / /

/ / /

## TRIAL EXHIBITS

On August 11, 2026, the Court granted the Parties' joint request to extend the deadline to provide the Court with two hard copy sets of trial exhibits to September 3, 2026. (*See* ECF No. 544.)

On August 25, 2026, the Court granted the following stipulations:

1. A Party will not use any demonstrative disclosed by the other Party at trial unless and until such demonstratives is first presented to the jury by the disclosing Party.
2. Whereas the Parties agree to the following exclusions for the disclosure of demonstratives for use in opening and with experts:
   a. The Parties agree that they need not exchange as demonstratives a trial exhibit or excerpt from a trial exhibit, including blow-ups, highlighting, underlining, or arrows to point to text. Any live annotation to such exhibit made by the presenter is not a demonstrative requiring disclosure. The use of any added text (other than a citation), such as a title on a slide, does constitute a demonstrative that must be disclosed.
   b. Direct quotes of trial testimony do not constitute a demonstrative, nor do direct quotes from deposition testimony that have previously been presented to the jury. Any deposition excerpts that a Party wishes to present as part of its expert witness examination need not be exchanged as demonstratives and will be exchanged under 4(a) below.
3. Whereas the Parties seek to agree on a reasonable and orderly exchange of exhibits to be used at trial, they agree as follows:
   a. The Parties will exchange a list of all exhibits to be used during opening statements on September 11, 2026 at 2:00 p.m.[8]

[8] All times are in Pacific Time (PT).

b. The Parties will exchange objections to any exhibits to be used in openings on September 12, 2026 at 2:00 p.m.

c. The Parties will meet and confer regarding these objections on September 12, 2026 at 5:00 p.m.

4. Whereas the Parties seek to agree on a reasonable and orderly exchange of deposition designations to be used at trial, they agree as follows:

a. Each party will provide to the other Party a list of deposition designations it intends to play and exhibits it will introduce with those designations by 6:00 p.m. three calendar days before the designations are to be used in court.

b. Any objections and counter-designations shall be provided by 5:00 p.m. two calendar days before the designations are to be used in court.

c. Any rebuttal designations and objections to the counter-designations shall be provided by 7:00 p.m. two calendar days before the designations are to be used in court.

d. The Parties will meet and confer on any objections by 8:00 p.m. two calendar days before the designations are to be used in court and will present any unresolved issues to the Court the day before the designations are to be used in court.

e. The party affirmatively offering the designations will provide the final video containing all designations for review by the other Party as soon as practicable once any objections are resolved by the court.

(*See* ECF No. 587 at 2.)

Additionally, as provided in the Order Setting Pretrial and Trial Dates and Deadlines:

> On the first day of trial, each party shall provide the Courtroom Deputy with two copies of its witnesses and exhibit lists in the form specific in Civil Local Rule 16.1(f)(2)(c) and (d). Counsel should waive authentication evidence of documents where authentication is not an issue. Voluminous documents or

> exhibits must be culled of unnecessary pages so that only relevant pages, or pages supplying context to the relevant pages, are admitted. Counsel should use summaries or charts to prove the content of voluminous documents, writings, or recordings that cannot be conveniently examined in court. *See* Fed. F. Evid. 1006.

(ECF No. 457 at 3 n.1 (emphasis in original).)

In addition to the above requirements, the Court **ORDERS** as follows:

1. The Parties **SHALL LODGE** with the Court a copy of the agreed-upon "juror notebook" containing a copy of the Asserted Patents, as well as a glossary of the terms contained in the patents-at-issue that the Court has construed or interpreted, on or before September 10, 2026. *If the Parties fail to reach an agreement regarding the contents of the notebook, they shall notify the Court of their respective positions no later than September 7, 2026.*

2. The Parties **SHALL LODGE** with the Court a list of ***all exhibits to be used during opening statements*** no later than 2:00 p.m. on September 13, 2026.

## STIPULATED FACTS[9]

These facts are undisputed, and the Parties stipulate to them for incorporation into the trial record without the necessity of supporting testimony or exhibits. However, the Parties agree that no Party will object to the presentation of evidence in support of any stipulated fact at trial on the ground that such fact was included in this stipulation. The Parties agree that the stipulation of facts is made without prejudice to any party's ability to bring any motions *in limine* or other pre-trial motions.

The stipulated facts are as follows:

1. Taction is a Delaware corporation with its principal place of business at 9431 Dowdy Drive, San Diego, California.

---

[9] The Parties included a list of stipulated facts in their Proposed Pretrial Order. Thereafter, the Parties filed separate Factual Stipulations and Agreements for Trial. (*See* ECF No. 567.) The Court uses the more recent stipulated facts. (*See id.*)

2. Apple is a California corporation, with its principal place of business at 1 Apple Park Way, Cupertino, California, and maintains offices in San Diego.

3. Taction asserts two patents, the ’885 patent and ’117 patent, and is the named assignee on these patents.

4. James Biggs is the named inventor of the ’117 patent and ’885 patent.

5. The accused products are iPhone 8, iPhone 8 Plus, iPhone X, iPhone XS, iPhone XS Max, iPhone XR, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, 2020 iPhone SE, iPhone 12, iPhone 12 Pro, iPhone 12 Pro Max, iPhone 12 Mini, iPhone 13, iPhone 13 Mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone 14, iPhone 14 Pro, iPhone 14 Pro Max, iPhone 14 Plus, 2022 iPhone SE, iPhone 15, iPhone 15 Plus, iPhone 15 Pro, iPhone 15 Pro Max, iPhone 16, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 16E, iPhone 17, iPhone 17 Pro, iPhone 17 Pro Max, iPhone Air, iPhone 17E, Apple Watch Nike, Apple Watch Series 4, Apple Watch Series 5, Apple Watch Series 6, Apple Watch SE (1st generation), Apple Watch Series 7, Apple Watch Series 8, Apple Watch SE (2nd generation), Apple Watch Ultra, Apple Watch Series 9, Apple Watch Ultra 2, Apple Watch Series 10, Apple Watch Series 11, Apple Watch Ultra 3, and Apple Watch SE (3rd generation), released from 2017 to 2025 in the United States (the “Accused Products”).

6. Apple has sold the accused products in the United States.

7. Each accused product includes a vibration motor. Apple calls its vibration motors Taptic Engines. Not all accused products use the same Taptic Engine.

**IT IS SO ORDERED.**

Dated: September 2, 2026

Honorable Todd W. Robinson
United States District Judge