Roger A. Denning (SBN 228998)
denning@fr.com
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
Madelyn S. McCormick (SBN 320063)
mmccormick@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

*Additional Counsel listed on Signature Page*

Attorneys for Defendant Apple Inc.

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACTION TECHNOLOGY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:21-cv-00812-TWR-JLB<br><br>**DEFENDANT APPLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)**<br><br>**PUBLIC VERSION**<br><br>District Judge: Hon. Todd W. Robinson<br>Magistrate Judge: Jill L. Burkhardt<br><br>Trial: September 14, 2026 |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........ 1
II. LEGAL STANDARD ........ 2
III. ARGUMENT ........ 2
A. The Court should grant JMOL of no infringement. ........ 2
1. Literal Infringement ........ 2
2. Representativeness. ........ 5
3. Taction introduced no substantial evidence that the single magnet products infringe under the doctrine of equivalents. ........ 7
4. Indirect infringement. ........ 8
B. The Court should grant JMOL of no willfulness ........ 9
C. The Court should grant JMOL of no damages. ........ 10
1. The Corsair license cannot support a damages award. ........ 11
2. Evidence of materials costs cannot support a damages award. ........ 14
D. The Court should grant JMOL of invalidity. ........ 16
1. Written Description ........ 16
2. Enablement ........ 17
3. Indefiniteness ........ 19
IV. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009) .......... 7

*ALZA Corp. v. Andrx Pharm., LLC*,
603 F.3d 935 (Fed. Cir. 2010) .......... 17

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) .......... 11

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) .......... 16

*Dow Chem. Co. v. Nova Chem. Corp.*,
803 F.3d 620 (Fed. Cir. 2015) .......... 19

*Duke Univ. v. Sandoz Inc.*,
160 F.4th 1305 (Fed. Cir. 2025) .......... 16

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) (en banc) .......... 12

*Eli Lilly & Co. v. Hospira, Inc.*,
933 F.3d 1320 (Fed. Cir. 2019) .......... 7

*Elliott v. Versa CIC, L.P.*,
2019 WL 414499 (S.D. Cal. 2019) .......... 2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) .......... 15

*Johnson & Johnston Associates Inc. v. R.E. Serv. Co., Inc.*,
285 F.3d 1046 (Fed. Cir. 2002) .......... 7, 8

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
424 F.3d 1336 (Fed. Cir. 2005) .......... 16

*Mitek Sys., Inc. v. United Services Auto. Ass'n*,
139 F.4th 1340 (Fed. Cir. 2025) .......... 8

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) ........................................................................11

*Nite Glow Indus. Inc. v. Cent. Garden & Pet Co.*,
No. 2020-1897, 2021 WL 2945556 (Fed. Cir. July 14, 2021) ............................2

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ........................................................................13

*Open Text S.A. v. Box, Inc.*,
No. 13-CV-04910-JD, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ................14

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ..........................................................................11

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
653 F.3d 1296 (Fed. Cir. 2011) ..........................................................................2

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
156 F.4th 1289 (Fed. Cir. 2025) ...........................................................11, 14, 16

*Rivera v. Int'l Trade Comm'n*,
857 F.3d 1315 (Fed. Cir. 2017) ........................................................................16

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007), *abrogated on other grounds by*
*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016) .................................9

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019) ....................................................................9, 10

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ..................................................................14, 16

*Teva Pharms. USA Inc. v. Sandoz Inc.*,
789 F.3d 1335 (Fed. Cir. 2015) ........................................................................19

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ........................................................................15

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ........................................................................15

**Statutes**

Patent Act ........................................................................................................ 16

**Other Authorities**

Rule 50(A) ........................................................................................................ 1, 2

# I. INTRODUCTION

At the close of Plaintiff Taction Technology Inc.'s ("Taction") case-in-chief and the close of evidence,[1] no reasonable jury could find in Taction's favor on infringement, willfulness, or damages. First, no reasonable juror could find in Taction's favor on infringement, let alone *willful* infringement or indirect infringement. Second, Taction has not introduced evidence sufficient to permit the jury to determine a reasonable royalty, with that royalty apportioned to the value of the asserted patents as required by law, nor has it introduced any evidence that Apple would have agreed to a per-unit royalty of any amount. Separately, Apple also has proved that the asserted claims are invalid as a matter of law.

As a result, the Court should find that Taction has failed to prove that Apple infringed the asserted claims, that Taction has failed to prove willfulness, that Taction has failed to prove any damages, and that Apple has proved that the asserted claims are invalid. Under Rule 50(a), none of those issues should go to the jury, and this Court should grant judgment to Apple on each issue as a matter of law.

