UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

TACTION TECHNOLOGY, INC.,
Plaintiff,

v.

APPLE INC.,
Defendant.

Case No.: 21-CV-000812-TWR-JLB

**FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS


Jury Instruction No. 1. - Duty of Jury ..... 4
Jury Instruction No. 2. - What is Evidence ..... 5
Jury Instruction No. 3. - What is Not Evidence ..... 6
Jury Instruction No. 4. - Direct and Circumstantial Evidence ..... 7
Jury Instruction No. 5. - Charts and Summaries ..... 8
Jury Instruction No. 6. - Deposition in Lieu of Live Testimony ..... 9
Jury Instruction No. 7. - Credibility of Witnesses ..... 10
Jury Instruction No. 8. - Expert Opinion Testimony ..... 11
Jury Instruction No. 9. - Stipulations of Fact ..... 12
Jury Instruction No. 10. - Summary of Contentions ..... 14
Jury Instruction No. 11. - Patents—The Role of the Claims of a Patent and What It Covers ..... 15
Jury Instruction No. 12. - Independent and Dependent Claims ..... 17
Jury Instruction No. 13. - Infringement Generally ..... 18
Jury Instruction No. 14. - Direct Infringement—Literal Infringement ..... 19
Jury Instruction No. 15. - Direct Infringement—Doctrine of Equivalents ..... 21
Jury Instruction No. 16. - Infringement of "Comprising" Claims ..... 22
Jury Instruction No. 17. - Induced Infringement ..... 23
Jury Instruction No. 18. - Willful Infringement ..... 24
Jury Instruction No. 19. - Patent Validity Generally ..... 25
Jury Instruction No. 20. - Level of Ordinary Skill ..... 26
Jury Instruction No. 21. - Effective Filing Date ..... 27
Jury Instruction No. 22. - Written Description Requirement ..... 29
Jury Instruction No. 23. - Enablement ..... 31
Jury Instruction No. 24. - Indefiniteness ..... 33
Jury Instruction No. 25. - Damages—Introduction ..... 34
Jury Instruction No. 26. - Damages—Reasonable Royalty ..... 35
Jury Instruction No. 27. - Damages—Relevant Factors ..... 36

Jury Instruction No. 28. - Damages—Comparable Agreements .................................. 37
Jury Instruction No. 29. - Damages—Availability of Non-Infringing Substitutes ....... 38
Jury Instruction No. 30. - Damages—Date of Commencement .................................. 39
Jury Instruction No. 31. - Damages—Apportionment ................................................ 40
Jury Instruction No. 32. - Duty to Deliberate ............................................................ 41
Jury Instruction No. 33. - Social Media Instruction .................................................. 42
Jury Instruction No. 34. - Return of Verdict .............................................................. 44

**Jury Instruction No. 1. - Duty of Jury**

Members of the Jury:

Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts, you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I have said or done as suggesting that I have an opinion regarding the evidence or what your verdict should be.

**Jury Instruction No. 2. - What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) The exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I have instructed you to accept as proved.

**Jury Instruction No. 3. - What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Jury Instruction No. 4. - Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Jury Instruction No. 5. - Charts and Summaries**

Certain PowerPoint presentations, posters, and sketches are illustrations of the evidence, but are not themselves evidence or proof of any facts. These have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. These have not been admitted into evidence.

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.

Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Jury Instruction No. 6. - Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of various witnesses were taken prior to this trial. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

**Jury Instruction No. 7. - Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Jury Instruction No. 8. - Expert Opinion Testimony**

You have heard testimony from the witnesses who testified about his/her opinions and the reason for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**Jury Instruction No. 9. - Stipulations of Fact**

The parties have agreed to certain facts that I will now read to you. You must therefore treat these facts as having been proved.

(1) Taction is a Delaware corporation with its principal place of business at 9431 Dowdy Drive, San Diego, California.

(2) Apple is a California corporation, with its principal place of business at 1 Apple Park Way, Cupertino, California, and maintains offices in San Diego.

(3) Taction asserts two patents, the ’885 patent and ’117 patent, and is the named assignee on these patents.

(4) James Biggs is the named inventor of the ’117 patent and ’885 patent.

