Sean Pak (SBN 219032)
seanpak@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

Tigran Guledjian (SBN 207613)
tigranguledjian@quinnemanuel.com
Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
Scott L. Watson (SBN #219147)
scottwatson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

*Attorneys for Plaintiff Taction Technology, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

TACTION TECHNOLOGY, INC.,

Plaintiff,

vs.

APPLE INC.,

Defendant

Case No. 21-cv-00812-TWR-JLB

**PLAINTIFF TACTION TECHNOLOGY, INC.'S MOTION FOR SUPPLEMENTAL DAMAGES, ONGOING ROYALTY, AND PREJUDGMENT AND POSTJUDGMENT INTEREST**

Judge: Hon. Todd W. Robinson

Magistrate Judge: Hon. Jill L. Burkhardt

# TABLE OF CONTENTS


I. TACTION IS ENTITLED TO SUPPLEMENTAL DAMAGES .................... 1

II. TACTION IS ENTITLED TO AN ONGOING ROYALTY FOR APPLE'S CONTINUED INFRINGEMENT .................... 2

A. Ongoing Royalty Rate .................... 2

B. New Infringing Products .................... 8

C. Quarterly Reporting .................... 11

III. TACTION IS ENTITLED TO PREJUDGMENT INTEREST .................... 12

IV. TACTION IS ENTITLED TO POSTJUDGMENT INTEREST .................... 15

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008) .......... 6

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 12-cv-00630-LHK, 2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) .......... 2, 3, 4, 5, 7, 8, 9, 11, 12

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
No. 14-CV-62369, 2017 WL 7732873 (S.D. Fla. Jan. 3, 2017), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017) .......... 2, 3, 6

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) .......... 2

*Boston Sci. Corp. v. Cordis Corp.*,
838 F. Supp. 2d 259 (D. Del. 2012) .......... 6

*CH2O, Inc. v. Meras Eng'g, Inc.*,
No. LA CV13-08418 .......... 1, 2

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-CV-04738-WHO, 2021 WL 1022854 (N.D. Cal. Mar. 17, 2021) .......... 10

*Creative Internet Adver. Corp. v. Yahoo! Inc.*,
674 F. Supp. 2d 847 (E.D. Tex. 2009) .......... 6, 10

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
340 F. Supp. 3d 1004 (C.D. Cal. 2018) .......... 1

*Epistar Corp. v. Lowes Cos., Inc.*,
No. LA CV17-03219 JAK, 2023 WL 8930197 (C.D. Cal. Nov. 20, 2023) .......... 6

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) .......... 1

*Fractus, S.A. v. Samsung Elecs. Co.*,
No. 6:12-cv-421, 2013 WL 1136964 (E.D. Tex. Mar. 15, 2013) .................... 3, 6

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
No. CV 15-634-JFB, 2019 WL 1877189 (D. Del. Apr. 26, 2019),
*aff'd*, 967 F.3d 1380 (Fed. Cir. 2020) .......................................... 1, 2, 3, 8, 9, 10

*Hynix Semiconductor Inc. v. Rambus Inc.*,
609 F. Supp. 2d 951 (N.D. Cal. 2009)............................................................. 11

*Medtronic Vascular, Inc. v. Bos. Sci. Corp.*,
No. 2-06-CV-78 (TJW), 2009 WL 175696 (E.D. Tex. Jan. 23, 2009) .............. 12

*Mondis Tech. Ltd. v. Chimei Innolux Corp.*,
No. 2:11-cv-378-JRG, 2012 WL 1554645 (E.D. Tex. Apr. 30, 2012) .......... 9, 12

*Opticurrent, LLC v. Power Integrations, Inc.*,
No. 17-cv-03597-EMC, 2019 WL 2389150 (N.D. Cal. June 5, 2019)................ 3

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) ...................................................................... 3, 8

*Paice LLC v. Toyota Motor Corp.*,
609 F. Supp. 2d 620 (E.D. Tex. 2009) ........................................................ 5, 6, 9

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*,
723 F. Supp. 2d 1284 (S.D. Cal. 2010) ............................................................. 1

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
592 F. Supp. 2d 727 (D. Del. 2009), *aff'd in relevant part*, 612 F.3d
1365 (Fed. Cir. 2010) ......................................................................................... 5

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
No. 04-876-GMS, 2014 WL 1457797 (D. Del. Apr. 14, 2014)...................... 3, 6

*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011) (en banc) .......................................................... 10

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ............................................................................. 5

