Sean Pak (SBN 219032)
seanpak@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6320

Tigran Guledjian (SBN 207613)
tigranguledjian@quinnemanuel.com
Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
Scott Watson (SBN 219147)
scottwatson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000

*Attorneys for Plaintiff*
*Taction Technology, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

TACTION TECHNOLOGY, INC.,

Plaintiff,

vs.

APPLE INC.,

Defendant

Case No. 21-cv-00812-TWR-JLB

**DECLARATION OF PATRICK F. KENNEDY IN SUPPORT OF PLAINTIFF TACTION TECHNOLOGY, INC.'S MOTION FOR SUPPLEMENTAL DAMAGES, ONGOING ROYALTY, AND PREJUDGMENT AND POSTJUDGMENT INTEREST**

Judge: Hon. Todd W. Robinson

Magistrate Judge: Hon Jill L. Burkhardt

I, Patrick F. Kennedy, Ph.D., declare as follows:

## I. INTRODUCTION

1. I have been retained by counsel for Plaintiff Taction Technology, Inc. ("Taction") as an expert on economic damages in this action against Defendant Apple Inc. ("Apple") concerning U.S. Patent Nos. 10,659,885 (the "'885 Patent") and 10,820,117 (the "'117 Patent") (together, the "Patents-in-Suit"). I submit this declaration in support of Taction's motion for supplemental damages, an ongoing royalty and for pre-judgment and post-judgment interest following the jury's verdict of September 25, 2026.[1]

2. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify competently to them. I rely on information provided by counsel or on my understanding of the facts of this case, and I do not offer legal opinions.

3. Counsel has asked me to address two issues: (1) a per-unit royalty rate to apply to Apple's continued sales of the products the jury found to infringe (the "Accused Products") after the period covered by the verdict, for purposes of both supplemental damages through entry of judgment and an ongoing royalty thereafter; and (2) the calculation of pre-judgment interest and post-judgment interest on the damages awarded.

## II. QUALIFICATIONS AND PRIOR RETENTION IN THIS MATTER

4. I am an economist and Managing Director with Stout Risius Ross, LLC ("Stout"). Stout is a global financial advisory firm that specializes in providing valuation & financial opinions, dispute advisory & damages analysis, and other services. I hold a bachelor's degree in Economics from the University of California, San Diego and a Doctorate in Economics from Stanford University. Prior to joining

[1] Verdict, Taction Technology, Inc. v. Apple Inc., No. 3:21-cv-00812-TWR-JLB, Dkt. No. 707, September 25, 2026 ("Verdict").

Stout, I was a Managing Director with Torrey Partners and LECG, a Shareholder with Mack|Barclay, Inc., a Director of Economic Research with International Securities Group and an Economist with the Board of Governors of the Federal Reserve System in Washington, D.C. Attached at **Exhibit A** is my curriculum vitae, which summarizes my educational and professional background.

5. I have been retained by Taction in this matter and submitted an Amended Expert Report dated April 3, 2023 (the "Amended Report") and a Supplemental Expert Report dated May 26, 2026 (the "Supplemental Report").

## III. MATERIALS CONSIDERED

6. In preparing this declaration, I considered the materials cited in my Amended Report and Supplemental Report; the Final Jury Instructions; the Verdict Form (Dkt. No. 707); the transcripts of the trial proceedings; the Joint Admitted Trial Exhibits; and the Apple unit-sales data produced in this case (including APL-TACT_05339444 and APL-TACT_05339445), as well as the parties' Joint Stipulation on Accused Units.

## IV. THE JURY'S VERDICT AND THE ROYALTY BASE PRESENTED AT TRIAL

7. The jury found that Apple infringed claims 17 and 19 of the '885 Patent and claim 16 of the '117 Patent, and that Apple had not proven those claims invalid.[2] In response to Issue No. 4, the jury awarded $5,721,961,750 as damages adequate to compensate Taction for Apple's infringement.[3]

8. The Court instructed the jury that damages began on April 26, 2021,

---

[2] Verdict, pp. 2, 4; Reporter's Transcript of Proceedings, Jury Trial – Day Nine, Taction Technology, Inc. v. Apple Inc., No. 21-cv-0812-TWR, September 25, 2026 ("Trial Transcript"), pp. 1398–1400.

