Roger A. Denning (SBN 228998)
denning@fr.com
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
Madelyn S. McCormick (SBN 320063)
mmccormick@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

*Additional Counsel listed on Signature Page*

Attorneys for Defendant Apple Inc.

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TACTION TECHNOLOGY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:21-cv-00812-TWR-JLB<br><br>**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFF TACTION TECHNOLOGY, INC.'S MOTION FOR SUPPLEMENTAL DAMAGES, ONGOING ROYALTY, AND PREJUDGMENT AND POST-JUDGMENT INTEREST**<br><br>**REDACTED VERSION**<br><br>District Judge: Hon. Todd W. Robinson<br>Magistrate Judge: Jill L. Burkhardt<br><br>Hearing: January 19, 2027, 1:30 p.m. |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Taction Asked the Jury to Pick a Number Without a Damages Expert, a Royalty Rate, or Apportionment Evidence ..... 2

B. Taction Chose to End Its Damages Case on March 28, 2026 ..... 3

C. The Jury Returned a Single, Unallocated Award and Found No Willfulness ..... 3

III. ARGUMENT ..... 4

A. The Court Should Grant Apple's Rule 50(b) and Rule 59 Motion and Deny Taction's Motion as Moot ..... 4

B. Taction's Two Incompatible Reconstructions Confirm That the Verdict Contains No Rate the Court Can Apply ..... 6

C. Taction Is Not Entitled to Supplemental Damages ..... 8

1. Having Stipulated to a March 28, 2026 Cutoff and Never Asked the Jury to Extrapolate, Taction Cannot Now Add the Months It Left Out ..... 8

2. Because the Jury Returned a Single, Unallocated Award, There Is No Royalty Rate to Apply to Later Sales ..... 9

D. The Court Should Not Award an Ongoing Royalty ..... 11

1. Taction Has Not Carried Its Burden to Obtain Equitable Relief ..... 11

2. No Further Royalty Is Owed Because, Even if the Jury's Award Stands, Taction Would Receive Far More Than It Ever Proposed ..... 12

3. At a Minimum, the Court Should Not Adopt the Figure Taction Purports to Derive from the Verdict ..... 13

4. Any Relief Must Exclude the September 2026 Products ..... 16

E. Any Prejudgment Interest Should at Most Be Calculated at the Treasury Rate, but Taction's Own Methodology Shows That the Award Already Accounts for the Time Value of Money ..................... 18

1. The Treasury Rate Places Taction in the Position It Would Have Occupied ........................................................................ 18

2. Taction's Own Expert's Methodology Shows That the Award Already Includes Prejudgment Interest .......................... 20

F. Post-Judgment Interest Would Follow Entry of Any Money Judgment Under 28 U.S.C. § 1961 ...................................................... 22

IV. CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288 (9th Cir. 1995) .......... 22

*Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008) .......... 5, 11, 12, 15

*Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2018 WL 905943 (N.D. Cal. Feb. 15, 2018) .......... 16, 17

*Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100 (N.D. Cal. 2014) .......... *passim*

*Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) .......... *passim*

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350 (Fed. Cir. 2017) .......... 5

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-CV-62369, 2017 WL 7732873 (S.D. Fla. Jan. 3, 2017) .......... 14, 15

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, Nos. 2016-2556, -2617, 2016 WL 11726241 (Fed. Cir. Oct. 14, 2016) .......... 6

*Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964 (Fed. Cir. 2021) .......... 9, 10

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964 (Fed. Cir. 1986) .......... 21

*Bos. Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102 (N.D. Cal. 2008) .......... 9

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1101 (S.D. Cal. 1990) .......... 19

*CH2O, Inc. v. Meras Eng'g, Inc.*,
No. LA CV13-08418 JAK (GJSx), 2020 WL 13388230 (C.D. Cal. Apr. 6, 2020) ....... 4, 10, 18

*Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*,
850 F.3d 1302 (Fed. Cir. 2017) ....... 20

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-CV-04738-WHO, 2021 WL 1022854 (N.D. Cal. Mar. 17, 2021) ....... 10, 12, 16, 17

*Creative Internet Advert. Corp. v. Yahoo! Inc.*,
674 F. Supp. 2d 847 (E.D. Tex. 2009) ....... 11, 14

*Cummins-Allison Corp. v. SBM Co.*,
584 F. Supp. 2d 916 (E.D. Tex. 2008) ....... 15

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
340 F. Supp. 3d 1004 (C.D. Cal. 2018), *vacated in part*, 830 F. App'x 634 (Fed. Cir. 2020) ....... 10, 14

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
697 F.3d 1342 (Fed. Cir. 2012) ....... 9

*Epistar Corp. v. Lowe's Cos.*,
No. LA CV17-03219 JAK (KSx), 2023 WL 8930197 (C.D. Cal. Nov. 20, 2023) ....... 14, 15, 16

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ....... 10

*Fractus, S.A. v. Samsung Elecs. Co.*,
No. 6:12-cv-421, 2013 WL 1136964 (E.D. Tex. Mar. 15, 2013) ....... 16

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ....... 4, 12

*Gen. Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983) ....... 18, 21

*In re Hayes Microcomputer Prods., Inc. Patent Litig.*,
766 F. Supp. 818 (N.D. Cal. 1991) ....... 19

*Itron, Inc. v. Benghiat*,
No. 99-cv-501-JRT-FLN, 2003 WL 22037710 (D. Minn. Aug. 29, 2003) ....4

*KFx Med. Corp. v. Arthrex Inc.*,
No. 11cv1698 DMS (BLM), 2014 WL 11961953 (S.D. Cal. Feb. 18, 2014) ....19

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997) ....18

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....13

*In re Nucorp Energy, Inc.*,
902 F.2d 729 (9th Cir. 1990) ....19

*Oiness v. Walgreen Co.*,
88 F.3d 1025 (Fed. Cir. 1996) ....21

*Opticurrent, LLC v. Power Integrations, Inc.*,
No. 17-cv-03597-EMC, 2019 WL 2389150 (N.D. Cal. June 5, 2019) ....15, 19

*Oscar Mayer Foods Corp. v. Conagra, Inc.*,
869 F. Supp. 656 (W.D. Wis. 1994) ....8