---

[1] This Court denied Taction's request to hold its case-in-chief open for testimony from Apple witnesses. Trial Tr. at 702:17-704:6 (Sept. 17, 2026). Accordingly, Taction rested and closed its case-in-chief after reading a stipulation into the record. Trial Tr. 730:5-25. Per the Court's directive, Apple orally moved for judgment as a matter of law on infringement and damages at the close of Taction's case-in-chief and again—adding invalidity—at the close of evidence; Apple now submits the single written paper "before the case goes to the jury" as requested by the Court. *See* Trial Tr. at 689:10-690:17 (Court instructions regarding form and sequence of JMOL submissions); Trial Tr. at 731:10-12 (Court accepting Apple's oral JMOL motion on infringement and damages); Trial Tr. at 928:14-21 (clarifying same); Trial Tr. at (9/22/2026 Rough) 90:21-25 (Court accepting Apple's oral JMOL motion on all issues).

## II. LEGAL STANDARD

Judgment as a matter of law is appropriate where, once "a party has been heard on an issue during a jury trial … the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "The court must enter a directed verdict when 'there is no substantial evidence to support the claim.'" *Elliott v. Versa CIC, L.P.*, 2019 WL 414499, at *5 (S.D. Cal. 2019) (granting JMOL and citing *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975)); *see also Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1313 (Fed. Cir. 2011) (reversing denial of JMOL of noninfringement); *Nite Glow Indus. Inc. v. Cent. Garden & Pet Co.*, No. 2020-1897, 2021 WL 2945556, at *12 (Fed. Cir. July 14, 2021) (affirming JMOL of noninfringement).

## III. ARGUMENT

### A. The Court should grant JMOL of no infringement.

#### 1. Literal Infringement

No juror could reasonably conclude on this record that the accused products literally infringe the asserted claims, for at least two reasons.

***First***, the record evidence shows that the Taptic Engines in the accused products are undamped linear resonant actuators (LRAs).

This Court has construed the asserted claims to require, among other limitations, that "the claimed invention does not utilize or encompass un-damped linear resonant actuators." As Dr. Zinn testified, the prosecution history of the asserted patents makes clear that LRAs which depend on resonance for their operation are "undamped" LRAs of that sort. Trial Tr. at 1044:7-1046:25; Trial Ex. 2047 at 211.

Apple's products depend on resonance in precisely that manner. For example, Mr. Lee testified that "driving on or near resonance is the most efficient place to drive an actuator" and that "products like an Apple Watch or an iPhone … depend on that

resonance to be efficient" so as to "preserve battery life." *See, e.g.*, Trial Tr. at 747:3-10; *see also* Trial Tr. at 744:15-22. Indeed, Mr. Lee presented evidence that Apple would not seek to damp its LRAs to achieve a flat output because that would require them to exceed their power budgets or otherwise fail to operate as intended. *See, e.g.*, Trial Tr. at 747:3-10, 802:5-18, 808:3-6, 810:17-811:11. Mr. Zinn's analysis confirmed that Apple's Taptic Engines depend on resonance. Trial Tr. at 1051:6-1052:1. As a result, the record evidence establishes that the Taptic Engines in the accused products are undamped LRAs and therefore outside the scope of the asserted claims. Trial Tr. at 1052:2-1052:13.

***Second***, Taction has not introduced substantial evidence that the Taptic Engines in the accused products produce highly damped output, as required by the asserted claims. Apple has also adduced undisputed or admitted evidence to the contrary.

This Court has construed the asserted claims to require, among other limitations, that "the output of the transducer is highly damped (*i.e.*, the output is substantially uniform or flat over the normal operating frequency range of the device)." Taction relies on testing by Dr. Oliver to show that the accused Taptic Engines meet this limitation. But no reasonable juror could conclude that Taction has succeeded in this required showing at trial.

The asserted patents describe a single test for measuring whether a transducer's output is highly damped: apply a constant amplitude input voltage signal to the transducer's input across a frequency range of 40-200 Hz and measure the resulting acceleration. Ex. 1 at 3:53-58. In the sole example in the patent, the resulting acceleration falls within +/- 0.15g across that range, and the transducer's output is sufficiently flat. Trial Ex. 1 at Fig. 5C; Trial Tr. at 1074:8-19, 1176:19-1177:6.

However, no juror could conclude that Dr. Oliver followed this testing procedure. Dr. Oliver directly admitted as much to the jury. Trial Tr. at 578:12-16.

Dr. Oliver also conceded to the jury that the procedure he followed was "developed … for this case," and that it had never before been used to assess the frequency response of a LRA by anyone, including Dr. Oliver. Trial Tr. at 578:17-579:13; 601:20-602:4.