(5) The accused products are iPhone 8, iPhone 8 Plus, iPhone X, iPhone XS, iPhone XS Max, iPhone XR, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, 2020 iPhone SE, iPhone 12, iPhone 12 Pro, iPhone 12 Pro Max, iPhone 12 Mini, iPhone 13, iPhone 13 Mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone 14, iPhone 14 Pro, iPhone 14 Pro Max, iPhone 14 Plus, 2022 iPhone SE, iPhone 15, iPhone 15 Plus, iPhone 15 Pro, iPhone 15 Pro Max, iPhone 16, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 16E, iPhone 17, iPhone 17 Pro, iPhone 17 Pro Max, iPhone Air, iPhone 17E, Apple Watch Nike, Apple Watch Series 4, Apple Watch Series 5, Apple Watch Series 6, Apple Watch SE (1st generation), Apple Watch Series 7, Apple Watch Series 8, Apple Watch SE (2nd generation), Apple Watch Ultra, Apple Watch Series 9, Apple Watch Ultra 2, Apple Watch Series 10, Apple Watch Series 11, Apple Watch Ultra 3, and Apple Watch SE (3rd generation), released from 2017 to 2025 in the United States (the “Accused Products”).

(6) [redacted]

/ / /

(7) Each accused product includes a vibration motor. Apple calls its vibration motors Taptic Engines. Not all accused products use the same Taptic Engine.

(8) [redacted]

**Jury Instruction No. 10. - Summary of Contentions**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Taction seeks money damages from Apple for allegedly infringing the asserted patents by making, using, selling, offering for sale, or importing products that Taction argues are covered by: claims 17, and 19 of the '885 patent; and claim 16 of the '117 patent. These are the asserted claims of the '885 and '117 patents. Taction also argues that Apple has actively induced infringement of these claims by others and has contributed to the infringement of these claims by others.

Apple denies that it has infringed the asserted claims and argues that, in addition, the asserted claims are invalid. Apple also denies Taction's claim of willful infringement.

Your job is to decide whether Apple has infringed the asserted claims of the '885 patent and the '117 patent and whether any of the asserted claims are invalid. If you decide that any asserted claim has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Taction to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

**Jury Instruction No. 11. - Patents—The Role of the Claims of a Patent and What It Covers**

Before you can decide many of the issues in this case, you'll need to understand the role of the patent claims. The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what the patent covers. The figures and the text in the rest of the patent provide a description or examples of the invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims cover.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all the requirements of a claim, the claim is said to cover that product; and that product is said to fall within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

It is my job as judge to explain to you the meaning of any language in the claims that need interpretation. I have interpreted the meaning of some of the language in the patent claims involved in this case. Your juror notebooks include a document reflecting those meanings. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of technology of the patent.

/ / /

The meaning of the words of the patent claims must be the same when deciding both infringement and invalidity.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

**Jury Instruction No. 12. - Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, the following asserted claims are independent claims:

- Claim 17 of the '885 patent; and
- Claim 16 of the '117 patent.

The remaining asserted claim—claim 19 of the '885 patent—is a "dependent claim." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

**Jury Instruction No. 13. - Infringement Generally**

I will now instruct you on how to decide whether or not Taction has proven that Apple has infringed either Taction patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the claimed invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

In this case, there are two possible ways that a claim may be infringed. These types of infringement are called: (1) direct infringement; and (2) active inducement. Active inducement is referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.

In this case, Taction has alleged that Apple directly infringes the asserted patents. In addition, Taction has alleged that end users directly infringe the asserted patents and Apple is liable for actively inducing and contributing to that direct infringement by end users.

In order to prove infringement, Taction must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

You have heard evidence about both Taction's commercial products and Apple's accused products. However, in deciding the issue of infringement you may not compare Apple's accused products to Taction's commercial products. Rather, you must compare Apple's accused products to the claims of Taction's patents when making your decision regarding infringement.

I will now explain each of these types of infringement in more detail.

**Jury Instruction No. 14. - Direct Infringement—Literal Infringement**

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove direct infringement by literal infringement, Taction must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Apple made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of an asserted claim and did so without the permission of Taction during the time the relevant patent was in force. You must compare each of the accused products with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

In this case, Taction does not allege that the following accused products with one Monolithic magnet literally infringe any asserted claim:

- iPhone 12
- iPhone 12 Pro
- iPhone 12 Mini
- iPhone 12 Pro Max
- iPhone 13
- iPhone 13 Mini
- iPhone 14
- iPhone 14 Pro

/ / /

- iPhone 14 Plus
- iPhone 15
- iPhone 15 Plus
- iPhone 15 Pro
- iPhone 15 Pro Max
- iPhone 16
- iPhone 16 Plus
- iPhone 16 Pro
- iPhone 16 Pro Max
- iPhone 16e
- iPhone 17
- iPhone 17 Pro
- iPhone 17e
- Apple Watch Series 6
- Apple Watch Series 7
- Apple Watch Series 8
- Apple Watch Series 9
- Apple Watch Series 10
- Apple Watch Series 11
- Apple Watch Nike
- Apple Watch Ultra
- Apple Watch Ultra 2
- Apple Watch Ultra 3

Taction asserts that these products infringe only under the doctrine of equivalents, which I will explain to you.