*Wi-Lan Inc. v. Apple Inc.*,
No. 3:14-cv-02235-DMS-BLM, Dkt. 535 (Apple's Nov. 9, 2018 Opposition to Wi-Lan's Motion for Supplemental Damages, Ongoing Royalty, and Prejudgment and Postjudgment Interest) ........................ 9

*XY, LLC v. Trans Ova Genetics*,
890 F.3d 1282 (Fed. Cir. 2018) ........................ 6, 7

**Statutes**

35 U.S.C. § 283 ........................ 3

## I. TACTION IS ENTITLED TO SUPPLEMENTAL DAMAGES

Supplemental damages are necessary to compensate Taction for sales of infringing products that are not accounted for in the Jury's verdict. "Patentees are entitled to supplemental damages accounting for any infringing sales that occurred before the verdict but that were not reflected in the last financial discovery produced." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, No. CV 15-634-JFB, 2019 WL 1877189, at *4 (D. Del. Apr. 26, 2019), *aff'd*, 967 F.3d 1380 (Fed. Cir. 2020). As such, courts in this District and elsewhere in California award supplemental damages where the jury award does not cover all units sold up through the date of the verdict. *See, e.g.*, *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1329 (S.D. Cal. 2010) (ordering accounting of sales after December 1, 2009, and explaining that "[s]upplemental damages are calculated consistent with the damages awarded in the jury verdict"), *aff'd in part, vacated in part*, 702 F.3d 1351 (Fed. Cir. 2012); *EcoServices, LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1034–35 (C.D. Cal. 2018) (awarding supplemental damages for period between end of jury's damages period and verdict, and ordering defendant to supplement its financial disclosure); *CH2O, Inc. v. Meras Eng'g, Inc.*, No. LA CV13-08418 JAK (GJSx), 2020 WL 13388230, at *13–14 (C.D. Cal. Apr. 6, 2020) (awarding supplemental damages where trial evidence "covered a time period that ended" before the verdict); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212–13 (Fed. Cir. 2010) ("[A] patentee is not fully compensated if the damages award did not include future lost sales… Therefore, the district court should have awarded compensation for any infringement prior to the injunction.") (internal citations omitted).

Here, the last sales data Apple produced ended in March 2026. *See* Dkt. 502 at 75-76. The jury award does not cover the six-month period of sales between March 2026 and September 2026. *See* Dkt. 647 (stipulating to total accused units sold "between April 26, 2021 through March 28, 2026"); *see also* Dkt. 712 at 12-13.

Taction is thus "entitled to supplemental damages for any infringing sales that occurred before the verdict but were not reflected in the last financial discovery produced," and "[t]he Court [should] order an accounting of infringing sales of all adjudicated products through the date of the verdict." *Godo Kaisha*, 2019 WL 1877189, at *5. Those damages should be calculated by applying the jury's implied per-unit royalty (*see* Section II.A, *infra*) to Apple's March to September sales of the adjudicated products. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 986 (Fed. Cir. 2021) (affirming award where "calculating pre-verdict supplemental damages in this case merely required applying the jury's royalty rate to the undisputed actual infringing sales base"); *CH2O*, 2020 WL 13388230, at *14 (calculating supplemental damages "based on an ongoing royalty rate derived from the jury's verdict").

## II. TACTION IS ENTITLED TO AN ONGOING ROYALTY FOR APPLE'S CONTINUED INFRINGEMENT

### A. Ongoing Royalty Rate

Apple's infringement did not end with the jury's verdict. At trial, Apple did not offer any evidence of available non-infringing alternatives. Trial Tr. (Zinn) 1149:1-4 ("Q. You provided no testimony that Apple has another option to move to if they are found to infringe in this case; correct? A. That's correct."). And Apple has not offered any evidence that it has since altered its products so as not to infringe. Thus, an ongoing royalty is warranted. *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 6687122, at *9 (N.D. Cal. Nov. 25, 2014) ("[T]he Federal Circuit has repeatedly approved the practice of granting ongoing royalties to compensate a patentee for continuing infringement."); *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-CV-62369, 2017 WL 7732873, at *1 (S.D. Fla. Jan. 3, 2017), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017) (where defendant "continues to manufacture and sell infringing [products], [plaintiff] is entitled to an ongoing