[3] Verdict, p. 5; Trial Transcript, pp. 1399-1400.

the date Taction filed this lawsuit.[4] I understand that the parties stipulated to the royalty base up through March 28, 2026, which is the end of the most recent period for which Apple produced unit-sales data. The damages question before the jury covered Accused Products sold from April 26, 2021 through March 28, 2026.[5]

9. The Final Jury Instructions identified the royalty base as follows: Taction asserted the ’885 Patent against all [redacted] accused iPhones and all [redacted] accused Apple Watches, and asserted the ’117 Patent against a subset of those units consisting of [redacted] iPhones and [redacted] Apple Watches ([redacted] units).[6] The total number of distinct Accused Product units is therefore [redacted] The ’117 Patent accused units are not additional devices; they are a subset of the ’885 Patent accused units.[7]

## V. ONGOING ROYALTY

### A. Framework

10. I understand that, where a permanent injunction is not entered, a district court has discretion to award an ongoing royalty for post-verdict infringement, and that the jury’s verdict is generally the starting point for that determination.[8]

---

[4] Final Jury Instructions, Taction Technology, Inc. v. Apple Inc., No. 21-cv-00812-TWR (“Final Jury Instructions”), Jury Instruction No. 30 (Damages—Date of Commencement), p. 39.

[5] Trial Transcript, p. 730; Final Jury Instructions, Jury Instruction No. 9, pp. 12-13.

[6] Trial Transcript, p. 730; Final Jury Instructions, Jury Instruction No. 9, pp. 12-13.

[7] Trial Transcript, p. 730; Final Jury Instructions, Jury Instruction No. 9, pp. 12-13.

[8] *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2014 WL 6687122, at *2, *14 (N.D. Cal. Nov. 25, 2014); *Godo Kaisha IP Bridge 1 v. TCL Commc’n Tech. Holdings Ltd.*, 2019 WL 1877189, at *4, *6 (D. Del. Apr. 24, 2019), *aff’d*, 967 F.3d 1380, 1385 (Fed. Cir. 2020); *Mass Engineered Design, Inc. v. Planar Sys., Inc.*, 2018 WL 6059375, at *3, *6 (D. Or. Nov. 19, 2018).

11. I further understand that in determining an ongoing royalty, courts may consider the facts following the verdict.[9] I use the royalty rates implied by the jury verdict and the stipulated royalty base as the references for the forward-looking royalty rate.

**B. Methodology A: The Blended Per-Unit Rate Implied by the Verdict**

12. To identify a single per-unit royalty rate based on the verdict, the total award would be divided by the total number of distinct Accused Product units in the royalty base:

**Table 1: Single Per-Unit Royalty Rate Based on the Verdict Amount**

| Step | Amount |
|---|---:|
| [1] Jury award | $5,721,961,750 |
| [2] Accused iPhones | [redacted] |
| [3] Accused Apple Watches | [redacted] |
| [4] Total distinct Accused Product units = [2] + [3] | [redacted] |
| [5] Implied blended rate per unit = [1] ÷ [4] | [redacted] |

13. Applying a single royalty rate to any infringing iPhone or Apple Watch, irrespective of which patent was infringed, the implied royalty rate is approximately [redacted] per unit. This royalty rate would be applied to Accused Products and would not be differentiated between accused iPhones and accused Watches, or by patent.

[9] *See XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361–62 (Fed. Cir. 2008); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017). *See also* Final Jury Instructions, Jury Instruction No. 26 (Damages—Reasonable Royalty), p. 35.

### C. Methodology B: Patent- and Product-Specific Per-Unit Rates

14. The verdict form does not set forth a specific royalty rate for the iPhone and the Apple Watch separately, or damages amounts by patent. However, the damages award can be reproduced exactly using a different per-unit royalty rate for iPhones and Apple Watches, applying those rates to the royalty base for each patent and adding up the resulting amounts. Applying [redacted] per iPhone and [redacted] per Apple Watch to each unit for each patent asserted against that unit results in the exact amount awarded by the jury:[10]

**Table 2: Reconstruction of the Verdict – Per-Unit Royalty Rates by Product**

| Patent | Product | Units | Rate | Royalty (Units × Rate) |
|---|---|---|---|---|
| '885 | iPhone | [redacted] | [redacted] | [redacted] |
| '885 | Apple Watch | [redacted] | [redacted] | [redacted] |
| '117 | iPhone | [redacted] | [redacted] | [redacted] |
| '117 | Apple Watch | [redacted] | [redacted] | [redacted] |
| **Total** | | | | [redacted] |

15. The arithmetic, step by step, is: (a) '885 iPhones: [redacted]. The sum of (a) through (d) is [redacted], which equals exactly the amount awarded by the jury.