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) ....11, 13

*Paice LLC v. Toyota Motor Corp.*,
609 F. Supp. 2d 620 (E.D. Tex. 2009) ....15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013) ....10

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
No. 08-CV-335-IEG (NLS), 2010 WL 3070370 (S.D. Cal. Aug. 5, 2010), *vacated in part on other grounds*, 702 F.3d 1351 (Fed. Cir. 2012) ....*passim*

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017) ....13

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
719 F.3d 1305 (Fed. Cir. 2013) (en banc) ....6

*SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072 (9th Cir. 2010) ........ 18

*Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, No. 96-1231-IEG(POR), 1999 WL 33554683 (S.D. Cal. Mar. 10, 1999) ........ 19

*Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340 (Fed. Cir. 2001) ........ 6

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365 (Fed. Cir. 2010) ........ 13

*TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc) ........ 16

*TransPerfect Glob., Inc. v. MotionPoint Corp.*, No. C 10-2590 CW, 2014 WL 6068384 (N.D. Cal. Nov. 13, 2014) ........ 8, 9

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 F. App'x 965 (Fed. Cir. 2020) ........ 5, 18

*W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280 (9th Cir. 1984) ........ 19

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 515 F. App'x 882 (Fed. Cir. 2012) ........ 6

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012) ........ 4, 11, 12, 18

*XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282 (Fed. Cir. 2018) ........ 5, 14, 15

**Statutes**

28 U.S.C. § 1292(c)(2) ........ 6

28 U.S.C. § 1961 ........ 2, 22

28 U.S.C. § 1961(a) ........ 22

35 U.S.C. § 283 ........ 11

35 U.S.C. § 284 ........ 5, 8

Cal. Civ. Code § 3287(c) ........................................................................ 19

**Other Authorities**

Cal. Const. art. XV, § 1 ........................................................................ 19

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2815 (2d ed. Supp. 2012) ........................................ 9

Fed. R. Civ. P. 50 ........................................................................ 4, 16

Fed. R. Civ. P. 50(b) ........................................................................ 2, 4, 22

Fed. R. Civ. P. 59 ........................................................................ 2, 4, 16, 22

Fed. R. Evid. 702 ........................................................................ 17

Richard F. Cauley, *Winning the Patent Damages Case* 47 (2009) ........................ 13

## I. INTRODUCTION

Every form of relief Taction seeks rests on a single number: the $5,721,961,750 the jury wrote on the verdict form—the largest patent verdict in history, by more than $3 billion. As Apple's pending Rule 50(b) and Rule 59 motion explains, that award is untethered to any evidence at all. Dkt. 722 at 1, 10-19. Taction presented no damages expert, no admissible royalty rate, and no apportionment evidence. It told the jury it was "just looking for a reasonable royalty for its contribution," Tr. 1318:17-20, but never offered evidence of what that contribution was worth. Instead, it asked the jury to "award a reasonable royalty that y'all think is appropriate." Tr. 1328:12-13. The result is an award moored to nothing.

Rather than try to conform its post-trial motions closer to what it had planned to seek, Taction does the opposite, and attempts to pile on billions more. The verdict—suspect as it is—was [redacted] larger than Taction's largest pre-trial damages figure. Not content with that windfall, Taction now asks the Court to increase the award substantially: it would convert the award into a per-unit rate of [redacted]—compared with the [redacted] per unit Taction itself proposed before trial—extend that rate to every accused iPhone and Apple Watch sold through 2035 (for [redacted] of dollars more), add more than [redacted] in prejudgment interest at a fixed 7% rate, and finally add post-judgment interest on top of that. Mot. at 7-8, 15; Kennedy Decl. ¶ 24.

Taction's motion also confirms that the record cannot support the verdict. Taction offers two speculative "reconstructions" of the calculation behind the verdict—neither of which is compatible with the other. The first simply divides the award by the stipulated units to posit a per-unit royalty that no witness or trial exhibit ever mentioned. The second invents a [redacted] figure—also never mentioned by any evidence—based on the launch prices of two ***unaccused*** products (the iPhone 7 and original Watch). Taction's second reconstruction then stacks a separate royalty for each patent, an approach Taction's own damages expert disclaimed as improper.

Neither calculation was before the jury. If anything, Taction's need to conjure them confirms how baseless the verdict is. The Court should grant Apple's post-trial motion, not Taction's.

In any event, the Court should deny Taction's motion. ***First***, all of Taction's requested relief is derivative of the unfounded verdict, so the Court should resolve Apple's Rule 50(b) and Rule 59 motion and moot Taction's motion. ***Second***, Taction is not entitled to supplemental damages: it limited its damages case to sales data ending on March 28, 2026, stipulated to that cutoff during trial, and never asked the jury to extrapolate. Regardless, the jury never found a royalty rate that could be applied here. ***Third***, although courts may award ongoing royalties in appropriate cases, Taction has not carried its burden to obtain the equitable remedy of an ongoing royalty. Its requested figure is not reasonable, and even if the verdict stands, the jury's award already exceeds any measure Taction ever proposed by more than [redacted], so no further royalty is owed. ***Fourth***, any prejudgment interest should run at most at the Treasury rate, and Taction's own expert's methodology shows that the award already accounts for the time value of money. Post-judgment interest would follow under 28 U.S.C. § 1961 if a money judgment is entered.

## II. BACKGROUND

### A. Taction Asked the Jury to Pick a Number Without a Damages Expert, a Royalty Rate, or Apportionment Evidence

Throughout the course of the trial, Taction failed to present admissible evidence quantifying damages. The Court excluded the opinions of Taction's damages expert, Dr. Kennedy, for failure to apportion, and he did not testify at trial. Dkt. 545 at 28-30; Tr. 458:6-463:3. The Court also blocked Taction's attempt to adversely call Apple's damages expert at trial and excluded the royalty rates in Taction's license with [redacted]. Tr. 463:4-22; Tr. 554:20-24; Tr. 657:20-22. With no expert testimony or relevant dollar figures in evidence, Taction then asked the jury to "award a reasonable royalty that y'all think is appropriate." Tr. 1328:12-13.