Dr. Oliver described multiple aspects of his testing that failed to match the procedure outlined in the Court's claim construction and the asserted patents. He did not test the Taptic Engine—the alleged transducer—itself, but rather the entire iPhone. Trial Tr. at 566:24-567:7. Notably, the claim construction says the output of the "transducer" is highly damped, not the "apparatus." Dr. Oliver chose not to rely on acceleration, but rather mechanical power. Trial Tr. at 581:22-23, 589:15-590:3. Dr. Oliver did not apply a constant amplitude voltage input; he used software that supplied a variable input to achieve the desired intensity. Dr. Oliver's test did not cover the frequency range of 40-200Hz, but instead the range of 80-230Hz. Trial Tr. at 579:20-22. Dr. Oliver did not compute the Q-factor, but rather a so-called "effective Q-factor." Trial Tr. at 591:7-9. And Dr. Oliver could not supply a definition of "effective Q-factor." Trial Tr. at 601:1-18. And Dr. Oliver did not use the same measure of flatness as the patent. Instead of evaluating whether the acceleration fell within a range of +/- 0.15 g, he measured whether power fell within a range of +/- 10 dB. *E.g.*, Trial Tr. at 477:7-14, 567:21-568:24.

Other record evidence only confirms this conclusion. For example, Dr. Oliver conceded that the testing Taction disclosed in its infringement contentions—testing that did measure acceleration against a frequency range—does not show highly damped output for any product. Trial Ex. 3805A; Trial Tr. at 561:7-562:22. Dr. Biggs' testing in 2019 similarly failed to show that the accused products produce output that is highly damped. Trial Tr. at 336:19-22; Trial Ex. 3529. And there is no evidence in the record of any Apple product with a Q-factor, as it is understood by a person of skill in the art, that reflects highly damped output.

Furthermore, Taction relied on a measure of flat or substantially uniform output (+/- 10 dB) that allowed for at least 10x variation (according to Dr. Okamura) or 100x variation (according to Dr. Oliver). Either range is inconsistent with the patent specification and also ordinary understanding, not to mention that the ranges are inconsistent with each other. Such a range has no support in the patent record, and only comes from a portion of the priority provisional application that was deleted from the patents in suit.

On this record, therefore, a juror could only conclude that the testing on which Taction relies—like the rest of its evidence—does not establish that the output of the accused Taptic Engines is highly damped as required by the claims. Accordingly, this Court should grant judgment as a matter of law of no infringement.

***Third***, Taction has not introduced substantial evidence that the Air Coil and Sandwich Taptic Engines in the accused products produce a planar motion with respect to the housing and the conductive coil.

**2. Representativeness.**

Although Taction relies on Dr. Oliver's testing to meet the highly damped output limitation, Dr. Oliver did not test all, or even most, of the accused products. But Taction also has not introduced substantial evidence that the untested accused products operate in the same way as those that were tested, or that proof of infringement as to one accused product is proof of infringement as to another.

At the threshold, Taction has introduced no evidence, direct or circumstantial, that the accused Apple Watch products infringe any asserted claim. Dr. Oliver admitted that he never tested any Apple Watch, Trial Tr. at 428:6-7, 592:15-23, so Taction cannot demonstrate that any Apple Watch meets the highly damped output limitation through testing. Nor did he testify that iPhone products are representative of Apple Watch products.  Instead, he testified only that "you can look at the teardowns and see the similarities. The components are the same. … [T]hey all have

the same components, similar configurations, ferrofluid, all the same elements." Trial Tr. at 428:16-20. Such opinions do not supply substantial evidence of infringement. The asserted claims require far more than merely an arrangement of parts, and there is no evidence in the record that a person of skill in the art would (or even could) evaluate whether the output of an actuator is highly damped merely by inspecting physical hardware. Indeed, under Taction's infringement theory, the Taptic Engines in the accused products produce highly damped output only when supplied input signals driven by a closed-loop controller—an electronic component whose operation cannot possibly be evaluated by visual inspection.

Even as to accused iPhones, Taction tested only seven products. Trial Tr. at 426.21-24. Dr. Oliver testified that he "didn't feel it necessary to test every flavor of" accused product because "they're all generally the same." Trial Tr. 427:6-15. But he once again relied solely on the arrangement of components within the devices that he observed in teardowns. *See, e.g.*, Trial Tr. at 428:1-5 ("[N]othing is really changed across those architectures. Again, based on my teardowns, they all have the same components, configured in the same way. So, again, that's why I feel that this is sufficient to demonstrate infringing that claim."). As explained above with respect to Apple Watches, this is not substantial evidence of infringement because the claims require more than merely an arrangement of parts, and visual inspection of the hardware cannot establish that the output of that hardware is highly damped. This Court even excluded testing results for one accused product (the iPhone 17) because it was not similar to other accused products. Dkt. No. 545 at 28 n.12.