**Jury Instruction No. 15. - Direct Infringement—Doctrine of Equivalents**

If a company makes, uses, sells, offers to sell within, or imports into the United States a product that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies the claim elements under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements that literally meet or are equivalent to each and every element of the claim. You may find that an element or step is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim.

In order to prove infringement by "equivalents," Taction must prove the equivalency of the structure to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the accused product either literally or under the doctrine of equivalents for you to find infringement.

Known interchangeability of the claim element and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents. In order for the structure to be considered interchangeable, the claim element must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent.

In this case, Taction asserts that the accused products with one Monolithic magnet meet the following claim elements under the doctrine of equivalents:

- "plurality of magnets"

**Jury Instruction No. 16. - Infringement of "Comprising" Claims**

The preamble to claims 1 and 17 of the '885 patent uses the phrase "an apparatus for imparting motion to the skin of a user, the apparatus comprising." The preamble to claim 1 of the '117 patent uses the phrase "an apparatus comprising." The preamble to claim 16 of the '117 patent uses the phrase "an apparatus for generating damped electromagnetically actuated planar motion, the apparatus comprising." The word "comprising" means "including the following but not excluding others."

**Jury Instruction No. 17. - Induced Infringement**

In addition, Taction argues that Apple has actively induced another to infringe the Asserted Claims of the ’885 patent and the ’117 patent. In order for Apple to have induced infringement, Apple must have induced another to directly infringe claims 17 and 19 of the ’885 patent, and claim 16 of the ’117 patent; if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

To prove that Apple is liable for inducing infringement, Taction must prove by a preponderance of the evidence that Apple:

(1) has intentionally taken action that actually induced direct infringement;

(2) has been aware of the asserted patents; and

(3) has known that the acts it was causing would infringe the asserted patents.

Apple may be considered to have known that the acts it was causing would infringe if it subjectively believed there was a high probability that the direct infringer’s product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer’s acts.

**Jury Instruction No. 18. - Willful Infringement**

In this case, Taction argues that Apple willfully infringed the Taction patents.

To prove willful infringement, Taction must persuade you that Apple infringed a valid claim of the Taction patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Taction must persuade you that it is more likely true than not true that Apple intentionally ignored or recklessly disregarded that claim. You must base your decision on Apple's knowledge and actions at the time of the claimed infringement, that is, from April 26, 2021, to the present. Evidence that Apple had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that Apple engaged in additional conduct evidencing deliberate or reckless disregard of Taction's patent rights.

In deciding whether Apple willfully infringed, you should consider all of the facts surrounding the infringement including: whether Apple knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Apple had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent. If you determine that any infringement was willful, that decision must not affect the amount of and damages award you give for infringement. I will take willfulness into account later if you find it.

**Jury Instruction No. 19. - Patent Validity Generally**

I will now instruct you on the rules you must follow in deciding whether or not Apple has proven that the asserted claims of the asserted patents are invalid. Patents are presumed to be valid. To prove that any claim of a patent is invalid, Apple must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

**Jury Instruction No. 20. - Level of Ordinary Skill**

In deciding what the level of ordinary skill in the field of technology of the patent is, you should consider all of the evidence introduced at trial, including but not limited to:

(1) the levels of education and experience of the inventor and other persons actively working in the field;

(2) the types of problems encountered in the field;

(3) prior art solutions to those problems;

(4) the rapidity with which innovations are made; and

(5) the sophistication of the technology.

**Jury Instruction No. 21. - Effective Filing Date**

In this case, the parties dispute the effective filing date to which the asserted patents are entitled. As I explained to you earlier, this date may be important to determine what counts as "prior art" to the asserted patents.

Taction contends that each asserted claim is entitled to the filing date of a first provisional patent application filed on September 24, 2014. To the extent any such claim is not supported by the first provisional application, Taction contends that the claim would be entitled to the filing date of a second provisional patent application filed on January 10, 2015. To the extent any such claim is not supported by the second provisional application, Taction contends that the claim would be entitled to the filing date of a non-provisional application filed on September 24, 2015. Apple contends that Taction has not established entitlement to a filing date earlier than the filing date of the non-provisional application.

Taction may rely on the filing date of a provisional application to establish the effective filing date if that provisional application teaches one of ordinary skill in the art to make and use the claimed invention of the asserted patents, and to do so without undue experimentation. The exact words found in the claim need not be used and it is unnecessary to spell out every detail of the invention, but enough detail must be included to demonstrate to a person of skill in the art that the inventor possessed the full scope of the invention.

If you determine that Taction has shown by a preponderance of the evidence that the asserted claims are entitled to the filing date of a provisional application, then Apple must prove by clear and convincing evidence that they are not.