royalty"); *Godo Kaisha*, 2019 WL 1877189, at *6 (awarding ongoing royalty where defendant's "other LTE products infringe [plaintiff's] patent claims in the same way the accused products do"). The imposition of an ongoing royalty to compensate for such continuing infringement is grounded in the Court's equitable authority under 35 U.S.C. § 283. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007) (recognizing judicial authority under 35 U.S.C. § 283 "to assess a reasonable royalty in light of the ongoing infringement."). Courts routinely exercise that authority. *See, e.g.*, *Arctic Cat*, 876 F.3d at 1370; *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597-EMC, 2019 WL 2389150, at *18 (N.D. Cal. June 5, 2019); *Godo Kaisha*, 2019 WL 1877189, at *6; *Fractus, S.A. v. Samsung Elecs. Co.*, No. 6:12-cv-421, 2013 WL 1136964, at *1 (E.D. Tex. Mar. 15, 2013). And "the Federal Circuit has repeatedly approved the practice of granting ongoing royalties to compensate a patentee for continuing infringement," and "has indicated that a prevailing patentee should receive compensation for any continuing infringement." *Apple v. Samsung*, 2014 WL 6687122, at *9 (collecting cases). Because an ongoing royalty is equitable relief, it is set by the Court rather than a jury. *Paice*, 504 F.3d at 1316.

"Generally, the jury's damages award is a starting point for evaluating ongoing royalties." *Apple*, 2014 WL 6687122, at *14. Where, as here, the jury returned an aggregate damages award rather than a per-unit rate, courts derive the jury's implied rate from the verdict and the number of infringing units. *Id.* at *15 (finding "the most straightforward and reliable way to determine per-unit rates for the adjudicated products is to divide damages for each product by the number of units"); *see also Telcordia Techs., Inc. v. Cisco Sys., Inc.*, No. 04-876-GMS, 2014 WL 1457797, at *1 (D. Del. Apr. 14, 2014) ("Telcordia calculated an effective royalty rate of 0.64% for past infringement based on the ratio of the jury's $6.5 million damages award over Cisco's $1.1 billion total sales of accused products through trial.").

Deriving a per-unit rate from the verdict is particularly appropriate here because the only evidence the jury heard regarding the form of a license to the asserted patents was a per-unit royalty. *See, e.g.*, Trial Tr. 656:21–657:2 (Steinberg) [redacted]); *id.* (Steinberg) at 662:14–21 ([redacted]); Trial Exhibit 961 at § 3 ([redacted]), at § 3.2 ([redacted]), at § 3.3 [redacted]). No witness testified that Taction and Apple would have agreed to a lump-sum, paid-up license, and no party asked the jury to award one. The jury was instructed to award damages that would "put Taction in approximately the same financial position that it would have been in had the infringement not occurred," Dkt. 712 at 34 (Instr. No. 25), and that damages commenced on April 26, 2021, *id.* at 39 (Instr. No. 30).

Courts have rejected attempts to recast a verdict as a fully paid-up lump sum on far weaker records. In *Apple v. Samsung*—at Apple's insistence—the court rejected the argument that the verdict "reflects a lump sum" compensating for "all past and future infringement," because "the verdict contains no express statement about whether the damages award encompasses future infringement" and the infringer's own expert had "presented a per-unit reasonable royalty theory at trial." 2014 WL 6687122, at *12; *see also* Declaration of Scott L. Watson In Support Of Taction's Motion for Supplemental Damages, Ongoing Royalty, and Prejudgment and Postjudgment Interest ("Watson Decl.") Ex. 1 (*Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK (N.D. Cal. Sept. 29, 2014), Dkt. 2001 (Apple's Reply ISO Mot. for Ongoing Royalties)) at 15 (Apple disputing "Samsung's argument that the jury's verdict addressed future sales"). As the court explained, "[b]ecause the record suggests it is plausible that the jury intended to award Apple damages only for past

infringing sales, the Court cannot conclude that the jury necessarily awarded a lump-sum award intended to cover past and future infringement." 2014 WL 6687122, at *12. Similarly, in *Telcordia*, the district court found that the verdict compensated the patentee only for past infringement, even where the infringer's expert had testified that the award should be based on "a lump-sum, paid-up license" and even though the award was closer to the infringer's proposal than to the patentee's. *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 592 F. Supp. 2d 727, 747 (D. Del. 2009), *aff'd in relevant part*, 612 F.3d 1365, 1377-78 (Fed. Cir. 2010). Likewise, in *Whitserve*, the verdict "did not indicate that the award was meant to cover future use," and "the trial court did not interpret the award as such." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012). The Federal Circuit therefore "c[ould] not accept [the infringer's] suggestion that a paid-up license was awarded," even though "the jury heard evidence of two lump-sum licenses." *Id.* (reasoning that "the parties limited their damages arguments to past infringement," and "[t]he jury was instructed to award 'damages,' which by definition covers only past harm"). *See also Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 625 (E.D. Tex. 2009) (distinguishing case in which "the jury clearly awarded damages for past infringement as well as prospective damages," because the jury there "did not consider the issue of prospective relief").