---

[10] Trial Exhibit 1261 reflects a retail price of [redacted] for the iPhone 7, and Trial Exhibit 3951 reflects a retail price of [redacted] for the original Apple Watch. Applying 1.5% to each identified price yields [redacted]. Rounding each amount up to the nearest $0.50 produces [redacted], respectively.

16. Going forward, per-unit royalty rates that reproduce the jury's verdict would be [redacted] per unit on future sales of infringing iPhones and [redacted] per unit on future sales of infringing Apple Watches. These royalty rates are applied to each infringing model and for each patent. Alternatively, the Court could use a common rate of [redacted] per unit on future infringing iPhone and Apple Watch sales.

**D. Post-Verdict Factors**

17. I have considered whether post-verdict circumstances would warrant an adjustment to the per-unit royalty rates implied by the verdict. First, I understand that any uncertainty about validity and infringement has been resolved in Taction's favor by the jury's verdict.[11] Second, I understand that Apple has continued to incorporate the Taptic Engine and Core Haptics framework in its iPhone and Apple Watch products, and I am not aware of a non-infringing alternative that Apple has implemented.[12] Third, the remaining life of the Patents-in-Suit runs through September 24, 2035,[13] so a license would apply to Accused Product units sold over that remaining period. For these reasons, I conservatively assume that the royalty rates implied by the jury's verdict are economically reasonable for use in calculating gap-period and ongoing royalties.

**E. Application: Gap-Period Sales and Post-Judgment Sales**

18. Gap-period sales (March 29, 2026 through entry of judgment) are outside the period covered by the verdict, and supplemental damages for those sales can be calculated by applying the royalty rates above to additional Accused Product

---

[11] *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361–62 (Fed. Cir. 2008); *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297–98 (Fed. Cir. 2018); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342–43 (Fed. Cir. 2012).

[12] Trial Transcript, pp. 392-395, 1149; Trial Exhibit 1682; conversation with counsel.

[13] I understand from counsel that both Patents-in-Suit expire on September 24, 2035.

sales. Upon production of Apple's updated U.S. unit sales by product and quarter, supplemental damages equal the sum of (i) gap-period units of each accused Apple Watch model multiplied by [redacted] for each patent that model infringes, and (ii) gap-period units of each accused iPhone model multiplied by [redacted] for each patent that model infringes.

19. For sales after the entry of judgment, the ongoing royalty would be calculated the same way for each calendar quarter until the earlier of the expiration of the relevant patent or Apple's cessation of infringing sales.

## VI. PRE-JUDGMENT INTEREST

20. I understand that 35 U.S.C. § 284 provides for damages "together with interest," that pre-judgment interest should ordinarily be awarded to make the patentee whole for the time value of money, and that the Court has discretion to select the rate and compounding method.[14]

21. I have been asked to calculate pre-judgment interest at a 7% simple rate, which I understand to be the statutory rate.[15] For this calculation, I treat the royalty as accruing when each Accused Product was sold, and compute interest on each quarter's royalty from the end of that quarter through the date of judgment. Under this approach, interest is not calculated on royalties for the period before the sale occurred. I have commenced my pre-judgment interest calculations based on sales beginning on April 26, 2021.

22. For the first royalty rate method, a single rate of approximately [redacted]5

---

[14] *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–57 (1983); *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1330 (S.D. Cal. 2010), *aff'd in part, vacated in part on other grounds*, 702 F.3d 1351 (Fed. Cir. 2012); *KFx Med. Corp. v. Arthrex Inc.*, No. 11CV1698 DMS (BLM), 2014 WL 11961953, at *1 (S.D. Cal. Feb. 18, 2014), *aff'd*, 589 F. App'x 538 (Fed. Cir. 2015).

[15] *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1101, 1103 (S.D. Cal. 1990); Cal. Const. art. XV, § 1.

per unit for all accused iPhone and Apple Watch units sold, the calculation steps are: (1) allocate the $5,721,961,750 award to each quarter in proportion to each quarter's Accused Product units (using the units and royalty rate in Table 1), (2) for each quarter, multiply the royalty amount times 7% times the number of years from the quarter-end through the date of judgment, and (3) sum the interest across quarters.

23. For the second royalty method, the calculation steps are: (1) multiply each quarter's unit sales of accused iPhones times [redacted] for each patent, and each quarter's unit sales of accused Apple Watches by [redacted] for each patent, (2) for each quarter, multiply the royalty amount times 7% times the number of years from the quarter-end through the date of judgment, and (3) sum the interest across quarters. I understand that Taction intends to supplement its pre-judgment interest request once the judgment is entered, and I plan to supplement this calculation through that date once entered.