### B. Taction Chose to End Its Damages Case on March 28, 2026

Taction limited its damages case to sales ending on March 28, 2026. It did not ask the jury to estimate sales after that date, or to award damages for sales between that date and the verdict. Nor did it seek updated sales data from Apple for any period after that date. In March 2026, when it sought to reopen discovery for newly released products, Taction described the task as "getting new financial numbers for those [N]ew [P]roducts." Dkt. 545 at 10. The last sales data in the case ran through March 28, 2026. Mot. at 1. Taction never asked for more. Instead, it planned to rely on Dr. Kennedy to project sales, and his testimony was excluded.[1]

On September 16, 2026, two days into trial, Taction stipulated to the number of accused units sold "between April 26, 2021 through March 28, 2026." Dkt. 647 ¶¶ 1-2. The Court read that stipulation to the jury. Dkt. 713 at 12 (Instr. No. 9(6)). Taction then told the jury that the verdict form asked "how much Apple owes as a reasonable royalty for the infringing products it sold between April 26th, 2021 and March 28th of 2026." Tr. 1327:15-18.

### C. The Jury Returned a Single, Unallocated Award and Found No Willfulness

The verdict form asked the jury to decide the "amount of damages . . . adequate to compensate Taction for *any* infringement by Apple?" Dkt. 707 at 5 (emphasis added). The jury answered with one number, not allocated by patent, product, or period. *Id.* In addition, the jury found that Apple did not willfully infringe either asserted patent, Dkt. 707 at 3, after being instructed to consider Apple's conduct "from April 26, 2021, to the present," Dkt. 713 at 24 (Instr. No. 18).

---

[1] Excerpts of Dr. Kennedy's May 26, 2026 Supplemental Expert Report are submitted as Ex. A. The report was served before Dr. Kennedy's exclusion and is cited here only for the methodology Taction's own expert used.

The Court has not entered judgment. It ordered the parties to file Rule 50(b) and Rule 59 motions instead. Dkt. 718. Apple's motion is pending. Dkt. 722. Taction filed the present motion but did not file any Rule 50 or Rule 59 motion.

## III. ARGUMENT

### A. The Court Should Grant Apple's Rule 50(b) and Rule 59 Motion and Deny Taction's Motion as Moot

Because Taction's motion is premised on the verdict, it should be decided after the Court resolves Apple's Rule 50(b) and Rule 59 motion. If the Court grants judgment as a matter of law that Taction proved no damages, that Taction failed to prove infringement, or that the asserted patents are invalid, Taction would not be entitled to any damages or to any of the relief it requests. Dkt. 722 at 10-19. If the Court orders a new trial, the award falls, and every calculation built on it falls with it. *Id.* at 36-40. Either way, Taction's motion would be moot.

Courts routinely sequence post-trial issues for that reason. In *Whitserve*, the Federal Circuit vacated a damages award and directed the district court to decide forward-looking relief and prejudgment interest "in light of any new damages award." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 34-37 (Fed. Cir. 2012). Likewise, in *Fresenius*, the Federal Circuit vacated an ongoing royalty because it had altered the judgment on which that royalty rested. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009). And in *CH2O*, the court denied the patentee's first motion for supplemental damages and interest because the underlying award had been vacated; it recalculated only after resolving remittitur. *CH2O, Inc. v. Meras Eng'g, Inc.*, No. LA CV13-08418 JAK (GJSx), 2020 WL 13388230, at *12-14 (C.D. Cal. Apr. 6, 2020).

Deferring supplemental damages until after appeal "avoid[s] potentially unnecessary expenditures of time and money in preparing such an accounting." *Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1118 (N.D. Cal. 2014) (quoting *Itron, Inc. v. Benghiat*, No. 99-cv-501-JRT-FLN, 2003 WL 22037710, at *16 (D.

Minn. Aug. 29, 2003)); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 F. App'x 965, 977 (Fed. Cir. 2020) ("[W]e do not fault the district court's decision to defer" supplemental damages). Indeed, in the very case Taction relies upon, Judge Koh decided ongoing royalties only after ruling on the parties' motions for judgment as a matter of law. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 6687122, at *1 (N.D. Cal. Nov. 25, 2014); Watson Decl. Ex. 1 (Dkt. 726-4) at 7.

Resolving Apple's motion first matters for a further reason: the verdict's fate shapes any ongoing royalty. Although past damages are measured by a hypothetical negotiation just before infringement began, the Federal Circuit treats post-verdict infringement differently. *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008). In setting an ongoing royalty, the Federal Circuit considers a second hypothetical negotiation after the verdict that accounts for changed circumstances, including the infringer's "likelihood of success on appeal." *Id.* at 1362; *see XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297 (Fed. Cir. 2018); *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017) ("Ongoing royalties may be based on a post-judgment hypothetical negotiation"). That is why a court in this District, in setting an ongoing royalty, dated that second negotiation to when the court "upheld the jury's finding of validity and infringement." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2010 WL 3070370, at *5 (S.D. Cal. Aug. 5, 2010), *vacated in part on other grounds*, 702 F.3d 1351 (Fed. Cir. 2012).

The Court should therefore resolve Apple's post-trial motion first, which may in turn moot Taction's motion altogether. And if the Court denies Apple's motion in any respect, it should defer any accounting of supplemental damages until after appeal, as courts in this Circuit have done, and decide any prejudgment interest when it enters judgment. *See Apple*, 67 F. Supp. 3d at 1118; *Verinata*, 809 F. App'x at 977. Supplemental damages are infringement damages under 35 U.S.C. § 284, and so are

part of the "accounting" that may follow an appeal under 28 U.S.C. § 1292(c)(2). *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1313 (Fed. Cir. 2013) (en banc); *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 n.2 (Fed. Cir. 2001).[2]

**B. Taction's Two Incompatible Reconstructions Confirm That the Verdict Contains No Rate the Court Can Apply**

Taction's motion only underscores why Apple's motion should be granted. Taction does not identify any royalty rate the jury found, because there is none. Instead, it says that the verdict "can be explained one of two ways." Mot. at 7. Under the first, Dr. Kennedy divides the award by the stipulated units to produce a "blended" [redacted] per unit. Kennedy Decl. ¶¶ 12-13. Under the second, he posits [redacted] per iPhone and [redacted] per Watch, charged separately for each patent. *Id.* ¶¶ 14-16. His only support for those figures is that [redacted] of the launch prices of the unaccused 2016 iPhone 7 and the unaccused 2014 original Apple Watch, rounded up, approximates those rates. *Id.* ¶ 14 n.10 (citing TX1261, TX3951).