As a result, no rational juror could find that Taction has established that untested products produce highly damped output as required by each of the asserted claims.

**3. Taction introduced no substantial evidence that the single magnet products infringe under the doctrine of equivalents.**

This Court has already granted summary judgment of no literal infringement of the asserted claims as to all accused products that include only a single physically distinct magnet. Dkt. No. 437 at 25. Thus, a juror could find infringement by the accused single magnet products only if Taction could show that the single magnets in those products are equivalent to the claimed "plurality of magnets."

However, the disclosure dedication rule forecloses Taction's invocation of the doctrine of equivalents as a matter of law. "[W]hen a patent drafter discloses but declines to claim subject matter … this action dedicates that unclaimed subject matter to the public." *Johnson & Johnston Associates Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002). The same principle applies to subject matter disclosed in the priority applications incorporated by reference into the asserted patents. *See, e.g., Abbott Lab'ys v. Sandoz, Inc.*, 566 F.3d 1282, 1297 (Fed. Cir. 2009) (the dedication doctrine "forecloses invocation of the doctrine of equivalents" where "[t]he patent application applicant clearly knew of [unclaimed] forms of the claimed invention because it claimed and disclosed them in its Japanese priority application."); *Eli Lilly & Co. v. Hospira, Inc.,* 933 F.3d 1320, 1334 (Fed. Cir. 2019) (the disclosure-dedication rule applies to "subject matter … disclosed in a priority application").

That is precisely what has occurred here. The asserted patents disclose a single-magnet embodiment. Trial Ex. 1 at 14 Fig. 13A; *id.* at 12:32-45 ("Vibration module 1300 includes *thin magnet* 1302 polarized along the thin axis. *It* operates in the center of a long coil … ." (emphasis added)). Parent patents in the same family include claims that recite "one or more magnets." Trial Ex. 2047 at 44. Similarly, one of the provisional applications to which the asserted patents claim priority—and which they incorporate by reference—likewise includes an embodiment with a "single magnet," and specifically notes that "a single magnet, flux guide, and coil, if elongated, can do

the same job" as an "array" of such elements. Trial Ex. 11 at 45 ¶¶ [0060]-[0061]. However, the asserted patents do *not* claim a single-magnet embodiment; each asserted claim instead recites "a plurality of magnets."

Taction cannot now use the doctrine of equivalents "to recapture subject matter" that it disclosed but "deliberately left unclaimed." *Johnson*, 285. F.3d at 1054. As a result, this Court should grant judgment as a matter of law that the single-magnet products do not infringe the asserted claims.

**4. Indirect infringement**

Taction has introduced no evidence from which a reasonable juror could conclude that Apple contributed to any third party's direct infringement. Indeed, Taction has withdrawn contributory infringement from this case by agreeing that the jury should not be instructed on contributory infringement. *See* Dkt. No. 651 (proposed final jury instructions). This Court should therefore grant judgment as a matter of law of no contributory infringement under § 271(c).

The Court should also grant JMOL of no active inducement under § 271(b). Taction's expert, Dr. Oliver, told the jury that his inquiry into induced infringement "essentially boiled down to looking at the Core Haptics library" and testified only that Apple "encourage[d] others to build applications taking advantage of the taptic engine capabilities." Trial Tr. at 496:18-497:3. But he never offered any opinion that merely using the Core Haptics library would directly infringe the asserted patents. *Id.* More tellingly, nowhere in the record did Taction introduce evidence of any third party building an application that used the Core Haptics library to directly infringe the patents. And as the jury instructions correctly reflect, there can be no induced infringement unless "Apple induced *another* to directly infringe." Final Jury Instr. No. 17; *see also, e.g.*, *Mitek Sys., Inc. v. United Services Auto. Ass'n*, 139 F.4th 1340, 1350 (Fed. Cir. 2025) ("A claim for induced infringement requires that there has been direct infringement by a third party … ." (citation modified)). Taction also introduced

no evidence to support any inference that Apple "subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact" (willful blindness). The Federal Circuit has held that engineers not reading patents is not remarkable, or sufficient for willful infringement. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) ("Given Cisco's size and resources, it was unremarkable that the engineers—as opposed to Cisco's inhouse or outside counsel—did not analyze the patents-in-suit themselves.").