If you find that Taction is entitled to an effective filing date that is the same date as the filing date of the first provisional application, then September 24, 2014, is the effective filing date of the asserted patents for purposes of validity and the prior art. If you find instead that Taction is entitled to an effective filing date that is the same date as the filing date of the second provisional application, then January 10, 2015, is the effective filing date of the asserted patents for purposes of validity and the prior art.

/ / /

Otherwise, September 24, 2015, is the effective filing date of the asserted patents for purposes of validity and the prior art.

**Jury Instruction No. 22. - Written Description Requirement**

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date. Apple contends that the asserted claims of the '885 and '117 patents are invalid because the specification of the asserted patents does not contain an adequate written description. To succeed, Apple must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of the asserted patents, would not have recognized that it describes the full scope of the invention as it is finally claimed in the asserted claims. If a claim lacks adequate written description, it is invalid.

In deciding whether a claim satisfies this written description requirement, the claim must be viewed as a whole. You must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. It is unnecessary to spell out every detail of the invention in the written description, and specific examples are not required. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular

field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

**Jury Instruction No. 23. - Enablement**

Another requirement for the specification is called the enablement requirement. A patent's specification must enable a person skilled in the art to make and use the full scope of the invention as defined by its claims. The more one claims, the more one must enable.

Apple contends that the asserted claims are invalid because the specification does not enable the full scope of the claimed invention. To succeed, Apple must show by clear and convincing evidence that the patent specification does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the effective filing date, without undue experimentation. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that a person of ordinary skill in the field of the invention would be likely to know or could obtain. The fact that some experimentation may be required for a person of ordinary skill in the field of the invention to practice the claimed invention does not mean that a patent does not meet the enablement requirement.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of technology of the patent;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field of technology of the patent;

(6) the level of ordinary skill in the field of technology of the patent; and

(7) the nature and scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the effective filing date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

**Jury Instruction No. 24. - Indefiniteness**

Another requirement for the specification is called the definiteness requirement. Apple contends that the asserted claims are invalid because the language of the claims is indefinite. Apple bears the burden of establishing by clear and convincing evidence that the asserted claims are invalid for being indefinite. The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the art reading them is able to determine what the claims cover and what they do not cover. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid. If you find that there are multiple methods of measurement that one of ordinary skill in the field of invention could reasonably use to evaluate a claim term, and if you find that those methods of measurement produce materially different results, and if you find that the patent does not provide guidance as to which method should be used, you may find the claim to be indefinite.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the description of the invention contained in the patent. The patent claim, when read along with the rest of the patent must reasonably inform those skilled in the art what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

If you find that a person of ordinary skill in the art would not understand with reasonable certainty what is, and what is not, covered by the asserted claims, you must find those claims invalid.

**Jury Instruction No. 25. - Damages—Introduction**

If you find that Apple infringed any valid claim of the asserted patents, you must then consider what amount of damages to award to Taction. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Apple has not infringed any valid claim of the patent, then Taction is not entitled to any damages.

The damages you award must be adequate to compensate Taction for the infringement. They are not meant to punish Apple. Your damages award, if you reach this issue, should put Taction in approximately the same financial position that it would have been in had the infringement not occurred.

Taction has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Taction establishes that it more likely than not has suffered. While Taction is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

**Jury Instruction No. 26. - Damages—Reasonable Royalty**

Taction seeks damages in the form of a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment Taction and Apple would have agreed to in a hypothetical negotiation taking place at the time immediately prior to when infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of Taction and Apple would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must also assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply what either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**Jury Instruction No. 27. - Damages—Relevant Factors**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The value that the claimed invention contributes to the accused products.

(2) The value that factors other than the claimed invention contribute to the accused products.

(3) Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

**Jury Instruction No. 28. - Damages—Comparable Agreements**

Taction has asserted that the license agreement between Taction and Corsair is a comparable agreement to the hypothetical license agreement between Taction and Apple. If you find that assertion to be accurate, you may consider the Taction-Corsair agreement in determining a reasonable royalty. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

**Jury Instruction No. 29. - Damages—Availability of Non-Infringing Substitutes**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent.

**Jury Instruction No. 30. - Damages—Date of Commencement**

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that Taction alleges Apple has both infringed and been notified of the alleged infringement of the asserted patents. Here, that date was the date on which Taction filed this lawsuit: April 26, 2021.

**Jury Instruction No. 31. - Damages—Apportionment**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products, or other factors such as marketing or advertising, or Apple's size or market position.

A royalty compensating the patentholder for damages must reflect the value attributable to the infringing features of the products, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the products accused of infringement have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**Jury Instruction No. 32. - Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Jury Instruction No. 33. - Social Media Instruction**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper

communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**Jury Instruction No. 34. - Return of Verdict**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiffs that you are ready to return to the courtroom.