From that starting point, because the liability verdict strengthens the patentee's bargaining position, courts routinely set ongoing royalties *above* the jury's rate. "Failing to consider the parties' changed legal status would create an incentive for every defendant to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing." *Paice*, 609 F. Supp. 2d at 628. "For that reason, courts frequently impose a post-verdict ongoing royalty rate that is higher than the reasonable royalty found at trial for past infringement." *Telcordia*, 2014 WL 1457797, at *4 n.8 (collecting cases); *see also Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847,

861 (E.D. Tex. 2009) ("The Federal Circuit has instructed that post-verdict infringement should typically entail a higher royalty rate than the reasonable royalty found at trial."); *Epistar Corp. v. Lowes Cos., Inc.*, No. LA CV17-03219 JAK (KSX), 2023 WL 8930197, at *8 (C.D. Cal. Nov. 20, 2023) ("[C]onsidering Epistar's relative bargaining position as to post-verdict sales where at least some of the asserted claims were found to be valid and infringed, an ongoing royalty modestly higher than that awarded by the jury is appropriate."); *Arctic Cat*, 2017 WL 7732873, at *2 ("[T]he jury's reasonable rate for past damages sets the floor for the determination of an ongoing royalty rate."), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017). The Federal Circuit has vacated an ongoing royalty set below the jury's rate where the district court "identified no economic factors that would justify the imposition of rates that were lower than the jury's." *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1298 (Fed. Cir. 2018).[1]

Here too, these considerations would support an ongoing royalty above the jury's rate. The jury found every asserted claim infringed and not invalid. Dkt. 707 at 2, 4. Taction's bargaining position is therefore substantially stronger than it was at the hypothetical negotiation in May 2020. *See XY*, 890 F.3d at 1297; *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008). Apple did not implement any design around and failed to put forth any non-infringing alternative at trial. *See supra*; *see also* Declaration of Patrick Kennedy ("Kennedy Decl.") at ¶17. Apple also continues to release new products that include the features that the jury found to be

---

[1] Consistent with these principles, courts regularly award ongoing royalties well above the jury's rate. *See*, *e.g.*, *Telcordia*, 2014 WL 1457797, at *1, *5 (setting ongoing rates of 1.25% and 1%, above the jury's 0.64% effective rate); *Fractus*, 2013 WL 1136964, at *2-3 (increasing jury's implied rate of 35.5 cents to 60 cents per phone); *Boston Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 275-76 (D. Del. 2012) (awarding 32% ongoing royalty, which reflected the effective rate of the jury's combined lost-profits and reasonable-royalty award; the jury's reasonable-royalty award reflected a 2.95% rate).

infringing. *See supra*; *see also* Declaration of James Oliver ("Oliver Decl.") at ¶¶4–5, 19, 35, 69.

Nevertheless, to streamline the resolution of this motion, Taction conservatively requests only that the Court apply the jury's implied rate to Apple's post-verdict infringement.[2] Courts have granted precisely this request. In *Apple v. Samsung*, then-plaintiff Apple "d[id] not seek higher rates: to be conservative, Apple only s[ought] ongoing royalties consistent with the amounts awarded by the jury." 2014 WL 6687122, at *15 (internal quotation marks omitted). The court rejected Samsung's proposed downward adjustments, observing that it "cite[d] no case where a court awarded ongoing royalties at rates below the jury's" and that "[r]ather, courts have generally awarded the same or higher rates for continuing infringement." *Id.* at *20. It therefore held that "the proper ongoing royalty rates are those reflected in the jury verdict." *Id.*; *see also* Watson Decl. Ex. 1 (*Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK (N.D. Cal. Sept. 29, 2014), Dkt. 2001 (Apple's Reply In Support Of Mot. for Ongoing Royalties)) at 9 (Apple describing its "conservative request that the Court award the royalty implied from the jury's verdict").