24. The quarterly schedule is attached as **Exhibit B**. Table 3 summarizes the royalty and the pre-judgment interest, calculated at a 7% simple rate through the date of this declaration (October 16, 2026), under each approach described above. Once judgment is entered, I will update my calculations through that date.

**Table 3: Royalty and Pre-Judgment Interest by Approach, 7% Simple[16]**

| Scenario | Total Royalty | Pre-Judgment Interest | Royalty + Interest |
|---|---|---|---|
| **Method A: Blended per-unit rate (Table 1)** | | | |
| Both Patents | $5,721,961,750 | [redacted] | [redacted] |
| **Method B: Patent- and product-specific rates (Table 2)** | | | |
| '117 Patent | [redacted] | [redacted] | [redacted] |
| '885 Patent | [redacted] | [redacted] | [redacted] |
| Both Patents (Sum) | [redacted] | [redacted] | [redacted] |

[16] Royalty subtotals in Table 3 may differ from the Table 2 amounts by a de minimis amount due to rounding.

## VII. POST-JUDGMENT INTEREST UNDER 28 U.S.C. § 1961

25. I understand that 28 U.S.C. § 1961(a) requires post-judgment interest on any money judgment in a civil case, calculated from the date of entry of judgment "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment," and that under § 1961(b) interest is "computed daily to the date of payment" and "compounded annually." I understand that the base includes the full money judgment, including any pre-judgment interest and supplemental damages included in it.[17]

26. As of the date of this declaration, judgment has not been entered. However, the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the issuance of this declaration is 4.45%.[18] The calculation will be performed as follows:

---

[17] *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 289–91 (9th Cir. 1995); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 2025 WL 649737, at *11 (Fed. Cir. Feb. 28, 2025); *Cam Guard Sys., Inc. v. Smart Sys. Techs., Inc.*, 2008 WL 5252199, at *3 (C.D. Cal. Dec. 11, 2008); *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 903 (Fed. Cir. 2011).

[18] Board of Governors of the Federal Reserve System (US), Market Yield on U.S. Treasury Securities at 1-Year Constant Maturity, Quoted on an Investment Basis [WGS1YR], weekly, percent, not seasonally adjusted, retrieved from FRED, Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/WGS1YR, observation for the week ending October 9, 2026: 4.45%. See also Board of Governors of the Federal Reserve System, Federal Reserve Statistical Release H.15, Selected Interest Rates, https://www.federalreserve.gov/releases/h15/.

**Table 4: Post-Judgment Interest Calculation under 28 U.S.C. § 1961**

| Input / Step | Value |
|---|---|
| [A] Date of entry of judgment | [____], 2026 |
| [B] Calendar week preceding [A] | [____] – [____], 2026 |
| [C] Weekly average 1-year CMT yield for [B] (Federal Reserve H.15) | [__.__]% |
| [D] Judgment principal (verdict + supplemental damages + pre-judgment interest) | $[____] |
| [E] Daily interest in year one = [D] × [C] ÷ 365 | $[____] |

27. Interest will accrue daily on the judgment principal at the rate in row [C], compounded annually. After one year, interest begins accruing on both the principal and the interest accrued to that point, and the same applies each year until payment. I will provide the completed calculation, using the published Treasury yield, after judgment is entered.

## VIII. RESERVATION OF RIGHTS

28. My opinions are based on the information available to me as of the date of this declaration. I reserve the right to supplement or amend them if additional information becomes available, including Apple's updated sales data, the Court's rulings on post-trial motions, and the date and terms of any judgment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 16, 2026, in Saint Petersburg, Florida.

By ______________________________
Patrick F. Kennedy, Ph.D.

EXHIBIT A

# Patrick F. Kennedy, PhD

Managing Director

Patrick F. Kennedy is a Managing Director at Stout based in San Diego, CA. Dr. Kennedy provides analysis, consultation, and expert opinions in business and dispute contexts. In his more than 20 years of experience, Dr. Kennedy has testified as an expert in Federal Court, the U.S. Court of Claims, Bankruptcy Court, State Court, and in private arbitrations throughout the country.

Dr. Kennedy has analyzed economic loss and damages in matters with causes of action including, but not limited to, patent, copyright, trademark and trade secret misappropriation, false advertising, breach of contract, product liability, fraud, professional malpractice, negligence, trespass, construction defect, antitrust and unfair competition, insurance bad faith, employment disputes and loss of earnings.