Taction's theories are speculative and legally improper. Its first theory—apart from finding no support in the evidence—runs counter to precedent: absent a rate the jury found or sums separately listed on the verdict form, a court may not simply extrapolate a royalty rate from a lump-sum award and apply it to a different sales base.

[2] Unlike supplemental damages, an ongoing royalty must be resolved before the judgment becomes final, because it "is not the same as an accounting for damages." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 515 F. App'x 882, 882-83 (Fed. Cir. 2012); *accord Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, Nos. 2016-2556, -2617, 2016 WL 11726241, at *1 (Fed. Cir. Oct. 14, 2016) (order). Accordingly, once the Court resolves Apple's motion, it cannot hold Taction's request for an ongoing royalty open while an appeal proceeds; instead, it must decide that request when it enters judgment. And because Taction has not carried its burden, the Court should deny it at that time. *See* Section III.D below.

*See* Section III.C.2 below. Taction's second theory is even further removed from the record. TX1261 and TX3951 are 2016 and 2014 press releases concerning the iPhone 7 and the original Apple Watch, respectively, neither of which was accused. Indeed, the accused products are models "released from 2017 to 2025." Dkt. 713 at 12 (Instr. No. 9(5)). No witness or lawyer mentioned either launch price at trial, and no witness offered a [redacted] royalty.

Taction's second theory also contradicts its own damages expert, Dr. Kennedy. Although the Court excluded Dr. Kennedy's opinions at trial, Taction has put him forward again on this motion, and Apple cites his earlier opinions only to show Taction's own positions and methodology, not as evidence of the patents' value. Before trial, Dr. Kennedy opined that "[redacted]." Ex. A ¶ 26; *see id.* ¶ 29. Had the jury done what Taction's second theory now posits, its award would rest on a percentage no one proposed, apply to the prices of products Taction did not accuse, and stack royalties in a way Taction's own expert disclaimed. There is no basis in the record to believe that the jury did so. The verdict simply cannot be reverse-engineered into a rate. Even in *Apple v. Samsung*, the court rejected as speculative an expert's attempt to infer the jury's calculation, and instead derived per-unit figures for multiple products by dividing each product's separate award by that product's units. *Apple*, 2014 WL 6687122, at *15. No such per-product awards exist here. Dkt. 707 at 5; *see* Dkt. 722 at 39. Taction's second theory merely guesses at them.

What is more, Taction's own motion confirms that its position is arbitrary and result-oriented. It "accepts the jury's implied rate" only if the total award stands, but notes that if the award is "reduced in any way," it reserves the right to seek supplemental damages and ongoing royalties at a rate higher than the reduced award would imply. Mot. at 7 n.2. But Taction offers no evidence supporting any higher rate,

just as it offered no evidence to support the verdict. It should not be given a second opportunity to do so. *See* Dkt. 722 at 10-19, 37-38.

### C. Taction Is Not Entitled to Supplemental Damages

#### 1. Having Stipulated to a March 28, 2026 Cutoff and Never Asked the Jury to Extrapolate, Taction Cannot Now Add the Months It Left Out

As courts have recognized, a patentee that chooses to present a sales period to the jury cannot later ask the court to add damages for sales outside that period. In *Presidio*, for example, a court in this District refused to award supplemental damages for the months between the end of the sales data "produced on the eve of trial" and the start of trial, because "[t]he jury is presumed to have compensated Presidio for all of its lost profits leading up to the trial," and Presidio "could have—but did not—argue to the jury that its suggested amount . . . should be proportionally increased." 2010 WL 3070370, at *2 n.1. As the court explained, awarding additional damages in that circumstance would be "an improper invasion of the jury's province to determine actual damages and an inappropriate use of 35 U.S.C. § 284 to enhance inadequate compensatory damages." *Id.* (quoting *Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656, 668 (W.D. Wis. 1994)); *accord TransPerfect Glob., Inc. v. MotionPoint Corp.*, No. C 10-2590 CW, 2014 WL 6068384, at *4 (N.D. Cal. Nov. 13, 2014) (denying pre-verdict supplemental damages where the patentee "apparently did not move to compel the financial information necessary to calculate" them and did not ask the jury to extrapolate).

Taction's conduct falls squarely within that rule. It sought "new financial numbers" when it wanted them, Dkt. 545 at 10, but never sought sales data after March 28, 2026. Its only evidence purporting to address damages after that date was Dr. Kennedy's projection, and he was excluded. *See* Ex. B at 10, 56, and 59 (proposed Kennedy slides); Dkt. 608-2. Taction then stipulated, during trial, to a unit base ending March 28, 2026, without seeking one that ran through trial. Dkt. 647 ¶¶ 1-2.

Furthermore, it told the jury that the damages question covered sales through March 28, 2026, Tr. 1327:15-18, and it never asked the jury to extrapolate. Trial began on September 14, 2026. Under *Presidio* and *TransPerfect*, Taction is not entitled to damages for March 29 through September 13, 2026. In addition, as discussed in Section III.D below, the award already exceeds anything the patents could be worth through their expiration, so awarding more for those months would compensate Taction twice.

*Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964 (Fed. Cir. 2021), on which Taction relies, *see* Mot. at 2, is not to the contrary. As discussed in the next section, pre-verdict supplemental damages in that case were permissible because the patentee had sought updated financial information during discovery, and the jury had found a royalty rate. *Id.* at 986-87. Neither is true here.

**2. Because the Jury Returned a Single, Unallocated Award, There Is No Royalty Rate to Apply to Later Sales**

Supplemental damages are permissible when they "merely require[] applying the jury's royalty rate to the undisputed actual infringing sales base." *Bayer*, 989 F.3d at 986. A court cannot supply a rate the jury did not find, because "[e]ven if there were evidence sufficient for the Court, as opposed to the jury, to determine a reasonable royalty, doing so at this point would violate [the defendant's] Seventh Amendment rights." *Bos. Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1122 (N.D. Cal. 2008). Nor can a court "'correct' a damages figure by extrapolating a royalty rate from the jury's lump sum damages award and multiplying that royalty rate by a revised sales base." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012). Absent "identifiable sums" that are "separately listed on the jury verdict form," doing so would "deprive the parties of their constitutional right to a jury." *Id.* (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2815 (2d ed. Supp. 2012)). Here, the verdict form lists no such sums. And although Taction now

characterizes the verdict as a per-unit royalty, it never asked the jury to state a royalty rate or a royalty base; the verdict form asked for a single amount. Dkt. 707 at 5. That disposes of both of Taction's theories. The first averages a single award across iPhones and Watches, which is precisely the extrapolation *Energy Transportation* forbids. The second depends on per-product and per-patent findings the jury never made, and Taction cannot supply them by positing rates no witness offered. *See* Section III.B above.

Taction's other authorities only underscore the point: each involved a rate the jury actually found or an expert's methodology that the jury adopted. *See Bayer*, 989 F.3d at 986 (jury's royalty rate); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) (jury's royalty rates); *EcoServices, LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1034 (C.D. Cal. 2018) (same, distinguishing a case where the patentee offered no expert royalty rate), *vacated in part*, 830 F. App'x 634 (Fed. Cir. 2020); *CH2O*, 2020 WL 13388230, at *13-14 (supplemental rate derived from a verdict for which the jury "based its award on" the expert's testimony). Taction offered the jury no expert and no rate. And the Federal Circuit vacated the supplemental damages awarded in *EcoServices*, the decision Taction cites, because the jury's per-unit rate "included compensation for infringement of" a patent that did not apply to the later sales. 830 F. App'x at 652.

Nor can supplemental damages reach products that were never adjudicated, namely the iPhone 18 products and the new Watch products that went on sale during trial on September 18, 2026. An accounting is not a vehicle for adjudicating infringement by products the jury never considered. *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2021 WL 1022854, at *5-6 (N.D. Cal. Mar. 17, 2021); *see Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1381 (Fed. Cir. 2013) (post-verdict accounting "is not an unlimited after-hours hunting license"). Taction's attempt to bring those products in through Dr. Oliver's new, post-trial declaration only underscores the point: whether they infringe

has never been tried, and it cannot be decided on a declaration Apple has had no opportunity to test. *See* Section III.D.4 below. Any pre-verdict sales of products released in September 2026 are not within any relief Taction may obtain on this motion. Nor can those sales be swept into an ongoing royalty, which Taction itself seeks only for sales "made after September 25, 2026." Mot. at 8; *see Amado*, 517 F.3d at 1361.

The Court should thus deny supplemental damages.

**D. The Court Should Not Award an Ongoing Royalty**

**1. Taction Has Not Carried Its Burden to Obtain Equitable Relief**

Although a court may, in an appropriate case, award an ongoing royalty after a damages verdict, that royalty must rest on evidence and on the equities, and Taction offers neither. Taction acknowledges that an ongoing royalty is equitable relief under 35 U.S.C. § 283. Mot. at 3. It is not awarded "as a matter of course." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-15 (Fed. Cir. 2007). A court may instead "exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances." *Whitserve*, 694 F.3d at 35. And the patentee bears the burden, which "should be little different than the burden that would be in place for establishing a royalty at trial." *Creative Internet Advert. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 855 (E.D. Tex. 2009); *accord Apple*, 2014 WL 6687122, at *2.

Taction did not carry that burden at trial, and it does not even try to carry it now. Its only evidence is a declaration from the damages expert that this Court excluded, who performs arithmetic on the verdict and "conservatively assume[s] that the royalty rates implied by the jury's verdict are economically reasonable." Kennedy Decl. ¶ 17; *see id.* ¶¶ 12-16. That is not proper evidence of what the accused feature is worth. Equity does not give Taction a second chance to prove what it failed to prove at trial. *See* Dkt. 722 at 10-19, 37-38. At a minimum, the request is premature while Apple's motion is pending; Apple's "likelihood of success on appeal" bears directly

on the parties' post-verdict hypothetical negotiation. *Amado*, 517 F.3d at 1362; *see Contour*, 2021 WL 1022854, at *7 (denying ongoing royalty request as premature).

**2. No Further Royalty Is Owed Because, Even if the Jury's Award Stands, Taction Would Receive Far More Than It Ever Proposed**

Before trial, Taction itself, through its damages expert, valued a license to both patents at [redacted] per unit. Ex. A ¶¶ 26, 29; Dkt. 722 at 37. Applied to every accused unit sold in the damages period, that comes to about [redacted]. Dkt. 722 at 37. The jury's award is about [redacted] that amount. *Id.* at 1. Put another way, at Taction's own pretrial measure, the jury's award already covers about [redacted] units, more than [redacted] the number of accused units Apple sold from April 2021 through March 2026. Dkt. 647 ¶¶ 1-2.[3] No evidence suggests that Apple will sell anywhere near [redacted] units in the roughly nine years remaining before the asserted patents expire. *See* Mot. at 8. This is not a case where a pre-verdict award left later sales uncompensated. *Cf. Fresenius*, 582 F.3d at 1303 (award for machines did not account for "post-verdict sales of repair parts").

Taction thus would already receive more than it ever claimed the patents are worth—for the past and the future alike. Even if the award stands, equity requires nothing further, and the Court should find that no further royalty is owed for future sales of the adjudicated products. *See Whitserve*, 694 F.3d at 35 (court may "conclude that no forward-looking relief is appropriate in the circumstances"). Resolving that question now also serves the very goal Taction invokes: avoiding "unnecessary future litigation" over the same products. Mot. at 11 (quoting *Apple*, 2014 WL 6687122, at *11).

---

[3] Apple does not accept [redacted] per unit as a reasonable royalty. The Court excluded Dr. Kennedy's opinions for failure to apportion. Dkt. 545 at 28-30. Apple uses the figure only to show how far the award exceeds any measure Taction itself advanced.

Finally, if the award stands, nothing in the verdict prevents the Court from treating the award as compensation for future sales as well as past sales. The jury was asked what amount would "compensate Taction for any infringement by Apple." Dkt. 707 at 5. Nothing in the instructions limited the award to past infringement or set an end date for it. *See* Dkt. 713 at 34-40 (Instr. Nos. 25-31). The unit stipulation does not change that: it identified the units Taction used to measure its damages, *id.* at 12 (Instr. No. 9(6)), but it did not limit what the jury's single award may compensate. Terms like "compensate" and "damages" do not "exclude compensation for future infringement in the form of a fully paid license," because damages "include fully paid licenses, which cut off the patentee's claims of entitlement to future compensation." *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1378 (Fed. Cir. 2017). Such a license gives the licensee "the ability, usually for the remainder of the patent term, to actually use the patented technology in its own products without any further expenditure." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009) (quoting Richard F. Cauley, *Winning the Patent Damages Case* 47 (2009)). And the Court has "broad discretion to interpret an ambiguous verdict form." *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010); *see Prism*, 849 F.3d at 1377-78 (deferring to district court's finding that the award covered "future" and "ongoing" infringement). An unallocated award more than [redacted] any measure Taction ever proposed is best understood as compensating Taction for Apple's use of the patents through their expiration.

### 3. At a Minimum, the Court Should Not Adopt the Figure Taction Purports to Derive from the Verdict

Even if the Court concludes that some forward-looking relief is warranted, it should not simply adopt [redacted]. The Federal Circuit has explained that the district court "may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty." *Paice*, 504 F.3d at 1315. If the parties cannot agree, the Court should set any rate

itself, after a hearing at which Taction must prove an apportioned rate with admissible evidence. *Creative Internet*, 674 F. Supp. 2d at 855. And the quarterly reporting Taction requests, Mot. at 11-12, serves no purpose absent an ongoing royalty. *See Epistar Corp. v. Lowe's Cos.*, No. LA CV17-03219 JAK (KSx), 2023 WL 8930197, at *8 (C.D. Cal. Nov. 20, 2023) (declining requested audit and inspection rights).

In *Presidio*, the court rejected precisely what Taction proposes: it refused to carry a verdict-implied per-unit figure forward as an ongoing royalty because that figure was "not a 'royalty' and it is not 'reasonable.'" 2010 WL 3070370, at *3. Taction's figure fares no better. At [redacted] per unit, it is about [redacted] the [redacted] figure that Taction itself told the Court it would not argue was an appropriate royalty. Dkt. 679 at 2; Dkt. 722 at 37. That should be the end of the matter.

In addition, a rate derived from an award covering both patents cannot be carried forward to sales of products accused under only one. In *EcoServices*, a decision Taction cites, the Federal Circuit vacated the supplemental damages and ongoing royalty awarded, which were based on a jury's per-unit rate that "included compensation for infringement of" a patent that no longer applied, because "the record d[id] not support that a later jury would have calculated" that rate for the remaining patent alone. 830 F. App'x at 652 (citing *XY*, 890 F.3d at 1297). The same is true here. Taction's blended rate includes compensation for the '117 patent, which was asserted against only a subset of the accused units, Dkt. 713 at 13 (Instr. No. 9(8)), yet Taction would apply it to every unit, including the new iPhone and Apple Watch Ultra models that it accuses only under the '885 patent. Mot. at 10.

Taction's authorities are distinguishable, because in each, the jury found a rate on an evidentiary record, or the defendant did not dispute the rate. *See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-CV-62369, 2017 WL 7732873, at *1-3 (S.D. Fla. Jan. 3, 2017) (per-unit rate "determined by the jury" after a willfulness finding); *XY*, 890 F.3d at 1297 & n.9 (infringer did not contest that the jury used the stated rates); *Apple*, 2014 WL 6687122, at *12, *14 (product-by-product awards; both

experts offered per-unit theories); *Epistar*, 2023 WL 8930197, at *1 (jury found a 1% rate); *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 625 & n.4 (E.D. Tex. 2009) (award unchallenged).

Apart from the absence of record support for the jury's award, nothing justifies going above the jury's figure. To be sure, the Federal Circuit has recognized that a verdict of validity and infringement can shift the parties' bargaining positions. *XY*, 890 F.3d at 1297. But that shift has little force here, for two reasons. ***First***, before trial, Taction itself claimed only [redacted] per unit for a license to both patents. *See* Section III.D.2 above. ***Second***, the jury was already instructed to assume validity and infringement when setting a royalty. Dkt. 713 at 35 (Instr. No. 26). A verdict confirming those assumptions "does not change any logically consistent analysis; rather, it merely confirms the original assumption of those facts." *Cummins-Allison Corp. v. SBM Co.*, 584 F. Supp. 2d 916, 918 (E.D. Tex. 2008). For that reason, "with permanent injunction off the table, the bargaining positions of a willing patentee and infringer are substantially the same as they would have been at the time the infringement began." *Presidio*, 2010 WL 3070370, at *4; *see also Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597-EMC, 2019 WL 2389150, at *17 (N.D. Cal. June 5, 2019) (describing this line of authority).

What is more, any leverage a verdict confers depends on whether it will survive. Apple's motion remains pending, and the infringer's "likelihood of success on appeal" bears on the post-verdict negotiation. *Amado*, 517 F.3d at 1362. Taction does not seek an injunction. And the other circumstances Dr. Kennedy cites—continued use of the Taptic Engine and the absence of a design-around—were equally true before the verdict. Kennedy Decl. ¶ 17.[4] Tellingly, several of Taction's cases setting rates above the jury's rested on willful infringement. *See Arctic Cat*, 2017 WL

[4] A new design-around could also emerge if, in response to Apple's post-trial motion, the Court finds that the single-magnet products do not infringe.

7732873, at *1-2; *Fractus, S.A. v. Samsung Elecs. Co.*, No. 6:12-cv-421, 2013 WL 1136964, at *1-3 (E.D. Tex. Mar. 15, 2013). The jury here found no willfulness, after considering Apple's conduct through trial. Dkt. 707 at 3; Dkt. 713 at 24 (Instr. No. 18). Taction has not challenged that verdict under Rule 50 or Rule 59. Nothing about the verdict warrants a premium.

### 4. Any Relief Must Exclude the September 2026 Products

Beyond seeking an ongoing royalty, Taction also asks the Court to extend any such royalty to five products released in September 2026. Mot. at 10. It bears the burden to show both that each product "is not more than colorably different from the product found to infringe" and that it "actually infringes." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (en banc). The comparison focuses "on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims." *Id.*; *see Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2018 WL 905943, at *4 (N.D. Cal. Feb. 15, 2018) (applying *TiVo* to ongoing royalties). "The *TiVo* inquiry is intensely factual," and courts routinely decline to extend ongoing royalties to unadjudicated products on a post-trial motion. *Contour*, 2021 WL 1022854, at *7; *Epistar*, 2023 WL 8930197, at *8; *Fractus*, 2013 WL 1136964, at *2. In the very case Taction relies on, Judge Koh ultimately denied ongoing royalties on products that were claimed to be not colorably different. *Apple*, 2018 WL 905943, at *1.

Taction cannot meet the *TiVo* standard on this record. ***First***, the general verdict does not say which products the jury found to infringe or how, literally or by equivalents. Dkt. 707 at 2. Taction therefore cannot identify the elements it "proved" for any model. *See TiVo*, 646 F.3d at 882. ***Second***, the parties stipulated that "[n]ot all accused products use the same Taptic Engine." Dkt. 713 at 13 (Instr. No. 9(7)). ***Third***, Dr. Oliver never tested an Apple Watch before trial, Tr. 428:6-22, and he still has not. His opinions on the new Watches rest on teardowns and "[redacted]." Oliver Decl. ¶¶ 17-18, 55. Similarly, for the new products, Dr. Oliver

did not perform any tests showing that ferrofluid damps the movement of the moving mass or reduces a resonance in those products, as each asserted claim requires. He relies instead on trial testimony about other products, teardown photographs, and what he "would expect." Oliver Decl. ¶¶ 48, 50-51. ***Fourth***, each new product is compared to a predecessor, the iPhone 17 Pro, iPhone 17 Pro Max, Apple Watch Series 11, or Apple Watch Ultra 3, that was itself never tested. Oliver Decl. ¶¶ 4, 17, 22-26.

***Fifth***, while Apple maintains that Dr. Oliver's testing is unreliable and should have been excluded under Fed. R. Evid. 702, Dkt. 722 at 38-39—and the Court has already found Dr. Oliver's extrapolation unreliable where a product's actuator axis differs, Dkt. 545 at 28 n.12—Dr. Oliver's new methodology introduces new problems. He now adds several new features to his testing methodology that the Court has never evaluated for reliability, including acceleration data and a protocol step that identifies each new accused product's Taptic Engine orientation and axis of motion. Oliver Decl. ¶¶ 27, 29, 31-32. ***Sixth***, the Court admitted Dr. Oliver's extrapolation at trial in part because he "reviewed Apple's engineering record for such products," Dkt. 545 at 27, but Dr. Oliver identifies no engineering records for the September 2026 products and Apple has produced none. Whatever "documentation" Dr. Oliver reviewed, Oliver Decl. ¶ 17, it was not that record. If a later dispute arises over whether a particular product falls within any order the Court enters, the Court can resolve it then, on a proper record. It should not presume coverage now. Any such determination would require discovery, a responsive expert opinion, and a hearing, not a ruling on a declaration filed with a motion. *See Contour*, 2021 WL 1022854, at *6-7. ***Finally***, Apple also objects to Dr. Oliver's new declaration for all the reasons raised in its own post-trial motion, which fully apply to his extrapolations.[5]

---

[5] Taction's citations to Apple's briefs in other cases do not help it. In *Wi-LAN*, the jury had found an express per-unit rate, and Apple's acceptance of an ongoing royalty on newer models was expressly conditional, including on the conditions that it could

The Court should thus deny an ongoing royalty.

### E. Any Prejudgment Interest Should at Most Be Calculated at the Treasury Rate, but Taction's Own Methodology Shows That the Award Already Accounts for the Time Value of Money

As explained in Section III.A above, any prejudgment interest should await the Court's ruling on Apple's motion, because interest is calculated on the award. *Whitserve*, 694 F.3d at 37 (remanding for determination of prejudgment interest "in light of any new damages award"); *Apple*, 67 F. Supp. 3d at 1122-23; *CH2O*, 2020 WL 13388230, at *12-14.

#### 1. The Treasury Rate Places Taction in the Position It Would Have Occupied

Taction acknowledges that prejudgment interest should place the patentee "in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement," compensating for "the forgone use of the money." Mot. at 12 (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983)). The Treasury rate does exactly that. It "has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement." *Apple*, 67 F. Supp. 3d at 1122. Awards at the Treasury rate are "well within the court's discretion." *Verinata*, 809 F. App'x at 977 (citing *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997)). In this Circuit, "[t]he treasury-bill rate is the rate typically used in most cases for prejudgment interest calculation." *SEC v. Platforms Wireless Int'l*

---

not be used as evidence that the rate was proper or that the newer models were not colorably different. Watson Decl. Ex. 3 (Dkt. 726-6) at 1-4. In *Apple v. Samsung*, the jury returned product-by-product awards supported by per-unit expert testimony, 2014 WL 6687122, at *12, *14, and the court later declined to extend ongoing royalties to products claimed to be not colorably different, 2018 WL 905943, at *1.

*Corp.*, 617 F.3d 1072, 1083 (9th Cir. 2010); *see W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984) (§ 1961 rate applies "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate"); *In re Nucorp Energy, Inc.*, 902 F.2d 729, 734 (9th Cir. 1990). This District has done the same. *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, No. 96-1231-IEG(POR), 1999 WL 33554683, at *2 (S.D. Cal. Mar. 10, 1999) (awarding simple interest at the § 1961 rate).

Taction offers no evidence that it needed more than the Treasury rate to be made whole. It does not claim that it borrowed money, at any interest rate, because it lacked royalties from Apple. It asks instead for California's constitutional rate for the "loan or forbearance of any money," Mot. at 14, a rate designed for lending transactions, not a measure Congress adopted for patent damages. Cal. Const. art. XV, § 1. Indeed, for tax and fee judgments against public entities, California itself uses the weekly average 1-year Treasury yield, capped at 7%. Cal. Civ. Code § 3287(c). Courts in this Circuit have declined to apply that rate absent evidence that it is necessary. *Opticurrent*, 2019 WL 2389150, at *19 (patentee "has not produced any evidence that a seven percent interest rate is necessary to make it whole"); *Apple*, 67 F. Supp. 3d at 1122 (applying Treasury rate despite patentee's borrowing at higher rates, absent evidence "that it needed to borrow money because it was deprived of the damages award"). Taction's 7% cases do not hold otherwise.[6]

---

[6] In *Brooktree*, 7% was the *defendant's* proposal, adopted over the patentee's request for 20%. *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1101, 1102-03 (S.D. Cal. 1990). There, the patentee argued that "the prevailing prime rate during the relevant period" was 10%, so 7% was then below market. *Id.* at 1103. In *Hayes*, the patentee showed that it "actually borrowed funds at a higher rate," and the court still declined to award more than 7%. *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 766 F. Supp. 818, 824 (N.D. Cal. 1991); *see Opticurrent*, 2019 WL 2389150,

A fixed 7% also ignores the rates that actually prevailed. Short-term Treasury rates were near zero throughout 2021, when a substantial share of the royalties Dr. Kennedy calculates would have accrued. Knox Decl. Sched. 3. Using Dr. Kennedy's own quarterly structure and the average one-year Treasury rate from the end of each quarter through judgment, prejudgment interest through October 16, 2026 is [redacted], not [redacted]. Knox Decl. ¶ 15; compare Kennedy Decl. ¶ 24. Taction's rate would increase the interest owed by about [redacted].

**2. Taction's Own Expert's Methodology Shows That the Award Already Includes Prejudgment Interest**

Taction contends that prejudgment interest runs "from the earliest date of infringement," Mot. at 12 (quoting *Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*, 850 F.3d 1302, 1315 (Fed. Cir. 2017)), and it seeks interest on the full award. But Taction's own expert explained how a royalty measured over a period of years must be valued before interest is added. In his May 2026 report, Dr. Kennedy took per-unit royalties on unit sales from April 2021 through March 2026 and converted them "[redacted]," discounting at [redacted]. Ex. A ¶ 29 & Supp. Scheds. 1, 2.1. Only then did he calculate interest, running from the hypothetical negotiation date on the discounted amount. *Id.* Supp. Sched. 1. On his numbers, discounting reduced [redacted] in

---

at *19. *KFx* adopted 7% in a single sentence that announced the court's conclusion without explaining its reasoning. *KFx Med. Corp. v. Arthrex Inc.*, No. 11cv1698 DMS (BLM), 2014 WL 11961953, at *1 (S.D. Cal. Feb. 18, 2014). An unexplained conclusion does not show that 7% was needed to make that patentee whole, much less Taction. In *Masimo*, the court rejected the state rate and used the patentee's actual cost of debt, which the record established. Watson Decl. Ex. 4 (Dkt. 726-7) at 5-7. Taction offers no comparable evidence.

per-unit royalties to [redacted], about [redacted] of the undiscounted total. *Id.* Supp. Scheds. 1, 2.1.

Applied to the award, that same method shows that the award already exceeds anything Taction could claim with interest. ***First***, on Taction's theory, the award is the undiscounted sum of per-unit royalties on the same units, over the same period, that Dr. Kennedy discounted. Mot. at 7; Kennedy Decl. ¶¶ 12-13. ***Second***, discounting the award the same way, by about [redacted], gives its value as of the May 19, 2020 hypothetical negotiation: [redacted]. ***Third***, growing that amount forward at the average one-year Treasury rate over that period (3.07%) to October 16, 2026, gives [redacted], which is less than the award itself. Knox Decl. ¶¶ 13-15 & tbl. 2. Put simply, Taction already has more than it would have had if Apple had paid a lump sum at the hypothetical negotiation and Taction had held that money until today. No further interest is needed to place Taction "in as good a position as [it] would have been in." *Devex*, 461 U.S. at 655.

Nor does that analysis relitigate damages. *Cf. Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). It simply applies Taction's own expert's method to the question Taction itself poses: what interest is needed to put Taction in the position it would have been in. That method shows that, at the Treasury rate, the award already includes any prejudgment interest Taction could claim. And to the extent that the award compensates Taction for future sales, as Apple contends, no prejudgment interest may run on that portion, because interest on future damages compensates for "losses [the patentee] had not yet suffered." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996).

The Court should thus deny prejudgment interest or at a minimum limit it to the Treasury rate.

### F. Post-Judgment Interest Would Follow Entry of Any Money Judgment Under 28 U.S.C. § 1961

Subject to its pending motion and any appeal, Apple does not dispute that post-judgment interest under 28 U.S.C. § 1961 accrues on any money judgment, including any prejudgment interest component. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290-91 (9th Cir. 1995). But no judgment has been entered. Dkt. 718. Interest under § 1961 runs "from the date of the entry of the judgment," at the rate for "the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). The 4.45% rate Taction cites, *see* Kennedy Decl. ¶ 26, is therefore not the applicable rate, and no post-judgment interest is presently due.

## IV. CONCLUSION

The Court should deny Taction's motion. The Court should first resolve Apple's Rule 50(b) and Rule 59 motion and grant judgment as a matter of law that Taction is entitled to no damages, that Taction failed to prove infringement, and that the asserted patents are invalid. Dkt. 722. If any award survives, the Court should deny supplemental damages, determine that no further royalty is owed for future sales, and deny prejudgment interest or at most apply the Treasury rate.

Dated: November 6, 2026

FISH & RICHARDSON P.C.

By: /s/ Roger A. Denning

Roger A. Denning (SBN 228998)
denning@fr.com
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Joy B. Kete (SBN 355859)
kete@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
Madelyn S. McCormick (SBN 320063)
mmccormick@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Qiuyi Wu (*pro hac vice*)
qwu@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070 / Fax: (617) 542-8906

Jacqueline Tio (*pro hac vice*)
tio@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street N.E., 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 / Fax: (404) 892-5002

Jeff Quilici
jquilici@orrick.com
ORRICK, HERRINGTON &
SUTCLIFFE LLP
200 West 6th Street, Suite 2250
Austin, TX 78701
Tel: (512) 582-6916 / Fax: (512) 582-6949

Counsel for *Defendant Apple Inc.*