Neither has Taction introduced substantial evidence that Apple knew—or even subjectively believed there was a high likelihood—that use of the Core Haptics library, or the Taptic Engine in general, would infringe. Instead, Apple's witnesses have uniformly testified that they understood the Taptic Engine to be an undamped LRA, which Taction concedes is outside the asserted claims, and that the Taptic engine does not produce highly damped output as required by the asserted claims.

**B. The Court should grant JMOL of no willfulness**

Taction has presented no evidence that Apple deliberately and intentionally infringed the asserted patents.

Taction has already dropped all allegations of pre-suit willfulness. Dkt. No. 512 at 18-21. But "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016). Where, as here, the only relevant evidence is that Apple continued to sell its accused products after learning of the suit, such sales do not provide legally sufficient evidence to support a post-suit willfulness claim.

The record also is devoid of evidence that Apple subjectively believed that its products infringed, or that it lacked reasonable defenses to Taction's claims. Rather, the opposite is true. The evidence at trial, including Taction's own infringement

testing, showed that the accused products do not meet required limitations of the claims. And as the Court knows, Apple had a reasonable belief in noninfringement and prevailed on the belief for several years.

Taction also introduced no evidence to support any inference that Apple was willfully blind, meaning that Apple "subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact." The Federal Circuit has held that engineers not reading patents is not remarkable, or sufficient for willful infringement. *SRI Int'l,* 930 F.3d at 1309 ("Given Cisco's size and resources, it was unremarkable that the engineers—as opposed to Cisco's inhouse or outside counsel—did not analyze the patents-in-suit themselves.").

**C. The Court should grant JMOL of no damages.**

As Apple showed in its trial briefs regarding damages,[2] no rational juror could award a reasonable royalty—or any other quantified measure of damages in any form—on the record here. Taction's only disclosed damages theory depends on its license with Corsair, but the jury has seen no evidence of any monetary amount or unit count linked to that license. Even if it had, no evidence in the record could support the required apportionment of the Corsair license to the asserted patents, or the further required apportionment from that figure to any alleged value of the asserted patents in the accused devices.

Taction's new theory of damages also fails. Neither the cost of the ferrofluid included in each Corsair headset, nor the cost of Taptic Engine hardware is tethered to the value of the asserted patents.

[2] Apple incorporates by reference its trial briefing on damages, Dkt. Nos. 657 and 675.

### 1. The Corsair license cannot support a damages award.

As this Court has recognized, Taction's damages case rests entirely on its license with Corsair. Trial Tr. at 460:11-461:22, 462:9-463:3, 671:3-13; *see* Dkt. No. 503 ¶¶ 236-252. However, Taction has not put any royalty rate from that license before the jury, and its case is now closed. That evidentiary gap alone is fatal to any theory based on the Corsair license because the jury has no starting point from which to calculate damages. *See Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1299 (Fed. Cir. 2025) (Damages "must not be left to conjecture by the jury. They must be proved, and not guessed at.").

Even if this jury had received the Corsair rate as a starting point, it must be able to apportion that rate. A party relying on a comparable license must "account for differences in the technologies" of the licensed patents. *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) (cleaned up). A license royalty left unallocated among the patents it covers is "untethered to the facts of the case" and cannot support an award. *Id.* at 973; *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *see also MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373-75 (Fed. Cir. 2021).

The Corsair license requires such apportionment. To begin, it is not a pure patent license; it is a technology transfer involving technical know-how and engineering support. With respect to patent rights, it covers not only the asserted patents but also two unasserted parent patents (with different scope), and the '139 patent, which claims a particular notch filter. Trial Tr. at 522:14-523:14, 682:24-684:2; Trial Ex. 2046. Taction admitted it must apportion the Corsair royalty first between the '139 patent and the asserted patents, and then again to account for the smaller contribution the asserted patents allegedly make to damping in Apple's accused products. Trial Tr. at 461:21-22, 462:9-463:3. Taction bears the burden at each step. *Wi-LAN*, 25 F.4th at 971. Taction even conceded as much, agreeing at trial

that the jury "still ha[s] to include the apportionment of the Corsair number" and that "there is still going to be two numbers you have to consider." Trial Tr. at 224:11-225:8.

But the trial record contains no admissible evidence of apportionment:

***First***, the Court excluded Dr. Kennedy's reasonable-royalty opinion in its entirety. Dkt. No. 545 at 29-30; Dkt. No. 599 at 10. That exclusion removed Taction's only quantified royalty along with its only apportionment analysis.

***Second***, the Court excluded the sources on which Dr. Kennedy relied—both Dr. Oliver's 73% technical apportionment and Schedule D of the Corsair license (the rate schedule)—because those numbers, unapportioned, would require the jury to "perform, essentially, that portion of the expert testimony that was excluded." Trial Tr. at 469:10-14, 554:20-24. This is further illustrated by the fill-in-the-blank demonstratives Taction proposed to use with Dr. Kennedy before the jury, and which this Court also excluded. *E.g.*, Dkt. No. 625 at slides 57-58, 65-66, 70, 74-75. The Court also correctly granted Apple's motion to quash Taction's trial subpoena to Apple's damages expert, Ms. Knox. Trial Tr. at 463:4-22.

***Third***, Taction's lay witnesses cannot supply the missing analysis. Mr. Steinberg admitted that he is "not an engineer" and does "not feel qualified" on the technical questions apportionment requires. Trial Tr. at 675:12-14, 716:8-719:5. Dr. Biggs offered no apportionment either; he testified to the cost of ferrofluid (about twenty cents per headset), not to the value the asserted patents contribute relative to the '139 notch filter or to the value of the asserted patents to Apple's products. Trial Tr. at 281:16-283:15; Trial Ex. 1056. An unsupported assertion by a fact witness who lacks the necessary foundation is not substantial evidence of apportionment. *See EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1344 (Fed. Cir. 2025) (en banc) (CEO's "testimony amounts to an unsupported assertion on behalf of EcoFactor that the $X rate was applied to calculate the lump-sum payment amounts").

***Fourth***, Taction cannot fall back on any "built-in" apportionment for the Corsair license. To the extent that Taction relies on the fact that the '139 patent was added in an amendment that did not change the royalty rate, its argument proves too much. The same amendment also added *the asserted patents* to the Corsair license. Thus, the argument outlined above, if accepted, would also demonstrate that the asserted patents are valueless and that the entire royalty in the Corsair license should be attributed solely to unasserted patents.[3] In any case, this Court has already rejected Taction's attempts to rely on built-in apportionment. Trial Tr. at 458:6-460:6 (citing *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020)); *see Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021) (built-in apportionment applies only where "the principles of apportionment were effectively baked into the purportedly comparable license," which the patentee must prove).

***Fifth,*** Taction also introduced no evidence apportioning the value of its technology transfer to Corsair, as opposed to its patents. The Corsair royalty paid for far more than any patent; it compensated Taction for a technology transfer—the physical Transporter units, the drive electronics, and the accompanying firmware and software. Corsair's corporate witness confirmed as much, testifying that Corsair was "licensing the haptic solutions," meaning "the two Transporter units and the driver circuit and any firmware or software," and that he had "no opinion" whether those solutions even relate to the patents in this case. Trial Ex. 1684 (Syed Dep. at 226:07-

---

[3] Nor is it any answer that the patents included in the initial Corsair license are parents of the patents Taction asserts here. Taction has put no evidence before the jury that the scope of claims in the parent patents are coextensive with the asserted claims. Nor could it do so. Among other things, the parent patents require a Q-Factor of less than 1.5. Taction has not (and cannot) demonstrate that Apple's products meet that limitation, so any damages theory relying on value attributable solely to the parent patents would necessarily be inconsistent with Taction's infringement case.

16, 226:23-227:05, 227:15-19). Mr. Steinberg likewise testified that the Corsair agreement was mostly technology, not patents. Trial Tr. at 655:12-15, 660:18-21, 662:14-17, 667:4-9. Taction offered no evidence apportioning that substantial non-patent value out of the Corsair royalty—a threshold apportionment step it never even attempted.

Section 284 "does not require an award of damages if none are proven," and "there must at the least be enough evidence in the record to allow the factfinder to formulate a royalty." *Rex*, 156 F.4th at 1299; *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020). The Federal Circuit recently affirmed a JMOL of zero damages on materially identical facts: a comparable license the patentee failed to apportion, no admissible expert, and lay testimony that could not bridge the gap. *Rex*, 156 F.4th at 1298-1301. The same result follows here.

**2. Evidence of materials costs cannot support a damages award.**

Taction now appears to advance an on-the-fly theory of damages based on two different sets of material costs: the price of the ferrofluid included in each Corsair headset, and the price of Taptic Engine hardware. Dkt. No. 659.

Neither cost is tethered to the value of the asserted patents. The recognized cost approach to a reasonable royalty measures the costs the alleged infringer *saved* by using the invention, not the cost *incurred*. *See Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 349197, at *2 (N.D. Cal. Jan. 23, 2015) (explaining cost approach). Indeed, Dr. Kennedy explained the cost approach in his report and stated [redacted] *See* Ex. 1 (2023 Kennedy Rpt.) ¶¶ 119, 133-34.

***Ferrofluid cost.*** There is no evidence in this record that the cost of ferrofluid is linked to the value of any patent. Rather, the parties in this case both acknowledged that the price of ferrofluid was properly treated as a deduction from the Corsair license royalty as the first step of apportioning that license to the value of the patent rights it

covered. Ex. 1 (2023 Kennedy Rpt.) ¶ 167. No juror could conclude otherwise on this record. Taction has repeatedly acknowledged that physical ferrofluid is not the claimed invention and that ferrofluid existed decades before Taction's asserted patents. *See, e.g.*, Trial Tr. at 306:21-307:17, 606:8-15. Furthermore, in the Corsair license, the cost of ferrofluid represents an off-the-shelf material Taction and Corsair would buy regardless; it says nothing about what Apple would pay at the hypothetical negotiation to license the asserted patents.

***Taptic Engine costs or the difference between the accused and prior art costs.*** In seeking to rely on the entire cost of the Taptic Engine hardware, Taction advances a species of "entire market value" argument that "skew[s] the damages horizon" unless properly apportioned. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *accord VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-28 (Fed. Cir. 2014); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). The record reflects that even if Taction's infringement theories were correct, which they are not, the Taptic Engine includes many unaccused, but valuable, components that must be accounted for. The Taptic Engine is a piece of physical hardware that is not free. It performs numerous functions that Taction does not accuse of infringement. No evidence in the record apportions out these costs. This means the Taptic Engine is an over-inclusive representation of Taction's purported invention. As a result, the cost of the Taptic Engine cannot serve as a royalty base for any damages calculation.

At best, Taction has pointed to evidence that its invention is not valueless. That is not sufficient evidence of a reasonable royalty award, however, because the law requires an *apportioned* award of damages.

In addition, these are costs Apple would incur either way—not a measure of what it would agree to pay on top of existing costs for a license to the patents at the

hypothetical negotiation. Subtracting the cost of ferrofluid from the cost of the Taptic Engine would also make no sense; the two endpoints are completely unrelated.

The difference between the cost of the accused Taptic Engine and the cost of haptics in the prior art iPhone 6+ is equally unapportioned. No expert or other evidence apportions this delta to the accused functionality, and the new Taptic Engine includes many unaccused features.

Where the record contains no reliable evidence of an apportioned damages number under any theory, the Court should enter a judgment of no damages as a matter of law. *See, e.g.*, *Rex,* 156 F.4th at 1298-1301 (affirming JMOL of no damages where plaintiff lacked required evidence of apportionment); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) ((the Patent Act "does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts.").

### D. The Court should grant JMOL of invalidity.

#### 1. Written Description

To satisfy the written description requirement, the patent specification must "describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005); *see also, e.g.*, *Duke Univ. v. Sandoz Inc.*, 160 F.4th 1305, 1310 (Fed. Cir. 2025) (same). "[A] description that merely renders the invention obvious does not satisfy the requirement." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010); *see also, e.g.*, *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1322 (Fed. Cir. 2017).

Here, Taction asserts—for the purpose of proving infringement—that the asserted claims cover "highly damped output" produced not only through damping created by ferrofluid, but through active electronics such as a closed-loop controller

(CLC). But even the inventor, Dr. Biggs, conceded that nothing in the specification describes a closed-loop controller or damping through active electronics. Trial Tr. at 344:18-20 ("Q. Your patents-in-suit in this case do not refer to or describe any closed-loop control; correct? A. That's right."); *see also generally*, Trial Exs. 1, 3.

Neither does any testimony in the record demonstrate that Dr. Biggs was in possession of this claim scope at the relevant time. Indeed, Dr. Biggs' testimony confirms that he did not. For example, Dr. Biggs testified that he has never implemented a closed-loop controller for his actuator. *E.g.*, Trial Tr. at 312:12-313:3. Likewise, Dr. Okamura confirmed that the claims of the Asserted Patents do not disclose closed-loop control. Trial Tr. at 1265:2-3.

Separately, the asserted claims lack any written description of a transducer whose output is "substantially uniform or flat" over any frequency range other than the 40-200 Hz range depicted in Figure 5C. *See, e.g.*, Trial Ex. 2 at Fig. 5C, 3:58, 5:49-52, 9:19, 9:41, claims 1, 17, 20. The specification describes that 40–200 Hz range as material to the invention; reaching down to 40 Hz to reproduce bass and cutting off at 200 Hz to avoid perceptible acoustic noise. *See, e.g.*, Trial Ex. 2 at 1:25-27, 9:25-44. By reciting an unbounded "normal operating frequency range" that, in Taction's view, reaches beyond the critical 40–200 Hz range, the claims exceed what the specification describes and what Dr. Biggs possessed.

### 2. Enablement

To satisfy the enablement requirement, "the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) (citation modified).

Taction's infringement theory alleges that the accused products produce highly damped output, but only by relying on inputs supplied by a closed-loop controller. Trial Tr: 343:7-9. But the asserted patents do not enable such a system. It is undisputed

that the asserted patents do not mention any other type of active electronic controller, much less a CLC. *See, e.g.*, Trial Tr. at 1227:12-1228:10. And a person of ordinary skill in the art at the time of the claimed invention (September 2014) would not have been able to implement the sophisticated closed-loop controller in the accused products without undue experimentation. Apple's closed-loop controller requires several technically challenging features, not present in a system without Apple's closed-loop control, to produce effective haptic vibrations. These features include [redacted] Trial Tr. 795:1-796:17. Indeed, despite years of prior haptics experience, Apple did not develop and patent the accused closed-loop controller until after the claimed priority date of the Asserted Patents. Trial Tr. 799:4-800:8. The filing and granting of Apple's closed loop control patents further suggests that a person of ordinary skill in the art in September 2014 would not have been able to implement Apple's closed-loop controller without undue experimentation in September 2014. Notably, Dr. Okamura's testimony about undergraduate classes was not tethered to this date, nor did it reach the sophisticated closed-loop controller that Taction accuses of infringement. Trial Tr. at 1227:12-1228:10.

The asserted patents likewise do not enable a person of ordinary skill in the art to produce an output that is "substantially uniform or flat" over any frequency range. The only substantially uniform or flat output disclosed in the asserted patents is over

the range of 40–200 Hz, and the specification teaches the criticality of that range. *See, e.g.*, Trial Ex. 2 at Fig. 5C, 5:49-52, 9:25-44. The patents contain no disclosure—and provide no teaching—that would enable a person of ordinary skill in the art to achieve a substantially uniform or flat output over any range.

**3. Indefiniteness**

The law does not allow multiple tests for infringement where such tests result in meaningfully different infringement outcomes. *Teva Pharms. USA Inc. v. Sandoz Inc.*, 789 F.3d 1335, 1338-44 (Fed. Cir. 2015); *Dow Chem. Co. v. Nova Chem. Corp.*, 803 F.3d 620, 630–31 (Fed. Cir. 2015). Yet, if Taction's theory of infringement is accepted, that is precisely the situation here. Alex Lee, Dr. Zinn, and Dr. Visell all testified that the appropriate way to measure whether a transducer's output is highly damped is the one described in the specification of the asserted patents: supply it a constant (or "steady state") voltage as input, then measure the resulting acceleration of the movable mass in the transducer. *See, e.g.*, Trial Tr. at 913:15-24, 896:6-19; 1067:7-1070:13. Each one of those tests produced output from the transducer, for every accused product tested, that both parties' witnesses agreed was not highly damped.

But Dr. Oliver devised an entirely different test, using an electronic controller to vary the input voltage to target a constant "intensity," then measuring mechanical power delivered to the entire tested iPhone. Taction relies on Dr. Oliver's test—and only his test—as meeting its burden to show transducer output that is highly damped. Apple disagrees with Taction's assertion that Dr. Oliver's test is an appropriate measure of highly damped. But to the extent that any factfinder concludes otherwise—finding that the patent permits Dr. Oliver's test and gives no preference between it and the standard frequency response test described in the patent itself—then the claims must be indefinite under *Teva*, because Dr. Oliver's test produces diametrically opposite results. *Teva*, 789 F.3d at 1338-44.

## IV. CONCLUSION

For the reasons stated above, this Court should grant judgment as a matter of law of no infringement, no willfulness, and no damages. This Court should also grant judgment as a matter of law that the asserted claims are invalid.

Dated: September 23, 2026

FISH & RICHARDSON P.C.

By: */s/ John W. Thornburgh*

Roger A. Denning (SBN 228998)
denning@fr.com
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
Madelyn S. McCormick (SBN 320063)
mmccormick@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Qiuyi Wu (*pro hac vice)*
qwu@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070 / Fax: (617) 542-8906

Jacqueline Tio (*pro hac vice)*
tio@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street N.E., 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 / Fax: (404) 892-5005

Jeff Quilici
jquilici@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
200 West 6th Street
Suite 2250
Austin, TX 78701
Tel: (512)582-6916

Counsel for *Defendant Apple Inc.*