The jury awarded $5,721,961,750 to compensate Taction for Apple's past infringement. Dkt. 707 at 5. The parties stipulated that Apple sold [redacted]1 Infringing Products between April 26, 2021 and March 28, 2026. Dkt. 647. As further detailed in the concurrently-filed Kennedy Declaration, the jury's verdict can be explained one of two ways. Simple math to derive the effective rate shows an implied royalty of approximately [redacted] per unit. Kennedy Decl. at ¶¶12-13. Separately, the verdict can be explained entirely by the use of two separate per patent, per product rates – [redacted] for iPhones and [redacted] for the watch. Kennedy Decl. at ¶¶14-

[2] While Taction accepts the jury's implied rate for supplemental damages and ongoing royalties, Taction does not accept a lower rate – and if the jury's award were reduced in any way, Taction reserves the right to request supplemental damages and ongoing royalties greater than the implied rate in any reduced award.

16. Taction respectfully requests that the Court order Apple to pay an ongoing royalty of [redacted] per unit[3] on all U.S. sales of the Infringing Products, and of products not more than colorably different therefrom (*see* Section II.B, *infra*), made after September 25, 2026, through the expiration of the asserted patents on September 24, 2035. Dkt. 616-2 at 123.[4]

### B. New Infringing Products

Ongoing royalties are not limited to the specific models presented at trial; they extend to later products that are not more than colorably different from the adjudicated products. *See Apple*, 2014 WL 6687122, at *20 (ordering that ongoing royalties "shall apply to products adjudicated to infringe… and to products 'not more than colorably different therefrom'"); *Godo Kaisha*, 2019 WL 1877189, at *6 (awarding "an accounting of and an ongoing royalty for non-adjudicated" products), *aff'd*, 967 F.3d 1380 (Fed. Cir. 2020); *Mondis Tech. Ltd. v. Chimei Innolux Corp.*, No. 2:11-cv-378-JRG, 2012 WL 1554645, at *3 (E.D. Tex. Apr. 30, 2012) (for purposes of establishing an ongoing royalty, defining the royalty base as covering products "accused at trial, and those that are not colorably different from the computer monitors and televisions that were accused at trial").[5]

---

[3] In the alternative, Taction asks the Court to set per unit, per patent royalties at [redacted] per infringing iPhone and [redacted] per infringing Apple Watch.

[4] Although the Federal Circuit has noted that a "district court may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty," *Paice*, 504 F.3d at 1315, that step is unnecessary where, as here, the patentee asks only for the rate the jury has already set.

[5] *See also Paice*, 609 F. Supp. 2d at 629 (E.D. Tex. 2009) ("Toyota has introduced new hybrid vehicles, which Paice contends also infringe its patent. Although these vehicles have not at this time been adjudged to infringe, the fact that Toyota has introduced new hybrid models employing the same, or very similar technology, is evidence of the extent to which Toyota has made use of Paice's invention. Further, Toyota abandoned the technology it employed in the first Prius, which did not use

Apple itself has embraced this rule. As a patentee seeking ongoing royalties, Apple told the Northern District of California that "any ongoing royalties extend not only to ongoing sales of products found to infringe by the jury, but also to products 'not more than colorably different' therefrom." Watson Decl. Ex. 2 (*Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK (N.D. Cal. Sept. 3, 2014), Dkt. 1958 (Apple's Mot. for Ongoing Royalties)) at 1. Similarly, as defendant before the Southern District of California, "Apple conditionally accept[ed]" plaintiff's request for an ongoing "per-unit royalty rate on the newer models of iPhones starting with the iPhone 8, which [plaintiff] refers to as the 'Unadjudicated Products.'" Watson Decl. Ex. 3 (*Wi-Lan Inc. v. Apple Inc.*, No. 3:14-cv-02235-DMS-BLM, Dkt. 535 (Apple's Nov. 9, 2018 Opposition to Wi-Lan's Motion for Supplemental Damages, Ongoing Royalty, and Prejudgment and Postjudgment Interest)) at 1.

The colorable-differences inquiry is borrowed from the Federal Circuit's test for enforcing injunctions against modified products. *Godo Kaisha*, 2019 WL 1877189, at *4-5 (citing *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881–82 (Fed. Cir. 2011) (en banc)); *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2021 WL 1022854, at *6 (N.D. Cal. Mar. 17, 2021) ("[S]everal courts have concluded that this… test applies to ongoing royalties too."). The patentee must show "both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes." *TiVo*, 646 F.3d at 882 (injunction context); *Godo Kaisha*, 2019 WL 1877189, at *4-5 (ongoing royalty context); *see also Creative Internet*, 674 F. Supp. 2d at 855 (patentee must show product is "no more than a 'colorable variation'" of the adjudicated product). The analysis focuses "not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused

---

Paice's technology, in favor of the Prius II and subsequent vehicles that do use the Paice technology. This conduct indicates the advantages of Paice's technology over the previous technology utilized by Toyota.") (internal citations omitted).

product, but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product." *Godo Kaisha*, 2019 WL 1877189, at *5 (quoting *TiVo*, 646 F.3d at 881-82) (citation omitted).

Apple's September 2026 product releases—the iPhone 18 Pro, iPhone 18 Pro Max, Apple Watch Series 12 (42 and 46mm), and Apple Watch Ultra 4 (the "New Products")—are not more than colorably different from the Infringing Products with respect to the infringed claims. As further explained in his concurrently-filed declaration, Dr. Oliver tested the New Products, and found (1) that they are not colorably different from Infringing Products and (2) that the New Products infringe. *See* Oliver Decl. at ¶¶4–5, 19, 21, 27–35. Dr. Oliver's teardowns showed that the Taptic Engine in each New Product "appears materially the same as at least one of the Taptic Engines in the previous-generation product." *Id*. at ¶5. All New Products infringe claims 17 and 19 of the '885 patent. *Id.* at ¶¶35–60, 69. The Apple Watch Series 12 models (42 and 46 mm) products also infringe claim 16 of the '117 patent. *Id*. at ¶¶61–68. For example, as tested by Dr. Oliver, the frequency responses of the iPhone 18 Pro and iPhone 18 Pro Max, compared with the seven iPhones tested at trial, show that "[a]ll nine plots have the same shape [] and all nine stay within a band of ±10 dB across the operating range," *id*. at ¶32. *See id.* at ¶¶41–45, 52–57.

None of this is surprising. The record in this case shows that Apple's Taptic Engine carries forward from one product generation to the next in all respects relevant to infringement. At trial, Apple failed to present any non-infringing alternatives. Trial Tr. (Zinn) 1149:1-4. When this case was remanded, Taction added the Apple iPhone and Apple Watch models that Apple had released while the case was stayed while on appeal to the list of Accused Products. *See* Dkt. 545 at 10 n.4. Taction confirmed through supplemental discovery that "there are no differences between the Original and New Accused Products—in other words, its original theory of infringement consistently applies among all Accused Products." *Id.* at 15–16. As the

Court recognized, "Taction's theory of infringement did not change as to the Original and the New Accused Products." *Id.* at 15. The jury then found that Apple infringed every asserted claim. Dkt. 707 at 2. Apple's newest models are the next iteration of the same design.

Additionally, the newly released products are a discrete, identified set that incorporate the same infringing functionality the jury found to infringe in older products. Requiring Taction to file a new lawsuit each time Apple refreshes its product lines would multiply litigation over the very technology the jury has already adjudicated; ongoing royalties exist in part to avoid that result. *See Apple*, 2014 WL 6687122, at *11 ("[O]ngoing royalties may reduce unnecessary future litigation."); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 961 (N.D. Cal. 2009) ("Failure to award such damages may not necessarily create a 'windfall' for the infringer because the patentee could file another complaint alleging infringement occurring after the time period tried in the first case, but requiring such additional litigation would be inefficient and unhelpful, serving only to delay the patentee's right to recover."). At least the same per-unit rate should apply to these products. *See Apple*, 2014 WL 6687122, at *15 (applying the jury's average per-unit rate, "which is a reasonable starting point for royalties for unadjudicated products that are 'not more than colorably different'").

**C. Quarterly Reporting**

Finally, to administer the ongoing royalty, Taction requests that Apple be ordered to provide quarterly reports of its U.S. sales of the Infringing Products and products not more than colorably different therefrom, with payment due within 30 days after the close of each quarter. *See Mondis*, 2012 WL 1554645, at *3 (consistent with "established practice," ordering that "[ongoing royalty] payments and reports will be due on or before 30 days after the close of each quarter"); *Medtronic Vascular, Inc. v. Bos. Sci. Corp.*, No. 2-06-CV-78 (TJW), 2009 WL 175696, at *1 (E.D. Tex.

Jan. 23, 2009) (ordering "quarterly reports… identifying the number of units sold with regard to all of the defendant's products found to infringe").

## III. TACTION IS ENTITLED TO PREJUDGMENT INTEREST

"As a rule, 'prejudgment interest should be awarded under [35 U.S.C. § 284] absent some justification for withholding such an award.'" *Epistar*, 2023 WL 8930197, at *3 (quoting *Whitserve*, 694 F.3d at 36). "An award of prejudgment interest carries out Congress's overriding purpose of affording patent owners complete compensation since a patentee's damages also include the forgone use of the money between the time of infringement and the date of judgment." *Whitserve*, 694 F.3d at 36 (internal quotation marks omitted). "[A]n award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement. An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the forgone use of the money between the time of infringement and the date of the judgment." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983).

Prejudgment interest is "the rule, not the exception." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) (internal quotation marks omitted); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996). "The purpose of prejudgment interest is to place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty rather than infringe." *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1094 (Fed. Cir. 2014). "Prejudgment interest runs from the earliest date of infringement for any patent issued at the time of the hypothetical negotiation." *Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*, 850 F.3d 1302, 1315 (Fed. Cir. 2017).

No justification exists for declining to award prejudgment interest here. The size of the jury's award is no reason to withhold interest. Rejecting Apple's argument that prejudgment interest would be a windfall, the court in *Masimo Corp. v. Apple Inc.* explained that "interest from the time that the royalty payments would have been received merely serves to make the patent owner whole." Watson Decl. Ex. 4 (No. 8:20-cv-00048-JVS-JDE, Dkt. 2954 at 3–4 (C.D. Cal. Oct. 5, 2026)) (quoting *Devex*, 461 U.S. at 655-56); *see also Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1043 (N.D. Cal. 2016) (rejecting Motorola's "conten[tion] that 'given the size of the jury's award, the Court should deny prejudgment interest all together"); *Whitserve*, 694 F.3d at 36 (finding that the district court abused its discretion in denying prejudgment interest on the ground that jury's award was "adequate to compensate" the plaintiffs for infringement, where jury had been instructed not to award interest).

Nor may Apple use this motion to relitigate the jury's damages determination. Any justification for withholding prejudgment interest "must have some relationship to the award of prejudgment interest," *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1558 (Fed. Cir. 1986), and "the merits of the infringer's challenges to the patent are immaterial in determining the amount of prejudgment interest," *Bio-Rad Lab'ys, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986); *see id.* at 970 (rejecting defendant's argument that damages were "unduly high" as an attempt "to relitigate an issue previously settled"); Watson Decl. Ex. 4 (*Masimo v. Apple*, Dkt. 2954) at 4 (Apple's argument that the award was "speculative" was "not the relevant issue" because the justification for denying prejudgment interest "must have some relationship to the award of prejudgment interest").

Taction is therefore entitled to prejudgment interest on the jury's award, and on supplemental damages[6], from April 26, 2021 through the date of judgment. Consistent with the implied per-unit form of the jury's award, Taction calculates prejudgment interest on the royalties that would have accrued on Apple's infringing sales from April 26, 2021 through the date of this submission, but reserves the right to update the calculation once judgment is entered. Kennedy Decl. ¶¶20-24.

The rate of prejudgment interest is "left largely to the discretion of the district court." *Bio-Rad*, 807 F.2d at 969; *see also CH2O*, 2020 WL 13388230, at *14. Courts "often use the statutory rate in the state in which they sit to calculate an award of prejudgment interest." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1101, 1103 (S.D. Cal. 1990). California sets the rate of interest "upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand" at "7 percent per annum." Cal. Const. art. XV, § 1. Courts in this District and elsewhere in California have repeatedly awarded prejudgment interest at that rate in patent cases. *See KFx Med. Corp. v. Arthrex Inc.*, No. 11CV1698 DMS (BLM), 2014 WL 11961953, at *1 (S.D. Cal. Feb. 18, 2014), *aff'd*, 589 F. App'x 538 (Fed. Cir. 2015) (awarding seven percent because "the statutory interest rate of seven percent is more likely to put KFx in the position it would have been in had Arthrex entered into a reasonable royalty agreement"); *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, No. 2:04CV01971MCEEFB, 2009 WL 981843, at *7 (E.D. Cal. Apr. 13, 2009) (finding "that the California statutory rate for liquidated amounts, which is seven

---

[6] *See Mondis*, 2012 WL 1554645, at *4 ("[T]he Court finds that such interest should be applied to the Supplemental Damages award."); *Hynix*, 609 F. Supp. 2d at 965 (adopting the court's prior prejudgment-interest ruling on the trial award and directing the parties to submit a judgment "correctly reflecting the prejudgment interest on the supplemental damages awarded"); *In re Hayes Microcomput. Prods., Inc. Patent Litig.*, 766 F. Supp. 818, 828–29 (N.D. Cal. 1991) (granting accounting of post-verdict sales and supplemental judgment, to be entered "together with simple prejudgment interest at the rate of seven (7) percent on the compensatory (non-enhanced) portion of these damages").

percent and falls in the mid-range of those rates charged for timely and past-due royalty payments, will adequately compensate Plaintiff for the instant infringement").

Applying the seven percent statutory rate, prejudgment interest on the jury's award for sales from April 26, 2021 through March 28, 2026 totals [redacted] as of October 16, 2026, using a single royalty rate for all Accused Products, and [redacted], using a per product, per patent royalty rate. Interest continues to accrue through the date of judgment. Kennedy Decl. ¶24. Taction respectfully requests that the Court award prejudgment interest in that amount, updated through the date of judgment, together with prejudgment interest on any supplemental damages awarded.

## IV. TACTION IS ENTITLED TO POSTJUDGMENT INTEREST

"Post-judgment interest 'shall be allowed on any money judgment in a civil case recovered in a district court,' which 'shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Epistar*, 2023 WL 8930197, at *3 (quoting 28 U.S.C. § 1961).

Post-judgment interest is mandatory. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *see also Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999) ("Postjudgment interest is awarded on monetary judgments recovered in all civil cases."); *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) ("Under the provisions of 28 U.S.C. § 1961, postjudgment interest on a district court judgment is mandatory."). Its purpose "is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum*

*& Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990) (internal quotation marks omitted).

Post-judgment interest under § 1961 "applies to the prejudgment interest component of a monetary award," and thus runs on the entire judgment. *Air Separation*, 45 F.3d at 291; *see also* Watson Decl. Ex. 4 (*Masimo v. Apple*, Dkt. 2954) at 7 (ordering Apple to pay post-judgment interest on the sum of the jury award and prejudgment interest). That result follows from the statute's text, which allows interest on "any money judgment," 28 U.S.C. § 1961(a), and from the settled rule in this Circuit that "once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed." *Air Separation*, 45 F.3d at 290 (quoting *Perkins v. Standard Oil Co.*, 487 F.2d 672, 675 (9th Cir. 1973)). As the Ninth Circuit explained, "failure to apply postjudgment interest to prejudgment interest would result in the injured plaintiff bearing the cost resulting from the loss of the use of money and would thereby reward the defendant for having delayed satisfying the judgment." *Id.* at 291. The Federal Circuit has applied the same rule in patent cases. *See, e.g., Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2023-1772, 2025 WL 649737, at *11 (Fed. Cir. Feb. 28, 2025) ("Post-judgment interest under section 1961 applies not only to the amount of the judgment itself, but also to any prejudgment interest that accrued on the judgment."); *see also Cam Guard Sys., Inc. v. Smart Sys. Techs., Inc.*, No. SACV071051PSGSSX, 2008 WL 5252199, at *3 n.1 (C.D. Cal. Dec. 11, 2008) ("[P]ostjudgment interest is calculated on the total monetary judgment" and "this includes prejudgment interest").

Post-judgment interest likewise runs on any supplemental damages included in the judgment. Because § 1961 does not "distinguish between the component parts of a judgment," *Air Separation*, 45 F.3d at 291, supplemental damages for Apple's infringing sales not captured by the jury's verdict bear post-judgment interest just as the jury's award does. *See id.* at 290 (noting that post-judgment interest has been applied to attorneys' fees, costs, punitive damages, exemplary damages, and fraud

penalties); *TiVo*, 646 F.3d at 903 (ordering "Plaintiff shall have and recover from Defendants… the total sum of $73,991,964.00, together with prejudgment interest… together with supplemental damages… together with post-judgment interest on the entire sum calculated pursuant to 28 U.S.C. § 1961.").

Accordingly, Taction requests post-judgment interest on the entire money judgment, including prejudgment interest and supplemental damages, from the date of entry of judgment until paid, at the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment, currently 4.45%, for the week ending October 9, 2026, *see* Kennedy Decl. ¶26, computed daily and compounded annually. 28 U.S.C. § 1961(a)–(b).

Dated: October 16, 2026

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By: */s/ Scott L. Watson*

Tigran Guledjian (SBN 207613)
tigranguledjian@quinnemanuel.com
Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
Scott L. Watson
scottwatson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000

Sean Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6320
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000

*Counsel for Plaintiff Taction Technology, Inc.*