Dr. Kennedy has experience in a wide range of industries involving diverse technology.

## Professional Experience

| | | |
|---|---|---|
| 2023 to present | **Stout** | Managing Director |
| 2011 to 2023 | **Torrey Partners** | Managing Director |
| 2006 to 2011 | **LECG** | Managing Director (2008) |
| 1996 to 2006 | **Mack\|Barclay, Inc.** | Shareholder (1998) |
| 1995 to 1996 | **International Securities Group, Inc.** | Director of Economic Research |
| 1992 to 1995 | **Board of the Governors of the Federal Reserve System, Washington, D.C.** | Economist |

## Education

**Doctorate in Economics**, Stanford University, 1992

Awarded Stanford University Fellowship, Bradley Foundation Dissertation Fellowship, and Outstanding Teaching Award

**Bachelor of Arts in Economics**, University of California, San Diego, 1986

Muir College Valedictorian, Summa Cum Laude and Phi Beta Kappa. Awarded UC Regents Scholarship and the Seymour E. Harris Economics Award

## Licenses and Professional Memberships

Registered Securities Representative and Registered Principal
(NASD Series 7, 24 and 63 – inactive)
American Economic Association
National Association for Business Economics
National Association for Forensic Economics
Licensing Executive Society

## Board Memberships

Torrey Pines Bank, Board of Directors
University of California San Diego, Economic Leadership Board Member

## Awards and Publications

IAM Patent 1000

## SELECTED CASE AND INDUSTRY EXPERIENCE

### INTELLECTUAL PROPERTY

- Patent infringement claims including cellular handset technologies, various integrated circuits, medical devices, action cameras, digital image sensors and processing, network and device security, software, social media, unmanned aerial vehicles, advertising, LED backlighting, vehicle equipment and testing, electronic lottery systems, antibacterial products, DNA-based diagnostic testing, radio frequency identification systems, apparel and other products
- Trade secret misappropriation claims including medical devices, responsive website design, drug development, network security, systems integration, merchant services, financial services, fiber-reinforced polymer systems, manufacturing, cellular handsets, Bluetooth devices and other products
- Trademark and copyright infringement claims including cloud storage, luxury watches, musical composition, a nationally branded convention, wireless headsets, food products, fashion accessories, field marketing organizations, ceiling fans, jewelry, toys, apparel, retail and other products

### OTHER MATTERS

- Breach of contract, intentional interference with prospective economic advantage, professional malpractice, insurance bad faith and other claims in industries including, but not limited to, oil wells and extraction, pharmaceutical clinical trials, reference microorganisms and cell lines, aircraft rescue and firefighting vehicles, wineries, gaming and casinos, satellite television, water purification filters, defense contracting, aerospace, aircraft charter, medical services, government contracts, veterans counseling services, advertising, national franchises, printing, paper and plastics, multilevel marketing, agriculture, footwear, financial services, insurance brokerage and real estate development
- Qui Tam cases involving overbilling by major systems integrators, faulty illuminating flares used in military aviation, improper testing of semiconductors used in military applications, and faulty design of a spacecraft intended to return solar wind samples to earth
- Foodborne illness and product recall
- Natural disaster business losses, including the Northern and Southern California wildfires
- Eminent domain matters involving real estate development and construction aggregates
- Valuing liabilities associated with future product liability claims for an automobile manufacturer in bankruptcy court
- Valuing technology related to motor vehicle engine diagnostics, drone anti-collision sensor technology and other products and services
- Multidistrict product liability litigation including pharmaceutical products and asbestos
- Consumer and business class actions related to solar panels, a natural gas facility blowout, automotive products, assisted living facilities, mobile home park relocation and cellular services
- Antitrust damages in convention services, telecommunications, and aircraft
- Personal loss including aviation, maritime and under the Vaccine Injury Compensation Program

EXHIBIT B

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

[redacted]

| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

[redacted]

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

[redacted]

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

[redacted] [redacted]

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] [redacted] | [redacted] [redacted] | [redacted] [redacted] | [redacted] [redacted] | [redacted] [redacted] | [redacted] [redacted] | [redacted] |
| [redacted] [redacted] | [redacted] [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | |
| [redacted] [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] [redacted] | [redacted] | [redacted] | [redacted] | [redacted] [redacted] | [redacted] [redacted] | [redacted] [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

[redacted]

| | | | | | | |
|---|---|---|---|---|---|---|
| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |